IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

KC FILED
MAR 1 3 2008
Mar 13, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**MEG REYNOLDS,** individually and on behalf of her minor child, **TOM REYNOLDS-EJZAK,**

Plaintiff(s),

Vs.

**Oak Park-River Forest School District 200, Local School District; Board of Education of Oak Park-River Forest School District 200;** and **The Illinois State Board of Education,**

Defendants.

CASE NO.

08CV1507
JUDGE DARRAH
MAGISTRATE JUDGE MASON

## Complaint

Plaintiff Meg Reynolds and Plaintiff Tom Reynolds-Ejzak, by his mother and Next Friend Meg Reynolds, complain as follows:

## Introduction

1. This cause of action arises out of the efforts of Plaintiff Meg Reynolds to enforce the rights of her son under the Individuals with Disabilities Act ("I.D.E.A.") as well as her efforts to exercise her parental participation rights under the I.D.E.A.

2. Plaintiffs file this Complaint as a timely appeal of a final Decision and Order issued on November 13, 2008 by Illinois State Board of Education ("ISBE") Impartial Hearing Officer ("IHO") Sheana Hermann.

3. IHO Hermann issued her final Decision and Order and granted defendant OAK PARK-RIVER FOREST SCHOOL DISTRICT 200's ("School District's") motions for summary judgment and dismissal with prejudice. Before delivering her Decision and Order, there was no notice or allegation of insufficiency under the ISBE rules from the School District.

4. IHO Herman delivered her final Decision and Order on the basis of School District's letter motion which argued that Plaintiffs' failed to state a claim for which relief could be granted and had already been litigated through an OCR administrative complaint and an ISBE state complaint. The School District's letter motion was not accompanied by credible evidence or sworn affidavit in support of its motions. The letter motion contained only the statements and assertions of the School District's legal counsel.

5. The IHO erred by adopting the School District's mistaken statement of the law on the nature of administrative complaint investigations and reports.

6. Plaintiffs appeal IHO Sheana Hermann's Decision and Order based on the following:

(a) Many significant procedural violations committed during the administration, case management and ruling on the matter by IHO Hermann that unfairly and unjustly prejudiced Plaintiffs;

(b) Errors in the IHO Hermann's findings of fact;

(c) Improper application of the law to the facts by the IHO;

(d)     Failure by IHO Hermann to recognize and apply the legal standards in this jurisdiction for a dismissal with prejudice;

(e)     Failure by IHO Hermann to recognize and apply the legal standards in this jurisdiction for a motion for summary judgment in an I.D.E.A. action, or for any other civil action in this jurisdiction;

(f)     IHO Hermann applied a heightened and improper pleading standard to the Plaintiffs' Parental Notice and Request for Due Process Hearing. The IHO's heightened pleading standard exceeded the published ISBE standard for insufficiency.

(g)     IHO Hermann failed to recognize the Defendant School District did not comply with the Local Agency Response rules before she ruled on the District's motion to dismiss and motion for summary judgment. *See* 20 U.S.C. §1415(c)(2)(B)(i)(I).

(h)     IHO Hermann failed to recognize and address genuine issues raised by Plaintiff Meg Reynolds in her Notice and Request for Due Process Hearing;

(i)     Failure by IHO Hermann to recognize that Plaintiff Meg Reynolds voiced a justiciable I.D.E.A. claim of retaliatory interference and hindering of the exercise of parental rights to take part in and enforce a child's right to a free appropriate public education in the least restrictive environment.

(j)     Failure of IHO Hermann to recognize Plaintiff Meg Reynolds' Response to Defendant's motion to dismiss and motion for summary judgment met the tests courts in this jurisdiction apply for ruling on motions to dismiss and motions for summary judgment.

(k)     Failure of IHO Hermann to recognize a cognizable claim, or claims, under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act.

(l)     Failure of IHO Hermann to recognize that *res judicata* or claim preclusion does not attach to investigative reports or written decisions issued by ISBE or the U.S. Department

of Education, Office of Civil Rights ("OCR") under those agencies' required administrative complaint procedures.

(m) Failure of IHO Hermann to recognize that federal OCR administrative or State administrative complaint procedures described at 34 CFR Sec. 300.151 *et seq.* and 34 C.F.R. Sec. 100 *et seq.* are not a part of the due process procedural requirements and protections set forth at 20 U.S.C § 1415 and are not a part of the ISBE special education hearing rules that carry out 20 U.S.C. §1415.

(n) Failure of IHO Hermann to recognize that 20 U.S.C. Section 1415(b)(6) governs the minimum procedures for an impartial hearing and bringing a civil action under the I.D.E.A. IHO Hermann also failed to recognize that if state or federal rules of procedure are also used for the Due Process Hearing, the application of those rules must adhere to the legal standards set by the courts in the jurisdiction.

(o) Failure of IHO Hermann to afford Plaintiffs the procedural protections for impartial due process actions guaranteed by 20 U.S.C. Section 1415

(p) Failure by ISBE to provide an IHO in this matter with sufficient knowledge of the law, regulations and interpretations under the I.D.E.A., and who would demonstrate an ability to conduct hearings in accord with appropriate, standard legal practice, as required under 34 C.F.R. Section 300.511(c).

7. Plaintiffs bring this timely Action under the I.D.E.A., Section 504 of the Rehabilitation Act and the Americans with Disabilities Act to appeal the final Order and Decision of IHO Sheana Hermann.

**Jurisdiction and Venue**

8. The United States District Court for the Northern District of Illinois has jurisdiction over this action under 28 U.S.C. § 1331, the

Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2), and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794 and the Americans With Disabilities Act (the "ADA"), 42 U.S.C. 12101 et seq.

9. Venue is proper in this District under 28 U.S.C. §1391 because the acts complained of occurred in the District of Northern Illinois, the parties reside in the District of Northern Illinois, or do business in the District of Northern Illinois.

**Parties**

10. For all times relevant to this action, Plaintiff Tom Reynolds-Ejzak ("Tom") was a minor and of compulsory school-age. He lived at 1166 S. Clinton Avenue in Oak Park, Illinois, 60304, and he was enrolled in Oak Park – River Forest SD 200, Local School District (the "School District").

11. Plaintiff Meg Reynolds is Tom's mother. For all times relevant to this matter, Ms. Reynolds has been a legal resident and taxpayer in the School District. Ms. Reynolds has sole legal custody of Tom, and has sole educational decision-making authority for him.

12. Defendant Board of Education of Oak Park-River Forest School District 200 (the "School Board") is the decision-making body responsible for the School District under 105 ILCS §§ 5/10-1 *et seq.* The School Board is responsible for ensuring that each student within its district who is eligible for services under the IDEA or Section 504 of the

Rehabilitation Act receives a free and appropriate public education in the least restrictive educational environment. The School District is a recipient of federal funds and as such is governed by Section 504 of the Rehabilitation Act.

13.    The School Board has decision making powers as part of its duty to oversee, direct, and govern the School District's special education and other programs and services consistent with 105 ILCS Secs 5/10-1 *et seq.*

14.    Defendant Illinois State Board of Education (the "ISBE"), is the authorized primary state agency required to establish procedures under the I.D.E.A. to resolve disputes between a Local Education Agency ("LEA") and parents on behalf of themselves and their children. Under the I.D.E.A., parents have a right to seek resolution by asking for an impartial due process hearing or by seeking mediation to resolve their differences about any disagreements they may have concerning their child's special education individualized education program "IEP". 20 U.S.C. § 1415 (a).

15.    The ISBE is also responsible for ensuring that all Illinois school-age children receive an education, and ensuring that all eligible children with disabilities in Illinois receive a free and appropriate public education. 20 U.S.C. § 1412 (a)(1)(A) and (B). *See also* 105 ILCS 5/14-8.02.

16. The Illinois State Board of Education ("ISBE") receives federal funds and as such is also governed by Section 504 of the Rehabilitation Act.

17. Defendant Oak River – River Forest SD 200, Local School District is a public school district organized and established under the Education Laws of the State of Illinois.

**Overview of Applicable Legal Standards**

**Under the I.D.E.A., State Law and**

**Section 504**

18. Congress enacted, and the president signed into law, the federal law known as the I.D.E.A., formerly the Education of All Handicapped Children Act, in 1975. See 20 U.S.C. § 1400 *et seq.* The intent of this law, which was re-authorized in 2004, is to ensure that all public schools receiving federal funds provide every child with disabilities a free appropriate public education in the least restrictive environment.

19. To protect the rights of children with disabilities as well as their parents, the I.D.E.A. requires public schools and state education agencies to adhere to a set of procedural safeguards set out in Section 1415 of the Act and related regulations at 34 C.F.R. 300.500 *et seq.* Those safeguards are essentially mirrored, and are in some cases

expanded, under Illinois special education laws adopted by the Illinois General Assembly and administrative rules issued by ISBE. *See* 105 ILCS 5/14-8.02a, Impartial due process hearing; civil action and 23 Illinois Administrative Code Part 226.

20. Among the requirements set forth in Section 1415 and related Illinois law, the state education agency must allow a parent to request an impartial due process hearing if the parent disagrees with any matter related to the identification, evaluation and educational placement of the child, or the provision of FAPE to the child.

21. In connection with a special education due process hearing, Section 1415 and related regulations and authority also guarantee the right to a resolution session, mediation, a pre-hearing conference and the exchange of documents between the parties. The I.D.E.A. also requires the hearing and related transactions must be conducted in accord with appropriate, standard legal practice by an impartial hearing officer with sufficient knowledge of the law, regulations and interpretations under the I.D.E.A. *See* 105 ILCS 5/14-8.02c Sec. 14-8.02c. Due process hearing officers.

22. Impartial Hearing rights for parents under § 1415 also include the right to be accompanied and advised by counsel and the right to confront and cross-examine witnesses. Also, Section 1415(h)

provides for the right to reject from consideration any documents the opposing party fails to disclose five days before the hearing begins.

23.    Separate and apart from the due process hearing rights under § 1415 of the I.D.E.A., a party may elect an alternative resolution process known as state complaint procedures. A party files an administrative complaint directly with the state educational agency, which investigates and rules on the claim. 20 USC 1415 (f)(3)(F); 34 CFR 300.151 through 153.

24.    Exercising the choice for a State Complaint does not constitute "litigation" and it does not abridge or restrict a complaining party's right to an impartial due process hearing or the procedural rights connected with a parent's hearing request as set forth at Section 1415. In addition, the State Complaint procedures do not provide for an evidentiary hearing; confrontation and cross-examination of witnesses; a right to see the opposing party's documents; appeal rights; or other evidence or other due process procedures designed to ensure fundamental fairness and protection of individual constitutionally protected interests.

25.    Similar to the informal State Complaint Procedure, the U.S. Department of Education, Office of Civil Rights ("OCR") receives and investigates administrative complaints of discrimination based on disability pursuant to 34 C.F.R. 100 *et seq.*    Filing an OCR

discrimination complaint by no means constitutes "litigation," nor are OCR's findings the result of "litigation." Unlike a special education due process ruling, an OCR ruling is not subject to judicial review or appeal in a court of law.

26. Section 504 of the Rehabilitation Act of 1973 ("Section 504") forbids retaliation in any form, including intimidation, threats, coercion, interference, pressure, harassment and bullying. A claim of retaliation under Section 504 is a different claim from that for discrimination. Retaliation is specifically forbidden by federally mandated protections. Section 504 of Rehabilitation Act ("Section 504") at 29 U.S.C. § 794(d) expressly incorporates the anti-retaliation provision of Section 503 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203. That provision prohibits retaliation against any individual because such individual has opposed any "act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." *Ibid.*

27. If a party is aggrieved by the findings and decision made by a due process hearing officer, that party has the right to bring a civil action to contest the findings and decision. §1415(i)(2).

28. A parent's claim to enforce the supplementary aids and services section of her child's IEP is a cognizable claim for denial of a free appropriate public education under §1415 of the I.D.E.A.

29. A parent's claim of retaliation, interference, threats, harassment or bullying arising from her efforts to exercise her right to enforce the terms of her child's IEP is a cognizable claim under §1415 of the I.D.E.A., incorporating the ADA at 42 U.S.C. § 12203.

30. A parent's claim of retaliation, interference, threats, harassment or bullying arising from her efforts to exercise her disabled child's right to reasonable accommodations specified in his IEP is also a cognizable claim under Section 504 at 29 U.S.C. § 794(d), incorporating the ADA at 42 U.S.C. § 12203.

**Facts Common To All Causes of Action**

31. On September 21, 2007 Ms. Reynolds properly completed and submitted the ISBE form 19-86A, Parental Request for an Impartial Due Process Hearing, to the School District requesting a hearing on the complaints she described on the form.

32. ISBE Form 19-86A is published on the ISBE web site and offered for downloading by parents of students with disabilities in Illinois so that they may request a special education Impartial Due Process Hearing.

33. To complete the ISBE Form 19-86A, Ms. Reynolds followed the ISBE instructions on the form. Consistent with those instructions, she filled in her name and her child's name and address and the name of the school district; attached pages describing the dispute and requested remedies; and submitted the completed form to the School District

Superintendent on September 21, 2007. Ms. Reynolds sent a copy to the ISBE on the same day. *See* Ms. Reynolds' completed ISBE Form 19-86A (1/01) and attachments. See Parent Request for Due Process Hearing, Appended to this complaint as Exhibit 1

34. ISBE records show that it received Ms. Reynolds' completed ISBE Form 19-86A from the School District on September 25, 2007 and appointed James Wolters as IHO. It acknowledged receipt of the matter on September 27, 2007. See Parent Initial Packet, Appended to this complaint as Exhibit 2.

35. During the week of October 1, 2007, Ms. Reynolds received a copy of School District's counsel John Relias' October 1, 2007 letter motion to dismiss certain of Ms. Reynolds claims with prejudice, together with a motion for summary judgment on the remaining claims. See School District's letter motion to dismiss and motion for summary judgment, Appended to this complaint as Exhibit 3.

36. As of the time Ms. Reynolds received a copy of the School District's October 1 letter motion, Ms. Reynolds had received no other communication or correspondence from ISBE or the School District in response to her hearing request. She contacted the office of the ISBE Due Process Coordinator and asked about the status of her complaint and scheduling. The office assistant gave her an Internet password to access the ISBE online Special Education Database system to retrieve a copy of the Letter. Due to problems with certified mail at her home

address, Ms. Reynolds asked the ISBE to send all future correspondence to her at her Chicago office address.

37.    After receiving the password, Ms. Reynolds visited the ISBE website on her computer and downloaded a copy of the certified letter to her dated Sept. 27, 2007 from the ISBE. The record showed that IHO Wolters was also furnished a copy of the certified letter, which gave notice from the ISBE that Mr. Wolters was appointed to serve as the IHO. The letter also contained the ISBE instructions for making a proper response to a Parental Request for a Due Process Hearing (the "ISBE instructions"). See Parent Initial Packet, See Exhibit 2.

38.    Specifically, the ISBE instructions provided that within 10 days of receiving a parent's hearing request, the school district must provide either (a) a copy of a "prior written notice" pertaining to the subject matter of the request; or (b) a written response that "explains the actions taken by the district, the options considered and why they were rejected by the district before taking the action, and a list of the factors relevant to the district's action."   See Parent Initial Packet, See Exhibit 2.

39.    In addition, the ISBE instructions provided that if the non-requesting party deems the hearing request to be "insufficient," it may submit a written notice of insufficiency to the IHO within 15 days of receipt of the hearing request.  The instructions stated that the IHO would rule within 5 days of the notice of insufficiency.  No other grounds for dismissal or rejection of a parent's due process hearing request were

described in the ISBE instructions and letter or were otherwise communicated to the parties. See Parent Initial Packet, See Exhibit 2.

40. No notice of insufficiency was submitted by the School District. Its October 1, 2007 letter motion to dismiss and for summary judgment does not satisfy the ISBE instructions for making a proper school district response to a Parental Request for a Due Process Hearing. See Parent Initial Packet, See Exhibit 2.

41. On information and belief, the only adverse response parents are told about by the ISBE, the School District, or the School Board is the notice of insufficiency. The ISBE instruction letter did not inform Ms. Reynolds about motions to dismiss and motions for summary judgment. The ISBE instruction also did not informed her about ISBE hearing rules, or any other rules governing motions to dismiss or motions for summary judgment in special education matters.

42. On October 1, 2007, IHO James Wolters sent a Notice of Pre-Hearing Conference to the ISBE setting the following dates:

10/25/07 Pre Hearing Conference

11/9/07 Hearing

See Notice of Pre-Hearing Conference, Appended to this complaint as Exhibit 4.

43. Soon thereafter, by letter dated October 3, 2007, IHO Wolters acknowledged receiving the District's October 1 letter motions to dismiss and for summary judgment. In his acknowledgement, IHO Wolter

stated, "I shall abstain from issuing a written ruling on the motion until October 20, 2007 to provide Ms. Reynolds an opportunity to respond to that motion in writing." See ISBE letter from Wolter, Appended to this complaint as Exhibit 5.

44. In early October 2007, Ms. Reynolds requested a substitution of IHO on the grounds that IHO Wolters previously had an extended client relationship with the School District's attorney.

45. Ms. Reynolds did not receive a response to her substitution request until mid-October 2007, but learned of the substitution when she used her password again to access the ISBE website. She found a copy of a letter to her dated October 9, 2007 announcing that Sheana Hermann, IHO Wolter's daughter, was appointed as the IHO to replace IHO Wolters. The letter stated that IHO Hermann would contact her "within 5 days of receipt of this letter to arrange the dates, times and locations of the hearing and the pre-hearing conference." *See* ISBE Letter of Andrew C. Eulass, Appended to this complaint as Exhibit 6.

46. There was no contact from IHO Herman to arrange pre-hearing and hearing dates. Although IHO Hermann left a brief telephone phone message for Ms. Reynolds some time after her substitution appointment, and Ms. Reynolds left a return voicemail, IHO Hermann did not speak with Ms. Reynolds at any time.

47. On November 2, 2007, Ms. Reynolds wrote to Andrew Eulass, ISBE Due Process Coordinator, to express her concern about

the failure to hold a mandatory resolution session and the delays in scheduling a mediation. She also asked why no pre-hearing conference or hearing had been scheduled. Mr. Eulass referred her to the IHO.

48. Despite Ms. Reynolds' request for an address change and for receiving hearing-related correspondence by mail, she received no mailed correspondence at her home or her office address from the ISBE Due Process Coordinator or IHO Sheana Hermann until she received the Decision and Order that dismissed with prejudice and granted summary judgment in favor of the School District during mid-November, 2007. At no time did the ISBE or the School District or the School Board inform Ms. Reynolds that she must visit the ISBE web site to find official correspondence, rules, schedule dates, or any other information relating to the conduct of her hearing request. At no time did ISBE instruct Ms. Reynolds how to interpret the terms on the Special Education Database System web site.

49. During late October 2007, Ms. Reynolds again accessed the ISBE website using her password. She found a copy of a letter stamped "received Oct. 22, 2007" from IHO Hermann addressed to Ms. Reynolds at her office address and to the School District's attorney. Ms. Reynolds did not receive that letter by mail. The letter informed the parties that IHO Hermann was striking the previously scheduled October 25, 2007 pre-hearing conference previously scheduled by IHO Wolters. IHO Herman's letter gave Ms. Reynolds until Oct. 29, 2007 to file her

response to the School District's motions to dismiss and for summary judgment. See Letter of IHO Sheana Hermann, Appended to this complaint as Exhibit 7.

50. IHO Hermann's letter did not mention rescheduling a new date for the pre-hearing conference. The letter did state that IHO Hermann would rule on the District's motion "on or before November 5, 2007." *See* Exhibit 7.

51. On October 18, 2007, IHO Hermann entered the following note in the SEDS – Special Education Database System: "Subject: Continuance Request." "District has filed a motion to dismiss and for summary judgment." *See* SEDS – Special Education Database System, ID-1824.pdf, Appended to this complaint as Exhibit 8.

52. On October 30, 2007, after obtaining a two-day extension, Ms. Reynolds filed her response to the School District's motion to dismiss and motion for summary judgment. *See* Plaintiff's Response to School District's motions, Appended to this complaint as Exhibit 9.

53. A mediation session was scheduled for November 15, 2007 between the parties with the ISBE appointed mediator. The November 15, 2007 mediation date was the third scheduled mediation. No mediation was held because the School District twice unilaterally cancelled the mediation conferences.

54. Despite the mediation scheduled for November 15, on November 13, 2007, IHO Hermann dismissed the matter with prejudice

and granted summary judgment in favor of the School District. No pre-hearing conference, exchange of documents or a hearing was ever scheduled and communicated to Ms. Reynolds by IHO Hermann. The dismissal and summary judgment stated "Parent has failed to state a cause of action under IDEIA as to her first three issues and Summary Judgment has been entered in favor of the District under the remaining issues." *See* SEDS – Special Education Database System, ID=8821.pdf, Appended to this complaint as Exhibit 10.

55.    IHO Hermann mailed her ruling to Ms. Reynolds and School District. Two days later, and before Ms. Reynolds received the ruling, she attended the scheduled mediation with the School District at Oak Park River Forest High School in Oak Park. See Mediation Record, Appended to this complaint as Exhibit 11.

56.    No progress or agreement was made at the mediation, which was attended by Ms. Reynolds and the Superintendent, Assistant Superintendent and Special Education Director. Soon afterward, Ms. Reynolds received IHO Hermann's ruling in the mail.

57.    Because the mediation conference took place after the IHO dismissed the matter with prejudice and granted the School District's motion for summary judgment, the mediation was a futile exercise. Whether the School District had prior knowledge of the IHO Decision and Order is not presently known by Ms. Reynolds.

58.   No mandatory resolution meeting was held between Ms. Reynolds and the School District.

59.   Ms. Reynolds did not waive the mandatory resolution meeting.

60.   On information and belief, the School District did not waive the mandatory resolution meeting.

61.   The School District should have conducted a mandatory resolution meeting under 34 CFR 300.510 (a)(1) within 15 days of receiving Ms. Reynolds' request for a due process hearing on September 21, 2007.

62.   Instead, the School District swiftly filed a pre-emptive motion to dismiss and a motion for summary judgment.

63.   IHO Hermann failed to recognize that the School District's motion to dismiss was, by operation, the School District's notice of insufficiency of Ms. Reynolds' hearing request.  She should have treated the School District's motion to dismiss as a notice of insufficiency under the ISBE rules.

64.   Taken together, the timing of the Decision and Order to dismiss with prejudice and judgment in favor of the School District on its motion for summary judgment gave Plaintiffs no opportunity to ask to amend their request for a due process hearing.  See IBSE Summary Records, Appended to this complaint as Exhibit 12.

65. The IHO failed to carry out the ISBE instructions governing notice and rulings on insufficiency of parental requests for a due process hearing. See Letter to Reynolds from Andrew C. Euless, ISBE due process coordinator, See Exhibit 2.

66. The IHO applied improper legal standards for ruling on motions to dismiss and on motions for summary judgment.

67. The rules of the State of Illinois Board of Education governing pleading requirements for giving notice and requesting an impartial due process hearing do not require more than the information ISBE asks for in its published form.

**Plaintiff's First Cause Of Action**

**The Impartial Hearing Officer Failed to Apply Proper Standard for a Motion to Dismiss**

68. Plaintiffs repeat and reallege Paragraphs 1 through 67 of this Complaint and incorporate those paragraphs as Paragraph 68 of the Complaint.

69. The State of Illinois Board of Education, through its appointed hearing officer, failed to apply the proper legal standard in this jurisdiction for granting a motion to dismiss with prejudice.

70. This Court should REVERSE the State of Illinois Board of Education's IHO Order On District's Motion to Dismiss with Prejudice



and REMAND with instructions to the School District and the ISBE to properly schedule a pre-hearing conference, document exchange, mandatory resolution meeting, mediation conference, and hearing schedule. In the alternative, the Court should REMAND with an instruction to enter judgment in favor of the Plaintiffs on all their claims.

**Plaintiff's Second Cause Of Action**

**The Impartial Hearing Officer Failed to Apply Proper Standard In Granting a Motion for Summary Judgment**

71. Plaintiffs repeat and reallege Paragraphs 1 through 70 of this Complaint and incorporate those paragraphs as Paragraph 71 of the Complaint.

72. The State of Illinois Board of Education appointed hearing officer erred in her Opinion and Order because the assigned hearing officer failed to apply the legal standard in this jurisdiction for granting a motion for summary judgment in I.D.E.A matters.

73. This Court should REVERSE the Order of the IHO On District's Motion for Summary Judgment in favor of the Defendant District in Case No. 2008-0100 and REMAND with instructions to the School District and the ISBE to properly schedule a pre-hearing conference, document exchange, mandatory resolution meeting, mediation conference, and hearing schedule. In the alternative, the Court

should REMAND with an instruction to enter judgment in favor of the Plaintiffs on all their claims.

**Plaintiff's Third Cause Of Action**

**The Impartial Hearing Officer Failed to Recognize a Cognizable and Justiciable Claim of Retaliation Pursuant to the I.D.E.A**

74. Plaintiffs repeat and reallege Paragraphs 1 through 73 of this Complaint and incorporate those paragraphs as Paragraph 74 of the Complaint.

75. The Illinois State Board of Education appointed hearing officer failed to recognize that a claim of retaliation for hindering or impeding a parent's statutory right to enforce her child's I.E.P. is a cognizable claim arising from § 1415(b) of the I.D.E.A.

76. The Illinois State Board of Education appointed hearing officer failed to recognize that a claim of retaliation for hindering or impeding a parent's statutory right to enforce her child's I.E.P. is a cognizable claim of denial of FAPE under the I.D.E.A.

77. As a direct result of the hearing officer's failure to recognize a parent's right to enforce her child's rights in an I.E.P., Plaintiff's claim for retaliation was dismissed with prejudice.

78. This Court should REVERSE the Order of the IHO's finding that she did not have subject matter jurisdiction of Plaintiff's retaliation claim District and REMAND with instructions to the School District and

the ISBE to properly schedule a pre-hearing conference, document exchange, mandatory resolution meeting, mediation conference, and hearing schedule. In the alternative, the Court should REMAND with an instruction to enter judgment in favor of the Plaintiffs on all their claims.

**Plaintiff's Fourth Cause of Action**

**Award of Reasonable Cost of Suit**

79. Plaintiffs repeat and reallege Paragraphs 1 through 78 of this Complaint and incorporate those paragraphs as Paragraph 79 of the Complaint.

80. Plaintiffs should receive an award of their reasonable costs associated with this action, which are believed to exceed $500.00.

**Wherefore,**

(a) Plaintiffs demand judgment in their favor and against each named Defendant On their First Cause of Action, and request that this Court REVERSE the hearing officer's order to dismiss case No. 2008-0100, and REMAND with instructions to the School District and the ISBE to properly schedule a pre-hearing conference, document exchange, mandatory resolution meeting, mediation conference, and hearing schedule. In the alternative, the Court should REMAND with an instruction to enter judgment in favor of the Plaintiffs on all their claims.

(b)     Plaintiffs demand judgment in their favor and against each named Defendant On their Second Cause of Action, and request that this Court REVERSE the hearing officer's order granting Defendant's motion for summary judgment in favor of the Defendant and REMAND with instructions to the School District and the ISBE to properly schedule a pre-hearing conference, document exchange, mandatory resolution meeting, mediation conference, and hearing schedule. In the alternative, the Court should REMAND with an instruction to enter judgment in favor of the Plaintiffs on all their claims.

(c)     Plaintiffs demand judgment in their favor and against each named Defendant On their Third Cause of Action, and request that this Court REVERSE the hearing officer's order granting Defendant's motion for summary judgment in favor of the Defendant and REMAND with instructions to the School District and the ISBE to properly schedule a pre-hearing conference, document exchange, mandatory resolution meeting, mediation conference, and hearing schedule. In the alternative, the Court should REMAND with an instruction to enter judgment in favor of the Plaintiffs on all their claims.

(d)     Plaintiffs demand judgment in their favor and against each named Defendant On their Fourth Cause of Action, and request that this Court award them their reasonable costs associated with this action, which are believed to exceed $500.00.

(e) Plaintiffs respectfully ask this Court to award them any other relief the Court deems fair, just and equitable under the circumstances of this action.

(f) Plaintiffs ask this Court to take jurisdiction of Plaintiff Meg Reynolds' retaliation claims arising under § 1415(b) of the I.D.E.A. and Section 504 of the Rehabilitation Act.

Plaintiff Meg Reynolds reserves her right to amend and/or supplement her complaint in the event this court retains jurisdiction over her Section 504/ADA retaliation, harassment and intimidation claims.

Dated this 13th day of March, 2008

Meg Reynolds

Meg Reynolds, pro se and for
Plaintiff Tom Reynolds-Ejzak

Meg Reynolds

Print Name
1166 South Clinton Avenue
Oak Park, IL 60304
Telephone: 312-297-6935
Fax: 312-297-5956
E-Mail Address:
megreynolds@sbcglobal.net

Exhibit 1



ILLINOIS STATE BOARD OF EDUCATION
Special Education Compliance Division
100 North First Street
Springfield, Illinois 62777-0001

## PARENTAL REQUEST FOR AN IMPARTIAL DUE PROCESS HEARING

**INSTRUCTIONS:** This form has been developed to assist parents in requesting an impartial due process hearing. The completed form must be given to the superintendent of the student's resident district. Within 5 days of receipt of the request for a hearing, the local school district will forward a copy of the completed form to the Illinois State Board of Education to be shared with the appointed hearing officer. A local school district may not deny a request for a due process hearing. All parties involved in the dispute are advised to review the due process regulations found at 23 Illinois Administrative Code 226.605 and Section 14-8.02 of the School Code. The information reported on this form will be subject to the confidentiality requirements of the Individuals with Disabilities Education Act and the Illinois School Student Records Act.

NAME OF STUDENT ON WHOSE BEHALF THE HEARING IS REQUESTED: Tom Reynolds-Ejzak

STUDENT'S BIRTHDATE (Month/Day/Year): 5-26-90

PARENTS/GUARDIANS' LANGUAGE/MODE OF COMMUNICATION: English

A BILINGUAL OR SIGN LANGUAGE INTERPRETER IS REQUESTED

☐ YES ☒ NO **IF YES, *specify language/mode of communication***

NAME AND ADDRESS OF THE PARENT/GUARDIAN:
Meg Reynolds
1166 S. Clinton Ave
Oak Park, IL 60304

PHONE NUMBER: 312-297-6935

FAX:

E-MAIL: megreynolds@sbcglobal.net

NAME AND ADDRESS OF THE ATTORNEY OR REPRESENTATIVE FOR THE PARENT/GUARDIAN
***If this section is completed all information and correspondence regarding the due process will be forwarded directly to the attorney or representative.***

PHONE NUMBER:

FAX:

E-MAIL:

NAME AND ADDRESS OF DISTRICT:
Oak Park River Forest High School District 200
201 N. Scoville
Oak Park, IL 60302

NAME AND ADDRESS OF THE SCHOOL THE STUDENT ATTENDS:
Same as above

A DESCRIPTION OF THE DISPUTE ***(Attach additional pages if necessary)***

See attached

A DESCRIPTION OF THE RESOLUTION OR ACTION YOU ARE SEEKING ***(Attach additional pages if necessary)***

See attached

Meg Reynolds — *Signature of Parent/Guardian*

9/21/07 — *Date Submitted to District*

ISBE 19-86A (1/01)

***Description of Dispute(s)***

-Retaliation, threats and interference by Special Ed and regular education staff in response to my requests for my child's IEP accommodations, including:

> -Special Ed director's telephone harassment and threats necessitating police reports to stop it (repeated calls, threatening to confront the chief officer at my workplace, threatening to come downtown to confront me in the workplace, threatening to schedule illegal IEP meeting on 2 days' notice), **September 2005;**
> -Retaliation by Special Ed staff by initiating contact with my ex-husband (to invite him to my child's IEP meeting though he has no legal decisionmaking authority for child's education), and similar incidents, **2006-2007 school year.**
> -Teachers manipulation of my child's grades to reflect "As" and "Bs" where my child did not complete readings or homework assignments (because he did not have written assignment information as required by his IEP), **2005-2006 school year.**

-Failure by District 200 School Board to oversee, investigate and take any formal action regarding Special Ed director's retaliation, misconduct and refusal to provide IEP accommodations, notwithstanding parent's entreaties and repeated communications that child's accommodations were not being provided, **September 2005-June 2007.**

-Retaliation by my child's teachers against me and my child for my attempts to obtain child's IEP accommodations (including withholding requested assignment information for extended periods, though this information would have been freely given to a parent of another student; inviting me to take my child out of their class; sending me offensive messages, etc.), **August - December 2005.**

-Failure and refusal to consistently implement child's IEP "notetaker" accommodation in a manner that met his needs for daily comprehensive, detailed written information recording the discussion and activities in his academic classes and daily detailed written assignment information, **2005-2006 school year.**

-Failure to implement an effective system for effectively and meaningfully delivering this accommodation on a daily basis to my son, **2005-2006, 2006-2007 school years.**

-Refusal and failure to memorialize IEP team's agreements from **January 2006 IEP meeting** in IEP paperwork subsequently given to parent (Special Ed director refused to provide it at the meeting).

-Failure to consider the child's needs and anticipated needs and to revise the IEP to address information about the child provided by the parent, **January 2006 IEP meeting.**

***Description of Remedies/resolutions sought***

-Compensatory education for my son

-Adoption by the district of IEP meeting procedures that require that the parent be provided the IEP documents before leaving the IEP meeting, and require such documents to reflect the agreements of the IEP team and not only the preferences of the Special Ed staff; and that parents be allowed to tape record IEP meetings with at least 24 hours' advance notice.

-Comprehensive training for District 200 School Board members, District 200 superintendent, all regular education administrators and Special Ed administrators, all regular education teachers, all members of the Building Administrative Team and all discipline deans and dean/counselors on their legal obligations to students with disabilities and the legal prohibitions against retaliation, threats, interference and coercion against students with disabilities and anyone, including a parent or any other individual or entity, who advocates on behalf of a student or students with disabilities.

Exhibit 2



# Illinois State Board of Education

100 North First Street • Springfield, Illinois 62777-0001
www.isbe.net

Jesse H. Ruiz
*Chairman*

Rod Blagojevich
*Governor*

Christopher A. Koch, Ed.D.
*State Superintendent of Education*

September 27, 2007

Ms. Meg Reynolds
1166 South Clinton Avenue
Oak Park, IL 60304

RE: Tom Reynolds-Ejzak vs OAK PARK - RIVER FOREST SD 200
Case Number: 2008-0100

Dear Ms. Meg Reynolds:

James Wolter has been appointed as the impartial due process hearing officer in the above cited matter. Enclosed is a brief description of the hearing officer's professional background and relevant experience.

As set forth in Section 14-8.02a of the Illinois School Code, each party to this case has the one-time right to request a substitute for the current hearing officer. If you choose to seek a substitute, you must make your request in writing to the Illinois State Board of Education within five (5) days of receiving this letter. In the event the opposing party chooses to exercise this right, you will have five additional days to exercise your substitution following receipt of the notice of appointment of the hearing officer substitute.

Hearing Officer Wolter will contact you within five (5) days to confer about scheduling matters pertaining to this case, including but not limited to scheduling of the pre-hearing conference. In the interim, the parties are reminded of the following procedures, set forth in 105 ILCS 5/14-8.02a and/or 20 USC 1415:

**1) Response to Hearing Request**

Within ten (10) calendar days of receiving the hearing request, the non-requesting party is required to submit a response to the hearing request. In the event the non-requesting party is the parent, guardian or student, the party shall provide a written response that specifically addresses the issues raised in the complaint. If the non-requesting party is the school district, the district shall provide either (a) a copy of the prior written notice pertaining to the subject-matter of the hearing request, or (b) a written response that explains the action taken by the district, the options considered and why they were rejected by the district before taking the action, a description of each evaluation, assessment or record used by the district when taking the action, and a list of the factors that were relevant to the district's action. The response must be transmitted to the

opposing party and to the hearing officer within the timeframe described. In the event the parties have not yet been informed of the appointment of the hearing officer, the parties shall provide the hearing officer with a copy of the response as soon as possible after being informed of the hearing officer appointment.

**2) Notice of Insufficiency of Hearing Request/Amended Hearing Request**

Within fifteen (15) calendar days of receipt of the request, the non-requesting party may submit a written notice to the hearing officer that the hearing request does not meet the sufficiency requirements of 105 ILCS 5/14-8.02a and/or 20 USC 1415. A copy of the notice shall simultaneously be provided to the opposing party. Within five (5) days of receiving the notice, the hearing officer shall make a determination of the sufficiency of the request. In the event the hearing officer determines that the hearing request is insufficient, the requesting party may, with leave of the hearing officer or the opposing party, submit an amended hearing request. An amended hearing request shall have the effect of recommencing all applicable timelines.

In the event the party submitting notice of insufficiency has not yet been notified of the hearing officer appointment, the party shall submit its notice to ISBE within the timeframe described. In serving such notice upon ISBE, the party may mail said notice, **postmarked no later than fifteen (15) days following the non-requesting party's receipt of the hearing request,** to the attention of the Andrew Eulass, Due Process Coordinator at the address on this letterhead or by fax at 217-782-0372. ISBE shall transmit the notice to the hearing officer, who will then have five (5) days from the hearing officer's receipt of the notice to render a determination.

**3) Resolution Session**

Within fifteen (15) calendar days of the non-requesting party's receipt of the hearing request, the parties are required to convene a resolution session for the purpose of discussing the issue(s) raised in the hearing request. The resolution session shall proceed unless the parties mutually agree in writing to utilize state-sponsored mediation in place of the resolution session, or to waive the resolution session without using mediation. Forms attached to this letter may be used by the parties to evidence their compliance with this requirement. **A party's refusal to cooperate in the scheduling and conducting of the resolution session could result in a suspension or extension of the hearing timelines, dismissal of the hearing request, or such other sanction as the hearing may find appropriate.** In the event the parties opt to use mediation in place of the resolution session, the parties may contact Sherry Colegrove, Mediation Coordinator of the ISBE at 217-782-5589 to arrange for the appointment of a State mediator.

The resolution session shall be convened at a mutually agreed-time and location during normal business hours wherever possible. Unless the parent, guardian or student chooses to bring legal counsel to the resolution session, the district may not have legal counsel present. The resolution session must include, at a minimum, the parent, guardian or student (if the student initiated the hearing request), a district official with full decision-

making authority, and such members of the student's IEP team that possess knowledge and information relevant to the issue(s) raised in the hearing request. In the event that the parties reach an agreement resolving one or more issues in the hearing request, the parties shall memorialize their agreement(s) in writing, signed by the district official with decision-making authority and by the parent, guardian or student (if the student initiated the hearing request).

In the event a written agreement is reached, either party may void the agreement within three (3) business days following the signing of the agreement by transmitting their intent to avoid the agreement in writing to the opposing party and to the hearing officer. Absent written intent to avoid the agreement, the parties shall transmit a report of the results of the resolution to the hearing officer within three (3) business days of the completion of the resolution session. **After three business days, the parties are reminded that the agreement is binding and fully enforceable in either a State or Federal court of competent jurisdiction.**

If no agreement is reached by the thirtieth (30th) calendar following the non-requesting party's receipt of the hearing request, the timelines for conducting the due process hearing shall proceed.

**4) Scheduling of Pre-hearing Conference**

As described above, the hearing officer will be contacting you within five (5) days of receipt of the notice of appointment to the case. The hearing officer will be contacting you for the purpose scheduling the pre-hearing conference and to discuss any other preliminary matters pertaining to the hearing request. At that time, the hearing officer will discuss your rights with respect to the pre-hearing conference and the hearing itself. In the interim, a description of your rights at the pre-hearing conference may be found at 23 Ill.Admin.Code Sec. 226.636 (include web address).

**5) Contact with the Hearing Officer and ISBE**

The hearing officer is prohibited from discussing any matters aside from scheduling without the presence of both parties to the hearing. The parties are therefore reminded that they may not contact the hearing officer to discuss any matters affecting the hearing without providing prior notice to the opposing party of the intent to contact the hearing officer. Similarly, ISBE is prohibited from providing any advice or guidance to a party with regard to the handling of the hearing, aside from providing a general description of the parties' rights and hearing procedures, or to provide the names of independent advocates or legal counsel. The parties are advised that the willful disregard of these provisions could result in sanctions to the party that fails to adhere to them.

**6) Stay-Put**

During the pendency of the proceedings, unless the parties otherwise agree, the student shall remain in his or her current placement pending the final outcome of the hearing and exhaustion of relevant appeals. In the event the student is seeking initial admission to the public school program operated by the school district, the student shall, with the consent of the parent or guardian, be place in the district program until the hearing and all relevant appeals have been completed.

A copy of this letter is simultaneously being transmitted to the opposing party. A copy of this letter is also being retained by ISBE. If you have any questions pertaining to the contents of this letter, or pertaining to procedures associated with this hearing request, please contact me at 217-782-5589.

Sincerely,

Andrew C Eulass
Due Process Coordinator

cc: James Wolter

**WAIVER OF RESOLUTION SESSION**

**Student Name: Tom Reynolds-Ejzak**

**Parent/Guardian: Meg Reynolds**

**School District: OAK PARK - RIVER FOREST SD 200**

**Due Process Case No (if known): 2008-0100**

**By the parties' signatures below, the parties hereby agree to waive the right to convene a resolution session for the purpose of resolving the above-captioned due process hearing request. By the School District's signature below, the School District represents that it has informed the Parent or Guardian:**

**(a) of his/her right to pursue either a resolution session or state-sponsored mediation prior to proceeding to hearing;**
**(b) that all agreements reached during the resolution session or mediation will be set forth in a written agreement, signed by both parties, that is enforceable in a State Circuit Court or the United States District Court;**
**(c) that in the event a written agreement is reached during the resolution session only, either party shall have three business days from the date of the agreement to void the agreement in its entirety with signed, written notice to the other party; and**
**(d) that during the period up to the convening of the due process hearing, the Parent or Guardian may still request state-sponsored mediation, but that this request may not delay the convening of the due process hearing.**

**The Parties further agree that they shall contact the Hearing Officer assigned to the above-captioned case by telephone or via e-mail (if permitted by the Hearing Officer) within two business following the date of this waiver and simultaneous transmit a copy to this waiver to the Hearing Officer's attention. In the event the Hearing Officer is not yet known to either party, the parties may forward this waiver to the attention of the Due Process Coordinator of the Illinois State Board of Education, 100 N. 1st Street, Springfield, IL 62777 (telephone: 217-782-5589; fax: 217-782-0372).**

| **Parent/Guardian:** | **School District:** |
|---|---|
| ______________________ | ______________________ |
| **Name:** ______________ | **Name:** ______________ |
| | **Title:** ______________ |
| **Date:** ______________ | **Date:** ______________ |

**APPENDIX A1**

**INTENT TO USE STATE-SPONSORED MEDIATION**

**Student Name: Tom Reynolds-Ejzak**

**Parent/Guardian: Meg Reynolds**

**School District: OAK PARK - RIVER FOREST SD 200**

**Due Process Case No (if known): 2008-0100**

**By the parties' signatures below, the parties hereby agree to utilize state-sponsored mediation for the purpose of resolving the above-captioned due process hearing request. By the School District's signature below, the School District represents that it has informed the Parent or Guardian:**

**(a) of his/her right to pursue a resolution session in place of mediation prior to proceeding to hearing;**
**(b) that all agreements reached during the resolution session will be set forth in a written agreement, signed by both parties, that is enforceable in a State Circuit Court or the United States District Court;**
**(c) that in the event a written agreement is reached at the resolution session only, either party shall have three business days from the date of the agreement to void the agreement in its entirety with signed, written notice to the other party; and**
**(d) that upon completion of the mediation, the parties will proceed to hearing to decide any issues left unresolved following the completion of the mediation.**

**The Parties further agree that they shall contact the Hearing Officer assigned to the above-captioned case by telephone or via e-mail (if permitted by the Hearing Officer) within two business following the date of this agreement to mediate and simultaneously transmit a copy to this agreement to the Hearing Officer's attention. In the event the Hearing Officer is not yet known to either party, the parties may forward this agreement to the attention of the Due Process Coordinator of the Illinois State Board of Education, 100 N. 1st Street, Springfield, IL 62777 (telephone: 217-782-5589; fax: 217-782-0372).**

| **Parent/Guardian:** | **School District:** |
|---|---|
| ______________________ | ______________________ |
| **Name:** ______________ | **Name:** ______________ |
| | **Title:** ______________ |
| **Date:** ______________ | **Date:** ______________ |

**APPENDIX A1**

# Special Education Mediation

## Principles of Mediation

Illinois' mediation service is designed as a means of resolving disagreements regarding special education services, placement and related services to children enrolled in Illinois public schools. Mediation is provided when both parties in a dispute voluntarily agree to participate in the mediation process. Mediation can be requested by both parties without filing for Due Process. Mediation can also be requested after Due Process has been filed. This service is administered and supervised by the Illinois State Board of Education and is provided at no cost to the parties.

In mediation, neither party is asked to abandon basic beliefs about the student's ability but rather the parties are asked to consider alternatives which could be incorporated into the student's program, to be aware of the concerns and problems expressed by the other party and to be realistic about both the student's capabilities and the local district's obligations and resources.

*The following rules apply to this mediation service:*

1. Mediation is voluntary and requires consensus by both parties to participate in the process;
2. Mediation agreements are legally binding and enforceable in any state court of competent jurisdiction or in a district court of the United States. [20 USC Sec 1415(e)(2)(F)];
3. Mediation cannot be used to deny or delay a due process hearing;
4. Mediation participants for both parties must include persons who have legal authority to act on behalf of the student and local district respectively;
5. The number of participants shall generally be limited to three persons per party. Participants may include attorneys, advocates, interpreters, and other relevant parties;
6. The mediator is an impartial third party trained in effective mediation techniques and is knowledgeable in laws and regulations relating to the provision of special education and related services;
7. The mediator has no authority to enforce or override any action by either party;
8. The mediator will chair all mediation sessions and assure that they are convened in a timely fashion and held in a location convenient to the parties;
9. All discussions that occurred during the mediation process shall be confidential and may not be used as evidence in *any subsequent due process hearing or civil proceeding*;
10. The parties cannot compel the mediator to appear at *any subsequent due process hearing or civil proceeding* arising from the dispute;
11. The only record that will be kept of the mediation session is the result of the mediation session, a listing of participants, the date(s), time(s), and location of the mediation session(s) and a summary of the outcome; and
12. When a consensus is not forthcoming, the mediator or parties may terminate the mediation.

**APPENDIX A1**

# MEDIATION CONTACT INFORMATION

It is the responsibility of both parties to contact ISBE if they are interested in pursing mediation. Upon notification of both parties' interest and willingness to participate in the mediation process, the ISBE will appoint a state mediator.

If you would like to participate or learn more about mediation, please contact **Sherry Colegrove, Mediation Coordinator** at 217/782-0247 (voice mail), 217/782-5589 (office), 217/782-0372 (facsimile), 1-866/262-6663 (toll-free for parents) or scolegro@isbe.net.

You may elect to use the Mediation Questionnaire form below or contact Ms. Colegrove directly.

## Mediation Questionnaire

**Student's Name** (please print): ______________________________

**Your Name:** ______________________________

**Your Title** (*Please Circle One*):
Student Parent/Guardian Parent Advocate Parent's Attorney
District Superintendent District's Representative School District's Attorney
Special Education Director Other: ____________________

__ I **agree** to participate in mediation. *Please appoint a state mediator.*
**NOTE:** A state mediator will be appointed when both parties have confirmed their agreement to participate in mediation.

__ I **may** be interested in participating in mediation. Please contact me.

**The mediator may reach me by telephone, during the day at**
(___)____________________**and evening at** ___)____________________

**My e-mail is:** ______________________________

---

__ I do **NOT** agree to participate in mediation. Please do **NOT** contact me.

**If returning by mail, send to:** Sherry Colegrove, Mediation Coordinator, Illinois State Board of Education, Special Education, 100 N. First Street, N-253, Springfield, IL 62777-0001



**Hearing Officer Data Entry Form**

**Name:** James Wolter  **DOB:**  **Ethnic** Caucasian
**Address:** P.O. Box 69  **Sex:** Male  **Language:** English
**Disabled? Yes/No**
**City, State, Zip:** Winnetka, IL 60093

**Contact Information**  **ISBE Dates**
**Date Approved as a Hearing Officer:** 7/1/1997 12:00:00 AM
**Business:** (847) 256-8839  **Fax:** 8472578839
**Home:**  **E-Mail:** wolterj@sbcglobal.net

**Degrees and Majors**

| | |
|---|---|
| Doctorate | Education Administration |
| Bachelors | Bilogical |
| Masters | Special Education |

**Excluded Cooperatives and Districts** ***(Include Distrib. Code/CDT Code)***
District14016039002 WILMETTE SD 39 06/30/2005 08/28/2106
District14016203017 NEW TRIER TWP HSD 203 06/30/2005 08/28/2106

**Employment**
RetiredProfessor of Special Education (Retired)

**Professional Activities/Awards/Honors**
Council for Exceptional Children-Past President of Chapter #57

Chicago State University CEC Chapter-Faculty Sponsor

**Other Notes of Interest**
Dr. Wolter taught science and mathematics as a Peace Corps volunteer in Malaysia and at Forest Psychiatric Hospital in Des Plaines, Illinois. He was a special education teacher and special education administrator at New Trier High School. Dr. Wolter served as a Level I impartial due process hearing officer since 1979.

Dr. Wolter wants to disclose the following:

While he was employed by New Trier High School District, the district employed a law firm that assigned John Relias to work on the districts special education matters. Dr. Wolter and Mr. Relias worked together in this capacity from 1979 to 1994.

Exhibit 3

FRANCZEK SULLIVAN P.C.
ATTORNEYS AT LAW

300 SOUTH WACKER DRIVE
SUITE 3400
CHICAGO, ILLINOIS 60606
PHONE 312-986-0300
FAX 312-986-9192
http://www.franczek.com

JOHN A. RELIAS
312-786-6160
jar@franczek.com

October 1, 2007

Dr. James Wolter
P.O. Box 69
Winnetka, IL 60093

**Re: Tom Reynolds-Ejzak Oak Park & River Forest High School District No. 200, Case No.: 2008-0100**

Dear Dr. Wolter:

The undersigned represents Oak Park & River Forest High School District No. 200 ("School District"). This letter constitutes the School District's response to the due process complaint filed by Meg Reynolds, the mother of Tom Reynolds-Ejzak and a motion to dismiss and for summary judgment of that complaint.

In the parent's complaint dated September 21, 2007, Ms. Reynolds raises the following issues:

1. Retaliation, threats and interference by the School District's special education and regular education staff in response to parental requests for IEP accommodations for the 2005-06 and 2006-07 school years.

2. Failure by District 200 School Board to oversee, investigate and take any formal action regarding the Special Education Director's retaliation, misconduct and refusal to provide IEP accommodations for the period September 2005 – June 2007.

3. Retaliation by Tom's teachers against Ms. Reynolds and Tom for the parent's attempts to obtain IEP accommodations for the period August – December 2005.

4. Failure and refusal to consistently implement Tom's IEP notetaker accommodation in a manner that met his needs during the 2005-06 school year.

5. Failure to implement an effective system for effectively and meaningfully delivering "this accommodation" on a daily basis to Tom for the 2005-06 and 2006-07 school years.

6. Failure to consider the child's needs and anticipated needs and to revise the IEP to address information about the child provided by the parent for the January 2002 IEP meeting.

The School District's response is as follows:

Issues Nos. 1-3.

The Federal Regulations at 34 CFR §300.507(a)(1) provide the parameters for issues that are properly part of a due process complaint. That section states:

> A parent or a public agency may file a due process complaint on any of the matters described in §300.503(a)(1) [relating to the identification, evaluation or educational placement of a child with a disability or the provision of FAPE to the child].

The first three issues in the parent's due process complaint allege retaliation (Issue 1 retaliation by the School District's staff and Issue 3 retaliation by Tom's teachers against Ms. Reynolds and Tom) and the failure of the School Board to investigate and oversee claims of retaliation (Issue 2).

These issues are not proper claims for a due process request pursuant to 34 CFR §300.507(a)(1) and should be dismissed.

Issues Nos. 4 and 5.

In these two issues Ms. Reynolds claims that the School District failed to implement the note taking provision of Tom's IEPs for the 2005-06 and 2006-07 school years.

The School District seeks summary judgment on these two issues for the following reasons:

a. These issues have already been litigated for the 2005-06 school year before both the United States Department of Education, Office for Civil Rights ("OCR") and the Illinois State Board of Education ("ISBE").

Thus, Ms. Reynolds filed a complaint against the School District before OCR in Charge No. 05-06-1280, regarding implementation of Tom's 2005-06 IEP. On

December 18, 2006 OCR issued its decision totally in favor of the School District. A copy of that decision is enclosed as Exhibit A.

Similarly, Ms. Reynolds filed a complaint against the School District before ISBE relating specifically to the note taking accommodation for the 2004-05 and 2005-06 school years.

On December 7, 2005 ISBE issued its decision exonerating the School District on this issue. A copy of that decision is enclosed as Exhibit B.

b. The School District has continued its implementation of Tom's accommodations for the 2006-07 school year. Copies of note taking and other documents evidencing that notes were provided to Tom are enclosed as Group Exhibit C.

c. The United Supreme Court in Board of Education of Hendrick Hudson Central School District v. Rowley, 458 U.S. 176, 102 S. Ct. 3034 (1982) established the criterion for determining when a handicapped child, like Tom, who is educated in regular education classes is receiving a free appropriate public education ("FAPE"):

> The Act requires participating States to educate handicapped children with nonhandicapped children whenever possible. When that "mainstreaming" preference of the Act has been met and a child is being educated in the regular classrooms of a public school system, the system itself monitors the educational progress of the child. Regular examinations are administered, grades are awarded, and yearly advancement to higher grade levels is permitted for those children who attain an adequate knowledge of the course material. The grading and advancement system thus constitutes an important factor in determining educational benefit.

104 S. Ct. at 3049, footnote omitted.

During the 2005-06 school year Tom received 8 As and 7 Bs for his semester grades. A copy of his transcript is attached as Exhibit D. Pursuant to Rowley, Tom received a FAPE during the 2005-06 school year.

For the 2006-07 school year, no semester grades have yet been issued. However, as of September 27, 2007, Tom is receiving all As or Bs in his academic classes. A copy of those grades are attached as Exhibit E.

Accordingly, the School District is entitled to summary judgment on Issues 4 and 5 of the parent's due process complaint because it has and is providing Tom with a FAPE.

Issue No. 6.

For her last issue, Ms. Reynolds complains about a January 2006 IEP and the alleged failure of the School District to consider Tom's needs and revise his IEP to address information about Tom provided by the parent.

This issue has also been litigated before ISBE and that agency found no violation of any kind by the School District.

On January 13, 2006 an IEP meeting was held to define the process under which notes and assignments would be provided to Tom. Ms. Reynolds and her attorney, Deborah Pergament, attended.

On February 5, 2006, Ms. Pergament wrote to the undersigned requesting certain additions to the IEP. A copy of that letter is attached as Exhibit F.

On February 17, 2006 the undersigned responded. After consulting with the School District, its attorney accepted some but not all of the requested additions. A copy of that letter is attached as Exhibit G.

Ms. Reynolds was not satisfied with that response and requested relief from ISBE. On March 17, 2006 ISBE responded and found that the School District had complied with ISBE's directive to clearly define the note taking process. A copy of that letter is attached as Exhibit H.

Furthermore, as noted in the proceeding section during the 2005-06 school year Tom passed all his courses with grades of As and Bs. Pursuant to Rowley, the School District provided Tom with a FAPE and the School District is entitled to summary judgment on this issue.

CONCLUSION

Issues 1-3 of the due process complaint raise claims of retaliation and the School District is entitled to dismissal of those claims because they are not proper due process claims pursuant to 34 CFR §300.507(a)(1).

Furthermore, the School District is entitled to summary judgment on Issues 4-6 of the due process complaint relating to implementation of Tom's 2005-06 and 2006-07 IEP because:

1) Tom earned grades of As and Bs for the 2005-06 school year and pursuant to Rowley he received a FAPE;

2) Tom is passing has academic courses for the 2006-07 school year;

3) The School District is implementing the note taking part of Tom's 2006-07 IEP;

4) The School District considered Ms. Reynolds' requests for changes of the January 2006 IEP and no more is required; and

5) These issues were previously litigated and decided in favor of the School District by OCR and ISBE.

Very truly yours,

John A. Relias

JAR/rs
Enclosure
cc: Meg Reynolds (with enclosure)
Dr. Attila Weninger (with enclosure)
Linda Cada (with enclosures)



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS
MIDWESTERN DIVISION, CHICAGO OFFICE
111 NORTH CANAL STREET, SUITE 1053
CHICAGO, ILLINOIS 60606 - 7204

TEL: 312-886-8434
TDD: 312-353-2540
FAX: 312-353-4888

received
12-22-06

DEC 18 2006

Dr. Susan Bridge
Superintendent and Principal
Oak Park River Forest High School District #200
201 N. Scoville Avenue
Oak Park, IL 60302

Re: #05-06-1280

Dear Dr. Bridge:

The U.S. Department of Education (Department), Office for Civil Rights (OCR), has completed its investigation of the above-referenced complaint filed against the Oak Park River Forest High School District #200 (District) alleging discrimination on the basis of disability, and retaliation. OCR is responsible for enforcing Section 504 of the Rehabilitation Act of 1973 (Section 504) and Title II of the Americans with Disabilities Act of 1990 (Title II), which prohibit discrimination based upon disability and retaliation against persons for asserting rights protected under Section 504 and Title II. As a recipient of Federal financial assistance from the Department and a public entity, the District is subject to the provisions of Section 504 and Title II.

The Complainant alleged that, during the 2005-06 school year, the District discriminated against her son? (Student A) on the basis of disability by failing to implement his individualized education program (IEP), as follows:

1. In the first semester of the 2005-06 school year, through December 28, 2005, Student A's Asian Studies teacher failed to provide the student with a written list of class assignments for the first quarter; and

2. During the second semester of the 2005-06 school year, Student A's English teacher failed to add sources of class discussions to the student's notebook.

EXHIBIT
A

The Complainant further alleges that the District failed to implement the IEP in retaliation for the Complainant having advocated for her son's rights as a student with a disability throughout the fall of 2005-06 and in October 2005, when she filed a complaint with the Illinois State Board of Education (ISBE).

During its investigation of this complaint, OCR interviewed the Complainant and District employees, and reviewed documents provided by the Complainant and the District. On December 6, 2006, the Complainant denied consent for OCR to interview Student A, who is a minor. Based on a review of the information made available OCR has concluded that insufficient evidence exists to substantiate the complaint allegations. The bases for OCR's conclusions are set forth below.

## Facts

During the 2005-06 school year, Student A was a sophomore in the District. Student A has a primary disability of autism and secondary disabilities of a central auditory processing disorder and attention deficit hyperactivity disorder. An IEP dated April 6, 2005, was signed by the parent and required the District to provide "assistance in recording daily homework".

For the fall 2005 semester, Student A enrolled in the District's Asian Studies honors course. The course instructor informed OCR that during the first week of the fall 2005 semester he received a document from the District's special education department entitled "Confidential Student Information." The document stated in relevant part that Student A was to be provided assistance recording daily homework.

The instructor claims that he implemented the IEP as required. The instructor informed OCR that during the first week of class in fall 2005 he provided all students, including Student A, a curriculum guide that listed the course texts, topics, and readings in order of presentation. The instructor also reported that every other week in both the first and second quarters of the semester he distributed to all students including Student A, assignment sheets with handouts, readings, and homework that were expected to be covered over the following two-week period. The instructor provided OCR with copies of the assignment sheets for the first quarter, which contained detailed information regarding the topics, point value, resource bibliographies, and due dates of course assignments.

According to the Complainant, she reviewed Student A's Asian Studies notes each evening at home and saw no information regarding daily homework. The Complainant stated that on numerous occasions she complained to the District about the Asian Studies notes and requested a written list of class assignments from the Asian Studies instructor for the first quarter. On October 6, 2005, the Complainant filed a charge with the ISBE alleging that the District was not providing Student A with note taking assistance in his classes, including assistance in recording daily homework pursuant to the April 2005 IEP.

OCR was unable to speak with Student A to determine whether he received the information the Asian Studies instructor claimed to provide in class during the first quarter. However, OCR's review of the instructor's records showed that during the first quarter, Student A had sufficient information about his assignments to allow him to turn in all assignments and essays on a timely basis, except for an essay and quarter-long project, and that he participated successfully in class. The Complainant asserted that she never saw the curriculum guide and first-quarter assignment sheets and that she had no knowledge of any unfinished assignments until she until she requested notes from the District.

In response to one of her requests, on October 25, 2005, the District sent by facsimile a list of assignments in Asian Studies for the first nine-week quarter of the class. The quarter was scheduled to end on October 28, 2005. This list confirmed that Student A had completed all of his assigned work for the quarter except for the two assignments: an essay on a class text, and a quarter long research project pertaining to India.

As a result, the Complainant requested the District to record a grade of Incomplete for the first quarter to allow Student A additional time to finish the assignments. The District granted the request and Student A completed the two projects over the winter break in December 2005. He received a semester grade of B.

On December 7, 2005, the ISBE concluded that the District was providing the note taking assistance required by the IEP. On December 28, 2005, the Asian Studies instructor sent the Complainant a two-page summary of all reading assignments, tests, and essays for the first quarter on a dated week-by-week list. The Complainant confirmed with OCR that she viewed this summary to be the document required by Student A's IEP because it included weekly dates that homework assignments had been due.

For the second semester of the 2005-06 school year, Student A participated in honors English Literature I – 2A (English). The instructor informed OCR that, early in the first semester, she received Student A's "Confidential Student Information" sheet containing Student A's daily homework requirement. On January 25, 2006, Student A's IEP team reconvened and modified Student A's IEP to specify that Student A's English instructor was to "add to the student's daily notebook notations that referenced from where in study guides class discussions evolved."

The Complainant asserted that the IEP provision required the English teacher to personally write the study guide notations in the student's daily notebook. In support of her assertion, the Complainant reported that the instructor provided the required notations for the first two class sessions, but then discontinued providing notes.

The District asserted that Student A received the required information about study guide references. The English instructor asserted to OCR that the study guide reference information that was discussed at the IEP meeting was written on the board before class to be transcribed by the Student A's note taker. The English instructor confirmed that she personally wrote notes for the January 26 and 27 class sessions because the student note taker was absent. The instructor indicated that the Complainant did not contact her to indicate any concerns about the adequacy of the notes provided to Student A until April 2006. According to the instructor, after she responded to the Complainant's concerns, she received no further complaints about the notes.

The instructor's grade report for Student A for the class showed that Student A timely completed 51 of the 54 assignments with an average score of 92%, had an average score of 96% for the seven examinations, and actively participated in class discussions. Student A received an A grade for the course, a grade that the instructor asserted was warranted based on the student's excellent writing skills and superior performance on required coursework.

## Analysis and Conclusions

### Allegation of Disability Discrimination

The regulation implementing Section 504 at 34 C.F.R. §104.33(a) states that a recipient shall provide a free appropriate public education to each qualified student with a disability who is in the recipient's jurisdiction, regardless of the nature or severity of the student's disability. The regulation at 34 C.F.R. §104.33(b)(2) states that implementation of an IEP developed in accordance with the Individuals with Disabilities Education Act (IDEA) is one means by which a district can provide a free appropriate public education to a student with a disability.

OCR has determined that the evidence is insufficient to demonstrate that District failed to implement Student A's IEP as alleged. With regard to the Asian Studies class, the Complainant stated that Student A was not provided a list of course assignments; however information provided by the instructor suggested that he disseminated the curriculum guides and assignment sheets during the first quarter. While the Student A was granted extra time to complete two course assignments, the instructor's records of the student's performance throughout the semester show that Student A was aware of his assignments, generally turned in his work on a timely basis and participated successfully in the class.

With regard to the English class, the evidence established that the English instructor did not personally add to Student A's notebook a written notation referencing the sources in the study guide from which the class discussion evolved, as the Complainant understood was required by the IEP. However, the District asserted that the English instructor was not required to personally write in Student A's notes as long as she provided the necessary study guide notation information on the board to be transcribed by the student note taker. While

OCR could not independently verify with Student A whether he received the relevant information about study guide notations, information from OCR's review of the instructor's records suggests that he had the information as he turned in assignments and essays on a timely basis and participated successfully in class.

Based on the foregoing, OCR has concluded that the evidence was not sufficient to substantiate the Complainant's allegation that, in school year 2005-06, the District discriminated against Student A on the basis of disability by failing to provide the student with a written list of class assignments for the first quarter of Asian Studies and by failing to add sources of class discussions to the student's notebook in English.

Allegation of Retaliation

The Section 504 regulation, at 34 C.F.R. §104.61 incorporates by reference the regulation at 34 C.F.R. §100.7(e), which prohibits retaliation against individuals who engage in activities protected by Section 504. Similarly, the Title II regulation, at 28 C.F.R. § 35.134 (a) and (b), also prohibits retaliation against individuals who engage in activities protected by Title II. A *prima facie* case of retaliation exists when each of the following is established: (1) the complainant engaged in a protected activity; (2) the District was aware of the protected activity; (3) following the protected activity, the District took an adverse action against the complainant or a person on whose behalf the complainant engaged in a protected activity; and, (4) there is an indication of a causal connection between the protected activity and the adverse action. If a *prima facie* case is established, then the District may rebut the inference of retaliation by presenting a non-retaliatory justification for its actions. OCR must then evaluate the justification to determine whether it is a pretext for retaliation.

OCR determined that the Complainant engaged in a protected activities throughout the fall semester, when she advocated to the District on behalf of Student A regarding the student's IEP, and on October 6, 2005, when she filed a complaint with ISBE alleging that the District failed to implement Student A's IEP. OCR verified that District staff, including the Asian Studies and English instructors, had notice of these activities.

In determining whether Student A was subjected to an adverse action, OCR considered whether the District's actions significantly disadvantaged Student A and whether the challenged actions reasonably might have deterred or precluded him or the Complainant, on his behalf, from engaging in further protected activities. As noted above, although the Complainant contended that the instructor did not comply with the IEP until December 28, 2005, the evidence showed that the Asian Studies instructor supplied Student A with a curriculum guide and assignment sheets during the first quarter of the fall 2005 semester, and that the District provided similar materials to the Complainant on October 25, 2005. Further, OCR determined that although the English instructor did not personally note in Student A's

notebook the sources for the classroom discussion, the instructor provided the information on the board, and that the student note taker recorded the information for Student A.

Given that the information did not establish the District failed to implement the IEP as alleged, OCR cannot conclude that the District engaged in an adverse action by failing to implement the IEP. Therefore, the information does not establish *prima facie* case of retaliation.

* * *

Based on the foregoing, OCR is closing the complaint effective the date of this letter. We thank the District for the cooperation it extended to OCR during the investigation. If you have any questions about this letter, or seek further information, you may contact Mr. Thomas Adams, Senior Investigator, of my staff, at 312-886-8420.

Sincerely,

Madonna T. Lechner FCR
Team Leader

cc: Mr. John Relias
Attorney at Law
Franczek Sullivan P.C.



# Illinois State Board of Education

100 North First Street • Springfield, Illinois 62777-0001
www.isbe.net

Rod Blagojevich
*Governor*

Jesse H. Ruiz
*Chairman*

Dr. Randy J. Dunn
*State Superintendent of Education*

December 7, 2005

Ms. Linda Cada
Director of Special Education
Oak Park-River Forest #200
201 North Scoville Avenue
Oak Park, IL 60302

and

Dr. Susan Bridge
Superintendent
Oak Park-River Forest #200
201 North Scoville Avenue
Oak Park, IL 60302

Re: Reynolds-Ejzak Complaint

Dear Ms. Cada and Dr. Bridge:

The Illinois State Board of Education, Special Education Services Division, has completed its investigation of the complaint lodged by Ms. Meg Reynolds on behalf of her son, Tom. Authority for conducting this investigation is the Individuals with Disabilities Education Act, P.L. 108-446, 34 CFR 300.660 - 300.662.

The review focused on the following requirements:

> ***23 Illinois Administrative Code 226.200(c)(2)** which states, "A school district shall provide special education and related services to eligible children in accordance with their IEPs."*

***<u>Background and Summary of Allegations</u>***

According to the parent, her son's Individualized Education Program (IEP) requires a notetaker due to difficulties with an auditory processing disorder. She alleged that this accommodation was not implemented during the 2004-2005

EXHIBIT B

school year until February 2005 and has not been implemented during the current school year.

She further alleged that speech therapy and social skills therapy were not implemented until the fifth/sixth week of school during both school years.

***Action Taken in Response to the Complaint***

Various telephone calls were held with both the parent and cooperative/district regarding the issues in the complaint. In addition, an on-site visit was held on October 21, 2005. During the visit, interviews/conversations were held with thirteen (13) individuals including the Director of Special Education, Assistant Superintendent of Pupil Support Services, the Learning Disability Chair, School District Attorney, Dean Counselor, Group Counselor, Assistant Superintendent of Curriculum and Instruction, Speech and Language Pathologist, Faculty Member – Chair of the Faculty Senate, and Math, Science, History, and English teachers.

***Documentation Reviewed***

The following documentation, submitted by the parent, was reviewed as part of the investigation:

1. An October 6, 2005 letter of complaint with the following attachments:

   2004-2005 School Year
   - A September 14, 2004 letter from the parent to the district regarding the implementation of the child's IEP.
   - Various email correspondence (dated December 6, 2004, January 6, 2005, and February 4, 2005) between the parent and school personnel regarding the district's implementation of the IEP.
   - An April 6, 2005 IEP.
   - A November 9, 2005 letter from the parent providing additional information in support of the allegations for the 2004-2005 school year.

   2005-2006 School Year
   - Various email correspondence (dated September 1, 6, 7, 9, 15, 16, 17, 22, and 23, 2005) between the parent and school personnel regarding the district's implementation of the IEP.
   - An October 15, 2005 letter from the parent to the district requesting that the IEP meeting scheduled for November be rescheduled for Spring 2006.
   - An October 15, 2005 letter from the parent to the district requesting that her son be allowed to withdraw from his Asian History class.

- Correspondence from the district sent to the parent that included notes and handouts from the Asian History class (over 130 pages).
- An October 26, 2005 affidavit from the student.
- An October 27, 2005 letter and affidavit from the parent attesting to the school's noncompliance issues.
- A November 9, 2005 letter from the parent with a copy of a second set of classroom notes provided to the student for the Asian History class.

2. An October 24, 2005 letter of response from the district with the following attachments:

<u>2004-2005 School Year</u>

- A November 10, 2005 letter of response from the district.
- A copy of the February 23, 2004 IEP.
- Statements from the student's teachers regarding the provision of notes in their classes (Intermediate Algebra, Biology, and Resource).
- An August 25, 2004 email from the Honor's Algebra teacher to the parent regarding the provision of notes.
- September 7 and 8, 2004 emails between the English teacher, the case manager, and the parent regarding provision of notes in the English class.
- A copy of the student's quarter and semester grades.
- Statements from the speech and language therapist and social worker regarding the provision of services.

<u>2005-2006 School Year</u>

- An April 6, 2005 IEP.
- A timeline regarding email correspondence and events surrounding the issues identified in the complaint.
- Various email correspondence (dated September 27 and 30, 2005) between the parent and school personnel regarding the district's implementation of the IEP developed for the 2005-2006 school year.
- A daily record of the student's classes indicating whether or not notes/handouts were provided.
- A sample of notes provided in Science and English.
- A copy of the notes from the first notetaker for the Asian History class.
- A copy of the two outstanding assignments for the Asian History class.
- Correspondence (dated November 1, 2, and 3, 2005) between the district and the parent regarding the "Incomplete" grade given for Asian History.
- A copy of the student's grades for the first grading quarter in Asian History.
- A copy of the student's grades in each class for the first quarter.
- The 2005-2006 log for speech and language.

- The dates the child received social work services.

***Findings/Conclusions***

**IEP General Requirements; [23 IAC 226.200(c)(2)]**

*As set forth in more detail below, the investigation has identified a violation of 23 IAC 226.200(c)(2). In addition, the State Board is requiring the parties to promptly reconvene the IEP meeting to clearly define the term "note taker" and the process in which notes and assignments will be provided for the remainder of the 2005-06 school year to best meet the needs of the student.*

**2004-2005 School Year**

For the 2004-2005 school year, no documentation was available to either substantiate or refute the allegations for the issues addressed below. Therefore we were unable to make determinations that violations occurred.

**A. Notetaker**

*Discussion*
The February 23, 2004 IEP documented "Note taker" under supplementary aids and also stated that "directions and general instructions need to be in written form in order for him to achieve successful completion."

According to the parent, there were problems with the implementation of the notetaker during the 2004-2005 school year. She submitted copies of her correspondence to the district, dated September 2004, December 2004, January 2005, and February 2005 regarding her concerns with this issue. She had concerns with the provision of notes in a particular English class explaining that her son was not receiving notes. According to the parent, in January 2005, the school district borrowed a notebook from one of the students and copied sixty (60) pages for her son. She explained that prior to that, he had received no notes since the teacher had insisted there were "no notes."

Several of the student's teachers from the previous year provided statements regarding the provision of notes in their classes:

- Intermediate Algebra - the teacher was the notetaker and provided notes to the student.
- Honor's Biology – all notes were handouts, but a student was assigned as the notetaker and provided homework information as well as reminders of projects and tests.

- Honor's Algebra – the teacher gave an assignment sheet for each chapter that followed a daily progression, but explained that she set up a notetaker.

The district provided a copy of a September 7, 2004 email from the English teacher to the parent. The teacher explained that he was in the process of remedying the missing carbon notebook. In addition, he provided the student's assignments in case he did not receive the carbon notebook that day. In a September 8, 2004 email from the English teacher to the case manager, he explained that he received the carbon notebook, would discuss the use of it with the student that day, and questioned the best way to get the notebook to the case manager by the end of the day (i.e. the student taking it with him or someone picking it up from the teacher).

A copy of the student's 2004-2005 report card was submitted. The student received passing grades of As and Bs on all exams (with the exception of one C). Additionally, he passed all classes with As and Bs and had a cumulative grade point average of 3.84.

*Summary*
Upon reviewing the information/documentation, it appears that there was not a refusal to provide notes and assignments, rather there was a difference of opinion regarding how they were provided. The parent believed that the district was to use a carbon notebook system in which a peer was to take notes on a daily basis. The teachers wrote that they provided notes/handouts and assignments in a different manner and did not require students to take notes everyday. The student passed all of his classes with above average to excellent grades showing that he made progress in the general education.

**B. Speech and Language Services**

The February 23, 2004 IEP required 50 minutes per week of speech and language services beginning in August 2004. According to the parent, speech and language services did not commence until the 6th week of school. The district provided a statement from the speech and language therapist stating that all of the services were provided.

**C. Social Work Services**

The February 23, 2004 IEP required 50 minutes per week of social work services beginning in August 2004. According to the parent, social work services did not commence until the 6th week of school. The district provided a statement from the social worker explaining that she changed the student's

group sessions during the 3rd week of school due to the parent's concern with a topic of discussion that occurred during the 2nd week.

## 2005-2006 School Year

### A. Notetaker

No violation is found as explained below:

*Discussion*

The April 6, 2005 IEP documented "Note taker" under supplementary aids and also stated that "directions and general instructions need to be in written form in order for him to achieve successful completion."

According to the parent, notes/assignments were not provided to the student at the beginning of the year. In a November 3, 2005 telephone conversation, she indicated that she is currently satisfied with the provision of notes/assignments in all classes except Asian History. Since this class is mostly a lecture and discussion-based class and relies on photocopied readings provided by the teacher, her son received very few notes taken by a peer notetaker. In October 2005, the parent received copies of over 130 pages of handouts from the Asian History class which the district explained consisted of all the classroom "notes" and daily written assignments. In November 2005, the district provided an additional set of notes from another peer. Although these additional pages were provided, the parent remained concerned about the number of school days in which no notes were taken. She has requested a copy of the teacher's assignment plan so she can check to see what her son has missed.

According to the district, each teacher has provided notes and the student is passing all of his classes with above average to excellent grades. On September 8, 2005, the case manager began to document, on a daily basis, the provision of notes and assignments for each class. In addition, the district submitted: (a) samples of notes from some of the student's classes (i.e. Chemistry, English and Asian History) and, (b) an email from the Math teacher to the parent explaining that she provides the exact notes that are written on the board and reminded the parent that she emails the homework assignments to her every week.

The interviews revealed the following:

- Learning Disability Chair – contacted all of the teachers at the beginning of the school year to inform them of their responsibilities; when the parent expressed concern regarding the note taking process,

met with the student to obtain his input regarding the process and any suggestions for change.

- Director of Special Education - explained that in September when the parent questioned whether or not the student was receiving all of the notes, the Director gathered all the notes and assignments from the teachers and delivered them to the student's home.
- Case Manager – meets with the student on a daily basis to verify and document the receipt of notes/handouts.
- English – a student serves as the notetaker and records all assignments; if there are no notes for the day, it is documented.
- Math – the teacher prepares the notes for the student; her initial method was to prepare them for the entire week, but the parent did not like this method, so she now prepares daily pages; the assignments are attached to the notes.
- Chemistry – the teacher prepared and provided notes to the student prior to the identification of a permanent notetaker; the teacher provides an assignment sheet in addition to the information written on the board.
- Asian History – a student takes notes and the teacher provides notes/handouts; the class is conversational in nature, therefore there are many days when there are no notes in class.

The district explained that, due to the parent's concerns, in addition to providing daily handouts, notes and assignments to the student, they have copied this information and provided it to the parent. Further, the Asian History teacher copied a second set of student's notes and provided it to the parent. He has identified this other student as the new note taker. Based upon the documentation from both peers in Asian History, it is apparent that there are many days in which no notes are taken. Of the notes provided by both peers, there were 19 days of notes and 31 days in which neither peer took notes, indicating that notes are not required in order to benefit from or pass the class. School personnel have made several attempts to meet with the parent to discuss her concerns and resolve the situation. However, the parent has not agreed to meet with them at this time.

A copy of the student's 2005-2006 first quarter progress report was submitted. The student received passing grades in all of his classes with the exception of Asian History in which he received an "Incomplete". Documentation was submitted by the Asian History teacher showing that the child actually received a "B" in the class (*a copy of the student's grades in Asian History showed passing grades on assignments and exams).* However, due to parental request for an incomplete grade, the district agreed. According to a November 1, 2005 email from the parent to the district, the parent requested that her son receive an "Incomplete" grade due to her belief

that he had not received the required notetaker accommodation and therefore was unable to complete all assignments. The district provided a copy of two assignments that the student had not yet completed by the timeline. However, the district explained that the Asian History teacher was allowing the student extra time to complete the assignments.

*Summary*
A review of the information/documentation found that each teacher has implemented a system for note taking and the notes are then checked at the end of the day by the case manager. There is not a refusal to provide notes and assignments, rather there is a difference of opinion regarding what and how notes/assignments are to be provided. The parent believes that the district is to use a carbon notebook system in which a peer take notes on a daily basis. The teachers provide notes/handouts and assignments in a different manner and do not require students to take notes everyday. The student passed all of his classes for the first quarter with above average to excellent grades showing that the student is making progress in the general curriculum.

**B. Speech and Language Services**

No violation is found as explained below:

The April 6, 2005 IEP documented the need for 50 minutes per week of speech and language services beginning April 6, 2005. The first day of student attendance for the 2005-2006 school year was August 24, 2005. Speech and language services were scheduled for each Monday and, according to the documentation, began on September 12, 2005, three weeks after the beginning of school. It is reasonable to expect a short delay in the provision of related services at the beginning of a school year due to scheduling services. In this situation, although services did not begin until the third week of school, one of the days of service was a holiday so the student missed only one week of service.

**C. Social Work Services**

The following violation is found as explained below:

The April 6, 2005 IEP documented the need for 50 minutes per week of social work services beginning April 6, 2005. The first day of student attendance for the 2005-2006 school year was August 24, 2005. Social work services were scheduled for each Wednesday and, according to the documentation, began on September 14, 2005, three weeks after the beginning of school. Although it is reasonable to expect a short delay in the provision of related services at the beginning of a school year due to scheduling services, a delay of three weeks is unreasonable.

**Corrective Action**

The district is required to:

- ensure that services (specifically speech and language and social work) are implemented within a reasonable period of time at the beginning of each school year. *(An example of a reasonable period of time as stated in Attachment 1 – Analysis of Comments and Changes of the Federal Regulations is "within a week or two.")* A copy of its plan to ensure timely initiation of these services must submitted to this agency.
- reconvene the IEP meeting to consider the missed social work service days and the impact on the student's educational performance and progress. The team must then determine whether or not compensatory services are necessary. If there is a need, the IEP must include provisions for how the compensatory services will be implemented, including the initiation and duration dates, amount/frequency and location of services. If the team determines there is no need for compensatory services, the decision and reason for the decision must be documented in the IEP.

**Additional Required Action**

Due to the difference of opinion regarding the provision of notes/assignments and the amount of time spent on this particular issue by all parties, the district and parent are to reconvene an IEP meeting (which may be the same meeting as noted above) to clearly define "note taker" and the process in which notes and assignments will be provided for the remainder of the 2005-2006 school year to best meet the needs of the student. This must be completed prior to the second semester. A copy of the student's revised IEP must then be submitted to this agency.

The above listed materials should be sent to my attention, Special Education Services Division, as soon as possible, but no later than **December 28, 2005.**

Cooperation from both parties during this investigation is appreciated. Use of this complaint process does not preclude an eligible party such as a parent, school district, or a student from requesting a special education due process hearing. If you have any questions regarding this response please contact me at 217/782-5589 or dschertz@isbe.net.

Sincerely,

Donna M. Schertz

Donna M. Schertz
Principal Education Consultant
Special Education Services Division

cc: Ms. Meg Reynolds, Parent
Monitoring Data Bank

**Terretta, John**

**From:** Terretta, John **Sent:** Tue 25-Sep-07 3:22 PM
**To:** 'Meg Reynolds'
**Cc:** 'tomreynolds-ejzak@sbcglobal.net'
**Subject:** 9/25
**Attachments:**

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/25/07 |
|---|---|---|
| MATH (SMITH) | Yes | Calc concepts homework<br>Section 1.3 p. 38-39 #2-5, 8, 24<br>Reminder: Quiz Friday on Sections 1.1 and 1.2 |
| SPANISH (DIAZ) | Yes | Answer question from MPA blue sheet 1-8 reread 1-6 |
| ARCHITECTURE (VAN) | Yes | Begin Ch. 12 Workhseet |
| MUSIC (PEARSON) | Yes | No |
| ENGLISH (HEIDEKAMP) | Yes | Finish Section II of "Heart of Darkness" |

EXHIBIT
Rep. C

Terretta, John

From: Terretta, John
Sent: Fri 21-Sep-07 3:56 PM
To: 'Meg Reynolds'
Cc: 'tomreynolds-ejzak@sbcglobal.net'
Subject: 9/21
Attachments:

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/21/07 |
|---|---|---|
| MATH (SMITH) | Yes | The students had an in-class assignment today so there is not an assignment tonight. |
| SPANISH (DIAZ) | Yes | No Homework |
| ARCHITECTURE (VAN) | Yes | Needs to sketch final floorplan design for Monday. |
| MUSIC (PEARSON) | No | Spoke with teacher, no homework |
| ENGLISH (HEIDEKAMP) | Yes | Finish Section 1 of "Heart of Darkness" Begin drafing college application essay due Thursday |



**TOM REYNOLDS CARBONLESS NOTEBOOK LOG**
**2007-2008**

| SUBJECT | NOTES RECEIVED | DATE |
|---|---|---|
| MATH (SMITH) | NO-NO NOTES/WKSHT | 8/23/07 |
| SPANISH (DIAZ) | NO. | |
| ARCHITECUTRE (VAN) | NO-ART CLASS | |
| MUSIC (PEARSON) | NO-YES | |
| ENGLISH (HEIDEKAMP) | NO-HANDOUT | |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 8/27/07 |
|---|---|---|
| MATH (SMITH) | YES | YES |
| SPANISH (DIAZ) | YES | YES |
| ARCHITECUTRE (VAN) | NO NOTES | YES-sketchbook tape measure |
| MUSIC (PEARSON) | NO | YES |
| ENGLISH (HEIDEKAMP) | NO-TOOK PRE AP TEST | NO HOMEWORK |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 8/28/07 |
|---|---|---|
| MATH (SMITH) | NO NOTES-WORKSHEET | WORKSHEET "DISEASED DATA" |
| SPANISH (DIAZ) | YES | NO |
| ARCHITECUTRE (VAN) | NO | NO-IN CLASS REVIEW SHEET (COMPLETED) |
| MUSIC (PEARSON) | NO | NO |
| ENGLISH (HEIDEKAMP) | YES | ON NOTES |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 8/29/07 |
|---|---|---|
| MATH (SMITH) | NONE-WORKED ON WORKSHEET | COMPLETE THE "SOLVE BY GRAPHING WORKSHEET". ALL HOMEWORK WILL BE COLLECTED FRIDAY. |
| SPANISH (DIAZ) | NONE | PARENT NEEDS TO SIGN COURSE PROFILE DOCUMENT. |
| ARCHITECUTRE (VAN) | NONE-IN CLASS ASSIGNMENT | NONE-FINISHED CHAPTER 2 WORKSHEET IN CLASS |
| MUSIC (PEARSON) | YES | NO ASSIGNMENT |
| ENGLISH (HEIDEKAMP) | YES | WRITE THE AP ESSAY #2 |



| SUBJECT | NOTES RECEIVED | ASSIGNMENT 8/30/07 |
|---|---|---|
| MATH (SMITH) | NO NOTES | "Inequality Solving" worksheet |
| SPANISH (DIAZ) | YES | NO HOMEWORK |
| ARCHITECUTRE (VAN) | NO | NO HOMEWORK |
| MUSIC (PEARSON) | NO NOTES | NO HOMEWORK |
| ENGLISH (HEIDEKAMP) | NO NOTES | AP ESSAY #2 AND CONTINUE READING "STRANGER" |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 8/31/07 |
|---|---|---|
| MATH (SMITH) | NO | WKSHT "PARTS OF A GRAPH" |
| SPANISH (DIAZ) | YES | NO HOMEWORK |
| ARCHITECUTRE (VAN) | NO | MEASURE AND SKETCH ROOM |
| MUSIC (PEARSON) | NO | PRACTICE NEW MUSIC RECEIVED TODAY |
| ENGLISH (HEIDEKAMP) | NONE | READ CAMUS " THE MYTH OF SISYPHUS" |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/4/07 |
|---|---|---|
| MATH (SMITH) | | two-sided worksheet with the title "Understanding Graphs" on one side and "Draw Time-Distance Graphs" on the other |
| SPANISH (DIAZ) | YES | WORKSHEET |
| ARCHITECUTRE (VAN) | NO | NONE |
| MUSIC (PEARSON) | NO | NO-SUB |
| ENGLISH (HEIDEKAMP) | NO-DISCUSSION | READ CAVEAUS PREFACE |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/5/07 |
|---|---|---|
| MATH (SMITH) | YES | STUDY FOR QUIZ TOMORROW |
| SPANISH (DIAZ) | YES | SPANISH BINGO |
| ARCHITECUTRE (VAN) | NO | NONE |
| MUSIC (PEARSON) | YES | NONE |
| ENGLISH (HEIDEKAMP) | NO-COMPUTER LAB | WORKSHEETS "YOUR BLOGGING RESPONSIBILITIES" |



| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/6/07 |
|---|---|---|
| MATH (SMITH) | NO NOTES-TEST | NO HOMEWORK |
| SPANISH (DIAZ) | YES | NO HOMEWORK |
| ARCHITECUTRE (VAN) | NO | WORKSHEET GIVEN OUT IN CLASS AND MEASURE DINING ROOM. |
| MUSIC (PEARSON) | NO | PRACTICE FOR THE AUDITION |
| ENGLISH (HEIDEKAMP) | NO-PRACTICE AP TEST | READ THE ESSAYS ABOUT THEME IN THE COLLEGE ESSAY PACKET AND WRITE ONE OR MORE THEMES OF "THE STRANGER" |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/10/07 |
|---|---|---|
| MATH (SMITH) | NO-RECEIVED A PACKET | NONE |
| SPANISH (DIAZ) | YES | NO HOMEWORK |
| ARCHITECUTRE (VAN) | NO-WORKSHEET COMPLETED | SKETCH KITCHEN AND DINING ROOM. |
| MUSIC (PEARSON) | YES | NONE |
| ENGLISH (HEIDEKAMP) | UNKNOWN-DID NOT RECEIVE THOUGH SHOULD HAVE | PREPARE A COMPLETE DETAILED OUTLINE WHICH INCLUDES A FORECEFUL AND COMPLEX STATEMENT OF THEME, SUPPORTING TEXT PASSAGES AND LITERARY TERMS-AS EXPLAINED IN "PLANNING AND WRITING YOUR ESSAYS" |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/11/07 |
|---|---|---|
| MATH (SMITH) | NO NOTES-ACTIVITY IN THE STUDENT CENTER DURING CLASS | NO HOMEWORK |
| SPANISH (DIAZ) | YES | CROSSWORD |
| ARCHITECUTRE (VAN) | NO-SKETCHED THE AREA | DRAW ALL LIVING AREAS OF THE FIRST FLOOR OF YOUR RESIDENCE |
| MUSIC (PEARSON) | YES | NO |
| ENGLISH (HEIDEKAMP) | NO-WATCHED A FILM | DO THE ROUGH DRAFT OF "THE STRANGER" ESSAY BY FRIDAY |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/12/07 |
|---|---|---|
| MATH (SMITH) | NO-STUDENT ACTIVITY | write a detailed explanation for the process they used to recreate each graph on the "CBR - Time Distance Activity" Worksheet |
| SPANISH (DIAZ) | YES | RE-READ IN CLASS STORY |
| ARCHITECUTRE (VAN) | NO-COMPUTER LAB AND LOOKED UP BUILDINGS TO SKETCH | SKETCH THE ENTIRE FIRST FLOOR OF RESIDENCE |
| MUSIC (PEARSON) | YES | NONE |
| ENGLISH (HEIDEKAMP) | YES | DO THE ROUGH DRAFT OF "THE STRANGER" ESSAY BY FRIDAY |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/13/07 |
|---|---|---|
| MATH (SMITH) | YES | COMPLETE THE 3 EXTRA PRACTICE WORKSHEETS |
| SPANISH (DIAZ) | YES | DRAW 6 PICTURE ONE FOR EACH PARAGRAPH IN THE STORY |
| ARCHITECUTRE (VAN) | NO-SKETCHED HOUSES | NO ASSIGNMENT |
| MUSIC (PEARSON) | YES | NO |
| ENGLISH (HEIDEKAMP) | NO-FINISHED AND DISCUSSED MOVIE | DO THE ROUGH DRAFT OF "THE STRANGER" ESSAY BY FRIDAY |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/14/07 |
|---|---|---|
| MATH (SMITH) | YES | |
| SPANISH (DIAZ) | YES | DRAW 6 PICTURE ONE FOR EACH PARAGRAPH IN THE STORY |
| ARCHITECUTRE (VAN) | NO-SKETCHED HOUSES | NO ASSIGNMENT |
| MUSIC (PEARSON) | YES | NO |
| ENGLISH (HEIDEKAMP) | NO-FINISHED AND DISCUSSED MOVIE | DO THE ROUGH DRAFT OF "THE STRANGER" ESSAY BY FRIDAY |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/17/07 |
|---|---|---|
| MATH (SMITH) | YES | Section 1.1 pages 12-13 from supplemental green workbook #18 and #22. Please complete the assignment in your "math homework" notebook. |
| SPANISH (DIAZ) | YES | HOMEWORK SHEET |
| ARCHITECUTRE (VAN) | NO | NO |
| MUSIC (PEARSON) | YES | NO |
| ENGLISH (HEIDEKAMP) | YES | FINISH READING "THE SECRET SHARER" |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/18/07 |
|---|---|---|
| MATH (SMITH) | YES | YES |
| SPANISH (DIAZ) | NO-SUBSTITUTE | NO |
| ARCHITECUTRE (VAN) | NO | NO |
| MUSIC (PEARSON) | YES | NO |
| ENGLISH (HEIDEKAMP) | YES | GET THE FINAL DRAFT OF "The Stranger" COMPLETED |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/19/07 |
|---|---|---|
| MATH (SMITH) | YES | Section 1.2 p23-26 #12-15, 35, 40 , 41 |
| SPANISH (DIAZ) | NO-COMPUTER LAB | FINISH THE COMPUTER LAB PACKET |
| ARCHITECUTRE (VAN) | YES | CONTINUE WORKING ON 4 SKETCHES FROM HOMEPLANGROUP.COM AND 6 CREATIVE FLOORPLANS DUE 9/21. TURN IN SKETCHBOOK ON FRIDYA FOR THE WEEKEND. CONSULT ON CREATIVE FLOORPLANS WITH MR. V. |
| MUSIC (PEARSON) | NO NOTES-SUB | NO HOMEWORK |
| ENGLISH (HEIDEKAMP) | NO | By Friday first section of chapter 1 from "The Heart of Darkness" needs to be read. |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/20/07 |
|---|---|---|
| MATH (SMITH) | Yes | Sec 1.2 p 25-29 #37.38.42-45,66-67 |
| SPANISH (DIAZ) | Yes | Worksheet attached to the carbonless notes |
| ARCHITECUTRE (VAN) | Yes | Sketches to be turned in Friday. |
| MUSIC (PEARSON) | No | No |
| ENGLISH (HEIDEKAMP) | No-Group work | Friday first section of chapter 1 from "The Heart of Darkness" needs to be read. |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/21/07 |
|---|---|---|
| MATH (SMITH) | Yes | The students had an in-class assignment today so there is not an assignment tonight. |
| SPANISH (DIAZ) | Yes | No Homework |
| ARCHITECTURE (VAN) | Yes | Needs to sketch final floorplan design for Monday. |
| MUSIC (PEARSON) | No | Spoke with teacher, no homework |
| ENGLISH (HEIDEKAMP) | Yes | Finish Section 1 of "Heart of Darkness" Begin drafing college application essay due Thursday |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/24/07 |
|---|---|---|
| MATH (SMITH) | Yes | Read Section 1.3 from green workbook. Quiz on Sections 1.1 - 1.2 on Friday 9/28. |
| SPANISH (DIAZ) | Yes | Write five True/False questions in English on a separate piece of paper |
| ARCHITECTURE (VAN) | Yes | Work on Chapter 9 Review. Discuss Chapter 9 in class traffic areas and patterns. Complete traffic pattern for floor plan handout |
| MUSIC (PEARSON) | No | No |
| ENGLISH (HEIDEKAMP) | No-small group discussions(no notes generated) | Quiz tomorrow on Section I in "Heart of Darkness: |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/25/07 |
|---|---|---|
| MATH (SMITH) | Yes | Calc concepts homework Section 1.3 p. 38-39 #2-5, 8, 24 Reminder: Quiz Friday on Sections 1.1 and 1.2 |
| SPANISH (DIAZ) | Yes | Answer question from MPA blue sheet 1-8 reread 1-6 |
| ARCHITECTURE (VAN) | Yes | Begin Ch. 12 Workhseet |
| MUSIC (PEARSON) | Yes | No |
| ENGLISH (HEIDEKAMP) | Yes | Finish Section II of "Heart of Darkness" |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/26/07 |
|---|---|---|
| MATH (SMITH) | Yes | Read section 1.4 p 40-48 Quiz on Friday Sec 1.1 - 1.2 |
| SPANISH (DIAZ) | Yes | None |
| ARCHITECTURE (VAN) | Yes | Finish reading Ch. 12 and complete Ch. 12 Workhseet |
| MUSIC (PEARSON) | Yes | No |
| ENGLISH (HEIDEKAMP) | No | For Friday finish "Heart of Darkness: Bring in first draft of a college application essay |

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/27/07 |
|---|---|---|
| MATH (SMITH) | | |
| SPANISH (DIAZ) | | |
| ARCHITECTURE (VAN) | | |
| MUSIC (PEARSON) | | |
| ENGLISH (HEIDEKAMP) | | |



DAILY LOG
Assignment E-Mails
English
Notes
Symphony
Notes
4
Mathematics
Notes
Architecture
Notes
Spanish
Notes

wilsonjones.

W122503-TPM

NAME | LAB PARTNER | DATE | LOCKER/DESK | COURSE & SECTION NO.

8-23 Notes

How do we find meaning in a text?

of writing ← historical context & the text itself → of the audience

post-colonialism

author — narrator/character ← Text — formalism — New Criticism → interpretive community → reader

Biographical
Psychoanalytic

reader-response criticism

Feminist

Marxist

all about historical context

New Historicism - outside of historical context

SIGNATURE | DATE | WITNESS/TA | DATE

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

04

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
| --- | --- | --- |
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| --- | --- | --- | --- |
| | | | |

Alex

D.Q Why did he give up every chance to see his mother after not seeing her for so long?

pg. 6 & 13

Why is he so indecisive? / Laid back?

p. 41, Paris (Boss) p. 41, Marriage (Marie) p. 36/37, Feelings of story / being a witness (Raymond)

p. 43 peculiar lady – opposite / contrast / foil
always something to do, unlike Meursault

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
|---|---|---|
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

How does Meursault reason?

he doesn't think things through.

marriage is a ~~[illegible]~~ defining thin

Why doesn't he want to dive into Marriage w/ Marie?

can't make decisions, purely physical attraction

p. 35 & 41 "Do you love me?" "I don't know, but probably not."

Why was Marie okay w/ going to the beach house after seeing Raymond beat his ex-g.f.?

She loves Meursault & wants to please him. If questioning Raymond, questioning Meursault.

Why doesn't Meursault question Raymond's abuse of ex?

Doesn't affect himself directly, so he doesn't care, as in the case of Salamano & his dog.

p. 41, schooling stops / mom dies → why he has no ambitions.

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO.

What is the essence of your life?

Existentialism

justice/progress
family/children
friends
success/$/work
God/religion/afterlife
education
love

All end at some point

all lies

True → capital "T"

systems

enforce themselves

Alex

in authentic

social constructions

transcendent values

absolute values

apriori values before you existed

Theater of Absurd

Meursault throws all these systems away.

Life
Being
Existence

pain
suffering
death

individuality
independence
radical subjectivity
honest → decisions
authentic

Life itself → authentic life

"Existence precedes essence"

SIGNATURE | DATE | WITNESS/TA | DATE

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
|---|---|---|
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

Alex Hopkins 9/[illegible]/07

p. 123 "a stranger to the ship"
- why do they replace their captain w/ one so young & inexperienced?
- what makes someone a leader?

- mentions there were causes, but not important to audience.

p. 126 "(taking heat)"
- whats his attitude @ choice of occupation?

- loves the sea, not the land, not the stars.
- its own world, no intrusion.
- order, structured, hierarchy, control
- security of the sea.
- singleness of purpose vs. repetitive "double"

p. 143 "my secret self"
- illusion of being mad. Being in two places at once.

- possibly overdetermined, alter ego, pschological thing.
- maybe not real. p.127, pale, phosphorescent, ghostly.

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE/SECTION NO. |
|---|---|---|---|
| | | | |

The Secret Sharer

DQ's

1. Why does the captain have to go so close to land?
2. What is the symbolism of the hat?
3. Is Leggatt reliable
4. Is Leggatt justified, immoral, evil?
5. How do we read the captain's feelings at the very end?
6. Does the captain's feeling result from letting Leggatt go?
7. what does Leggatt represent?
8. In what ways, do humans have a dual nature? a "double" personality

- possibly a coming of age story.
- finding himself as a captain.
- Captain & Leggatt connect b/c of similar backgrounds
- Rich Folk should get away with things.
- A sea, things come clear. Stable

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
|---|---|---|
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

9-21 Friday

Alex

Finish Section 1 Heart of Darkness
Begin Drafting college application Essay due thurs.

p.4 description of Marlow - only one w/ names

p.5 Thames ties into British conquest throughout world.
Admiration in the mission of imperialism

p.7 Romans' conquest vs. the future, similar conquest.

p.10 Africa - "Dark Continent" Mysterious snake river.
White space w/in dark continent.

Frame Story

narrator

Marlow's Adventure

going to Congo, Belgium's land
goes to Brussels, Belgium
↓
white city.

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| AH | | | |

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
| --- | --- | --- |
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| --- | --- | --- | --- |
| | | | |

9-25

Alex

Q9 Oil painting p.36

Torch p.5 Civilization, Religion
Black background - heart of darkness
Blindfold can't see how people react to torch
Sinister aspect, not truly good, evil?
woman - appropriate, she's not there, keeps them from greed
Britain is bringing in people to Africa trying to civilize the people, but don't see how evil it is becoming.
The absurdity of a blind fold in the dark with a torch.

Q4 "Women don't know truth"...

Men tend to be the ones working in Africa. Marlow's Aunt doesn't go to Africa, she doesn't care for the "ignorant millions." women in manager's office are secretaries guarding the door of Darkness.

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE | Alex |
|---|---|---|---|

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|

9-26 HW. Blog
Finish Novel for Fri
Draft of College Apps. Essay for Fri

Kurtz's influence p. 81
Conrad's impressionistic writing
tells us impressions before the event
p. 75, "we must be like Gods to them"
Kurtz has become crazy
p. 72, first hear of meeting Kurtz.
bald head like ivory ball
ivory invaded his veins
"My ivory" obsession w/ it.
p. 73, makes himself like a god, literally - throne

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

PEARSON - SYMPHONY ORCH - PERIOD 7

AUG. 22 - NO HOMEWORK OR ANNOUNCEMENTS

AUG. 23 - NO HOMEWORK OR ANNOUNCEMENTS

AUG. 24 - NO HOMEWORK OR ANNOUNCEMENTS

AUG. 27 - *SEATING AUDITIONS NEXT WEEK

- SIGN-UPS AND EXCERPTS WILL BE POSTED WED. OR THURSDAY OF THIS WEEK.
- CONCERT CALENDAR ENCLOSED.
- HANDBOOKS COMING SOON
- OFFICER ELECTIONS - THURSDAY

AUG. 28 - NO NEW HW OR ANNOUNCEMENTS.

AUG. 29 - HANDBOOK WAS GIVEN TO TOM TODAY.

AUG. 30 - NO HOMEWORK OR ANNOUNCEMENTS

AUG. 31 - NIGHT ON BALD MT. TCHAIK 5 (FOLDERS) > DISTRIBUTED TODAY

Sept 5 - Chamber Strings from Seating audition meets tues & fri morn

SEPT. 5 NO NEW HW OR ANNOUNCEMENTS

7

SARAH! - ~~TOM~~ REALLY SHOULD AUDITION FOR IMEA DISTRICT ORCHESTRA. HE MUST COMMIT BY FRIDAY. THE AUDITIONS ARE ON OCTOBER 8 (COLUMBUS DAY) — TIME TBA. THE FESTIVAL IS ON NOVEMBER 17 AT LINCOLN-WAY CENTRAL (NEW LENOX).

MORE INFO COMING SOON!!

BY THE WAY - TOM EARNED 1ST CHAIR IN SYMPHONY ORCHESTRA

SEPT 12 - NOTHING NEW

SEPT 13 - NOTHING NEW

SEPT 17 - CHAMBER ORCHESTRA TOMORROW AT 7[10].
WE WILL HAVE REHEARSAL EVERY TUES. +
FRIDAY AT 7[10] AM.

SEPT - I'M SAD TOM'S NOT DOING CHAMBER ORCHESTRA.
NOTHING NEW TODAY
CONCERT SEPT 28

SEPT 25 NOTHING NEW

SEPT 26 NOTHING NEW

~~SEPT~~ NOTHING NEW

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
|---|---|---|
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

How to enter data into lists

x- goes $L_1$

y- goes $L_2$

(1) Press START
(2) Choose EDIT
(3) Enter x-values in $L_1$ and y-values in $L_2$
(4) Press Y=
(5) Move cursor on top of PLOT 1 and press enter
(6) Set a good window based on maximums and minimums
(7) Press GRAPH to view

Regular Window → ZOOM

choose #6

x-min -10
x-max 10
y-min -10
y-max 10

MODE

all options on left should be highlighted

FORMAT
↓
show axes

all options left should be highlighted

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | 8/23/07 | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE 8/27/07 | 02 |
|---|---|---|---|

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

Value Domain

$y = |x|$ x-covered $(-\infty, +\infty)$

Range

y-covered $[0, \infty)$

$y = \sqrt{x}$

Domain: $[0, \infty)$

Range: $[0, \infty)$

hyperparabola

Domain: $(-\infty, 0) \cup (0, \infty)$

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE | |
|---|---|---|---|
| | | 8/29/07 | 04 |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| Tim F. | | | |

inflection point - the point where rate of increase decreases

— inflection point

$y = 2x + 6$ SAME $\Longleftrightarrow$ $2x+6=4x-1$

$y = 4x - 1$

$3x+1=2x-4$ $2x^2+3=4x^2-1$

↓ y ↓ y

$y_1 = 2x^2+3$ } Graph
$y_2 = 4x^2-1$

$x^2-25=0$

-5 5

$2x+1=9$

$2x-8=0$

↑ x-int

| | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| Homework: "Solve Equations by graphing" WKSHT | | | |

| EXP. NUMBER | EXPERIMENT/SUBJECT | | DATE August 31, 2007 |
|---|---|---|---|
| NAME Timothy Fouche | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |

05

$\log_{10}(x+5) < x^3$  $10^? = x-5$ → 5

$\ln(x-19) > e^{x-19} - 5$

(19, 20.7)

2.) $\phi$

$\leq 0$
↑ x-int
all parts of graph below x-axis

Right side behavior:
$x \to +\infty$  $f(x) \to +\infty$
x goes to the right
y goes up

Left side behavior
$x \to -\infty$  $f(x) \to -\infty$

Right End
$x \to +\infty$
$f(x) \to +\infty$
Left End
$x \to -\infty$
$f(x) \to -\infty$

Local Maximum: There's a high point but not the highest point
Absolute Maximum: no point is higher than this point. highest point

Point of Inflection
point where curve changes concavity

point of inflection
concave down

Logistic

Homework: "Parts of Graph" Wrksht

SIGNATURE | DATE | WITNESS/TA | DATE

September 4

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
| --- | --- | --- |
| | | |

06

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| --- | --- | --- | --- |
| | | | |

point of inflection

Topics on Quiz

- domain w/range in interval notation
- choose appropriate graphing window
- solve equations w/ inequalites using only the calculator
- Parts of Graph
- choose regression model for data
- explain how changes to coordinate points alter a graph

Tonight's Homework: "Understanding Graph + Draw the Graph" worksheet

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE 9 13 07 | 07 |
|---|---|---|---|

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

Section 1.1

Functions - ideas or relationships among varying quantities

$f(x)$ x y
input output
domain range

Vertical Line Test - determines if a graph is a function

Not a Function / Function

each x-coordinate is paired with one unique y coordinate

{(1,3),(2,3)(4,3)} {(5,6),(6,5)(7,6)}

Parent Function (Mutha Function) / Linear Functions

$f(x) = x^2$

slope-intercept $y = mx+b$

point slope $y - y_1 = m(x - x_1)$

standard form $ax+by=c$

$y = \frac{-1}{2}(x - 4) + 7$

slope $= \frac{-1}{2}$

Point $= (4, 1)$

Y-int $= (0, 9)$ $-\frac{1}{2}(-4)+7$

(3,5) (7,8)

$\frac{8-5}{7-3} = \frac{3}{4}$

$y - 5 = \frac{3}{4}(x-3)$

$y = \frac{3}{4}(x-3) + 5$

Composite Functions

$f(g(x))$ $f \circ g(x)$

$f(x) = x^2 + 10x + 25$

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
| --- | --- | --- |
| | | |

08

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| --- | --- | --- | --- |
| | | | |

$g(x) = \sqrt{x+2}$

$(\sqrt{x+2})^2 + 16(\sqrt{x+2}) + 23$

$x + 16\sqrt{x+2} + 25$

$g(14) = \sqrt{14+2}$

$g(4) = \sqrt{6}$

$g(g(14))$

Piecewise Function

$$f(x) = \begin{cases} -2 & -4 \le x \le 0 \\ x+1 & 2 < x < 5 \\ 7 & 9 \le x \le 12 \end{cases}$$

$f(-2) = -2$

$f(-1) = -2$

$f(3) = 4$

$f(1) =$ undefined

$f(x) = 4$

$f(3) = 4$

$f(\ ) =$ alot of choices

Zero
x-intercept
solution
root

$f(x) = (x+3)^2(x+5)$

$0 = (x+3)^2(x+5)$

Just graph

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| HomeWork: "Extra Practice" | 3 worksheets | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

EXP. NUMBER
EXPERIMENT/SUBJECT
DATE 9/14/07
09
NAME Timothy Fouché
LAB PARTNER
LOCKER/DESK NO.
COURSE & SECTION NO.
11.
g(x) = -2 -5 ≤ x ≤ -3
√(9-x²) - 2 -3 ≤ x < 1
-2x+6 1 ≤ x ≤ 5
center (0,-2) r=3
(x-h)² + (y-k)²
x² + (y+2)² = 9
y = √(9-x²) - 2
slope = -2 (3,0)
y = -2(x-3)
y = -2x+6
13.
t ≥ 0
A(t) area of a Δ
A = ½bh
A = ½th
½th
½t²
PART A.
A(t) = ½t²
PART B Draw Graph Between 0, 5
A(t) = ½t²
t A(t)
0 0
1 .5
2 2
3 4.5
4 8
5 12.5
23
cost .60¢
$1 1000 mugs
n = sold mugs
x = price reduction
n(x) = 1000 + x50
(1 - 0.01x) - 0.60
x ≥ 0
(1000 + 50x)·[(1 - .01x) - .60]
SIGNATURE
DATE
WITNESS/TA
DATE

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
|---|---|---|
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

# Topics Covered on Quiz

- Match a story to graph
  create a graph to correspond to a story
- Find Equations Of lines
  1. Standard Form
  2. point-slope
  3. y-intercept Form
  4. Slope
- Find Equations For // and ⊥ lines
- Given a piecewise graph, define the function
- Determine the translation that caused a Function to change.
- Problems #13 p. 11
  #22 p. 13
- Max, Mins
- End Behavior

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |



Calc. conc.
Wed.
discontinuities
translation
$x^2 + y^2 = r^2$
$x^2 + y^2 = -1$
pg. 21
2 b) $m_4$ ← Slope of Line A
3) inflection point → where graph changes concavity
B C E
A D
I.P.
a) AB and DE
increasing concave up
increasing concave down
decreasing concave up
Translations
move a graph without changing its shape
f(x) + a moves up a # of units
f(x) - a down
f(x+a) moves left a units

$f(x-a)$ right

$af(x)$ Vertical stretch
a is negative, flip over x-axis

$0<|a|<1$ vertical shrink
$a>1$ Vertical stretch

$f(ax)$ horizontal stretch
a is negative, flip over y-axis

See pg 21 $0<a<1$ stretch
$a>1$ compress

pg 23 # 4-11

Read Ex 3 p 16

**Homework** 1.2 p 23-26
# 12-15, 35, 40, 41

pg. 28 # 54-65

54) $f(8) < f(3)$

Never true

f(8)
f(3)
1 10

55.) $f(5) > 0$
↑
x

1 10
f(5)

May be true

56)

May be true

57) $g(x) = f(x) - 25$ (3, 7) Always True
translation

58) $g(x) = f(2x)$ inc. (1,4)

AT

59) $g(x) = 5f(x)$ N.T.

60) $g(x) = -3f(x)$ decreasing (1,3)

A.T.

61) A.T.

-3 1

63) $g(x) = 9f(x)$ inc (-10,-1)

62) A.T.

N.T.

64) $g(x) = f(-x)$ y-axis

N.T.

1 10

65) NT.

Homework collection ...

Homework Collection on Mondays

Calc. Conc. 9/_0/07

Homework → Section 1.2 p. 25-29

# 37, 38, 42-45, 66-67

#50 p 27

a) $g(x) = f(x) + 2$

max at 5

b) $g(x) = 2f(x) + 3$

Min @ -11

$2(-7) + 3$

$-14 + 3$

c.) Max

$g(x) = -3f(x/2) + 5$

$3(7) + 5$

26

max

3

-7

min

Homework Review

#14.) $L_1$ (0,0) (2,1) $m = \frac{1}{2}$ $L_2$ (0,0) (3,7) $m = \frac{7}{3}$

$L_2$

$L_1$

$\frac{1}{2} < m < \frac{7}{3}$

#35.) 10 ft

water depth

Volume

a) $V(0) = 0$

b) $V(10)$

$\hookrightarrow \frac{1}{2}\left(\frac{4}{3}\pi r^3\right)$

$\frac{2}{3}\pi r^3$

$\frac{2}{3}\pi (10)^3$

$\approx 2094.39 \text{ ft}^3$

) V(D) Graph D

volume

depth

40)

a) (-3, 1) Not totally

b) (0, 5)

c) -2

41)

y

5

-5

-5

5

x

Sec 1.1 HMWK

#18). $f(x) = x^2 + 3x - 4$

$x = 2 \quad x = 2 + h$

a) $f(-1) = -6$

$f(2) = 6$

$x = -1 \quad x = 2$

$(-1, -6) \quad (2, 6) \quad m = \frac{12}{3} = 4$

$y - 6 = 4(x - 2)$

$y = 4x - 2$

b.) $(2,6)$ $(2+h,\ h^2+7h+6)$

$(2+h)^2 + 3(2+h) - 4$

$h^2 + 4h + 4 + 3h + 6 - 4 = h^2 + 7h + 6$

$$m = \frac{(h^2+7h+6)-6}{(2+h)-2} = \frac{h^2+7h}{h} = \frac{h(h+7)}{h}$$

$(h+7)$

c.) pt. & slope

$(2,6)$ $h+7$

$y - 6 = h+7(x-2)$

$y = h+7(x-2) + 6$

$y = (h+7)x - 2h - 14 + 6$

$y = (h+7)x - 2h - 8$

d.) $x = 2$ $x = 2.003$ ($2+h$)

$h = .003$

$y = 7.003x - 8.006$

e.) $X = -1$

$x = 2+h$ $h = -3$

Homework $y = 4x - 2$

Calc Comp. 9/20

Calc. Conc. 9/21/07

$(x-6)(x+2)$
$(x-2)$

Sections 1.1/1.2 Review WKSHT

1.

a) (0,3)
b) (-2,0) (2,0) (6,0)
c) yes
d)
e) $(-\infty, 0)$ $(4, \infty)$
f) (0,4)

$f(x) \leq 2$
$y \leq 2$

g)
h)
i)

K) yes

4.) $f(x) = \sqrt{x+1}$ $g(x) = (x+3)^2$

a) $f(g(t))$ $(t+3)^2 = t^2 + 6t + 9$

$\sqrt{t^2 + 6t + 10}$

b) $(4+3)^2 = 49$

$\sqrt{50} = \sqrt{25}\sqrt{2} = 5\sqrt{2}$

2.) Domain
[-2,2] ∪ [2.5, 5]

Range

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE Sept. 25 |
| --- | --- | --- |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| --- | --- | --- | --- |
| | | | |

Section 1.3

Trig Functions → Calc. in radians

Notation:

{

Plotting Jargon

Scale → size of the horizontiall & vertical units

Zooming Out → shrink the scale

Aspect Ratio → measures relative size of horizontal and vertical units

Zoom Square → adjusts window so that a square or cirlce is shown in correct proportion.

$x^2 + y^2 = 49$

$-x^2 + 49 = y^2$

$y = \pm\sqrt{49 - x^2}$

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

© Hayden-McNeil Specialty Products

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE Sept. 25 |
| --- | --- | --- |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| --- | --- | --- | --- |

Zoom Decimal -> Δ(change) x and y are .1

Zoom Trig -> x-scale π/2

Zoom Integer -> let's you select a new center point sets Δx & Δy to 1 and x-scale and y-scale to 10

Zoom Fit -> displays full range of the dependent variable keeps x-min & x-max the same

p.39 #6

b) [-π/2, -1] X [0, .5]

Assigned Homework: Sec. 2.3 p.38-39 #2-5, 8, 24

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |

| EXP. NUMBER | EXPERIMENT/SUBJECT | | | | 08 |
|---|---|---|---|---|---|
| NAME | | LAB PARTNER | LOCKER/DESK NO. | COU[illegible] | SECTION NO. |

9/6

① tocatimbre
② Ojos/Dcas números 0-2000
③ lotería

no tarea

- we sang 1 am 10
- we worked on our numbers
- we played bingo

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT ARCH. | | DATE WEEK 1 | |
|---|---|---|---|---|
| NAME | | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |

8/22 INTRODUCTIONS

8/23 - 2 ARCHITECTS, 1 CLIENT EXERCISE
- QUESTIONS TO ASK
- WHAT TO DRAW - FLOOR PLANS
  - ELEVATIONS

8/24 - FINISH DISCUSSION ON QUESTIONS TO ASK AND WHAT TO DRAW
- SKETCH RANCH DESIGN ON GRID PAPER W/ SCALE / FOLLOW ALONG WITH TEACHER
- DISCUSS PROS AND CONS OF DESIGN (CLOSETS, BATHROOMS, PLUMBING, ETC.)

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
|---|---|---|
| | ARCH | WEEK 2 |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

8/27 - DISCUSS RANCH HOUSE DESIGN AGAIN

- COMPARE AND CONTRAST 1050 ⌀ AND 2800 ⌀ HOUSE

- READ CHAPTER 1 ARCH HISTORY AND STYLES

- COMPLETE WORKSHEET ON CH. 1

- SHOW TAPE MEASURE AND ~~NOTEBOOK~~ SKETCHBOOK

1ST ASSIGNMENT (5 PTS.)

8/28 - CONTINUE CHAP 1 WKSHT.

- DISCUSS CHAPTER 1 AS A CLASS
  ARCHITECTURAL STYLES
  - COMBINED STYLES
  - SPECIFIC ARCH DETAILS

8/29 - HAND IN CHAP 1 REVIEW

- READ CHAP 2 ELEMENTS AND PRINCIPLES OF DESIGN

- DISCUSS ELEMENTS OF DESIGN

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE WEEK 2 |
|---|---|---|

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|

8/30 – DISCUSS PRINCIPLES OF DESIGN
– DISCUSS EXAMPLES OF ELEMENTS AND PRINCIPLES IN OP AND RF
– COMPLETE CHAP 2 WORKSHEET

8/31 – DISCUSS WEEKEND ASSIGNMENT
MEASURE AND SKETCH YOUR BEDROOM
PAY ATTENTION TO SCALE/PROPORTION.
DRAW WALLS, WINDOWS, DOORS, CLOSETS
DRAW FURNITURE (ANYTHING APPLICABLE)
– DRAW FLOORPLAN EXAMPLE HANDOUT

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | | |
|---|---|---|---|
| | ARCH | WEEK 3 | |
| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO |
| | | | |

9/4 - CONTINUE DRAWING FLOORPLAN HANDOUT
ANSWER THE FOLLOWING QUESTIONS.

- WHAT STYLE IS THIS HOUSE?
- WHAT ARE SOME ADVANTAGES TO THIS FLOORPLAN?
- WHAT ARE SOME DISADVANTAGES TO THIS FLOORPLAN?
- WHAT WOULD YOU DO TO CHANGE THE FLOORPLAN?

- TURN IN BEDROOM FLOORPLAN DURING CLASS
- ASSIGNMENT
  DRAW BATHROOM WITH SAME PARMETERS AS THE BEDROOM. INCLUDE ALL FIXTURES
- DISCUSS BATHROOM ARRANGEMENTS AND COMMON SIZES
  3 THINGS NEEDED FOR FULL BATH
  TOILET, SINK, BATHTUB

9/5 - TURN IN CHAPTER 2 WORKSHEET
- TURN IN BATHROOM FLOORPLAN DURING CLASS.
- BEGIN SKETCHING DINING ROOM FROM MEMORY IN CLASS.
- READ CHAPTER 6.

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

NAME | LAB PARTNER | DATE WEEK 3 | LOCKER/DESK NO. | COURSE & SECTION NO.

9/5 (CONT.) - HOMEWORK ASSIGNMENT
MEASURE AND SKETCH DINING ROOM AND/OR KITCHEN DEPENDING ON YOUR HOUSE'S FLOORPLAN/DESIGN

9/6 - TURN IN DINING ROOM MEASUREMENTS AND FLOORPLAN IN CLASS.
- WORK ON CHAP 6 REVIEW IN CLASS
- DISCUSS CHAP 6, ENVIRONMENTAL DESIGN FACTORS
  - USING PASSIVE SOLAR DESIGN FOR HEATING/COOLING A HOUSE
- NO HOMEWORK FOR WEEKEND.

SIGNATURE | DATE | WITNESS/TA | DATE

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

EXP. NUMBER | EXP. COMMENT/SUBJECT ARCH | DATE WEEK 4

NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO.

9/10 - WORK ON CHAP. 6 REVIEW

- DRAW (SKETCH) LIVING / FAMILY ROOM FROM MEMORY.
- READ CHAP 7, LIVING AREAS
- TURN IN CH. 6 REVIEW
- HOMEWORK ASSIGNMENT ~~DRA~~ MEASURE AND SKETCH YOUR LIVING/FAMILY ROOM

9/11 - TURN IN LIVING/FAMILY ROOM SKETCHES DURING CLASS

- DISCUSS CHAP 7 LIVING AREAS
  - LIVING ROOM - FORMAL ROOM NEAR THE MAIN ENTRANCE OF HOME.
  - DINING ROOM - FORMAL ROOM FOR DINING USUALLY USED FOR FORMAL DINNERS SUCH AS HOLIDAYS BUT IN DIFFERENT FREQUENCY DEPENDING ON THE FAMILY
  - FAMILY ROOM - INFORMAL ROOM FOR FAMILY ACTIVITIES TYPICALLY NEAR THE KITCHEN
  - OFFICE / DEN / SPECIAL PURPOSE ROOMS ROOMS THAT ARE GIVEN A SPECIFIC PURPOSE

SIGNATURE | DATE | WITNESS/TA | DATE

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

DATE

9/11 (CONT.)

- OPEN FLOOR PLAN
  DESIGN IN WHICH ALMOST ALL OF THE LIVING AREAS ARE COMBINED INTO ONE ROOM OR ONE LARGE AREA W/ FEW WALLS BETWEEN THE ROOMS.
- CLOSED FLOOR PLAN
  FLOOR PLAN DESIGN IN WHICH THE ROOMS ARE PARTITIONED BY WALLS AND THE PATHWAYS TO DIFFERENT ROOMS GO THROUGH DOORS AND HALLWAYS.
- COMBINED PLAN
  SOME ROOMS ARE OPEN TO EACH OTHER WHILE OTHER ROOMS ARE IN THEIR OWN SPACE.
- HOMEWORK ASSIGNMENT
  MEASURE AND SKETCH KITCHEN/DINETTE

9/12 - TURN IN KITCHEN/DINETTE SKETCHES DURING CLASS.
- WORK ON CHAP 7 REVIEW
- DRAW A SKETCH OF YOUR HOUSE PUTTING ALL OF THE LIVING AREAS TOGETHER W/ PROPER PROPORTION AND ORIENTATION.
- NO HOMEWORK.

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
| --- | --- | --- |
| | | WEEK 4 |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| --- | --- | --- | --- |
| | | | |

9/13 - ~~HAND~~ WORK ON CHAP. 7 REVIEW

- GO TO CAD LAB (RM. 299) LOG INTO A COMPUTER AND PRINT OFF 4 FLOOR PLANS FROM www.homeplangroup.com

9/14 - SKETCH THE FLOORPLANS THAT WERE PRINTED YESTERDAY INTO YOUR SKETCHBOOK. PAY ATTENTION TO PROPORTION.

- NO HOMEWORK FOR THE WEEKEND

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
| --- | --- | --- |
| | ARCH | WEEK 5 |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| --- | --- | --- | --- |
| | | | |

9/17 - TYPES OF HOUSES

- RANCH - ONE FLOOR ABOVE GROUND
- ONE AND A HALF STORY - ONE FULL FLOOR ABOVE GROUND AND ANOTHER FLOOR ABOVE THE FIRST THAT IS APPROXIMATELY HALF OF THE SQ. FT. OF THE FIRST FLOOR
- TWO STORY - TWO FLOORS ABOVE GROUND OF APPROXIMATELY THE SAME SIZE.
- SPLIT LEVEL - A STAGGERER FLOOR HOUSE. EACH LEVEL HALF A STORY ABOVE THE LAST.
- SPLIT FOYER - ENTRY IS HALFWAY ~~OF~~ BETWEEN LOWER AND UPPER FLOOR.

- TYPES OF FOUNDATIONS
  - FULL BASEMENT - FOOTPRINT OF THE HOUSE HAS ONE FULL FLOOR UNDERGROUND.
  - CRAWLSPACE - HALF BASEMENT BUILT SO THE FOUNDATION WALLS ARE BELOW THE FROST LINE.
  - SLAB ON GRADE - CONCRETE SLAB BUILT ON GROUND LEVEL.

- FOUNDATION MATERIALS
  - POURED CONCRETE
  - BLOCK
  - TREATED LUMBER
  - ICEBLOCK

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. | DATE |
|---|---|---|---|---|
| | | | | |

9/18 - CONTINUE ON 4 SKETCHES OF PLANS FROM HOMEPLANGROUP.COM

- START 6 CREATIVE FLOOR PLAN SKETCHES IN SKETCH BOOK, WHICH WILL BE TURNED IN ON FRIDAY 9/21.

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
|---|---|---|
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

9/19 - CONTINUE WORKING ON 4 SKETCHES FROM HOMEPLANGROUP.COM AND 6 CREATIVE FLOORPLANS DUE FRIDAY 9/21

TURN IN SKETCHBOOK ON FRIDAY FOR THE WEEKEND.

- CONSULT ON CREATIVE FP'S W/ MR. V.

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| NAME | LAB PARTNER | LOCKER/DESK NO. | COU[...] SECTION NO. |
|---|---|---|---|
| | | | |

9/20 - CONTINUE ALL SKETCHES TO BE TURNED IN ON FRIDAY. CONSULT W/ TEACHER WHILE WORKING IN CLASS.

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
| --- | --- | --- |
| | ARCH | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| --- | --- | --- | --- |
| | | | |

9/24 - READ CH. 9 IN CLASS

- ~~&~~ WORK ON CH. 9 REVIEW
- DISCUSS CH. 9 IN CLASS ~~S~~TRAFFIC AREAS AND PATTERNS (NOTES FROM BOOK ATTACHED)
- COMPLETE TRAFFIC PATTERN FOR FLOOR PLAN HANDOUT

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
|---|---|---|
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

9/25 - FINISH CH. 9 DISCUSSION

- DISCUSS FLOOR PLAN SKETCHES INDIVIDUALLY
- READ CH. 12 IN CLASS
- BEGIN WORKING CH. 12 WORKSHEET

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
|---|---|---|
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

9/26 - FINISH READING CH. 12

- DISCUSS CH. 12 IN CLASS

- COMPLETE CH. 12 WORKSHEET DUE THURS AT THE END OF CLASS.

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP NUMBER | EXPERIMENT/SUBJECT | DATE |
|---|---|---|
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

- FINISH DISCUSSION ON CH. 12 SLEEPING AREA:

9/27 - WORK ON CH. 12 REVIEW WORKSHEET

- HAND-IN CH. 12 AT THE END OF THE PERIOD
- READ CH. 13 DESIGNING FLOOR PLANS
- WORK ON CH. 13 REVIEW WORKSHEET

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

Chapter 9      Traffic Areas and Patterns

Traffic Areas provide space to move through the house. Such passageways are foyers, halls, stairs and areas of rooms.

**Traffic Patterns**
-   Traffic patterns should be taken into account when designing a floor plan.
-   Avoid extremely long halls or corridors.
-   Avoid using one room to get to another. (Each bedroom should have it's own entrance.)
-   Fig. 9-1a vs. Fig. 9-1b. Figure (a) is functional and efficient. Figure (b) has a hallway to nowhere. The Living Room essentially has become a large hallway. The kitchen is not easily accessible.
-   One way to determine the functionality and efficiency of a plan is to imagine yourself moving through the design to see if space is used effectively.

**Halls**
-   Halls are the "streets" used in your home to move around.
-   Fig. 9-3 has an example of how to reduce hallway length and make more efficient use of space.
-   Dividers can be used to separate space in your home and provide traffic areas without putting in walls which can make space hard to light and feel smaller.

**Stairs**
-   Stairs are inclined hallways that give access between floors
-   Fig. 9-4 shows types of stairs.
-   New materials have allowed stairs to be built without fully enclosing them in walls where light is restricted.
-   The size and shape of stairs can vary depending on the use of the stairs.
-   The tread is the step part of stairs and the riser is the vertical part of the stair.
-   Average tread depth is 10" and average riser height is 7 ¼". Fig. 9-6 shows how variations in tread and riser dimensions can affect the functionality of a staircase.
-   Staircases must be at least 3'0" wide however it is better to have a staircase that is 3'6" to 4'0" wide for more room. This is the same for hallways.
-   Minimum headroom on a staircase should be 6'6" however 7'0" is advantageous.
-   A landing should be planned for staircases with more than 16 stairs.

Chapter 12 Sleeping Areas

One-third of our time is spent sleeping. The sleeping area should provide a quiet place for comfort and relaxation. It should be in a separate area of the house from the noisier living area.

**Bedrooms**

- Houses are generally classified by how many bedrooms they have.
- A minimum of two bedrooms is usually beneficial in order to provide a place for guest and more bedrooms are advantageous for a family.

Function

- Provides a place for sleep
- May provide a place to read, write, or relax
- Bedrooms can range from a nursery to the children's room to a master suite with a dressing room and full bathroom

Location

- Bedrooms should be grouped in a quiet part of the house.
- Read the guidelines for noise control on page 215-216.
- Wall space- group doors of entry and closet together to conserve space for furniture.
- Doors- sliding pocket doors, bi-fold doors, bypassing doors are generally used for closets, and an entry door should be 2'6" to 3' in width.
- Windows- should provide ventilation, light and possibly a method of escape in case of a fire.
- Storage space- Furniture is used for some personal items but most storage space should be provided in the closets. Closets must be at least 24" deep and there should be 6 linear feet of space to hang clothing for each adult.

Décor- should be decorated in quiet, restful tones. Uncluttered furniture and simple lines help provide a relaxing atmosphere.

Size and Shape

- Most bedrooms should be a minimum of 100 sq. ft. but a bedroom between 100 and 200 sq. ft. is considered average and over 200 sq. ft. is considered large.
- Furniture should dictate how large a bedroom needs to be.

**Baths** (or bathrooms)

- Must be designed to be functional, attractive, and easily maintained.
- Size can vary greatly depending on size available.

Function

- Fixtures- items connected to plumbing lines (sink, toilet, and tub).
- Toilets need a minimum distance of 15" from the center to a side wall or other fixture.
- A mirror should be placed above the sink.



- Layout- compartment plan has partitions to separate the shower, toilet and sink. Open plan combines all in the space with no visual barriers.
- Ventilation- need to have natural ventilation from a window or an exhaust fan to control humidity and other factors.
- Lighting- should be shadowless lighting in grooming areas. Usually there is more than one source of lighting in a bathroom.
- Heating- important for comfort in bathroom. Usually placed near window in order to reduce drafts.

Location

- Two considerations, plumbing lines availability and accessibility from other areas of the house.
- Plumbing lines- it is cost and space efficient to place bathrooms back to back and on top of each other.
- Accessibility- bathrooms are ideally in or very near each bedroom for privacy in transport from bath to bedroom.

Décor

- Materials- should be water-resistant, easily maintained and easily sanitized.
- Generally the décor should be similar in style to the rest of the house.

Size and Shape

- Bathrooms are influenced by space available and necessities involved.
- Minimum size bath that can fit all three basic fixtures is 5' x 8'.
- Bathroom sizes can vary greatly. Fixture sizes are listed in Fig. 12-24 and 12-25.

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
|---|---|---|
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

8/28/07

1. toca timbre tarea/bathroom
2. binder
3. Storytime
4. timed writings

We turned in our homework, got bathroom passes, & did a crossword puzzle. Then, we organized our binders, & told a story where we acted out [illegible]. Finally, we got our timed writings back & talked about them.

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
| --- | --- | --- |
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| --- | --- | --- | --- |
| | | | |

[illegible]

no [illegible] !!

[illegible]

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
|---|---|---|
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

9/4

[illegible] gene

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible] Then we [illegible]

[illegible]

[illegible]

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
|---|---|---|
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

9/10

(1) [illegible]
[illegible]
(2) [illegible] the [illegible] of the week
(4) [illegible] vocabulary
[illegible]

(1) we [illegible]
then we [illegible] day [illegible]
the week song
(3) next we did some grammar
work in our [illegible]

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
| --- | --- | --- |
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| --- | --- | --- | --- |
| | | | |

9/11/07

① we worked on the months of the year
② then we did a worksheet to help understand them
③ next we did a unscrambling exercise

homework:
crossword

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | | |
|---|---|---|---|
| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| | | | |

9/12/07

1. tocatimbre/tarea
2. Signature search
3. Cuento

TAREA: ~~Dibuja al cuento~~ Reread story

1. we checked in our homework
2. we did a signature-finding game
3. we reviewed the game
4. we read the story "What a coincidence"

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

9/14

1. tocatimbre/tarea
2. repaso de la tarea
3. el tiempo y ¡canción!
4. cuentos

¡no tarea!

1. we reviewed the story with a worksheet
2. then we added to our dictionaries

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

16

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
| --- | --- | --- |
| | Thursday | 9/20/07 |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| --- | --- | --- | --- |
| Spanish | | | |

Board:

1. el tiempo
2. el propio auto
3. ~~notas~~ - didn't get to do this.

Class notes:

- we checked in our homework
- we began to read "Mi propio Auto" in class
- we took notes on page 12 of the book (see attachment)

Tarea:

~~parent signature for grade report~~

no hay tarea

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

# Mi propio auto

## Los objetivos del Capitulo 1

1. Describe a Ben
2. Describe qué quiere Ben para su cumpleaños y por qué.
3. Describe a los padres de Ben.
4. Describe el regalo que Ben recibe.
5. Discute por que los padres de Ben le dan este regalo a Ben.

File Date: March 13, 2008

Case No: 08cv1507

ATTACHMENT # 1

EXHIBIT 3D-9

TAB (DESCRIPTION)

______________________

(708)383-0700

THOSE THINGS THAT ARE BEST

096329

# STUDENT ACADEMIC RECORD

09/26/2007

| STUDENT NAME | REYNOLDS-EJZAK, TOM | SEX | M | BIRTHDATE | 05/26/1990 |
|---|---|---|---|---|---|
| HOME ADDRESS | 1166 CLINTON AV OAK PARK IL 60304 | | | PHONE | 708-660-0903 |
| PARENT NAME | MEG REYNOLDS | DEAN | DEBORAH BLUMINBERG | | |
| ENTRY DATE | 08/24/2004 | WITHDRAWAL DATE | | GRADUATION DATE | |

UNOFFICIAL

KEY TO ACADEMIC RECORD

LEVELS:
A- High ability, weighted
IS - Independent Study
TR - Transfer Course

* = Weighted Course
+= Transfer Course

GRADES:
A - Superior
B - Good
C - Average
D - Poor
F - Failure
P - Passing
FX - Failure; successful retake appears elsewhere; FX not computed in GPA

I - Incomplete
W - Withdrawal
M - Medical Excuse
N - Grade and credit withheld due to excessive absences
NC - No credit, non-graded class/activity

**YEAR: 2004-2005 FALL**

| COURSE | GR | CREDIT |
|---|---|---|
| * ENG 1&2A | A | 1.00 |
| * INT AL F1&2A | B | 1.00 |
| * W HIST 1&2A | A | 1.00 |
| * BIOL 1&2A | A | 1.00 |
| CNCRT ORCH | A | 1.00 |
| CORE PE | A | 0.50 |
| CORE PE | B | 0.50 |
| ACAD STR | P | 0.50 |

**YEAR: 2004-2005 SPRING**

| COURSE | GR | CREDIT |
|---|---|---|
| * ENG 1&2A | A | 1.00 |
| * INT AL F1&2A | B | 1.00 |
| * W HIST 1&2A | A | 1.00 |
| * BIOL 1&2A | B | 1.00 |
| ONCRT ORCH | A | 1.00 |
| TRACK AND FIELD | B | 0.50 |
| OUTDR TM SP | M | 0.50 |
| ACAD STR | P | 0.50 |

**YEAR: 2004-2005 SUMMER**

| COURSE | GR | CREDIT |
|---|---|---|
| + TR HEALTH SS | A | 1.00 |

**YEAR: 2005-2006 FALL**

| COURSE | GR | CREDIT |
|---|---|---|
| * ENG LIT 1-2A | B | 1.00 |
| * PL GEOM 1&2A | A | 1.00 |
| ASIAN STS | B | 1.00 |
| * CHEM 1&2A | B | 1.00 |
| SYMPH ORCH | A | 1.00 |
| SOFTBALL | A | 0.50 |
| XTRAINING | A | 0.50 |
| ACAD STR | P | 0.50 |

**YEAR: 2005-2006 SPRING**

| COURSE | GR | CREDIT |
|---|---|---|
| * ENG LIT 1-2A | A | 1.00 |
| * PL GEOM 1&2A | B | 1.00 |
| * CHEM 1&2A | B | 1.00 |
| ART FNDTN | A | 1.00 |
| SYMPH ORCH | B | 1.00 |
| ADVENTURE ED | A | 0.50 |
| ADVENTURE ED | B | 0.50 |
| ACAD STR | P | 0.50 |
| + TR SPAN | A | 1.00 |

**YEAR: 2006-2007 FALL**

| COURSE | GR | CREDIT |
|---|---|---|
| * AM LIT1&2A (AP) | B | 1.00 |
| * CO AL/TR1&2A | B | 1.00 |
| * AP AMHST 1&2 | B | 1.00 |
| PHYSICS 1&2 | A | 1.00 |
| SYMPH ORCH | A | 1.00 |
| JAZZ BAND | A | 0.00 |
| DR ED LAB | C | 0.50 |
| DR ED CLASSRM | B | 0.50 |
| ACAD STR | P | 0.50 |

**YEAR: 2006-2007 SPRING**

| COURSE | GR | CREDIT |
|---|---|---|
| * AM LIT1&2A (AP) | B | 1.00 |
| * CO AL/TR1&2A | B | 1.00 |
| * AP AMHST 1&2 | B | 1.00 |
| PHYSICS 1&2 | B | 1.00 |
| COMPUTER PROF | P | 0.50 |
| * ADV ST ART 1&2A | B | 1.00 |
| JAZZ BAND | A | 0.00 |
| INDR TM SPRT | A | 0.50 |
| SOFTBALL | B | 0.50 |
| ACAD STR | P | 0.50 |

**YEAR: 2007-2008 FALL**

| COURSE | GR | CREDIT |
|---|---|---|
| * AP COL ENG 1 | | |
| * CALC CONC 1A | | |
| * SPANISH 3A | | |
| INT ARCH-CAD | | |
| SYMPH ORCH 1 | | |
| JAZZ EMSEMBLE 1 | | |
| SOFTBALL | | |
| ACADEMY STR 1 | | |

**YEAR: 2007-2008 SPRING**

| COURSE | GR | CREDIT |
|---|---|---|
| * AP COL ENG 2 | | |
| * CALC CONC 2A | | |
| CRM&CVL LAW | | |
| * SPANISH 4A | | |
| SYMPH ORCH 2 | | |
| JAZZ ENSEMBLE 2 | | |
| PHYS EDUC | | |
| ACADEMY STR 2 | | |

**ACADEMIC SUMMARY**

CREDITS EARNED: 41.00

GPA Unweighted: 3.407 (4.00 max)

Weighted: 4.020

RANK Unweighted: 181/796

Weighted: 160/796

To be ranked, a student must earn 80% of credits in regular school subjects.

API: 1.18 (1.24 max)

The Academic Program Index is a GPA multiplier used to determine the Weighted GPA. API points, limited to three per semester, are accumulated in honors courses in English, math, science, history and foreign language in which a grade of A or B is earned. This table illustrates the maximum API by semester and its effect on the Weighted GPA.

| Semester | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| Max API | 1.03 | 1.06 | 1.09 | 1.12 | 1.15 | 1.18 | 1.21 | 1.24 |
| Max Weighted GPA | 4.12 | 4.24 | 4.36 | 4.48 | 4.60 | 4.72 | 4.84 | 4.96 |

**TEST SCORES**

ACT-STATE 04/01/2007

| | |
|---|---|
| ENG | 31 |
| MATH | 29 |
| RDG | 30 |
| SCI | 27 |
| COMP | 29 |
| WRTG | 08 |
| COMBINED | 29 |

UNOFFICIAL

EXHIBIT D

Current Grades as of 9/27/07

AP COL ENG → B
Softball → B
Academic St → A
Spanish → B
Math → A
Symphony → A
Architecture → A

EXHIBIT
E



47 West Polk Street
Chicago, Illinois 60605

(312) 663-4426
(312) 663-4427
Fax (312) 566-0956

John A. Relias
Franczek Sullivan P.C.
300 South Wacker Drive
Suite 3400
Chicago, Illinois 60606
Fax 312-986-9192
**VIA FACSIMILE and U.S. Mail**

February 5, 2006

Re: Thomas Reynolds-Ejzak
Oak Park-River Forest S.D. 200
Conference Date: 01/25/06

Dear Mr. Relias:

This letter is in response to the "Additional IEP Information" form completed by Oak Park-River Forest School District 200 during the IEP meeting mandated by the ISBE and forwarded to me as the "revised IEP" for Tom Reynolds-Ejzak.

As you should recall, the ISBE, on Dec. 7, 2005, directed your client to hold an IEP meeting to clearly define the process in which notes and assignments will be provided to Tom. The ISBE also directed that District 200 provide a copy of the student's revised IEP to ISBE. A subsequent letter issued Jan. 12, 2006 by ISBE to the school district provided:

> Please note that it is not our intent for District 200 to use the required IEP meeting to take away or reduce the current level of accommodation, but rather to clearly define the process that will be used by all staff members.

After I returned from my trip, Ms. Reynolds and I had the opportunity to review the documents and our notes from the IEP meeting. We have concluded that the "Additional IEP Notes" submitted by the school district require significant revision and do not comply with ISBE's directives to the school district to issue a revised IEP. Although the notes reflect many of the comments made during the meeting, the notes do not document the scope of the accommodations your client and my client agreed to include in the IEP. Most importantly, the "Additional IEP Information" does not fulfill the ISBE's directive to "clearly define the process" for note-taking and to issue a revised IEP reflecting the agreed upon definition of the note-taking process.

EXHIBIT
F

Therefore, we ask that the following changes be made to the document you forwarded to us:

An asterisk or other appropriate symbol and the words "*see Additional IEP Notes" should be added to the word "Notetaker" in the "Supplemental Services"section of the IEP. The following language should be substituted for the anecdotal material included in the "Additional IEP Notes" to indicate that the following applies to the services Tom receives:

1) Due to an auditory processing disorder (that causes Tom to behave essentially like an individual with a high frequency hearing loss even though he has normal peripheral hearing) and ADHD, Tom requires that all daily and long-term assignment information be written down by someone else so that he may complete assignments and receive educational benefit.

2) Classroom teachers will appoint and monitor a peer note-taker who will take daily notes and daily written assignment information using a carbon notebook. Daily written assignment information shall include information about pending tests/quizzes/long-term assignments when announced in class, including due dates. Daily notes will include a summary of the material covered in the classroom that day.

3) When a peer note-taker has been appointed but peer notes are insufficient or issues arise related to the voluntary nature of the peer note-taker, the teacher or another note-taker will provide daily written assignment information and daily classroom notes directly to Tom.

4) Where a particular day's class consists only of students' comments to each other with limited instructional input from the teacher, and no other student has taken notes for that day, the teacher will summarize discussion/topic(s) of discussion/lesson plan for that day in writing or by email to Tom, along with daily assignment information.

5) Tom's music teacher(s) will use the attached form (see attached) in providing information via e-mail or hard copy to Tom that includes but is not limited to information regarding tests, assignments, auditions/tryouts, rehearsals, performances and "call" times for orchestra and extra-curricular performances and extra-curricular musical activities. "Extra-curricular musical activities" shall include but not be limited to IMEA, the OPRF spring musical, jazz bands, marching band and chamber groups.

6) Items 1-5 above, including the music information attachment, where appropriate, will appear on the "Confidential Memo" distributed to Tom's classroom teachers each semester."

We would appreciate you forwarding the entire revised IEP, not just the "Additional IEP Notes," as soon as your client has prepared them.

Sincerely,

Deborah Pergament

Cc: Meg Reynolds
    Donna Schertz, ISBE
    Darren Reisberg, ISBE



cc: Dr. Bridge
Donna Stevens

FRANCZEK SULLIVAN P.C.
ATTORNEYS AT LAW

300 SOUTH WACKER DRIVE
SUITE 3400
CHICAGO, ILLINOIS 60606
PHONE 312-986-0300
FAX 312-986-9192
http://www.franczek.com

JOHN A. RELIAS
312-786-6160
jar@franczek.com

February 17, 2006

COPY

Deborah Pergament, Esq.
Childrens' Law Group
47 West Polk Street
Chicago, Illinois 60605

**Re: Thomas Reynolds-Ejzak**

Dear Ms. Pergament:

On February 5, 2006 you sent me a letter regarding certain requests or modifications to the IEP document sent to you generated at our January 13, 2006 meeting.

Your requests and the School District's responses are as follows:

1) Due to an auditory processing disorder (that causes Tom to behave essentially like an individual with a high frequency hearing loss even though he has normal peripheral hearing) and ADHD, Tom requires that all daily and long-term assignment information be written down by someone else so that he may complete assignments and receive educational benefit.

ANSWER: The School District agrees to add Paragraph 1, except for the parenthetical sentence. The reason for this decision is that the parenthetical sentence is irrelevant information in relation to the service that is provided.

2) Classroom teachers will appoint and monitor a peer note-taker who will take daily notes and daily written assignment information using a carbon notebook. Daily written assignment information shall include information about pending tests/quizzes/long-term assignments when announced in class, including due dates. Daily notes will include a summary of the material covered in the classroom that day.

EXHIBIT
G

297981.1

**ANSWER:** The School District agrees to add Paragraph 2, except for the last sentence of the Paragraph. The reason for this decision is that the student note-taker will take down the information he or she believes is important and it may not cover every item of material covered in the classroom that day.

3) When a peer note-taker has been appointed but peer notes are insufficient or issues arise related to the voluntary nature of the peer note-taker, the teacher or another note-taker will provide daily written assignment information and daily classroom notes directly to Tom.

**ANSWER:** The School District declines to add Paragraph 3 based on the rationale delineated in Paragraph 2.

4) Where a particular day's class consists only of students' comments to each other with limited instructional input from the teacher, and no other student has taken notes for that day, the teacher will summarize discussion/topic(s) of discussion/lesson plan for that day in writing or by email to Tom, along with daily assignment information.

**ANSWER:** The School District declines to add Paragraph 4. The reason for this decision is that this is an excessive imposition on the teacher and is subject to no verifiable objective standard.

5) Tom's music teacher(s) will use the attached form (see attached) in providing information via e-mail or hard copy to Tom that includes but is not limited to information regarding tests, assignments, auditions/tryouts, rehearsals, performances and "call" times for orchestra and extra-curricular performances and extra-curricular musical activities. "Extra-curricular musical activities" shall include but not be limited to IMEA, the OPRF spring musical, jazz bands, marching band and chamber groups.

**ANSWER:** The School District agrees to add Paragraph 5.

6) Items 1-5 above, including the music information attachment, where appropriate, will appear on the "Confidential Memo" distributed to Tom's classroom teachers each semester."

**ANSWER**: The School District agrees to add Paragraph 6.

Of course, the School District will also add your letter to Thomas' file. I trust this fully responds to your inquiry.

Very truly yours,

John A. Relias

JAR/cr
cc: Ms. Linda Cada



# Illinois State Board of Education

100 North First Street • Springfield, Illinois 62777-0001
www.isbe.net

Rod Blagojevich
*Governor*

Jesse H. Ruiz
*Chairman*

Dr. Randy J. Dunn
*State Superintendent of Education*

March 17, 2006

Ms. Linda Cada
Director of Special Education
Oak Park-River Forest #200
201 North Scoville Avenue
Oak Park, IL 60302

Dr. Susan Bridge
Superintendent
Oak Park-River Forest #200
201 North Scoville Avenue
Oak Park, IL 60302

Ms. Meg Reynolds
1166 South Clinton Avenue
Oak Park, IL 60304

Re: Reynolds-Ejzak Complaint

Dear Ms. Cada, Dr. Bridge and Ms. Reynolds:

With regard to the above-referenced complaint investigation, the Illinois State Board of Education (ISBE), Special Education Services Division, has reviewed actions taken subsequent to ISBE's December 7, 2005 letter of findings. In that letter, ISBE directed that:

The district is required to:

- ensure that services (specifically speech and language and social work) are implemented within a reasonable period of time at the beginning of each school year. (An example of reasonable period of time as stated in Attachment 1 – Analysis of Comments and Changes of the Federal Regulations is "within a week or two"). A copy of its plan to ensure timely initiation of these services must be submitted to this agency.
- Reconvene the IEP meeting to consider the missed social work service days and the impact on the student's educational performance and progress. The team must then determine whether or not compensatory services are necessary. If there is a need, the IEP must include

EXHIBIT
H

provisions for how the compensatory services will be implemented, including the initiation and duration dates, amount/frequency and location of services. If the team determines there is no need for compensatory services, the decision and reason for the decision must be documented in the IEP.

➢ Due to the difference of opinion regarding the provision of notes/assignments and the amount of time spent on this particular issue by all parties, the district and parent are to reconvene an IEP meeting (which may be the same meeting as noted above) to clearly define "note taker" and the process in which notes and assignments will be provided for the remainder of the 2005-2006 school year to best meet the needs of the student. This must be completed prior to the second semester. A copy of the student's revised IEP must then be submitted to this agency.

***Following the December 7, 2005 letter of findings, the following documentation was submitted by the district:***

➢ *A copy of its plan to ensure timely initiation of related services (specifically speech and language and social work).*

The district has provided ISBE, in writing, with a plan for the speech/language therapists and resource managers who facilitate social work services to receive the necessary materials/student schedules prior to the beginning of the school year. This will help ensure that related services begin "within a week or two" as required by regulations.

➢ *A copy of the student's revised IEP that:*

- *Documents consideration of the missed social work service days, its impact on the student's educational performance and progress, and the need for compensatory services.*

The student's IEP does document consideration of compensatory services. According to the district, the student received an extra social work session for the first three weeks of the second semester to compensate for the delay at the beginning of the school year.

- *Clearly defines "note taker" and the process in which notes and assignments will be provided for the remainder of the 2005-2006 school year to best meet the needs of the student.*

According to the notes from the January 25, 2006 IEP, the following process is in place for each class in which the student is currently enrolled:

- English – A student takes notes in the class and writes the daily assignments; the notes are provided to the student at the end of the period. The teacher agreed to add a notation that references from where in the study guide the class discussion evolved.
- Science - A student takes notes in the class and writes the daily assignments; the notes are provided to the student at the end of the period.
- Math – The teacher writes all the notes and hands them to the student on a daily basis.
- Art – The teacher would supply a semester syllabus. The class is project driven and homework is given possibly once every two weeks.
- Band – The teacher agreed to use a form generated by the parent's attorney to document important events related to Band.

**Discussion (Focusing on the "Notetaker" Accommodation):**

On December 17, 2005, the parent wrote ISBE asking ISBE to modify the corrective action set forth in ISBE's December 7, 2005 letter of findings. On December 21, 2005, ISBE responded to the parent, stating, among other things, that:

> Our investigation demonstrated that your son is currently being provided with a note taking accommodation at Oak Park and River Forest High School. It is our understanding that you do not want to see the current accommodation taken away or reduced as a result of the required IEP meeting. It was not our intent for District 200 to use the required IEP meeting to take away or reduce the current level of accommodation, nor is it our expectation that District 200 will do so. If you would like us to convey this response to District 200, please let me know.

As noted above, on January 25, 2006, an IEP meeting was held. On February 6, 2006, the district's Director of Special Education wrote ISBE regarding the January 25, 2006 IEP meeting. She stated, among other things, that: "All of [the student's] teachers were present to explain the note taking accommodation to [the parent] and her attorney and how the accommodation is facilitated in their classroom." The letter also included a document entitled "Additional IEP Information", which set forth a summary of the discussion (and the process for notetaking that was occurring (and would continue to occur) in each of the student's classes, which has already been detailed above).

The parent, though, did not consider the IEP that resulted from the January 25, 2006 meeting to be sufficiently responsive to ISBE's December 7, 2005 directive (and in fact claimed that it *reduced* the accommodation that the student was

receiving prior to her filing the instant complaint).  On February 5, 2006, an attorney representing the parent submitted a letter to the district with concerns regarding the content in the IEP notes.  The letter asked the district to substitute for the "anecdotal material" in the Additional IEP Information document the following language (and stated, in a cover letter to ISBE, that the inclusion of such language would "satisfy both ISBE's directives and the legal requirements of IDEA"):

1. Due to an auditory processing disorder (that causes [the student] to behave essentially like an individual with a high frequency hearing loss even though he has normal peripheral hearing) and ADHD, [the student] requires that all daily and long-term assignment information be written down by someone else so that he may complete assignments and receive educational benefit.

2. Classroom teachers will appoint and monitor a peer note-taker who will take daily notes and daily written assignment information using a carbon notebook.  Daily written assignment information shall include information about pending tests/quizzes/long-term assignments when announced in class, including due dates.  Daily notes will include a summary of the material covered in the classroom that day.

3. When a peer note-taker has been appointed but peer notes are insufficient or issues arise related to the voluntary nature of the peer note-taker, the teacher or another note-taker will provide daily written assignment information and daily classroom notes directly to [the student].

4. Where a particular day's class consists only of students' comments to each other with limited instructional input from the teacher, and no other student has taken notes for that day, the teacher will summarize discussion/topic(s) of discussion/lesson plan for that day in writing or by email to [the student], along with daily assignment information.

5. [The student's] music teacher(s) will use the attached form (see attached) in providing information via e-mail or hard copy to [the student] that includes but is not limited to information regarding tests, assignments, auditions/tryouts, rehearsals, performances and "call" times for orchestra and extra-curricular performances and extra-curricular musical activities. "Extra-curricular musical activities" shall include but not be limited to IMEA, the OPRF spring musical, jazz bands, marching band and chamber groups.

6. Items 1-5 above, including the music information attachment, where appropriate, will appear on the "Confidential Memo" distributed to [the student's] classroom teachers each semester.

On February 17, 2006, an attorney for the district responded as follows to each request set forth in the February 5, 2006 letter (for the sake of clarity, we place in boldface type the language to which the district did not agree).

1. Due to an auditory processing disorder **(that causes [the student] to behave essentially like an individual with a high frequency hearing loss even though he has normal peripheral hearing)** and ADHD, [the student] requires that all daily and long-term assignment information be written down by someone else so that he may complete assignments and receive educational benefit.

   The School District agrees to add Paragraph 1, except for the parenthetical sentence. The reason for this decision is that the parenthetical sentence is irrelevant information in relation to the service that is provided.

2. Classroom teachers will appoint and monitor a peer note-taker who will take daily notes and daily written assignment information using a carbon notebook. Daily written assignment information shall include information about pending tests/quizzes/long-term assignments when announced in class, including due dates. **Daily notes will include a summary of the material covered in the classroom that day.**

   The School District agrees to add Paragraph 2, except for the last sentence of the Paragraph. The reason for this decision is that the student note-taker will take down the information he or she believes is important and it may not cover every item of material covered in the classroom that day.

3. **When a peer note-taker has been appointed but peer notes are insufficient or issues arise related to the voluntary nature of the peer note-taker, the teacher or another note-taker will provide daily written assignment information and daily classroom notes directly to [the student].**

   The School District declines to add Paragraph 3 based on the rationale delineated in Paragraph 2.

4. **Where a particular day's class consists only of students' comments to each other with limited instructional input from the teacher, and no other student has taken notes for that day, the teacher will summarize discussion/topic(s) of discussion/lesson plan for that day in writing or by email to [the student], along with daily assignment information.**

   The School District declines to add Paragraph 4. The reason for this decision is that this is an excessive imposition on the teacher and is subject to no verifiable objective standard.

5. [The student's] music teacher(s) will use the attached form (see attached) in providing information via e-mail or hard copy to [the student] that includes but is not limited to information regarding tests, assignments, auditions/tryouts, rehearsals, performances and "call" times for orchestra and extra-curricular performances and extra-curricular musical activities. "Extra-curricular musical activities" shall include but not be limited to IMEA, the OPRF spring musical, jazz bands, marching band and chamber groups.

   The School District agrees to add Paragraph 5.

6. Items 1-5 above, including the music information attachment, where appropriate, will appear on the "Confidential Memo" distributed to [the student's] classroom teachers each semester.

   The School District agrees to add Paragraph 6.

**Conclusions**

The district has complied with ISBE's directive regarding: (a) the submission of a plan to ensure timely initiation of speech and language/social work services, and (b) the consideration in a reconvened IEP meeting of the missed social work days and the impact of those missed days on the student's educational performance, as well as a determination as to whether compensatory services are necessary.

ISBE also finds that the district fulfilled ISBE's directive to reconvene an IEP meeting to "clearly define 'note taker' and the process in which notes and assignments will be provided for the remainder of the 2005-06 school year to best meet the needs of the student." The district held an IEP meeting, each one of the student's classroom teachers participated, and the discussion with regard to each such class was memorialized in the "Additional IEP Information" document. Moreover, the district, through its attorney, committed that, among other things: "[The student] requires that all daily and long-term assignment information be written down by someone else so that he may complete assignments and receive educational benefits. Classroom teachers will appoint and monitor a peer note-taker who will take *daily* notes and daily written assignment information using a carbon notebook. Daily written assignment information shall include information about pending tests/quizzes/long-term assignments when announced in class, including due dates." ISBE views the district's commitments to mean that, on a daily basis (i.e., on the same day as the class), the student will receive for each class, at the very least, both notes and written assignments. ISBE considers such statements to further define the "note taker" obligation in a manner that will facilitate enforcement.

ISBE understands that the student's annual review is scheduled for April 22, 2006 and the district has committed its willingness to, at that time, include in the student's IEP the additional language the district agreed to in the February 17, 2006 letter of its attorney.

The parent, as noted, has nevertheless made additional demands and has stated, through her attorney, that acceptance of those demands would resolve the matter. The district has chosen not to accept these additional demands and ISBE has no statutory or regulatory authority to order that such additional demands be accepted by the district.

ISBE must emphasize that, while it now considers the investigation completed, it is of course obligated and prepared to investigate any future complaints regarding this matter and, specifically, regarding the district's commitments with respect to the student. For example, should ISBE receive a complaint, and through investigation conclude, that any classroom teacher has not appointed and/or is not properly monitoring a peer notetaker for the student, ISBE will take appropriate action.

In summary, ISBE finds that the district has complied with the corrective action required by ISBE's December 7, 2005 letter of findings. With respect to the timely initiation of speech and language/social work services, we are asking the district to provide a service log no later than the third week of the 2006-2007 school year demonstrating that the student did receive appropriate services during the first and second weeks. Upon receipt of this documentation, the complaint will be considered closed.

If anyone has any questions regarding this response, please contact me at 217/782-5589 or dschertz@isbe.net.

Sincerely,

Donna M. Schertz

Donna M. Schertz
Principal Education Consultant
Special Education Services Division

Exhibit 4

RECEIVED
OCT 03 2007
SPECIAL EDUCATION SERVICES

**ILLINOIS STATE BOARD OF EDUCATION
IMPARTIAL DUE PROCESS HEARING**

| | | |
|---|---|---|
| Tom Reynolds-Ejzak | ) | |
| | ) | |
| vs. | ) | Case No. 2008-0100 |
| | ) | |
| Oak Park-River Forest SD 200 | ) | |
| | ) | |

James A. Wolter, EdD, Impartial Due Process Hearing Officer

**NOTICE OF PRE-HEARING CONFERENCE**

This Hearing Officer has jurisdiction to hear this case pursuant to a letter of appointment by the Illinois State Board of Education ("ISBE") dated **September 27, 2006. On October 25, 2006 at 3:00 p.m.**, this Hearing Officer shall be advised via by the parties that a Resolution Session has been conducted pursuant to Section 615(f)(1)(B) of the Individuals With Disabilities Education Improvement Act of 2004 ("IDEA 2004"). At this telephone conference the parties shall further advise this Hearing Officer whether any issues remain for decision by the Hearing Officer. In the event any issues remain for decision by the Hearing Officer, the parties are hereby notified that a Pre-Hearing Conference will be convened at **3:00 p.m. on Thursday, October 25, 2006 by teleconference** and the due process hearing will be held at on **November 9, 2007.**

**PRE-HEARING CONFERENCE PROCEDURES**

Section 14.8.02a(g) of the Illinois School Code requires that this pre-hearing conference occur not less than 14 days before the scheduled date for the due process hearing. **The date on which the 45-day timeline will expire is December 10, 2007. The date and the location of the hearing will be established during the prehearing conference.**

The purpose of the pre-hearing conference is to ensure a fair, orderly and expeditious hearing. Each party is required to disclose the following information at or prior to the pre-hearing conference:

a) whether a party will be represented by legal counsel or intends to retain legal counsel;
b) the matters a party believes are in dispute and the specific relief being sought;
c) whether there are any additional evaluations for the student that a party intends to introduce into the hearing record that have not been previously disclosed to the other party;
d) a list of all documents a party intends to introduce into the hearing record including the date and a brief description of each document; and
e) the names of all witnesses a party intends to call to testify at the hearing.

**The party requesting the hearing is advised that, pursuant to Section 615(f)(3)(B) of IDEA 2004, the Hearing Officer is not permitted to hear any issue that was not raised at the time of the initial due process request, unless the party can demonstrate that the issue could not have been known to the party at the time of filing the due process request or the opposing party agrees to its inclusion at hearing. In the event a new issue is identified that the requesting party could not have known at the time of filing the initial due process request, the hearing timeline will be suspended pending the completion of a new resolution session or mediation to address the newly identified issues.**

At the conclusion of the pre-hearing conference, the hearing officer will prepare a report that will be entered into the hearing record. The report will include but will not be limited to:

a) the issues remaining to be resolved by the Hearing Officer
b) the order of presentation and any scheduling accommodations that have been made for the parties or witnesses;
c) preliminary determination of the relevancy and materiality of documents or witnesses, if raised by one of the parties;
d) any stipulations of fact and other agreed upon matters.

You are reminded that the regulations prohibit any *ex parte* communications with the hearing officer except to arrange the date, time and location of the pre-hearing conference and the due process hearing. Should it be necessary for you to contact me regarding your participation at the pre-hearing conference, please limit your comments to those topics.

**RIGHTS OF THE PARTIES PRIOR TO HEARING**

23 Illinois Administrative Code Section 226.636 provides the following summary of the rights of the parties prior to the hearing:

a. the parties have the right to be represented at their own expense by counsel or to be represented and assisted by other persons having special knowledge of special education services. The District shall inform the parents of any free or low cost legal services which may be available in their area, and of the availability of publicly funded advocacy services.

b. Parents may inspect and review all school records pertaining to their child and, subject to the provisions of 23 Illinois Administrative Code Section375.50, may obtain copies of such records.

c. Parents shall have access to the district's list of independent evaluators, and may obtain an independent evaluation of their child at their own expense. <u>If acquisition of a completed independent evaluation requires a delay in convening the hearing, the parents shall request such delay as provided in 23 Illinois</u>

Administrative Code Section 226.632(c). I will then delay the hearing until such time as the independent evaluation is completed, the report is available and the opposing party has been afforded, in my judgment, a reasonable opportunity to review it. The parents may ask me to determine whether an independent evaluation is needed. If I conclude, after reviewing the available information, that an independent evaluation is necessary to inform me concerning the services to which the student might be entitled, it shall be so ordered and provided at local school district expense. I will delay the hearing for the purpose of completing the evaluation.

d.  Either party to the hearing has the right to the disclosure of any evidence to be introduced at least five (5) days prior to the hearing unless otherwise agreed to by both parties. **Failure to comply with the five-day disclosure requirement could result in the party's inability to introduce the evidence at the hearing.**

e.  Either party may compel the attendance of any school district employee at the hearing, or any other person who may have information relevant to the needs, abilities, the proposed program, or the status of the student. At the request of either party, I may issue subpoenas to compel the testimony of witnesses or the production of documents relevant to the case at issue. If any person refuses to comply with a subpoena I have issued, court action may be sought as provided in Section 5/14-802a(g) of the Illinois School Code. Any costs associated with the issuance of the subpoena must be paid for by the party making the request.

f.  Either party, or any other person participating in the hearing, may request that an interpreter be available during the hearing because one of the participants is hearing impaired and/or uses a primary language other than English. Such interpreters shall be provided at the public provider's expense.

g.  The educational placement of the student shall not be changed pending completion of the hearing except as provided in Section 14-8.02a(j) of the Illinois School Code.

h.  Parents have the right to have the student who is the subject of the hearing present at the hearing and to open the hearing to the public.

Dated this 1st day of October 2007.

James A. Wolter, EdD
Impartial Due Process Hearing Officer

**CERTIFICATE AND AFFIDAVIT OF DELIVERY BY MAIL**

The undersigned hereby certifies that a copy of the Scheduling Order and Notice of Prehearing Conference was placed in the U.S. Mail at Winnetka, Illinois, with first class postage prepaid and directed to:

Meg Reynolds
1166 South Clinton
Oak Park, Il. 60304

John Relias, Esq.,.
Franczek Sullivan P. C.
300 S. Wacker Dr. # 3400
Chicago, Il 60606

Mr. Andy Eulass
Due Process Coordinator
Illinois State Board of Education
100 North First Street
Springfield, IL 62777-0001

on October 1, 2007,

James A. Wolter, EdD
Due Process Hearing Officer
PO Box 69
Wilmette, Illinois 60091
847 257 8839

Exhibit 5



**JAMES A. WOLTER, EDD**
**P.O. BOX 69**
**WINNETKA, ILLINOIS 60093**
**(847) 256-8839**
October 3, 2007

Meg Reynolds
1166 South Clinton
Oak Park, IL. 60304

John Relias, Esq.,
Franczek Sullivan P. C.
300 S. Wacker Dr. # 3400
Chicago, Il 60606

In the Matter of: Tom Reynolds-Ejzak v. Oak Park-River Forest SD 200
ISBE Case Number: 2008-0100

Dear Ms. Reynolds and Mr. Relias::

This letter is written to acknowledge receipt of the district's October 1, 2007 response to the parent's complaint, a motion to dismiss and summary judgment. I shall abstain from issuing a written ruling on the motion until October 20, 2007 to provide Ms. Reynolds with an opportunity to respond to that motion in writing.

Both [parties have made reference to the 2006-07 school year. Did you mean the 2007-08 school year (i.e. the current school year)? Please clarify whether the complaint includes the current school year or is limited to the past school years (i.e. 2005-06 and 2006-07).

Thank you.

Sincerely,

James A. Wolter, EdD
Due Process Hearing Officer

cc: Andrew Eulass, Esq., ISBE Due Process Coordinator

Exhibit 6



# Illinois State Board of Education

100 North First Street • Springfield, Illinois 62777-0001
www.isbe.net

Jesse H. Ruiz
*Chairman*

Rod Blagojevich
*Governor*

Christopher A. Koch, Ed.D.
*State Superintendent of Education*

October 9, 2007

Ms. Meg Reynolds
225 North Michigan
BCBSA
Chicago, IL 60601

RE: Tom Reynolds-Ejzak vs. OAK PARK - RIVER FOREST SD 200
Case Number 2008-0100

Dear Ms. Meg Reynolds:

The impartial due process hearing officer previously appointed to this case has been substituted. Therefore, **Sheana Hermann** has been appointed as the new hearing officer in the above cited matter. Sheana Hermann will contact you within 5 days of receipt of this letter to arrange the dates, times and locations of the hearing and the pre-hearing conference.

This letter is being sent simultaneously to both the school district and the parents/guardian. A copy of this letter will be retained by the Program Compliance Division for future reference. If you have any procedural questions, please contact me at 217/782-5589. The State Board of Education staff will not respond to substantive questions regarding this case.

Sincerely,

Andrew C Eulass
Due Process Coordinator
Illinois State Board of Education

**Hearing Officer Data Entry Form**

**Name:** Sheana Hermann
**Address:** 736 N Western Ave
**City, State, Zip:** Lake Forest, IL 60045

**DOB:**
**Sex:** Female

**Ethnic** Undeclared
**Language:**
**Disabled? Yes/No**

**Contact Information**

**ISBE Dates**

**Date Approved as a Hearing Officer:** 7/1/2004 12:00:00 AM
**Business:** (773) 490-7392
**Home:**
**Fax:** 8476150464
**E-Mail:** sheana15@comcast.net

**Degrees and Majors**

Bachelors Economics
Doctorate Juris Doctor

**Excluded Cooperatives and Districts** ***(include Distrib. Code/CDT Code)***

District34049065002 LAKE BLUFF ESD 65 06/30/2005 08/28/2106
District34049115016 LAKE FOREST CHSD 115 06/30/2005 08/28/2106
District34049825060 SPEC EDUC DIST LAKE COUNTY/SEDOL 06/30/2005 08/28/2106

**Employment**

**Professional Activities/Awards/Honors**

Greater Chicago Food Depository Kids Cafe Program.

**Other Notes of Interest**

Employed by Chicago Public Schools as a Due Process Coordinator from July 2003 - October 2003

Exhibit 7

**Sheana C. Hermann**
**Due Process Hearing Officer**
**736 North Western Avenue**
**PMB 148**
**Lake Forest, Illinois 60045**
**(773) 490 – 7392**

RECEIVED
OCT 22 2007
SPECIAL EDUCATION SERVICES

**Via Next Day Mail Proper Postage Paid**

October 18, 2007

Ms. Meg Reynolds
225 North Michigan Avenue
Chicago, Illinois 60601

Mr. John A. Relias
Franczek Sullivan P.C.
300 South Wacker Drive
Suite 3400
Chicago, Illinois 60606

RE: Tom Reynolds-Ejzak vs. River Forest SD 200, Case Number 2008 - 0100

Dear Ms. Reynolds and Mr. Relias:

As you both are aware, I have been assigned this case. It is my understanding that the District has filed a motion to dismiss and for summary judgment. I will grant Ms. Reynolds until October 29, 2007 to file her response. I will render my ruling on the District's motion on or before November 5, 2007. I am striking the previously scheduled pre-hearing conference of October 25, 2007.

It is also my understanding that the parties are engaging in State sponsored mediation.

In the meantime, please do not hesitate to contact me with any questions; however, I am prohibited from engaging in ex parte communication.

Sincerely,

Sheana Hermann
Impartial Due Process Hearing Officer
Cc. Mr. Andrew Eulass, Due Process Coordinator, Illinois State Board of Education

Exhibit 8

## SEDS - Special Education Database System

Due Process Schedule

Notes

March 02, 2008

Welcome Meg Reynolds

**Common tasks**

View Case Summary

**Other tasks**

Logout

View Dosier

**Related links**

Ask ISBE A Question

Help With SEDS

SEDS Manual

**Case Information**

**Student:** Tom Reynolds-Ejzak

**Case Number:** 2008-0100

**District:** Oak Park - River Forest Sd 200

**Date of Request:** 9/25/2007

**Due Process Note**

**Date of Note:** 10/18/2007

**Note Marked as:** Public

**Author:** Sheana Hermann

**Subject Category:** Continuance Request Note

**Subject:**

Continuance Request

**Note:**

District has filed a motion to dismiss and for summary judgment.

Exhibit 9

Meg Reynolds
1166 S. Clinton Ave.
Oak Park, IL 60304
Oct. 30, 2007

To: Sheana Hermann
Impartial Hearing Officer
PMB 148
Lake Forest, Illinois 60045

Re: **Tom Reynolds-Ejzak, Oak Park River Forest High School (Dist 200)**
**Case No. 2008-0100**
**Special Ed Eligibility Determinations:**
**Autism (features of Asperger's Syndrome);**
**Other Health Impairment (ADHD); and**
**LD (Central Auditory Processing Disorder)**

**Response to school district's "motions"** ***and emergency request to allow parent's hired notetaker or tape recorder in child's academic classes***

Dear Ms. Hermann:

This is in response to the letter and attachments submitted October 1, 2007 by Oak Park River Forest High School regarding my due process complaint. The letter from the district's lawyer included a "motion to dismiss" and a "motion for summary judgment." Based on the information below and attached to this letter, I also respectfully request "summary judgment" on Issues 4, 5 and 6.

My responses appear here in the order in which they appeared in the lawyer's letter (after the "Background" discussion below). Please note that because the lawyer has included 2007-2008 in his "motions," I also am requesting permission to amend my due process filing to include the current school year with respect to all complaints, and to request the additional remedy of an adult staff notetaker for my child until the end of the second week of June 2008. (My son's IEP provides for a notetaker, but this is not being provided adequately.)

*In addition, I am requesting an immediate order requiring the school to allow me to bring my own notetaker into my son's classes (or allow the classes to be tape recorded and the tapes transcribed) while these proceedings are pending.* This will prevent further injury to my son's education.

**Background.**
My son Tom has a daily need for a classroom notetaker. His disabilities include ADHD, a central auditory processing disorder (CAPD), an executive function disorder and features of Asperger's Syndrome (autism spectrum disorder). Due to these conditions, his oral memory is impaired and he is unable to take notes in class or accurately remember

and record oral information. His ADHD causes him great difficulty in organizing his thoughts and engaging in goal-directed tasks, focusing on classroom discussions and understanding and responding to what is expected of him. Even information written on the blackboard in class is missed due to his disabilities. In addition, according to the audiologists and speech pathologists who have worked with my son over the years, his CAPD causes him to behave like a child with a high-frequency hearing loss. He often misses entire classroom discussions and other oral exchanges that students without his disabilities are able to perceive and retain easily. My son also has social skills and pragmatic language deficits that make it difficult for him to communicate well enough with fellow students or seek out a teacher to obtain information from them the way a student without disabilities might.

In addition to these in-class problems, my son's disabilities cause him great difficulty in tackling his homework and longterm assignments outside of class. He needs daily help from family members and private tutors to complete these assignments and to prepare for tests. But neither his tutors nor his family can help him without an accurate, *detailed daily written record of the discussions and activities in class*, as well as *detailed daily written assignment information,* since Tom usually cannot recall this information well enough to get his homework done, prepare for tests and complete longterm assignments.

For all of these reasons, the IEP team has determined for each of the last 4 years that my son needs a classroom notetaker and has memorialized this in his IEPs. *Copies of my son's IEPs for the last 4 years are attached to the end of this submission at Parent Exhibit 1.* But the school district at various times has either not provided this accommodation at all, producing extended gaps in much-needed information for my son, or has provided it inadequately. No district employee has been assigned to implement my son's notetaker accommodation in the classroom, in violation of federal IDEA rules requiring each teacher and provider to be informed of his or her specific responsibilities related to implementing the IEP. Teachers are sometimes asked to recruit student volunteer notetakers in my son's classes, but they often do not, or the student volunteers stop volunteering, or the student takes inadequate or illegible notes, or skips days or weeks, or otherwise is not monitored. This year, my son's case manager has frequently resorted to asking *my son* for assignment information at the end of the day and writing it down. This is a little like asking a blind person what he saw. In addition, weeks have gone by where the case manager has provided blank pages or e-mails with the words "no notes" written on them instead of the classroom notes required by my son's IEP. Even when "notes" are offered, they are usually inadequate, often consisting of just a few lines or even just a few words, and do not meet my son's need for daily detailed written information. Similar problems have occurred in prior years.

I have spoken with other parents at District 200 and learned that other students with disabilities who have a "notetaker" accommodation written in their IEP have a staff notetaker assigned to them. But my son does not. This year and in years past, to try to remedy the gaps, I have asked the teachers to borrow another student's notebook and/or lend me their own curriculum pages and list of assignments going back to the first day of school, so that I may have these copied and use them to help my son catch up. Several

years ago, this retroactive information helped my son to catch up. But more recently, these requests have been ignored or refused, even though I believe the same information would have been freely available for a student without disabilities who was having difficulty. Instead, my son's teachers have resorted to assigning him "A" or "B" grades for work he didn't do at all or didn't complete correctly. The current school year has produced the most egregious examples of this yet. One teacher (Architecture) did not provide any written information at all until the 5th week of class, and then provided a retroactive list of 5 weeks of daily assignments but no notes. (There still is no notetaker in that class.) My son didn't turn in what appeared to be the majority of those assignments, yet he was given an "A" for the quarter. Rather than comply with my son's IEP, the teacher merely omitted all missing assignments from my son's grade record and assigned him "As" for everything else he did turn in. Something similar has occurred in my son's other classes.

Currently, the district is taking the position that my son is not entitled to the notetaker specified in his IEP "when there are no notes" – meaning, apparently, when a student volunteer does not happen to take notes for my son or when no notetaker volunteer has been appointed at all or when my son does not receive notes for some other reason. This year, I asked to tape record my son's classes (and have the tapes transcribed) or furnish my own hired notetaker until this problem can be worked out, *but the district has refused.*

I believe that these problems result from a school culture in which the majority of special ed students at District 200 are educated in self-contained classrooms (with other special education students only). Teachers and administrators are not required to comply with the special ed laws. Honors and AP classes are generally off-limits to students with disabilities. In the past, when I have pressed my son's teachers for his classroom accommodations, they have contacted their union representative. In 2006, the school district even invited the union representative to my son's IEP meeting. These problems need to be addressed.

For these reasons, I am now requesting an adult staff notetaker for my son until June 2008, when he is scheduled to graduate. In addition, *while these proceedings are pending*, I request that I be allowed to use a tape recorder (with transcription) or a hired notetaker in my son's classes. These remedies are requested in addition to the remedies already requested in my due process complaint.

Following are my responses to the school district's lawyer's Oct. 1, 2007 letter, in the order in which they appeared in that letter:

<u>Issues No. 1-3</u>.

**The school district alleges that retaliation claims are not proper for a due process request.** ***The school district's attorney is wrong about this.*** The IDEA complaint provision provides for the "opportunity to present complaints with respect to <u>any</u> matter <u>relating to</u> the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." <u>See</u> 20 U.S.C. §

1415(b)(6) (emphasis added). My claims regarding the district's retaliation, harassment, threats and interference in response to my requests for my son's disability accommodations clearly are "related" to these items. In addition, the federal courts have generally ruled that a parent must invoke the due process hearing procedures of the IDEA on these retaliation, ADA, Section 504 and related issues before filing a claim in federal court. *See, e.g.*, Charlie F. v. Board of Educ., 98 F.3d 989 (7th Cir. 1996). To dismiss these retaliation claims at the due process level would be to deny me any remedy at all for some pretty serious incidents. *See, e.g.*, copies of police reports concerning phone harassment at my job and my home by District 200 Special Education Director following my 2005 complaint to the School Board that my child's IEP was not being implemented, at Parent Exhibit 2.

Issues No. 4-5.

**The school district's lawyer seeks "summary judgment" because:**

a. **The issues have already been "litigated."** ***This isn't correct.*** Informal agency complaint procedures are not "litigation." The federal courts have generally ruled that state and federal complaint procedures other than the IDEA due process hearing do not suffice for exhaustion purposes. *See, e.g.*, Association for Community Living in Colo. v. Romer, 992 F.2d 1040, 1043-44 (10th Cir. 1993); Megan v. Independent Sch. Dist., 57 F. Supp. 2d 776, 790 (D. Minn. 1999); and Christopher W. v. Portsmouth School Committee, 877 F.2d 1089, 1099 (1st Cir. 1989).

Moreover, in my case, neither the state nor the federal agency informal complaint procedures that I pursued in 2005 and 2006 allowed me to receive copies of the school district's responses to my complaints. Thus I also was *prevented from addressing factual misrepresentations and misapplications of law before those agency decisions were issued.*

**"The School District has continued its implementation" of my child's IEP for the 2006-2007 (presumably meaning 2007-2008) school year.** ***Not true.*** My son's IEP is not currently being implemented. He needs, on a daily basis, detailed written information reflecting the discussion and activities in each class and detailed written assignment information (including written confirmation when there is no assignment). He also needs detailed written information about upcoming tests, quizzes and long-term and short-term assignments on *the same day this information is provided orally to other students*. The school has not adequately or consistently provided this notetaker accommodation since my son entered high school in 2004. The district also has not consistently provided my son's weekly speech therapy and social skills therapy (50 minutes each per week) as required by his IEP, although these are not the subject of this due process complaint.

The following are attached in support of these statements regarding the notetaker accommodation:

i. **IEPs for my son for the 2004-2005, 2005-2006, 2006-2007 and 2007-2008 school years,** all providing for a "notetaker" and stating that "Tom's special ed characteristics impact his ability to remember spoken directions/any oral information." See Parent Exhibit 1.

ii. **2007 e-mails from superintendent** *asking parent to promise never to seek reimbursement for her own paid notetaker and denying her request to provide her own paid notetaker* -- in violation of the IDEA's requirement of a "*free* appropriate public education" and the requirement imposed by the ADA and Section 504 of the Rehabilitation Act on recipients of federal funds to provide reasonable accommodations to a student with disabilities. See Parent Exhibit 3.

iii. **2007-2008:** Copies of carbon notebook pages (on which my son's notes were supposed to be written) with the handwritten words "no notes," and e-mails from my son's case manager for the 2007-2008 school year indicating "no notes" were provided for weeks at a time. See Parent Exhibit 4.

iv. **Sample copies of inadequate classroom "notes" that were provided** (some averaging just 9-10 words each day). See Parent Exhibit 5. At other times there has been nothing at all. For example, my son received no daily written assignment descriptions in his Architecture class from August 22 until September 20 (the 5th week of class), when he suddenly received a stapled list of 25 assignments all at once. (These were submitted by the district to you as "evidence" of compliance, though they consist of 5 weeks of retroactive assignments and no notes.) My son still has no classroom notetaker in that class. He also has no consistent notetaker in his AP English class. Over the past 11 weeks, he has received less than 2 weeks' worth of notes in his English class.

v. **2007 e-mails from parent to district administrators, teachers, superintendent, special ed director, case manager and School Board requesting permission to tape record child's classroom discussion and/or bring in own notetaker, and also requesting copies of classroom**

**notes and assignments dating back to the first day of class (Aug. 22, 2007).** These request have been ignored or refused. See Parent Exhibit 6.

vi. **2007 e-mail from case manager telling parent that student would not receive classroom notes "when there are no notes":** see Parent Exhibit 7.

b. **The school district alleges it is already providing my child with FAPE in accordance with the Supreme Court standard in Rowley and thus is entitled to "summary judgment."** ***The school district's lawyer is applying the wrong standard.*** The 1982 Rowley case cited by the school district's lawyer addressed the sufficiency of the *content* of a child's written IEP, not its *implementation*. Where, as in my child's case, the school district fails to *implement* an already established IEP, this is by definition a denial of FAPE and hence a violation of the IDEA. See 20 U.S.C. Sec. 1401(9)(D), which provides:

> "The term 'free appropriate public education' means special education and related services that ... are provided in conformity with the individualized education program." Id.

A school district cannot choose to disregard a student's IEP. See, e.g., M.L. v. Fed. Way Sch. Dist., 394 F.3d 634, 642 (9th Cir. 2005) ("Each public agency must ensure that ... special education and related services are made available to the child in accordance with the child's IEP") and special ed regulations at 34 CFR Sec. 300.323(c)(2) ("Each public agency must ensure that ... special education and related services are made available to the child in accordance with the child's IEP.").

In my case, the IEP team has determined for 4 straight years that my child needs a classroom notetaker and certain other accommodations and services in order to receive a free appropriate public education. Having made this determination, the school district must provide these "special education and related services" in conformity with my child's IEP in order to meet its obligation to provide FAPE to my son.

c.1. **The school district alleges that my child is receiving As and Bs.** ***This is not true.*** See attached summary of first quarter 2007 grades for English reflecting "Cs," "Ds" and "Fs" and a "C" average for the quarter to date, attached at Parent Exhibit 8. The grades submitted by the district's lawyer are not up-to-date. In any event, I do not believe that the district's grade reports accurately reflect my child's performance, as my son's teachers have been giving him 100% credit or "As" for assignments that he didn't even complete or didn't complete correctly. Rather than assign him "Fs"

for missing work, entire weeks of assignments have been removed from his grade records. This also happened in prior school years when I complained that my son's notetaker accommodation was not being provided. Note also that the district's lawyer has attached grades for non-academic courses, including "Academic Strategies," which is a *pass-fail* study hall (the district somehow attached an "A" grade for this class), as well as physical education and music.

c.2. **The school district implies it does not have to provide IEP accommodations to a child who passes his courses or achieves academically.** ***This is misleading and legally incorrect.*** Where the school district fails to *implement* an IEP, this is a per se denial of FAPE. *See above.* Even if my son's eligibility were at stake (and it is not), courts have ruled that the simple fact that a student is advancing from grade to grade or achieving academically is not per se evidence of an appropriate education for purposes of determining a student's *eligibility* for IEP services. See Mary P.v. ISBE, (N.D. Ill. 1996 (http://www.dueprocessillinois.org/MaryP.html). This judicial rule has since been codified in federal regulations under the IDEA at 34 CFR Section 300.101(c), which provides:

> "**300.101 Free appropriate public education (FAPE)**
>
> .....
>
> **(c) Children advancing from grade to grade**
>
> ....
>
> (2) Each State must ensure that FAPE is available to any individual child with a disability who needs special education and related services, even though the child has not failed or been retained in a course or grade, and is advancing from grade to grade."

The U.S. Department of Education also has ruled that, in identifying whether a child has a disability requiring IEP services, the IEP team should take into account whether the child's current level of achievement *reflects extraordinary parental or tutoring assistance received outside the school day. See* Lillie-Felton letter from OSEP dated May 10, 1994, at http://www.dueprocessillinois.org/LillieFelton.html. In my child's case, I have paid for him to receive regular private tutoring, at substantial personal cost, since he was in junior high school. (I can provide copies of canceled checks to prove this.) I also work personally with my son on a daily basis to ensure that he understands and completes his schoolwork and turns it in. Even if my son's eligibility were at stake (it is not), his grade record alone, false or otherwise, would not be per se evidence that he is receiving FAPE. Thus the district's attempts to rely on Rowley and false grade reports are not sufficient to defend against its failure to implement my child's IEP.

**Issue No. 6.**

**The district seeks "summary judgment" regarding IEP procedural violations because it claims this issue was previously "litigated before ISBE."** ***ISBE's attempts to intervene were inadequate and in any event did not serve to exhaust my due process remedies regarding these issues.*** As noted above, informal agency complaint procedures are not a substitute for due process and do not suffice for exhaustion purposes. The district committed serious IDEA procedural violations in refusing to issue my son's updated IEP documents at the IEP meeting and later sending me IEP documents that did not memorialize the agreements of the IEP team. *See* copies of letters attached at Parent Exhibit 9. The district also committed procedural violations in inviting the teachers' union representative (who has had no prior contact with my son at all) to my son's IEP meeting, and also in initiating contact with my ex-husband to invite him to my child's IEP meeting for the first time in 2006. (I had furnished court documentation upon enrolling my son demonstrating that my ex-husband does not have legal decisionmaking authority regarding my child's education).

In allowing these practices to continue, the district has significantly impeded my opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to my child, in violation of 20 U.S.C. Section 1414(d)(3)(ii) and 34 C.F.R. 300.324(a)(1)(ii). *See also* 20 U.S.C. Sec. 1415(F)(3)(e)(II)(ii).

For the foregoing reasons, I respectfully request that the school district's motions be denied.

Respectfully submitted,

Meg Reynolds
(parent)

cc: John Relias, Esq./Franczek & Sullivan, PC (w/encl.)
Attila Weninger (w/encl.)
Linda Cada (w/encl.)

Jun-08-2007 02:24pm From-BCBSA 13122875956 T-802 P.002 F-575

# Oak Park and River Forest High School

201 North Scoville Avenue
Oak Park, IL 60302
(708) 434-3806

## Parent/Guardian Notification of Conference Recommendations

Date: 5/31/2007
*month/day/year*

Student: Tom Reynolds-Ejzak
*student's legal name*

5/26/1990
*date of birth*

Dear Ms. Meg Reynolds ;
*legal name of parent, guardian or surrogate parent*

The purpose of this letter is to provide you with notification of the educational recommendations developed for your child at the conference held on 5/31/2007 at
*month/day/year*

OPRFHS, Oak Park, IL
*building, room and address*

At this conference it was determined that your child: *(Check all that apply to conference recommendations.)*

- [ ] is not eligible for special education and related services.
- [x] is eligible or continues to be eligible for special education and related services as listed on the IEP. (Eligibility Determination: Autism - OHI - LD (20% or less) )
- [ ] requires a change in eligibility, as listed on the conference summary report.
- [x] will receive the special education and related services as listed on the Individualized Education Program.
- [ ] requires a change of special education and/or related services/educational placement as listed on the IEP.
- [ ] will be discontinued from special education and related services due to determination of ineligibility or reaching the age of 21.
- [ ] is recommended for graduation.
- [ ] requires a placement in an alternative educational setting as documented in the IEP.
- [ ] other *(specify)* ______

Please refer to your copy of the conference summary report which contains the information used in making these recommendations. Please review the parents' rights information in the *Explanation of Procedural Safeguards*. If you wish to discuss any concerns or have questions regarding your rights or this information, please contact:

| C. Biggins | LD Program Chair | 708-434-3321 |
|---|---|---|
| *name* | *title* | *phone* |

Sincerely,

LINDA MALINOW RECORDS MANAGER
*name and title*

c: Student's temporary record

Jun-06-2007 02:24pm From-BCBSA T-302 P.003 F-575

Date:

# CONFERENCE SUMMARY REPORT

Page 1

## PURPOSE OF CONFERENCE (Check all that apply)

- [ ] Initial Evaluation
- [ ] IEP Review/Revision
- [ ] Reevaluation
- [x] Transition
- [ ] MDC Review
- [ ] Hospital Discharge
- [ ] Manifestation Determination
- [x] Annual Review
- [ ] Initial IEP
- [ ] Other

Next Ann. Rev. 5/08

Next Reeval

## STUDENT IDENTIFICATION INFORMATION

[ ] Yes [x] No Educational Surrogate Parent Required

STUDENT'S NAME Tom Reynolds-Ejzak

STUDENT'S ADDRESS (Street, City, State, Zip Code) 1166 S. Clinton Oak Park IL 60304

SEX M GRADE 11 BIRTHDATE 5/26/1990

ANTICIPATED DATE OF H.S. GRADUATION June 2008

LANGUAGE English

MODE OF COMMUNICATION Standard

ID NO. 96329 MEDICAID NO.

SERVING DIST. Oak Park-River Forest S.D. 200

SERVICE SITE Oak Park-River Forest H.S.

PRIMARY DISABILITY O - Autism

SECONDARY L - Other Health Impairment

SECONDARY D - Specific Learning Disability

SECONDARY

PARENT'S NAME Ms. Meg Reynolds

PARENT'S ADDRESS (Street, City, State, Zip Code) 1166 S. Clinton Oak Park IL 60304

PARENT'S HOME TELEPHONE 708-660-0903

PARENT'S WORK TELEPHONE

PARENT LANGUAGE English

MODE OF COMMUNICATION Standard

RESIDENT DISTRICT Oak Park-River Forest S.D. 200

HOME SCHOOL Oak Park-River Forest H.S.

PLACEMENT (To be completed after placement determination)

A. Regular education with special education instructional and/or related services provided for 20% or less of the pupil's school day outside the regular education class.

[x] Yes [ ] No Placement is in home school.

## PARTICIPANTS

Signature indicates attendance. Check appropriate boxes to indicate which meetings were attended. Anyone serving in a dual role should indicate so on the following lines.

| ELIG. REVIEW | IEP | Name / Role |
|---|---|---|
| [ ] | [x] | Ms. Meg Reynolds — Parent |
| [ ] | [x] | Mr. William Ejzak (signed) — Parent |
| [ ] | [x] | Tom Reynolds Ejzak — Student |
| [ ] | [x] | D. Bluminberg (signed) — Dean/Counselor or Regular Education Teacher |
| [ ] | [x] | J. Terretta, Teacher Representative (signed) — Special Education Teacher/Case Manager |
| [ ] | [x] | M. Walker (signed) — Other (specify) Group Counselor |
| [ ] | [ ] | Ms. Buroy Hines (signed) — Other (specify) Representative for mother |
| [ ] | [x] | V. Hughes (signed) — Speech/Language Pathologist |
| [ ] | [ ] | School Psychologist |
| [ ] | [ ] | School Social Worker |
| [ ] | [x] | C. Biggins, LD Program Chair (signed) — LEA Representative/Staffing Chair |
| [ ] | [x] | L. Cada, Director - SPED — Director/Designee |
| [ ] | [ ] | K. Knake (signed) — Other (specify) Reg. Ed. Teacher |
| [ ] | [ ] | Other (specify) |

- [x] Yes [ ] NA Explanation of Procedural Safeguards was provided to the parent(s) with the notice of conference.
- [ ] Yes [x] NA Parent(s) given a copy of the IEP.
- [ ] Yes [x] NA Parent(s) given a copy of the evaluation report and eligibility determination.
- [ ] Yes [x] NA Parent(s) given a copy of the district's behavioral intervention policies.
- [ ] Yes [x] NA Parent(s) given a copy of the district's behavioral intervention procedures (initial IEP only).
- [ ] Yes [x] NA Parent(s) given a copy of the district's behavioral intervention teachers.
- [ ] Yes [ ] NA Parent(s) excuse the participation of education teachers.

If the parent(s) did not attend the IEP meeting, document the attempts to contact the parent(s) prior to the IEP meeting.

5/30/07 (9:50a) Left message on home phone re: meeting time and date

## SPECIAL EDUCATION FUNDING AND CHILD TRACKING SYSTEM (FACTS) (For District Reporting Purposes)

| Fund | Private Facility Code | Ethnic | Disability (max. of 2) | Language | Bilingual Special Education S | A | I | Related Services (Max. of 8) | LRE | RBP | Section 14-7.03 Eligibility T | P | G | Term | Begin Date | End Date | Reason For Exit | Anticipated Svcs. Upon Exit |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (4) | (5) | (10) | (11) | (12) | (13) | (14) | (15) | (16) | (17) | (18) | (19) | (20) | (21) | (22) | (23) | (24) | (25) | (26) 02, 19 |
| | | W | OL | | | | | | | | | | | | | | | |

Student Name: Tom Reynolds-Ejzak
Date of Conf: 5/31/2007

State ID:
School ID: 96329

# Confidential Memo

| RESIDENT SCHOOL | GRADE | PRIMARY DISABILITY |
|---|---|---|
| Oak Park-River Forest H.S. | 11 | O - Autism |

**Participants/Title**

| Participants/Title | Participants/Title |
|---|---|
| Ms. Meg Reynolds — *Parent* | V. Hughes — *Speech/Language Pathologist* |
| Mr. William Ejzak — *Parent* | *School Psychologist* |
| Tom Reynolds Ejzak — *Student* | *School Social Worker* |
| D. Bluminberg — *Dean/Counselor or Regular Education Teacher* | C. Biggins, LD Program Chair — *LEA Representative/Staffing Chair* |
| J. Terretta, Teacher Representative — *Special Education Teacher/Case Manager* | L. Cade, Director - SPED — *Director/Designee* |
| M. Walker — *Other (specify)* Group Counselor | K. Knake — *Other (specify)* Reg. Ed. Teacher |
| Ms. Burcy Hines — *Other (specify)* Representative for mother | *Other (specify)* |

| RELATED SERVICES | Amt of Svcs | Initiation Date | Length of Svc |
|---|---|---|---|
| 23 - Speech/Language Services | 50 mpw during school | 5/31/07 | 5/31/08 ( |
| 24 - Social Work Services | 50 mpw during school | 5/31/07 | 5/31/08 |

**GOALS:**

| | |
|---|---|
| 1st | The student will improve study and organizational skills. |
| 2nd | To improve pragmatic language skills. |
| 3rd | will improve problem solving skills in social settings |
| 4th | will develop self-advocacy skills. |
| 5th | The student will explore post secondary options that align with his interests and abilities. |

**SUPPLEMENTARY AIDS/ACCOMMODATIONS**

| | |
|---|---|
| Extended Time | Arrange for assistance in recording daily H.W. |
| Alternative Setting | Note taker |
| Preferential Seating (near the instructor) | Chunking of tasks needed for long term assignments |

**FOLLOW-UP ACTIVITIES**

May 2007
Superior intellectual range with central auditory processing deficits/ indicators of Asperger's syndrome/ diagnosis of ADHD
Tom's sp. ed. characteristics impact his ability to remember spoken directions/any oral information
Needs to have all directions/assignment instructions written down for him /some guidance needed to address the specific details for certain assignments
Please consider scheduling Academic Strategies during one of the later class periods/ meets with CM daily after school
Interests: plays the string bass / member of the orchestra
Case manager will check use of assignment notebook on a daily basis
Interested in taking the Consumer Ed. Proficiency test first semester of Senior year

Student Name: Tom Reynolds-Ejzak
State ID:
School ID: 96329
Conference Date: 5/31/2007
Page 2A and 2B

# DOCUMENTATION OF EVALUATION RESULTS

## HEALTH - NURSE

**Immunizations:** In compliance? YES

**Medical History and Current Health Status:**

Diagnosis of ADHD (inattentive type)
Diagnosis of Central Auditory Processing Disorder
Exhibits characteristics similar to an Asperger's Syndrome diagnosis
10/22/04 Tom appears to be in good physical health.
11/9/05 Tom has no new health issues.
4/16/07Tom's health issues are unchanged.

**Current Medications:**

10/22/04 No medications at this time.
11/9/05 None.
4/16/07 None.

**Date of Last Physical:** 7/8/04

**Educationally Relevant Medical Findings:**

Diagnosis of ADHD (inattentive type)
Central Auditory Processing deficit
Exhibits characteristics of Asperger's Syndrome

## HEARING/VISION - NURSE

**Vision:** Date last tested: 4/16/07 ☐ Passed ☐ Failed ☐ Wears Contacts ☒ Wears Glasses

**Hearing:** Date last tested: 4/16/07 ☒ Passed ☐ Failed ☐ Aided

**Summary Report:**

Wears corrective lenses due to near-sightedness
10/22/04 Significant findings are as noted.
11/9/05 Significant findings are unchanged.
4/16/07 Significant findings remain the same.

**Student Name:** Tom Reynolds-Ejzak **State ID:**

**Conference Date:** 5/31/2007 **School ID:** 96329

## EDUCATIONAL ACCOMMODATIONS

*Complete for initial IEPs and annual reviews.*
Anyone responsible for implementing the educational accommodations must be notified of her/his specific responsibilities.

### CONSIDERATION OF SPECIAL FACTORS

Check the boxes to indicate if the student requires any supplementary aids and/or services due to the following factors. *For any box checked "yes," the IEP must state the supplementary aids and/or services that will be provided:*

- ☐ Yes ☐ No ☒ NA *all students - assistive technology devices and services*
- ☐ Yes ☐ No ☒ NA *all students - communication needs*
- ☐ Yes ☐ No ☒ NA deaf/hard of hearing - language and communication needs
- ☐ Yes ☐ No ☒ NA limited English proficiency - language needs
- ☐ Yes ☐ No ☒ NA blind/visually impaired - provision of Braille instruction
- ☐ Yes ☐ No ☐ NA behavior - strategies, including positive behavioral interventions and supports to address behavior *This may include a Functional Behavioral Assessment and/or a Behavioral Intervention Plan. If so, attach any completed form(s).*

### SUPPLEMENTARY AIDS

Specify what accommodations are needed in regular education classes and other education-related settings to enable the student to be educated with nondisabled peers (e.g., accommodations for daily work, tests, quizzes, environmental accommodations, moving from class to class, etc.).

- Extended Time
- Alternative Setting
- Preferential Seating (near the instructor)
- Arrange for assistance in recording daily H.W.
- Note taker
- Chunking of tasks needed for long term assignments

### STATE AND DISTRICT-WIDE ASSESSMENTS

The State assessments are the Illinois Standards Achievement Test (ISAT) at grades 3, 4, 5, 7 and 8 and the Prairie State Achievement Exam (PSAE) at grade 11.

**Student will:**

- ☐ participate in the entire State assessment with no accommodations
- ☒ participate in the entire State assessment with accommodations
- ☐ participate in part(s) of State assessment (specified below)
- ☐ NOT participate in the State assessment
- ☐ participate in the entire district-wide assessment with no accommodations
- ☒ participate in the entire district-wide assessment with accommodations
- ☐ participate in part(s) of the district-wide assessment (specified below)
- ☐ NOT participate in the district-wide assessment

If the student is completing the assessment(s) with accommodations, specify the needed accommodations (e.g. extended time, alternate setting, auditory testing).

- Administer in small group, individually or separate location
- Flexible scheduling (over several days, subtests out of order)

If the student will not participate in part or all of the assessment(s), specify why the assessment is not appropriate and document the alternate assessment to be given, including any needed accommodations.

### LINGUISTIC AND CULTURAL ACCOMMODATIONS

☐ Yes ☒ No ☐ NA The student requires accommodations for the IEP to meet her/his linguistic and cultural needs. *If yes, specify any needed accommodations:*

☐ Yes ☒ No ☐ NA Special education and related services will be provided in a language or mode of communication other than or in addition to English. *If yes, specify any needed accommodations:*

**Student Name:** Tom Reynolds-Ejzak **State ID:**

**Conference Date:** 5/31/2007 **School ID:** 96329

**PRESENT LEVELS OF EDUCATIONAL PERFORMANCE**

*Complete for all IEPs.*

**When completing this page, include all areas from the following list that are impacted by the student's disability, this may include strengths/adverse effects identified in the most recent evaluation: academic performance, social/emotional status, independent functioning, vocational, motor skills, speech and language/communication.**

STUDENT STRENGTHS

**State how the disability affects the student's involvement and progress in the general curriculum or for preschool children, as appropriate, how the disability affects the child's participation in appropriate activities.** ***This should reflect the adverse effects identified in the student's most recent evaluation and eligibility determination.***

PARENTAL EDUCATIONAL CONCERNS

April 2005
Mother was concerned that Tom is not always sure what he has to do with some assignments, more so in English and History .
A detailed rubric was very helpful in organizing the process for writing.
May 2007
Mother did not attend staffing. Mother sent a representative in her place.

## CONFERENCE SUMMARY REPORT

Date: 1/25/2006

Page 1

**PURPOSE OF CONFERENCE** *(Check all that apply)*

☐ Initial Evaluation ☒ Transition ☐ Manifestation Determination ☐ Other

☐ IEP Review/Revision ☐ MDC Review ☒ Annual Review Next Ann. Rev. 11/06

☐ Reevaluation ☐ Hospital Discharge ☐ Initial IEP Next Reeval 11/06

**STUDENT IDENTIFICATION INFORMATION**

*STUDENT'S NAME* Tom Reynolds-Ejzak

*STUDENT'S ADDRESS (Street, City, State, Zip Code)* 1166 S. Clinton Oak Park IL 60304

*SEX* M *GRADE* 10 *BIRTHDATE* 5/26/1990

*ANTICIPATED DATE OF H.S. GRADUATION* June 2008

*LANGUAGE* English

*MODE OF COMMUNICATION* Standard

*ID NO.* 95329 *MEDICAID NO.*

*SERVING DIST.* Oak Park-River Forest S.D. 200

*SERVICE SITE* Oak Park-River Forest H.S.

*PRIMARY DISABILITY* O - Autism

*SECONDARY* L - Other Health Impairment

*SECONDARY* D - Specific Learning Disability

*SECONDARY*

☐ Yes ☒ No Educational Surrogate Parent Required

*PARENT'S NAME* Ms. Meg Reynolds

*PARENT'S ADDRESS (Street, City, State, Zip Code)* 1166 S. Clinton Oak Park IL 60304

*PARENT'S HOME TELEPHONE* 708-660-0903

*PARENT'S WORK TELEPHONE*

*PARENT LANGUAGE* English

*MODE OF COMMUNICATION* Standard

*RESIDENT DISTRICT* Oak Park-River Forest S.D. 200

*HOME SCHOOL* Oak Park-River Forest H.S.

*PLACEMENT* (To be completed after placement determination)

A. Regular education with special education instructional and/or related services provided for 20% or less of the pupil's school day outside the regular education class.

☒ Yes ☐ No Placement is in home school.

**PARTICIPANTS**

**Signature indicates attendance.** Check appropriate boxes to indicate which meetings were attended. Anyone serving in a dual role should indicate so on the following lines.

| ELIG. REVIEW | IEP | Name / Role | ELIG. REVIEW | IEP | Name / Role |
|---|---|---|---|---|---|
| ☐ | ☒ | Ms. Meg Reynolds — *Parent* | ☐ | ☒ | V. Hughes — *Speech/Language Pathologist* |
| ☐ | ☒ | *Parent/Advocate* | ☐ | ☐ | *School Psychologist* |
| ☐ | ☒ | Tom Reynolds Ejzak — *Student* | ☐ | ☐ | *School Social Worker* |
| ☐ | ☒ | D. Bluminberg — *Dean/Counselor or Regular Education Teacher* | ☐ | ☒ | C. Biggins, LD Program Chair — *LEA Representative/Staffing Chair* |
| ☐ | ☒ | J. Terratta, Teacher Representative — *Special Education Teacher/Case Manager* | ☐ | ☒ | L. Cada, Director - SPED — *Director/Designee* |
| ☐ | ☒ | M. Walker — *Other (specify)* Group Counselor | ☐ | ☐ | J. Relias — *Other (specify)* Atty. |
| ☐ | ☒ | Selpedio, Ebsen, Myers — *Other (specify)* Teacher | ☐ | ☐ | Hunt, Pearson — *Other (specify)* Teachers |

☒ Yes ☐ NA Explanation of Procedural Safeguards was provided to the parent(s) with the notice of conference.

☐ Yes ☐ NA Parent(s) given a copy of the IEP.

☐ Yes ☐ NA Parent(s) given a copy of the evaluation report and eligibility determination.

☒ Yes ☐ NA Parent(s) given a copy of the district's behavioral intervention policies.

☐ Yes ☐ NA Parent(s) given a copy of the district's behavioral intervention procedures (initial IEP only).

☐ Yes ☐ NA Parent(s) excuse the participation of education teachers

If the parent(s) did not attend the IEP meeting, document the attempts to contact the parent(s) prior to the IEP meeting.

1/24/06 (8:05a) Left message on home phone answering machine re: meeting time and date.

**SPECIAL EDUCATION FUNDING AND CHILD TRACKING SYSTEM (FACTS)** (For District Reporting Purposes)

| Fund | Private Facility Code | Ethnic | Disability (max. of 2) | Language | Bilingual Special Education S | A | I | Related Services (Max. of 8) | LRE | RBP | Section 14-7.03 Eligibility T | P | G | Term | Begin Date | End Date | Reason For Exit | Anticipated Svcs. Upon Exit |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (4) | (5) | (10) | (11) | (12) | (13) | (14) | (15) | (16) | (17) | (18) | (19) | (20) | (21) | (22) | (23) | (24) | (25) | (26) |
| | | W | OL | | | | | | | | | | | | | | | 19 |

312-814-8871

Student Name: Tom Reynolds-Ejzak

State ID:

Conference Date: 4/6/2005

School ID: 96329

# DOCUMENTATION OF EVALUATION RESULTS

Page 2A and 2B

## HEALTH - NURSE

**Immunizations:** In compliance? YES

**Medical History and Current Health Status:**

Tx of ADHD (inattentive type)
Tx of Central Auditory Processing Disorder
Exhibits characteristics similar to an Asperger's Syndrome diagnosis
10/22/04 Tom appears to be in good physical health.

**Current Medications:**

None
Updated upon entry to high school (8/04)
10/22/04 No medications at this time.

**Date of Last Physical:** 10/22/04

**Educationally Relevant Medical Findings:**

Tx of ADHD
Tx of Central Auditory Processing difficulties
Exhibits characteristics of Asperger's Syndrome

## HEARING/VISION - NURSE

**Vision:** Date last tested: 10/22/04 ☐ Passed ☐ Failed ☐ Wears Contacts ☒ Wears Glasses

**Hearing:** Date last tested: 10/22/04 ☒ Passed ☐ Failed ☐ Aided

**Summary Report:**

Wears corrective lenses due to near-sightedness
10/22/04 Significant findings are as noted.

Student Name: Tom Reynolds-Ejzak
Date of Conf: 4/6/2005

State ID:
School ID: 96329

# Confidential Memo

| RESIDENT SCHOOL | GRADE | PRIMARY DISABILITY |
|---|---|---|
| Oak Park-River Forest H.S. | 09 | O - Autism |

**Participants/Title**

| Name | Title | Name | Title |
|---|---|---|---|
| Ms. Meg Reynolds | *Parent* | V. Hughes | *Speech/Language Pathologist* |
| | *Parent* | | *School Psychologist* |
| Tom Reynolds Ejzak | *Student* | | *School Social Worker* |
| D. Bluminberg | *Dean/Counselor or Regular Education Teacher* | C. Biggins, LD Program Chair | *LEA Representative/Staffing Chair* |
| J. Terretta, Teacher Representative | *Special Education Teacher/Case Manager* | L. Cada, Director - SPED | *Director/Designee* |
| M. Walker | *Other (specify)* Group Counselor | | *Other (specify)* |
| | *Other (specify)* | | *Other (specify)* |

**RELATED SERVICES**

| Service | Amt of Svcs | Initiation Date | Length of Svc |
|---|---|---|---|
| 23 - Speech/Language Services | 50 mpw | 4/6/05 | 4/6/06 |
| 24 - Social Work Services | 50 mpw | 4/6/05 | 4/6/06 |

**GOALS:**

- 1st: The student will improve study and organizational skills.
- 2nd: To improve pragmatic language skills.
- 3rd: will improve problem solving skills in social settings
- 4th: will develop self-advocacy skills.
- 5th:

This was part of my son's IEP. Did the school provide this to Tom?

**SUPPLEMENTARY AIDS/ACCOMMODATIONS**

| | |
|---|---|
| Extended Time | Arrange for assistance in recording daily H.W. |
| Alternative Setting | Note taker |
| Preferential Seating (near the instructor) | Chunking of tasks needed for long term assignments |

**FOLLOW-UP ACTIVITIES**

April 2005
Superior intellectual range with central auditory processing deficits/ indicators of Asperger's syndrome/ Tx of ADHD
Tom's sp. ed. characteristics impact his ability to remember spoken directions/any oral information
Needs to have all directions/assignment instructions written down for him /some guidance needed to address the specific details for certain assignments
Please consider scheduling Academic Strategies during 10th period / meets with CM daily after school
Speech/Lang. and Social Work: Direct service
Interests: plays the string bass / member of the orchestra
Case manager will check use of assignment notebook on a daily basis
Interested in taking the Computer Profiency and /or Consumer Ed. Profiency tests

Student Name: Tom Reynolds-Ejzak
Conference Date: 4/6/2005

State ID:
School ID: 96329

## ADDITIONAL IEP INFORMATION

February 2004
Parent reported that Tom is a smart boy who loves to draw. He has some difficulties with social interactions/ has had a lot of accommodations that have been beneficial to meet his needs/ parent is concerned with the transition to high school.
Teachers from Ascension do agree with the need to have certain accommodations in place for Tom.
Directions and general instructions need to be in written form in order for him to achieve successful completion.
He often presents himself as rude and disrespectful to adults. He needs a lot of role playing opportunities to assist with these needs.
He draws quite often in class . He enjoys reading. He is very disorganized. He will do homework in the homework monitoring room after school where all assignments are written on a board.
He has trouble with friendships. He did attend a large school dance recently, which was a big social step for him--his even commented on the fact that going to the dance was a big step for him.

Student Name: Tom Reynolds-Ejzak
Conference Date: 4/6/2005

State ID:
School ID: 96329

## EDUCATIONAL ACCOMMODATIONS

*Complete for initial IEPs and annual reviews.*
Anyone responsible for implementing the educational accommodations must be notified of her/his specific responsibilities.

### CONSIDERATION OF SPECIAL FACTORS

Check the boxes to indicate if the student requires any supplementary aids and/or services due to the following factors. *For any box checked "yes," the IEP must state the supplementary aids and/or services that will be provided.*

☐ Yes ☐ No ☒ NA *all students - assistive technology devices and services*
☐ Yes ☐ No ☒ NA *all students - communication needs*
☐ Yes ☐ No ☒ NA deaf/hard of hearing - language and communication needs
☐ Yes ☐ No ☒ NA limited English proficiency - language needs
☐ Yes ☐ No ☒ NA blind/visually impaired - provision of Braille instruction
☐ Yes ☐ No ☐ NA behavior - strategies, including positive behavioral interventions and supports to address behavior *This may include a Functional Behavioral Assessment and/or a Behavioral Intervention Plan. If so, attach any completed form(s).*

### SUPPLEMENTARY AIDS

Specify what accommodations are needed in regular education classes and other education-related settings to enable the student to be educated with nondisabled peers (e.g., accommodations for daily work, tests, quizzes, environmental accommodations, moving from class to class, etc.).

Extended Time
Alternative Setting
Preferential Seating (near the instructor)
Arrange for assistance in recording daily H.W.
Note taker
Chuncking of tasks needed for long term assugnments

### STATE AND DISTRICT-WIDE ASSESSMENTS

The State assessments are the Illinois Standards Achievement Test (ISAT) at grades 3, 4, 5, 7 and 8 and the Prairie State Achievement Exam (PSAE) at grade 11.

Student will:

☐ participate in the entire State assessment with no accommodations
☒ participate in the entire State assessment with accommodations
☐ participate in part(s) of State assessment (specified below)
☐ NOT participate in the State assessment

☐ participate in the entire district-wide assessment with no accommodations
☒ participate in the entire district-wide assessment with accommodations
☐ participate in part(s) of the district-wide assessment (specified below)
☐ NOT participate in the district-wide assessment

If the student is completing the assessment(s) with accommodations, specify the needed accommodations (e.g. extended time, alternate setting, auditory testing).

Administer in small group, individually or separate location
Flexible scheduling (over several days, subtests out of order)

If the student will not participate in part or all of the assessment(s), specify why the assessment is not appropriate and document the alternate assessment to be given, including any needed accommodations.

### LINGUISTIC AND CULTURAL ACCOMMODATIONS

☐ Yes ☒ No ☐ NA The student requires accommodations for the IEP to meet her/his linguistic and cultural needs. *If yes, specify any needed accommodations:*

☐ Yes ☒ No ☐ NA Special education and related services will be provided in a language or mode of communication other than or in addition to English. *If yes, specify any needed accommodations:*

Student Name: Tom Reynolds-Ejzak

State ID:

Conference Date: 4/6/2005

School ID: 96329

# EDUCATIONAL SERVICES AND PLACEMENT

*Complete for initial IEPs and annual reviews.*

Anyone responsible for implementing special education services must be notified of her/his specific responsibilities.

## PARTICIPATION IN REGULAR EDUCATION CLASSES AND OTHER EDUCATION-RELATED SETTINGS

The IEP must specify if the student will participate in regular physical education.

REGULAR EDUCATION

Physical Education

Pl. Geometry 1A and Chemistry 1A

Spanish 1 or 1A and English Lit.1A

Symph. Orchestra

REGULAR EDUCATION - with supplementary aids, as specified in the "Supplementary Aids" section of the IEP

| SPECIAL EDUCATION | Amount of Services | Initiation Date | Length of Services |
|---|---|---|---|
| Academic Strategies | 150 mpw | 4/6/05 | 4/6/06 |

| RELATED SERVICES | Amount of Services | Initiation Date | Length of Services |
|---|---|---|---|
| 23 - Speech/Language Services | 50 mpw | 4/6/05 | 4/6/06 |
| 24 - Social Work Services | 50 mpw | 4/6/05 | 4/6/06 |

Provide an explanation of the extent, if any, to which the student will not participate with nondisabled students in regular education classes and activities.

Provision of services is too disruptive to the general education setting.

## PLACEMENT DETERMINATION

The placement shall be appropriate to the student's needs and least restrictive of the student's interaction with nondisabled children: based on the student's IEP and located as close as possible to the student's home, unless the IEP requires some other arrangements, in the school he/she would attend if not disabled; and consistent with the findings of the case study evaluation.

☐ Yes ☒ NA A special class, separate schooling or removal from the regular education environment is required because the nature or severity of the student's disability is such that education in regular classes with the use of supplementary aids and services can not be achieved satisfactorily.

| PLACEMENT OPTIONS CONSIDERED<br>When determining the placement, consider any potentially harmful effect either on the student or the quality of services that he/she needs. After determining the student's placement, complete the "Placement" section on this cover | TEAM ACCEPTS PLACEMENT |
|---|---|
| Regular education without special education and / or related services. | ☐ Yes ☒ No |
| A - Special Ed instructional and/or related services provided for 20% or less OUTSIDE Regular Ed classroom | ☒ Yes ☐ No |
| F - Special Ed instructional and/or related services provided for more than 60% in a building that houses programs for Regular Ed | ☐ Yes ☒ No |

**Oak Park and River Forest High School**
201 North Scoville Avenue
Oak Park, IL 60302
(708) 434-3806

## Parent/Guardian Notification of Conference Recommendations

Date: 4/6/2005
*month/day/year*

Student: Tom Reynolds-Ejzak
*student's legal name*

5/26/1990
*date of birth*

Dear Ms. Meg Reynolds :
*legal name of parent, guardian or surrogate parent*

The purpose of this letter is to provide you with notification of the educational recommendations developed for your child at the conference held on 4/6/2005 (*month/day/year*) at OPRFHS, Oak Park, IL (*building, room and address*)

At this conference it was determined that your child: *(Check all that apply to conference recommendations.)*

- ☐ is not eligible for special education and related services.
- ☑ is eligible or continues to be eligible for special education and related services as listed on the IEP. (Eligibility Determination: Autism / OHI / LD Memory #1)
- ☐ requires a change in eligibility, as listed on the conference summary report.
- ☑ will receive the special education and related services as listed on the Individualized Education Program.
- ☐ requires a change of special education and/or related services/educational placement as listed on the IEP.
- ☐ will be discontinued from special education and related services due to determination of ineligibility or reaching the age of 21.
- ☐ is recommended for graduation.
- ☐ requires a placement in an alternative educational setting as documented in the IEP.
- ☐ other *(specify)*

Please refer to your copy of the conference summary report which contains the information used in making these recommendations. Please review the parents' rights information in the *Explanation of Procedural Safeguards*. If you wish to discuss any concerns or have questions regarding your rights or this information, please contact:

| C. Biggins | LD Program Chair | 708-434-3321 |
|---|---|---|
| *name* | *title* | *phone* |

Sincerely,

L. Evans Staffing Chair Assistant
*name and title*

c: Student's temporary record

CONFERENCE SUMMARY REPORT

Date: 4/[illegible]

[illegible]

☐ Initial Evaluation ☒ IEP Review/Revision ☐ Reevaluation ☐ Transition ☐ Mod. Review ☐ Hospital Discharge ☐ Manifestation Determination ☐ Annual Review ☐ Other

Next Ann. Rev. 1[illegible]

Next Reeval. 1[illegible]

## STUDENT IDENTIFICATION INFORMATION

STUDENT'S NAME: Tom Reynolds-Elzak

STUDENT'S ADDRESS (Street, City, State, Zip Code): [illegible] Oak Park IL 60304

SEX: M GRADE: 09 BIRTHDATE: 6/28/1990

ANTICIPATED DATE OF H.S. GRADUATION: June 2008

LANGUAGE: English

MODE OF COMMUNICATION: Standard

ID NO.: 98[illegible] MEDICAID NO.:

SERVING DIST.: Oak Park River Forest S.D. 200

SERVICE SITE: Oak Park River Forest H.S.

PRIMARY DISABILITY: O - Autism

SECONDARY: L - Other Health Impairment

SECONDARY: D - Specific Learning Disability

SECONDARY:

☐ Yes ☐ No Educational Surrogate Parent Required

PARENT'S NAME: Ms. Meg Reynolds

PARENT'S ADDRESS (Street, City, State, Zip Code): [illegible] Oak Park IL 6030[illegible]

PARENT'S HOME TELEPHONE: 708-660-09[illegible]

PARENT'S WORK TELEPHONE:

PARENT'S LANGUAGE: English

MODE OF COMMUNICATION: Standard

RESIDENT DISTRICT: Oak Park River Forest S.D. 200

HOME SCHOOL: Oak Park River Forest H.S.

PLACEMENT (to be completed after placement determination): Regular education with special education instruction and/or related services provided for 20% or less of the pupil's school day outside the regular education class.

☒ Yes ☐ No Placement is in home school.

## PARTICIPANTS

Signature indicates attendance. Check appropriate boxes to indicate which meetings were attended. Anyone serving in a dual role should indicate so on the following lines.

| ELIG. REVIEW | IEP | Name / Role | ELIG. REVIEW | IEP | Name / Role |
|---|---|---|---|---|---|
| ☐ | ☒ | Ms. Meg Reynolds — *Parent* | ☐ | ☒ | V. Hughes — *Speech/Language Pathologist* |
| ☐ | ☐ | — *Parent* | ☐ | ☐ | — *School Psychologist* |
| ☐ | ☒ | Tom Reynolds Elzak — *Student* | ☐ | ☐ | — *School Social Worker* |
| ☐ | ☒ | D. Blumberg — *Dean/Counselor or Regular Education Teacher* | ☐ | ☒ | C. Biggins, LD Program Chair — *LEA Representative/Staffing Chair* |
| ☐ | ☒ | J. Terretta, Teacher Representative — *Special Education Teacher/Case Manager* | ☐ | ☒ | L. Cuda, Director - SPED — *Director/Designee* |
| ☐ | ☒ | M. Walker — *Other (specify)* Group Counselor | ☐ | ☐ | — *Other (specify)* |
| ☐ | ☐ | — *Other (specify)* | ☐ | ☐ | — *Other (specify)* |

☒ Yes ☐ NA Explanation of Procedural Safeguards was provided to the parent(s) with the notice of conference.

☐ Yes ☐ NA Parent(s) given a copy of the IEP.

☐ Yes ☐ NA Parent(s) given a copy of the evaluation report and eligibility determination.

☐ Yes ☐ NA Parent(s) given a copy of the district's behavioral intervention policies.

☐ Yes ☒ NA Parent(s) given a copy of the district's behavioral intervention procedures (initial IEP only).

If the parent(s) did not attend the IEP meeting, document the attempts to contact the parent(s) prior to the IEP meeting.

4/5/05 (8:20a) Tried to leave message on home phone, continue ringing. (8:45a) Left message on wk phone @ (312-269-8000) re: meeting time and date.

## SPECIAL EDUCATION FUNDING AND CHILD TRACKING SYSTEM (FACTS) (For District Reporting Purposes)

| Fund | Private Facility Code | Ethnic | Disability (max. of 2) | Language | Bilingual Special Education S | A | I | Related Services (Max. of 8) | LRE | RBP | Section 14-7.03 Eligibility T | P | G | Term | Begin Date | End Date | Reason For Exit | Anticipated Svcs. Upon Exit |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (4) | (5) | (10) | (11) | (12) | (13) | (14) | (15) | (16) | (17) | (18) | (19) | (20) | (21) | (22) | (23) | (24) | (25) | (26) |
| | | W | OL | | | | | | | | | | | | | | | 19 |

Student Name: Tom Reynolds-Ejzak
Date of Conf: 4/6/2005

State ID:
School ID: 96329

# Confidential Memo

| RESIDENT SCHOOL | GRADE | PRIMARY DISABILITY |
|---|---|---|
| Oak Park-River Forest H.S. | 09 | O - Autism |

| Participants/Title | Participants/Title |
|---|---|
| Ms. Meg Reynolds — *Parent* | V. Hughes — *Speech/Language Pathologist* |
| *Parent* | *School Psychologist* |
| Tom Reynolds Ejzak — *Student* | *School Social Worker* |
| D. Bluminberg — *Dean/Counselor or Regular Education Teacher* | C. Biggins, LD Program Chair — *LEA Representative/Staffing Chair* |
| J. Terretta, Teacher Representative — *Special Education Teacher/Case Manager* | L. Cada, Director - SPED — *Director/Designee* |
| M. Walker — *Other (specify)* Group Counselor | *Other (specify)* |
| *Other (specify)* | *Other (specify)* |

| RELATED SERVICES | Amt of Svcs | Initiation Date | Length of Svc |
|---|---|---|---|
| 23 - Speech/Language Services | 50 mpw | 4/6/05 | 4/6/06 |
| 24 - Social Work Services | 50 mpw | 4/6/05 | 4/6/06 |

**GOALS:**

| | |
|---|---|
| 1st | The student will improve study and organizational skills. |
| 2nd | To improve pragmatic language skills. |
| 3rd | will improve problem solving skills in social settings |
| 4th | will develop self-advocacy skills. |
| 5th | |

This was part of my son's IEP. Did the school provide this to [illegible]?

**SUPPLEMENTARY AIDS/ACCOMMODATIONS**

| | |
|---|---|
| Extended Time | Arrange for assistance in recording daily H.W. |
| Alternative Setting | Note taker |
| Preferential Seating (near the instructor) | Chuncking of tasks needed for long term assugnments |

**FOLLOW-UP ACTIVITIES**

April 2005
Superior intellectual range with central auditory processing deficits/ indicators of Asperger's syndrome/ Tx of ADHD
Tom's sp. ed. characteristics impact his ability to remember spoken directions/any oral information
[illegible] instructions written down for him /some guidance needed to address the specific details for certain assignments
Please consider scheduling Academic Strategies during 10th period / meets with CM daily after school
Speech/Lang. and Social Work: Direct service
Interests: plays the string bass / member of the orchestra
Case manager will check use of assignment notebook on a daily basis
Interested in taking the Computer Profiency and /or Consumer Ed. Profiency tests

**Student Name:** ~~Tom~~ Reynolds-Ejzak **State ID:**

**Conference Date:** 4/6/2005 **School ID:** 96329

**ADDITIONAL IEP INFORMATION** 

February 2004
Parent reported that Tom is a smart boy who loves to draw. He has some difficulties with social interactions/ has had a lot of accommodations that have been beneficial to meet his needs/ parent is concerned with the transition to high school.
Teachers from Ascension do agree with the need to have certain accommodations in place for Tom.
Directions and general instructions need to be in written form in order for him to achieve successful completion.
He often presents himself as rude and disrespectful to adults. He needs a lot of role playing opportunities to assist with these needs.
He draws quite often in class . He enjoys reading. He is very disorganized. He will do homework in the homework monitoring room after school where all assignments are written on a board.
He has trouble with friendships. He did attend a large school dance recently, which was a big social step for him--his even commented on the fact that going to the dance was a big step for him.

**Student Name:** Tom Reynolds-Eizak
**Conference Date:** 4/6/2005

**State ID:**
**School ID:** 96329

# EDUCATIONAL ACCOMMODATIONS

Page 6

*Complete for initial IEPs and annual reviews.*
Anyone responsible for implementing the educational accommodations must be notified of her/his specific responsibilities.

## CONSIDERATION OF SPECIAL FACTORS

Check the boxes to indicate if the student requires any supplementary aids and/or services due to the following factors. *For any box checked "yes," the IEP must state the supplementary aids and/or services that will be provided.*

- ☐ Yes ☐ No ☒ NA *all students - assistive technology devices and services*
- ☐ Yes ☐ No ☒ NA *all students - communication needs*
- ☐ Yes ☐ No ☒ NA deaf/hard of hearing - language and communication needs
- ☐ Yes ☐ No ☒ NA limited English proficiency - language needs
- ☐ Yes ☐ No ☒ NA blind/visually impaired - provision of Braille instruction
- ☐ Yes ☐ No ☐ NA behavior - strategies, including positive behavioral interventions and supports to address behavior *This may include a Functional Behavioral Assessment and/or a Behavioral Intervention Plan. If so, attach any completed form(s).*

## SUPPLEMENTARY AIDS

Specify what accommodations are needed in regular education classes and other education-related settings to enable the student to be educated with nondisabled peers (e.g., accommodations for daily work, tests, quizzes, environmental accommodations, moving from class to class, etc.).

Extended Time
Arrange for assistance in recording daily H.W.
Alternative Setting
Note taker
Preferential Seating (near the instructor)
Chuncking of tasks needed for long term assugnments

## STATE AND DISTRICT-WIDE ASSESSMENTS

The State assessments are the Illinois Standards Achievement Test (ISAT) at grades 3, 4, 5, 7 and 8 and the Prairie State Achievement Exam (PSAE) at grade 11.

**Student will:**

- ☐ participate in the entire State assessment with no accommodations
- ☒ participate in the entire State assessment with accommodations
- ☐ participate in part(s) of State assessment (specified below)
- ☐ **NOT** participate in the State assessment
- ☐ participate in the entire district-wide assessment with no accommodations
- ☒ participate in the entire district-wide assessment with accommodations
- ☐ participate in part(s) of the district-wide assessment (specified below)
- ☐ **NOT** participate in the district-wide assessment

If the student is completing the assessment(s) with accommodations, specify the needed accommodations (e.g. extended time, alternate setting, auditory testing).

Administer in small group, individually or separate location
Flexible scheduling (over several days, subtests out of order)

If the student will not participate in part or all of the assessment(s), specify why the assessment is not appropriate and document the alternate assessment to be given, including any needed accommodations.

## LINGUISTIC AND CULTURAL ACCOMMODATIONS

☐ Yes ☒ No ☐ NA The student requires accommodations for the IEP to meet her/his linguistic and cultural needs. *If yes, specify any needed accommodations:*

☐ Yes ☒ No ☐ NA Special education and related services will be provided in a language or mode of communication other than or in addition to English. *If yes, specify any needed accommodations:*

Student Name: Tom Reynolds-[illegible]zak

Conference Date: 4/6/2005

State ID:

School ID: 96329

Page 7

## EDUCATIONAL SERVICES AND PLACEMENT

Complete for initial IEPs and annual reviews.

Any [illegible] responsible for implementing special education services must be notified of her/his specific responsibilities.

### PARTICIPATION IN REGULAR EDUCATION CLASSES AND OTHER EDUCATION-RELATED SETTINGS

The IEP must specify if the student will participate in regular physical education.

REGULAR EDUCATION

Physical Education | Pl. Geometry 1A and Chemistry 1A

Spanish 1 or 1A and English Lit.1A | Symph. Orchestra

REGULAR EDUCATION - with supplementary aids, as specified in the "Supplementary Aids" section of the IEP

| SPECIAL EDUCATION | Amount of Services | Initiation Date | Length of Services |
|---|---|---|---|
| Academic Strategies | 150 mpw | 4/6/05 | 4/6/06 |

| RELATED SERVICES | Amount of Services | Initiation Date | Length of Services |
|---|---|---|---|
| 23 - Speech/Language Services | 50 mpw | 4/6/05 | 4/6/06 |
| 24 - Social Work Services | 50 mpw | 4/6/05 | 4/6/06 |

Provide an explanation of the extent, if any, to which the student will not participate with nondisabled students in regular education classes and activities.

Provision of services is too disruptive to the general education setting.

### PLACEMENT DETERMINATION

The placement shall be appropriate to the student's needs and least restrictive of the student's interaction with nondisabled children: based on the student's IEP and located as close as possible to the student's home, unless the IEP requires some other arrangements, in the school he/she would attend if not disabled; and consistent with the findings of the case study evaluation.

☐ Yes ☒ NA A special class, separate schooling or removal from the regular education environment is required because the nature or severity of the student's disability is such that education in regular classes with the use of supplementary aids and services can not be achieved satisfactorily.

| PLACEMENT OPTIONS CONSIDERED<br>When determining the placement, consider any potentially harmful affect either on the student or the quality of services that he/she needs. After determining the student's placement, complete the "Placement" section on this cover | TEAM ACCEPTS PLACEMENT |
|---|---|
| Regular education without special education and / or related services. | ☐ Yes ☒ No |
| A - Special Ed instructional and/or related services provided for 20% or less OUTSIDE Regular Ed classroom | ☒ Yes ☐ No |
| F - Special Ed instructional and/or related services provided for more than 60% in a building that houses programs for Regular Ed | ☐ Yes ☒ No |

# Oak Park and River Forest High School

201 North Scoville Avenue
Oak Park, IL 60302
(708) 434-3806

## Parent/Guardian Notification of Conference Recommendations

Date: 2/23/2004
*month/day/year*

Student: Tom Reynolds-Ejzak
*student's legal name*

5/26/1990
*date of birth*

Dear Ms. Meg Reynolds:
*legal name of parent, guardian or surrogate parent*

The purpose of this letter is to provide you with notification of the educational recommendations developed for your child at the conference held on 2/23/2004 *(month/day/year)* at OPRFHS, Oak Park, IL *(building, room and address)*

At this conference it was determined that your child: *(Check all that apply to conference recommendations.)*

- [ ] is not eligible for special education and related services.
- [x] is eligible or continues to be eligible for special education and related services as listed on the IEP. (Eligibility Determination: AUTISM, OHI, LD Resource w/ social work + sp/lang as related services
- [ ] requires a change in eligibility, as listed on the conference summary report.
- [x] will receive the special education and related services as listed on the Individualized Education Program.
- [ ] requires a change of special education and/or related services/educational placement as listed on the IEP.
- [ ] will be discontinued from special education and related services due to determination of ineligibility or reaching the age of 21.
- [ ] is recommended for graduation.
- [ ] requires a placement in an alternative educational setting as documented in the IEP.
- [ ] other *(specify)*

Please refer to your copy of the conference summary report which contains the information used in making these recommendations. Please review the parents' rights information in the *Explanation of Procedural Safeguards.* If you wish to discuss any concerns or have questions regarding your rights or this information, please contact:

| C. Biggins | LD Program Chair | 708-434-3321 |
|---|---|---|
| *name* | *title* | *phone* |

Sincerely,

L. Evans Staffing Chair Assistant
*name and title*

c: Student's temporary record

ISBE 34-57 F (10/00) PARENT/GUARDIAN NOTIFICATION OF CONFERENCE RECOMMENDATIONS

# CONFERENCE SUMMARY REPORT

Date: 2/23/2004

Page 1

**PURPOSE OF CONFERENCE** *(Check all that apply)*

- ☐ Initial Evaluation
- ☐ IEP Review/Revision
- ☐ Reevaluation
- ☒ Transition
- ☐ MDC Review
- ☐ Hospital Discharge
- ☐ Manifestation Determination
- ☐ Annual Review
- ☐ Initial IEP
- ☐ Other ______
- Next Ann. Rev. ______
- Next Reeval ______

**STUDENT IDENTIFICATION INFORMATION**

STUDENT'S NAME Tom Reynolds-Ejzak

STUDENT'S ADDRESS (Street, City, State, Zip Code) 1166 S. Clinton Oak Park IL 60304

SEX M GRADE ____ BIRTHDATE 5/26/1990

ANTICIPATED DATE OF H.S. GRADUATION ______

LANGUAGE English

MODE OF COMMUNICATION Standard

ID NO. 96329 MEDICAID NO. ______

SERVING DIST. Oak Park-River Forest S.D. 200

SERVICE SITE Oak Park-River Forest H.S.

PRIMARY DISABILITY ______

SECONDARY ______

SECONDARY ______

SECONDARY ______

☐ Yes ☒ No Educational Surrogate Parent Required

PARENT'S NAME Ms. Meg Reynolds

PARENT'S ADDRESS (Street, City, State, Zip Code) 1166 S. Clinton Oak Park IL 60304

PARENT'S HOME TELEPHONE 708-660-0903

PARENT'S WORKTELEPHONE 312/269-5357

PARENT LANGUAGE English

MODE OF COMMUNICATION Standard

RESIDENT DISTRICT Oak Park-River Forest S.D. 200

HOME SCHOOL Oak Park-River Forest H.S.

PLACEMENT (To be completed after placement determination)

☒ Yes ☐ No Placement is in home school.

**PARTICIPANTS**

**Signature indicates attendance.** Check appropriate boxes to indicate which meetings were attended. Anyone serving in a dual role should indicate so on the following lines.

| ELIG. REVIEW | IEP | Name / Role | ELIG. REVIEW | IEP | Name / Role |
|---|---|---|---|---|---|
| ☐ | ☒ | Ms. Meg Reynolds — *Parent* | ☐ | ☒ | L. Budde - Brooks — *Speech/Language Pathologist* |
| ☐ | ☐ | [signature] — *Parent* | ☐ | ☒ | M. Maciak - Brooks [signature] — *School Psychologist* |
| ☐ | ☒ | Tom Reynolds Ejzak — *Student* | ☐ | ☒ | S. Williams - Brooks [signature] — *School Social Worker* |
| ☐ | ☒ | D. Bluminberg [signature] — *Dean/Counselor or Regular Education Teacher* | ☐ | ☒ | C. Biggins, LD Program Chair [signature] — *LEA Representative/Staffing Chair* |
| ☐ | ☒ | T. Allison, Teacher Representative [signature] — *Special Education Teacher/Case Manager* | ☐ | ☒ | L. Cada, Director - SPED — *Director/Designee* |
| ☐ | ☒ | K. Nelson — *Other (specify)* Asst. Dir., SPED - Dist. 97 | ☐ | ☒ | Appropriate Ascension School Staff — *Other (specify)* |
| ☐ | ☒ | Appropriate Brooks Staff [signature] — *Other (specify)* | ☐ | ☒ | ~~OPRF Staff~~ [signature], Family/Student Attorney — *Other (specify)* |

- ☒ Yes ☐ NA Explanation of Procedural Safeguards was provided to the parent(s) with the notice of conference.
- ☐ Yes ☐ NA Parent(s) given a copy of the IEP.
- ☐ Yes ☐ NA Parent(s) given a copy of the evaluation report and eligibility determination.
- ☒ Yes ☐ NA Parent(s) given a copy of the district's behavioral intervention policies.
- ☒ Yes ☐ NA Parent(s) given a copy of the district's behavioral intervention procedures (initial IEP only).

If the parent(s) did not attend the IEP meeting, document the attempts to contact the parent(s) prior to the IEP meeting.

**SPECIAL EDUCATION FUNDING AND CHILD TRACKING SYSTEM (FACTS)** (For District Reporting Purposes)

| Fund | Private Facility Code | Ethnic | Disability (max. of 2) | Language | Bilingual Special Education S | A | I | Related Services (Max. of 5) | LRE | RBP | Section 14-7.03 Eligibility T | P | G | Term | Begin Date | End Date | Reason For Exit | Anticipated Svcs. Upon Exit |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (4) | (5) | (10) | (11) | (12) | (13) | (14) | (15) | (16) | (17) | (18) | (19) | (20) | (21) | (22) | (23) | (24) | (25) | (26) |
| | | W | | | | | | | | | | | | | | | | |

# CONFERENCE SUMMARY REPORT

Date: 2/23/2004

Page 1

## PURPOSE OF CONFERENCE *(Check all that apply)*

☐ Initial Evaluation ☒ Transition ☐ Manifestation Determination ☐ Other

☐ IEP Review/Revision ☐ MDC Review ☐ Annual Review Next Ann. Rev. 2/05

☐ Reevaluation ☐ Hospital Discharge ☐ Initial IEP Next Reeval 2/07

## STUDENT IDENTIFICATION INFORMATION

*STUDENT'S NAME* Tom Reynolds-Ejzak

*STUDENT'S ADDRESS (Street, City, State, Zip Code)* 1166 S. Clinton Oak Park IL 60304

*SEX* M *GRADE* 08 *BIRTHDATE* 5/26/1990

*ANTICIPATED DATE OF H.S. GRADUATION*

*LANGUAGE* English

*MODE OF COMMUNICATION* Standard

*ID NO.* 96329 *MEDICAID NO.*

*SERVING DIST.* Oak Park-River Forest S.D. 200

*SERVICE SITE* Oak Park-River Forest H.S.

*PRIMARY DISABILITY* O - Autism

*SECONDARY* L - Other Health Impairment

*SECONDARY* D - Specific Learning Disability

*SECONDARY*

☐ Yes ☒ No Educational Surrogate Parent Required

*PARENT'S NAME* Ms. Meg Reynolds

*PARENT'S ADDRESS (Street, City, State, Zip Code)* 1166 S. Clinton Oak Park IL 60304

*PARENT'S HOME TELEPHONE* 708-660-0903

*PARENT'S WORKTELEPHONE*

*PARENT LANGUAGE* English

*MODE OF COMMUNICATION* Standard

*RESIDENT DISTRICT* Oak Park-River Forest S.D. 200

*HOME SCHOOL* Oak Park-River Forest H.S.

*PLACEMENT* (To be completed after placement determination)

A. Regular education with special education instructional and/or related services provided for 20% or less of the pupil's school day outside the regular education class.

☒ Yes ☐ No Placement is in home school.

## PARTICIPANTS

**Signature indicates attendance.** Check appropriate boxes to indicate which meetings were attended. Anyone serving in a dual role should indicate so on the following lines.

| ELIG. REVIEW | IEP | Name / Role | ELIG. REVIEW | IEP | Name / Role |
|---|---|---|---|---|---|
| ☐ | ☒ | Ms. Meg Reynolds — *Parent* | ☐ | ☒ | L. Budde - Brooks — *Speech/Language Pathologist* |
| ☐ | ☐ | — *Parent* | ☐ | ☒ | M. Maciak - Brooks — *School Psychologist* |
| ☐ | ☒ | Tom Reynolds Ejzak — *Student* | ☐ | ☒ | S. Williams - Brooks — *School Social Worker* |
| ☐ | ☒ | D. Bluminberg — *Dean/Counselor or Regular Education Teacher* | ☐ | ☒ | C. Biggins, LD Program Chair — *LEA Representative/Staffing Chair* |
| ☐ | ☒ | T. Allison, Teacher Representative — *Special Education Teacher/Case Manager* | ☐ | ☒ | L. Cada, Director - SPED — *Director/Designee* |
| ☐ | ☒ | K. Nelson — *Other (specify)* Asst. Dir., SPED - Dist. 97 | ☐ | ☒ | Appropriate Ascension School Staff — *Other (specify)* |
| ☐ | ☒ | Appropriate Brooks Staff — *Other (specify)* | ☐ | ☒ | OPRF Staff — *Other (specify)* |

☒ Yes ☐ NA Explanation of Procedural Safeguards was provided to the parent(s) with the notice of conference.

☒ Yes ☐ NA Parent(s) given a copy of the IEP.

☐ Yes ☒ NA Parent(s) given a copy of the evaluation report and eligibility determination.

☐ Yes ☒ NA Parent(s) given a copy of the district's behavioral intervention policies.

☒ Yes ☐ NA Parent(s) given a copy of the district's behavioral intervention procedures (initial IEP only).

If the parent(s) did not attend the IEP meeting, document the attempts to contact the parent(s) prior to the IEP meeting.

## SPECIAL EDUCATION FUNDING AND CHILD TRACKING SYSTEM (FACTS) (For District Reporting Purposes)

| Fund | Private Facility Code | Ethnic | Disability (max. of 2) | Language | Bilingual Special Education S | A | I | Related Services (Max. of 5) | LRE | RBP | Section 14-7.03 Eligibility T | P | G | Term | Begin Date | End Date | Reason For Exit | Anticipated Svcs. Upon Exit |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (4) | (5) | (10) | (11) | (12) | (13) | (14) | (15) | (16) | (17) | (18) | (19) | (20) | (21) | (22) | (23) | (24) | (25) | (26) |
| | | W | OL | | | | | | | | | | | | | | | |

**Student Name:** Tom Reynolds-Ejzak
**Conference Date:** 2/23/2004

**State ID:**
**School ID:** 96329

## DOCUMENTATION OF EVALUATION RESULTS

Page 2A and 2B

### HEALTH - NURSE

**Immunizations:** In compliance? YES

**Medical History and Current Health Status:**

Tx of ADHD (inattentive type)
Tx of Central Auditory Processing Disorder
Exhibits characteristics similar to an Asperger's Syndrome diagnosis

**Current Medications:**

None
Updated upon entry to high school (8/04)

**Date of Last Physical:** due upon entry to

**Educationally Relevant Medical Findings:**

Tx of ADHD
Tx of Central Auditory Processing difficulties
Exhibits characteristics of Asperger's Syndrome

### HEARING/VISION - NURSE

**Vision:** Date last tested: 2/17/04 ☐ Passed ☐ Failed ☐ Wears Contacts ☒ Wears Glasses

**Hearing:** Date last tested: 2/17/04 ☒ Passed ☐ Failed ☐ Aided

**Summary Report:**
Wears corrective lenses due to near-sightedness

Student Name: Tom Reynolds-Ejzak
Conference Date: 2/23/2004

State ID:
School ID: 96329

## DOCUMENTATION OF EVALUATION RESULTS

### SOCIAL/EMOTIONAL STATUS

**Summary Report:**

February 2004
Initial Full Case Study:
Social History:
Please see attached report

Student Name: Tom Reynolds-Ejzak
Conference Date: 2/23/2004

State ID:
School ID: 96329

# DOCUMENTATION OF EVALUATION RESULTS

Page 2D

## PSYCHOLOGICAL REPORT SUMMARY

Student Name: Tom Reynolds-Ejzak
State ID:
Examiner:
School ID: 96329
License No.:
Report Date: 2/04

| | Achievement | Aptitude | Other |
|---|---|---|---|
| Instrument: | WISC III and review of former tests | | |
| Scores: | Tx of central auditory processing diagnosed at five years and 13 yrs. Tx of ADHD (Oct 1997 & Oct.2003) Superior range of intelligence Asperger's syndrome scale of | | |

Summary:

Student Strengths:

Student Weaknesses:

When and by whom student was: (Please check one)

☐ A. First Diagnosed ☐ B. Rediagnosed

Date: Age or Grade:

Person or Team Making diagnosis:

Job Title: Certification Number:

Institutional Affiliation:

Qualifications:

**Student Name:** Tom Reynolds-Ejzak **State ID:**
**Conference Date:** 2/23/2004 **School ID:** 96329

## DOCUMENTATION OF EVALUATION RESULTS

### DEAN REPORT

**Student Name:** Tom Reynolds-Ejzak **ID:**
**Dean:** D. Bluminberg **Report Date:**
**Credits Earned:** **GPA:** **WGPA:**

**Attendance:**

**Discipline:**

**Comments:**

**Current Grades:**

February 2004
8th grade at Ascension School in Oak Park
Academic course work all A's
Phy. Ed. : A
Tom attends an after school homework monitoring program.

**Student Name:** Tom Reynolds-Elzak **State ID:**

**Conference Date:** 2/23/2004 **School ID:** 96329

## DOCUMENTATION OF EVALUATION RESULTS

Page 2F

### ACADEMIC PERFORMANCE

February 2004
Private testing done indicating overall strong academic potential.

CHICAGO POLICE DEPARTMENT

# ORIGINAL CASE INCIDENT REPORT

3510 S. Michigan Avenue, Chicago, Illinois 60653
(For use by Chicago Police Department Personnel Only)
CPD-11.388(6/03)-C)

RD #: HL627985
EVENT #: 0526505412
Case ID: 4321652 CASR220

IUCR: 2826 - Other Offense - Harassment By Telephone

Occurrence Location: 2 N La Salle St
Chicago IL 60610
140 - Commercial / Business Office

Beat: 0113

Unit Assigned: 9151
RO Arrival Date: 22 September 2005 09:25

Occurrence Date: 21 September 2005 08:00 - 22 September 2005 09:20

Name: REYNOLD, Meg
Res: 2 N La Salle St
Chicago IL 60610
312 - 269 - 5357
Beat: 0113
Beat: 4100

Female
White
Age: 48 Years

Name: REYNOLD, Meg
Res: 2 N La Salle St
Chicago IL 60610
312 - 269 - 5357
Beat: 0113
Beat: 4100

Female
White
Age: 48 Years

RESTRICTED INFORMATION HAS BEEN DELETED
RECORD INQUIRY SECTION
CHICAGO POLICE DEPARTMENT

RESTRICTED INFORMATION HAS BEEN DELETED
RECORD INQUIRY SECTION
CHICAGO POLICE DEPARTMENT

EVENT 0526505412. VICTIM STATED THAT A TEACHER FROM HER SON'S SPECIAL EDUCATION CLASS CALLS HER HOUSE AND PLACE OF BUSINESS MORE THAN 21 TIMES AND SHE DOESN'T STOP CALLING. ADVISED TO CONTACT THE PHONE COMPANY, ADVISED WARRANT AND ORDER OF PROTECTION. VIN SENT.

| | Star No. | Name | Date | Unit | Beat |
|---|---|---|---|---|---|
| Detective/Youth Investigator | 21170 | KAIZER, Edward, W | 23 Sep 2005 06:34 | 640 | |
| Reporting Officer | 17575 | STANCESCU, Carmen, S | 22 Sep 2005 09:44 | 376 | 9151 |

Sep-22-05 12:48pm From-ALT R[illegible]NSE UNIT +3127469724 T-470 P.001/002 F-257

CASR205

# CHICAGO POLICE DEPARTMENT VICTIM INFORMATION NOTICE

CPD-11.390, Part 3-English-(Rev. 2/98)

RD Number: HL627965 Occurrence Date: 21-SEP-2005 08:00 Beat of Assign: 9151

Primary Class.: OTHER OFFENSE Secondary Class.: [illegible]

Occurrence Address: 2 N LA SALLE ST Occ. Beat: 0113

Type of Location of premise where offense occurred (give name of location if applicable) 3510 S Michig M-F

140 COMMERCIAL / BUSINESS OFFICE

IMPORTANT: KEEP THIS NOTICE FOR YOUR PERSONAL RECORDS

CASE NAME - PEOPLE OF THE STATE OF ILLINOIS/CITY OF CHICAGO vs.__________

If an arrest has taken place, the following is your court information:

Date: Time: Court branch: Court Loc.:

If you need more help call the Victim/Witness Assistance Program of the Cook County State's Attorney's Office at (773)869 - 7200

## VICTIM INFORMATION NOTICE/ CHICAGO POLICE DEPARTMENT

*THIS IS NOT AN OFFICIAL POLICE REPORT - IT IS FOR INFORMATION PURPOSES ONLY*

Your case will be on file with the Chicago Police Department under the above listed R.D. Number. Refer to this number whenever you are communicating with the Chicago Police Department concerning this incident. Your case will be assigned for follow-up investigation based upon specific facts obtained during the initial investigation. The presence of these facts can predict whether a comprehensive follow-up investigation would likely result in the arrest and prosecution of the suspect(s) or the recovery of property. Your case will be reviewed and retained to determine if criminals active in the area can be identified. *A detective will not routinely contact you unless additional information is required or your further assistance is needed.*

### TO REPORT ADDITIONAL INFORMATION

If you have knowledge of specific facts which might assist in the investigation of your case, please contact the unit marked below:

| | FOR PROPERTY CRIMES | FOR VIOLENT CRIMES | FOR YOUTH DIVISION |
|---|---|---|---|
| AREA 1 | 747-8384 | 747-8380 | 747-8385 |
| AREA 2 | 747-8273 | 747-8272 | 747-8276 |
| AREA 3 | 744-8263 | 744-8261 | 744-8266 |
| AREA 4 | 746-8253 | 746-8252 | 746-8259 |
| AREA 5 | 746-8362 | 746-8282 | 746-8365 |

BOMB & ARSON(all Areas) 746-7619 AUTO THEFT(all Areas) 746-5566

### COPY OF THE REPORT

The above listed R.D. Number may suffice for insurance purposes, however, there may be instances when a copy of the case report is desired. A copy of the case report which verifies that an incident of injury, loss or damage has been reported to the Chicago Police Department may be obtained after 14 working days from the date the incident was reported. To obtain a copy of the report, send a check or money order payable to the "*DEPARTMENT OF FINANCE - CITY OF CHICAGO*" in the amount of $.50 and a self-addressed stamped return envelope to:

Chicago Police Department
Records Inquiry Section, Room 1027
3510 South Michigan Ave.
Chicago, IL 60653

Include the following information with your request: 1) Victim's name and address (or person reporting crime), 2)Type of incident, 3)Address of occurrence, 4)R.D. Number.

### MAKE THE RIGHT CALL

To report a crime in progress or other emergency that requires immediate police response, call 9-1-1.
To report non-emergency situations, call the Police Department at 3-1-1.

### CHICAGO ALTERNATIVE POLICING STRATEGY (CAPS)

### SAFE NEIGHBORHOODS ARE EVERYBODY'S BUSINESS

The police alone cannot solve the problems of crime in our City. It takes an active and informed community working with the police and other City agencies to really make a difference. Join your neighbors and your neighborhood police officers as we work together to reduce crime and improve the quality of life in our City. Become part of the CAPS team in your community. To find out how, call:

CAPS HOTLINE 744-CAPS(744-2277)

More information about CAPS is availible on the World Wide Web at http://www.ci.chi.il.us

You live on Beat______. You next Beat: Community Meeting will be held(date and time) ______ at (location)______

### TELECOMMUNICATIONS DEVICE FOR THE DEAF/TELETYPE (TDD/TTY)

Hearing-impaired persons who possess such equipment may communicate with the Chicago Police Department 24 hours a day by calling 746-9715. Hearing-impaired persons in need of assistance during normal business hours may also contact their local police district or the Preventive Programs and Neighborhood Relations Division at 745-5806.

22-SEP-2005 12:52 RETAIN THIS NOTICE FOR YOUR PERSONAL RECORDS Requested by: PC0V264

09/22/2005 THU 12:56 [TX/RX NO 5121] 001

**OAK PARK POLICE DEPARTMENT** 9118 **INCIDENT REPORT**

| 1 OCCURRED ON OR BETWEEN | Mo. | Date | Year | Day | Time | 2 POST | 3 REPORT NUMBER |
|---|---|---|---|---|---|---|---|
| | 09 | 19 | 2005 | MON | 0900 | 18 | |
| | 09 | 21 | 2005 | WED | 1700 | 126 | 05-38945 |
| 4 REPORTED: IN STATION | 11 | 03 | 2005 | WED | 0810 | | 5 INCIDENT CLASSIFICATION: EXCESSIVE PHONE CALLS |

6 LOCATION OF INCIDENT: 1166 S. CLINTON
7 FIRM NAME IF BUSINESS:

8 VICTIM'S NAME (last, first, mid): REYNOLDS, MARGARET M. ☐ JUV.
9 RESIDENCE OR BUSINESS ADDRESS: 1166 S. CLINTON

| 10 RESIDENCE PHONE | 11 BUSINESS PHONE | 12 SEX | RACE | AGE | 13 DOB Mo. Date Yr. | 14 SOCIAL SECURITY OR PERSONAL IDENTIFICATION NUMBER |
|---|---|---|---|---|---|---|
| 708-660-0903 | 312-269-5351 | F | W | 48 | 03 26 57 | 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 |

15 REPORTED BY (last, first mid): VICTIM WITNESS YES ☑ NO ☐
16 RESIDENCE OR BUSINESS ADDRESS: SAME AS VICTIM

| 17 RESIDENCE PHONE | 18 BUSINESS PHONE | 19 SEX | RACE | AGE | 20 DOB Mo. Date Yr. | 21 SOCIAL SECURITY OR PERSONAL IDENTIFICATION NUMBER |
|---|---|---|---|---|---|---|
| | | | | | | |

INJURY — 22 NATURE AND EXTENT OF INJURY: D/N/A — 23 HOSPITALIZED / WHERE TREATED: D/N/A

| 24 ATTENDING / PRONOUNCING PHYSICIAN | 25 TRANSPORTED BY | 26 PRONOUNCED Mo. Date Yr. Time | 27 M.E. NAME | 28 DATE AND TIME NOTIFIED |
|---|---|---|---|---|
| | | | | |

REPORT NUMBER: 05-38945
UCR:
METHOD CODE: 410
PLACE CODE: 290
CASE STATUS: 009

BLOCK NO. — 29 NARRATIVE: Describe persons, property, and details of incident. If additional information pertains to one of the blocks above, enter corresponding block number at left.

IN SUMMARY: COMPLAINTANT REYNOLDS, MARGARET M. RELATED THAT BETWEEN 19 SEP 05 AT APPROXIMATELY 0900 HRS AND 21 SEP 05 AT APPROXIMATELY 1700 HRS SHE RECIEVED BETWEEN TWELVE AND FIFTEEN TELEPHONE CALLS AT HER HOME AT 1166 CLINTON TX: 708-660-0903 FROM CADA, LINDA, DIRECTOR OF SPECIAL EDUCATION AT OAK PARK RIVER FOREST HIGH SCHOOL. REYNOLDS STATED THAT HER SON IS A SPECIAL NEEDS STUDENT AT OAK PARK RIVER FOREST HIGH SCHOOL AND THAT SHE HAD SENT A COMPLAINT REGARDING CADA TO THE HIGH SCHOOL'S BOARD OF DIRECTORS, WHICH SHE BELIEVES PRECIPITATED THE CALLS FROM CADA. REYNOLDS RELATED THAT CADA LEFT MESSAGES TO THE EFFECT THAT SHE WAS SCHEDULING AN INDIVIDUAL EDUCATION PROGRAM MEETING REGARDING REYNOLD'S' SON, WHICH REYNOLDS BELIEVES IS INTENDED TO END HER SONS PROGRAM IN RETRIBUTION FOR THE COMPLAINT, AND MESSAGES STATING THAT CADA WOULD CALL REYNOLDS' EMPLOYER TO COMPELL REYNOLDS TO RETURN CADA'S PHONE CALLS. REYNOLDS' STATED THAT SHE HAS FILED A REPORT WITH CHICAGO P.D. REGARDING CALLS TO HER OFFICE MADE BY CADA. REYNOLDS RELATED

| 30 REPORTING OFFICER | STAR # | 31 SUPERVISOR | STAR # | 32 REPORT REVIEW | 33 C.A. REVIEW |
|---|---|---|---|---|---|
| R. Murphy 306/8441; J. HAWKINSON 321/6744 | | [signature] | 13/660 | NOV 07 2005 | |

OAK PARK POLICE DEPARTMENT

CONTINUATION SHEET

| CONTINUATION OF A EXCESSIVE PHONE CALLS REPORT (offense/incident/arrest) | PAGE 2 OF 2 | REPORT NUMBER 05-38945 |
|---|---|---|

USE A NARRATIVE SUMMARY WITH OFFENSE, INCIDENT, ARREST AND INVESTIGATIVE ACTION REPORTS. IF INFORMATION IS AN EXTENSION OF A REPORT, ENTER BLOCK NUMBER AT LEFT.

| BLOCK NUMBER | |
|---|---|
| | 1166 S. CLINTON 03 NOV 05 0810 HRS |
| | THAT THE CALLS STOPPED AFTER SHE MADE A SECOND COMPLAINT TO |
| | THE HIGH SCHOOL BOARD OF DIRECTORS, AND THAT SHE WISHED TO FILE |
| | A REPORT ONLY AS A MATTER OF RECORD. |

REPORT NUMBER 05-38945

UCR

METHOD CODE Y 1 0

PLACE CODE

CASE STATUS 0 0 9

| REPORTING OFFICER | STAR NO. | SUPERVISOR | STAR NO. | DATE |
|---|---|---|---|---|
| R. Murphy 306/8961<br>J. HAWKINSON 321/6744 | | [signature] | 128/06 | 04 NOV 05 |

9/21/05

I spoke with Linda Cada at 10:30 a.m. She said that she left 5 messages earlier that day and Ms. Reynolds had not gotten back with her. She asked me if I wanted the times she had called, but I told it was not necessary. She said that it was imperative that she talk with Meg regarding a meeting on Sept. 23, 2005 at 11:00 a.m. at the high school in room 106 and 18 people were coming, so she really had to know if Meg got her messages and was coming.

9/21/05 (approx. 3:00 p.m.)

I spoke with Linda Cada and she said that she had left 18 messages now and still has not heard from Meg. She also said that maybe she should come downtown to talk to her or call Mr. Eisenberg to get Meg to call her.

Teresa Kirby

Signed by Teresa Kirby
Meg Reynolds Secretary
September 23, 2005

OFFICIAL SEAL
JOHANNA L. WOMACK
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10-6-2008

Johanna L. Womack
Notary



FOR Meg DATE 9/21 TIME 1030 A.M. P.M.

M 708 434-3106

OF

PHONE FAX MOBILE Friday 23rd 11...

AREA CODE NUMBER EXTENSION

MESSAGE Room... 
- Linda High...
Cada

SIGNED 18 People Coming

Office DEPOT Item GD1153



Print - Close Window

| | |
|---|---|
| **Subject:** | RE: notetaker |
| **Date:** | Sun, 16 Sep 2007 10:21:40 -0500 |
| **From:** | "Weninger, Attila" <aweninger@oprfhs.org> |
| **To:** | "Meg Reynolds" <megreynolds@sbcglobal.net> |
| **CC:** | "Cada, Linda" <LCada@oprfhs.org>, "Prale, Phil" <PPrale@oprfhs.org>, "Terretta, John" <JTerretta@oprfhs.org> |

Dear Meg,

I understand; however, that doesn't answer the questions I posed below. Can you provide a more direct reply to "you will pay for the college student and not request the District to pay for his/her services/work and not seek reimbursement?" query?

Thanks.

Attila

For *those things that are best...*

Attila J. Weninger, Superintendent
Oak Park and River Forest High School District 200
201 N. Scoville Ave.
Oak Park, IL 60302-2264
TEL: (708) 434-3211
FAX: (708) 434-3917
EMAIL: aweninger@oprfhs.org

---

**From:** Meg Reynolds [mailto:megreynolds@sbcglobal.net]
**Sent:** Sunday, September 16, 2007 7:37 AM
**To:** Weninger, Attila
**Subject:** RE: notetaker

I will do whatever I have to do to get the classroom notetaker accommodation that my son needs.

***"Weninger, Attila" <aweninger@oprfhs.org>*** wrote:

> Dear Meg,
>
> This won't be able to begin on Monday. I will talk with Linda, Phil, and John on Monday and Linda or John will be in touch with you about your request. Just to be certain: you will pay for the college student and not request the District to pay for his/her services/work and not seek reimbursement? I just want to be sure about your statement below regarding that and FAPE.
>
> Attila
>
> For *those things that are best...*
> Attila J. Weninger, Superintendent
> Oak Park and River Forest High School District 200
> 201 N. Scoville Ave.
> Oak Park, IL 60302-2264
> TEL: (708) 434-3211

FAX:     (708) 434-3917
EMAIL: aweninger@oprfhs.org

---

**From:** Meg Reynolds [mailto:megreynolds@sbcglobal.net]
**Sent:** Saturday, September 15, 2007 6:06 AM
**To:** Weninger, Attila; Prale, Phil; Cada, Linda
**Subject:** notetaker

Dear Attila:

I have found some students at Concordia University (River Forest) who might be willing to take classroom notes and assignments down for my son in his academic classes. I would pay them by the hour (or class).

I would like them to start Monday (Sept. 17) or Tuesday at the latest. But I need to follow up with them to pin this down during the weekend.

Can you please let me know if you have any objection to this? I believe it could resolve the problem here. I don't believe that my son should go another day without this accommodation.

Having your case manager give my son a bunch of blank pages from OPRFHS with the words "no notes" written on them, and collect assignment information from my son himself (who cannot remember orally delivered information accurately) instead of his teachers does not meet his needs as a student with disabilities. OPRFHS has a legal obligation to provide FAPE.

Thanks.
Meg Reynolds
708-660-0903
cell: 708-205-0123

| EXP NUMBER | EXPERIMENT/SUBJECT | | | DATE |
|---|---|---|---|---|
| NAME | | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |

8/29

No Math Notes

Assignment

Complete "Solve by Graphing" wksht.

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
| --- | --- | --- |
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| --- | --- | --- | --- |
| | | | |

8/29 Architecture

No Notes

No Assignment

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
|---|---|---|
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

Spanish

No Notes

Assignment

Sign Course profile

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

05

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
|---|---|---|
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
|---|---|---|---|
| | | | |

8/30

No Notes taken

Hmwrk

Inequality solving Wksht

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP NUMBER | EXPERIMENT/SUBJECT | DATE |
| --- | --- | --- |
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| --- | --- | --- | --- |
| | | | |

8|3D

No notes taken

No hmwrk

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

07

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
| --- | --- | --- |
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| --- | --- | --- | --- |
| | | | |

Music

8/30

No Notes Taken

No Homework

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
| --- | --- | --- |
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| --- | --- | --- | --- |
| | | | |

English

8/30

No notes taken

Assignment

AP Essay #2

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | | | DATE |
|---|---|---|---|---|
| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO | |

MATH 8/3

NO NOTES

hmwrk

Wksht. "Parts of a Graph"

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|

NOTE: INSERT BACK COVER UNDER ...

| EXP. NUMBER | EXPERIMENT/SUBJECT | | DATE | |
|---|---|---|---|---|
| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. | |

10

Arch

No Notes

Hmwrk

Sketch & Measure Room

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

11

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
|---|---|---|
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO |
|---|---|---|---|
| | | | |

English

No Notes

Hmwrk

- Read myth of Sisyphus
- Finish "The Stranger"

| SIGNATURE | DATE | WITNESS/TA | DATE |
|---|---|---|---|
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

04

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
| --- | --- | --- |
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. |
| --- | --- | --- | --- |
| | | | |

Spanish

No Notes

Assignment

Sign Course Profile

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE 9/4 | |
|---|---|---|---|
| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO |

MATH

NO NOTES

Assgn

Draw time & Dist. wksht

Archit.

None - $

no Assignments

English

No Notes

Hmwrk

Read "The Stranger" Intro to

| SIGNATURE | DATE | WITNESS/TA |
|---|---|---|
| | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | DATE |
| --- | --- | --- |
| | | |

| NAME | LAB PARTNER | LOCKER/DESK NO. | CO |
| --- | --- | --- | --- |
| | | | |

3

Math

No Notes - Test

No Hmwk

Archit.

No Notes

Wksht / measure

Dining Room

Music

No Notes

Practice for

Audition

Eng

No Notes

Read theme

essay write

theme of

"The Stranger"

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING


Print - Close Window

**Subject:** RE: Tom

**Date:** Thu, 23 Aug 2007 16:14:29 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

Hello Ms. Reynolds,

I spoke with Tom and a few of his teachers but was delayed due to the tornado evacuation just now. I will call you tomorrow and we can talk about his accommodations.

Thanks,
John

---

**From:** Meg Reynolds [mailto:megreynolds@sbcglobal.net]
**Sent:** Wed 22-Aug-07 5:40 PM
**To:** Terretta, John
**Subject:** RE: Tom

Mr. Terretta: When you speak with Tom's teachers, would you please let them know that Tom didn't have written assignments tonight, and so he should not be penalized for any homework that may be due tomorrow? He does have an English syllabus, but nothing in his other classes.

It's highly unfair to Tom to give him his assignments late so that he has to do several days' worth all at once. This is a real misery for Tom, since it takes him a long time to do his homework.

If I were in your shoes, I wouldn't let this happen to your child.

*ta, John" <JTerretta@oprfhs.org>* wrote:

> Hello Ms. Reynolds,
> Hope the summer was restful for you and Tom as well. Yes, I am still Tom's case manager and will speak to him tomorrow during the day to set up our daily 3 o'clock meeting. I will also contact each of his teachers tomorrow to make certain they are aware of his accommodations and the most expeditious manner to implement them. I am looking forward to this year and can't believe Tom is already a senior. I can still remember speaking with you during the summer prior to his Freshman year. Time does really fly.
>
> Talk to you soon,
> John
>
> PS-I know Tom will be filling out college applications and just want you to know that I would be privileged if either of you want me to write a letter of recommendation.
>
> ---
>
> **From:** Meg Reynolds [mailto:megreynolds@sbcglobal.net]
> **Sent:** Wed 22-Aug-07 3:02 PM
> **To:** Terretta, John
> **Subject:** Tom
>
> Hi, Mr. Terretta. I hope you had a nice summer. Are you still Tom's case manager? I'm wondering if you communicated with his teachers yet about his notes and assignments. Tom needs assignment

information for tonight.  He says he didn't receive any from any of his teachers.

Many thanks!

Meg Reynolds

YAHOO! MAIL Classic

Print - Close Window

**Subject:** Tom's Assignments
**Date:** Fri, 24 Aug 2007 15:20:10 -0500
**From:** "Terretta, John" <JTerretta@oprfhs.org>
**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>
**CC:** "Prale, Phil" <PPrale@oprfhs.org>, "Weninger, Attila" <aweninger@oprfhs.org>

1st week: No notes

Tom did not receive this assignment until after the assignments were due

# Below are Tom's assignments for entire week of August 22-24.

**Spanish-Diaz**
Wednesday August 22
Bring a Spanish binder (just for Spanish class!) 1 1/2- 2 inch with 3 rings, and 5- subject dividers DUE: BY MONDAY

Thursday August 23
Same as Wednesday and bring in a photo of yourself. Make sure it is something that you don't mind gets a staple through (I will return it back at the end of the quarter)

Friday August 24
Same as Wednesday and on a notecard (which I provided) write down 5 classroom rules we should have in our Spanish class which will create a postive and safe learning environment.

**Math-Smith**
Wednesday August 22
Review Worksheets from bound booklet

Thursday August 23
Review Worksheets from a bound booklet

Friday August 24
Teacher absent-No homework-2 in class worksheets assigned

**Architecture-VenHorst**
Wednesday August 22
No assignment given

Thursday August 23
No assignment given

Friday August 24
Must purchase 25 ft. tape measure and a sketchbook.
Student should also have textbook by Monday

**Col English-Heidekamp**
Wednesday August 22

YAHOO! MAIL Classic

Print - Close Window

**Subject:** RE: No math, architecture assignments or notes tonight

**Date:** Wed, 29 Aug 2007 11:33:32 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

Hello Ms. Reynolds,

I spoke with Tom and it was written down that Tom had the following homework:

Math-WORKSHEET "DISEASED DATA"/No Notes were generated during class

Architecture-Nothing since Tom completed the assigned in-class worksheet/No notes were generated during class

John

Also No notes - English
No notes - Spanish (see blank sheets)

---

**From:** Meg Reynolds [mailto:megreynolds@sbcglobal.net]
**Sent:** Tuesday, August 28, 2007 6:41 PM
**To:** Terretta, John; Prale, Phil
**Subject:** No math, architecture assignments or notes tonight

Hi, Mr. Terretta. Tom didn't receive any assignments or notes in his math and architecture classes today. Thanks.

Meg Reynolds


Print - Close Window

**Subject:** RE: No math, architecture assignments or notes tonight

**Date:** Wed, 29 Aug 2007 15:17:56 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>, "Prale, Phil" <PPrale@oprfhs.org>, "Weninger, Attila" <aweninger@oprfhs.org>

Hello Ms. Reynolds,

I met with Mr. Prale earlier today and we have come up with a few strategies. Firstly, I will speak with Tom's Math and Architecture teachers about the carbonless notebook accommodation. On days that no notes were generated, Tom will have a document stating that "no notes taken" along with the date. Secondly, I will make certain that Tom is aware of all assignments and has them written down. Lastly, I will email both you and Tom a copy of the assignment list to ensure that both of you know the assigned homework each night.

I am confident these strategies will help Tom. Please communicate to me your thoughts.

Thanks,
John

---

**From:** Meg Reynolds [mailto:megreynolds@sbcglobal.net]
**Sent:** Wednesday, August 29, 2007 11:46 AM
**To:** Terretta, John; Prale, Phil; Weninger, Attila
**Subject:** RE: No math, architecture assignments or notes tonight

I'm sorry, but I don't understand. Tom didn't have any homework for Architecture last night? That's good. But we had no way of knowing this last night, when he was supposed to get the homework done.

As we have discussed ad nauseum, there needs to be something written that says he doesn't have homework. He needs notes. Tom didn't have any notes or anything else in writing for Architecture or for Math.

Mr. Prale, we need more cooperation from both teachers here. It's unfair of you to say this system is working when it's not. It's unfair of you to expect Mr. Terretta to produce notes and written assignments from the teachers when they don't provide them.

This system has failed for more than 3 years now. Someone in the administration at OPRFHS needs to speak with the teachers.

Thank you.

Meg Reynolds

***"Terretta, John" <JTerretta@oprfhs.org>*** wrote:

> Hello Ms. Reynolds,
>
> I spoke with Tom and it was written down that Tom had the following homework:
>
> Math-WORKSHEET "DISEASED DATA"/No Notes were generated during class
>
> Architecture-Nothing since Tom completed the assigned in-class worksheet/No notes were

generated during class

John

---

**From:** Meg Reynolds [mailto:megreynolds@sbcglobal.net]
**Sent:** Tuesday, August 28, 2007 6:41 PM
**To:** Terretta, John; Prale, Phil
**Subject:** No math, architecture assignments or notes tonight

Hi, Mr. Terretta.  Tom didn't receive any assignments or notes in his math and architecture classes today.  Thanks.

Meg Reynolds

generated during class

John

---

**From:** Meg Reynolds [mailto:megreynolds@sbcglobal.net]
**Sent:** Tuesday, August 28, 2007 6:41 PM
**To:** Terretta, John; Prale, Phil
**Subject:** No math, architecture assignments or notes tonight

Hi, Mr. Terretta. Tom didn't receive any assignments or notes in his math and architecture classes today. Thanks.

Meg Reynolds

YAHOO! MAIL Classic

Print - Close Window

**Subject:** RE: No math, architecture assignments or notes tonight

**Date:** Wed, 29 Aug 2007 15:22:47 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

Assignments for 8/29:

math-complete the "solve by graphing worksheet"
spanish-parent needs to sign course profile
architecture-none; finished chapter 2 worksheet in class
music-none
english-write the ap essay #2

No notes

Best,
John

---

**From:** Meg Reynolds [mailto:megreynolds@sbcglobal.net]
**Sent:** Wednesday, August 29, 2007 11:46 AM
**To:** Terretta, John; Prale, Phil; Weninger, Attila
**Subject:** RE: No math, architecture assignments or notes tonight

I'm sorry, but I don't understand. Tom didn't have any homework for Architecture last night? That's good. But we had no way of knowing this last night, when he was supposed to get the homework done.

As we have discussed ad nauseum, there needs to be something written that says he doesn't have homework. He needs notes. Tom didn't have any notes or anything else in writing for Architecture or for Math.

Mr. Prale, we need more cooperation from both teachers here. It's unfair of you to say this system is working when it's not. It's unfair of you to expect Mr. Terretta to produce notes and written assignments from the teachers when they don't provide them.

This system has failed for more than 3 years now. Someone in the administration at OPRFHS needs to speak with the teachers.

Thank you.

Meg Reynolds

***"Terretta, John" <JTerretta@oprfhs.org>*** wrote:

> Hello Ms. Reynolds,
>
> I spoke with Tom and it was written down that ~~Tom had the~~ following homework:
>
> Math-WORKSHEET "DISEASED DATA"/No Notes were generated during class
>
> Architecture-Nothing since Tom completed the assigned in-class worksheet/No notes were

YAHOO! MAIL Classic

Print - Close Window

**Subject:** Homework

**Date:** Thu, 30 Aug 2007 15:14:34 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

Assignments for 8/30:

math-complete the "Inequality Solving worksheet"
spanish-no homework
architecture-no homework
music-no homework
english-ap essay #2 and continue reading "Stranger"

Best,
John

No notes

And this assignment info came from my son (the case mgr asked him then wrote this down)



YAHOO! MAIL
Classic

Print - Close Window

**Subject:** HMWRK. 8/31

**Date:** Fri, 31 Aug 2007 15:17:52 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

MATH-WKSHT "PARTS OF A GRAPH"

SPANISH-NO HOMEWORK

ENGLISH-READ CAMUS " THE MYTH OF SISYPHUS

ARCHITECTURE-MEASURE AND SKETCH ROOM

MUSIC-PRACTICE NEW MUSIC RECEIVED TODAY

No notes
this
assignment info
came from
my son

  Case 1:08-cv-01507 Document 1-2 Filed 03/13/2008 Page 98 of 100

Print - Close Window

**Subject:** 9/5

**Date:** Wed, 5 Sep 2007 15:41:47 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/5/07 |
|---|---|---|
| MATH (SMITH) | YES No? | STUDY FOR QUIZ TOMORROW |
| SPANISH (DIAZ) | YES | SPANISH BINGO |
| ARCHITECUTRE (VAN) | NO | NONE |
| MUSIC (PEARSON) | YES | NONE |
| ENGLISH (HEIDEKAMP) | NO-COMPUTER LAB | WORKSHEETS "YOUR BLOGGING RESPONSIBILITIES" |

YAHOO! MAIL
Classic

Print - Close Window

**Subject:** RE: 9/5

**Date:** Thu, 6 Sep 2007 16:55:41 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

---

**From:** Meg Reynolds [mailto:megreynolds@sbcglobal.net]
**Sent:** Thursday, September 06, 2007 9:12 AM
**To:** Terretta, John
**Subject:** Re: 9/5

Thanks, Mr. Terretta. Any idea when the Architecture class notes might start coming?

Also, would it be possible to copy another student's notes to date in the classes where my son hasn't being receiving notes (Architecture, Math, some English class days)? I would be glad to come to the school, pick up the notebooks, take them immediately to Kinko's for copying and return them right away.

Meg Reynolds

***"Terretta, John" <JTerretta@oprfhs.org>*** wrote:

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/5/07 |
|---|---|---|
| MATH (SMITH) | ~~YES~~ No ? | STUDY FOR QUIZ TOMORROW |
| SPANISH (DIAZ) | YES | SPANISH BINGO |
| ARCHITECUTRE (VAN) | NO | NONE |
| MUSIC (PEARSON) | YES | NONE |
| ENGLISH (HEIDEKAMP) | NO COMPUTER LAB | WORKSHEETS "YOUR BLOGGING RESPONSIBILITIES" |



Case 1:08-cv-01507 Document 1-2 Filed 03/13/2008 Page 100 of 100

Print - Close Window

**Subject:** RE: 9/5

**Date:** Thu, 6 Sep 2007 16:56:16 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

No notes

MATH-NO HOMEWORK

SPANISH-NO HOMEWORK

ARCHITECTURE-WORKSHEET GIVEN OUT IN CLASS. ALSO HAVE TO MEASURE THE DINING ROOM.

MUSIC-PRACTICE FOR THE AUDTION

ENGLISH-READ THE ESSAYS ABOUT THEME IN THE COLLEGE ESSAY PACKET AND WRITE ONE OR MORE
THEMES OF "THE STRANGER"

File Date: March 13, 2008

Case No: 08cv1507

ATTACHMENT # 2

EXHIBIT 9 cont'd - 12

TAB (DESCRIPTION)

______________________

YAHOO! MAIL Classic

Print - Close Window

**Subject:** RE: End of 3rd week of class, still no lecture notes in Architecture or English

**Date:** Thu, 6 Sep 2007 17:11:29 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

**CC:** "Prale, Phil" <PPrale@oprfhs.org>, "Weninger, Attila" <aweninger@oprfhs.org>

Hello Ms. Reynolds,

I spoke with both of these teachers about the accommodation. Tom's architecture teacher stated that the vast majority of work is in-class drawing and that notes are a rarity. He did say, however, that whenever notes are taken he will submit the secondary copy to me right after class so I can give it to Tom during our daily meeting. Tom's English teacher had them writing in the computer lab yesterday and taking a practice AP test today. For that reason, no notes were generated this week. I gave Tom a copy stating this as was our agreement last week.

Best,
John

---

**From:** Meg Reynolds [mailto:megreynolds@sbcglobal.net]
**Sent:** Thursday, September 06, 2007 5:05 PM
**To:** Terretta, John; Weninger, Attila
**Subject:** End of 3rd week of class, still no lecture notes in Architecture or English

Mr. Terretta: My son didn't receive any lecture notes in Architecture, English or Math again today. I understand that there was a test in Math, but can you please tell me if anyone over there in that building is going to require my son's Architecture and English teachers to cooperate in setting up a notetaking arrangement?

This is the end of the third week of class, and my son still does not have this IEP accommodation.

Thanks,
Meg Reynolds

***"Terretta, John" <JTerretta@oprfhs.org>*** wrote:

> MATH-NO HOMEWORK
>
> SPANISH-NO HOMEWORK
>
> ARCHITECTURE-WORKSHEET GIVEN OUT IN CLASS. ALSO HAVE TO MEASURE THE DINING ROOM.
>
> MUSIC-PRACTICE FOR THE AUDTION
>
> ENGLISH-READ THE ESSAYS ABOUT THEME IN THE COLLEGE ESSAY PACKET AND WRITE ONE OR MORE
> THEMES OF "THE STRANGER"

No notes

YAHOO! MAIL Classic

Print - Close Window

**Subject:** HOMEWORK 9/10

**Date:** Mon, 10 Sep 2007 15:20:49 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

MATH-NONE

SPANISH-NONE

MUSIC-NONE

No notes

ARCHITECTURE-SKETCH YOUR DINING ROOM AND KITCHEN

No notes

ENGLISH-PREPARE A COMPLETE DETAILED OUTLINE WHICH INCLUDES A FORECEFUL AND COMPLEX STATEMENT OF THEME, SUPPORTING TEXT PASSAGES AND LITERARY TERMS-AS EXPLAINED IN "PLANNING AND WRITING YOUR ESSAY

No notes


Print - Close Window

**Subject:** HOMEWORK 9/11

**Date:** Tue, 11 Sep 2007 15:21:02 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

**CC:** "Weninger, Attila" <aweninger@oprfhs.org>, "Prale, Phil" <PPrale@oprfhs.org>, "Cada, Linda" <LCada@oprfhs.org>

MATH-NO HOMEWORK
NO NOTES WERE GENERATED SINCE STUDENTS DID AN ACTIVITY IN STUDENT CENTER DURING CLASS

SPANISH-CROSSWORD
NOTES REVIEWED DURING AFTER SCHOOL MEETING — Notes = 1/4 page

ARCHITECTURE-DRAW ALL LIVING AREAS OF THE FIRST FLOOR OF YOUR RESIDENCE
NO NOTES WERE GENERATED SINCE STUDENTS SKETCHED DURING CLASS

MUSIC-NO HOMEWORK
NOTES REVIEWED DURING AFTER SCHOOL MEETING

ENGLISH-DO THE ROUGH DRAFT OF "THE STRANGER" ESSAY BY FRIDAY
NO NOTES WERE GENERATED SINCE STUDENTS WATCHED A FILM DURING CLASS.

BEST,
JOHN



Case 1:08-cv-01507 Document 1-3 Filed 03/13/2008 Page 5 of 62

Print - Close Window

**Subject:** 9/12

**Date:** Wed, 12 Sep 2007 15:16:38 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

**CC:** tomreynolds-ejzak@sbcglobal.net

MATH-write a detailed explanation for the process they used to recreate each graph on the "CBR - Time Distance Activity" Worksheet
NO NOTES BECAUSE STUDENT ACTIVITY

ARCHITECTURE-SKETCH THE ENTIRE FIRST FLOOR OF RESIDENCE
NO NOTES BECAUSE STUDENTS WORKED IN COMPUTER LAB

MUSIC-NONE
YES

SPANISH-RE-READ IN CLASS STORY
YES

ENGLISH-DO THE ROUGH DRAFT OF "THE STRANGER" ESSAY BY FRIDAY
~~YES~~ ← No notes

YAHOO! MAIL Classic

Print - Close Window

**Subject:** RE: 9/13

**Date:** Thu, 13 Sep 2007 15:17:01 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

**CC:** tomreynolds-ejzak@sbcglobal.net

---

**MATH**-COMPLETE THE 3 EXTRA PRACTICE WORKSHEETS
NO NOTES-TOM WILL PICK THEM UP IN CLASS

F None provided

**SPANISH**-DRAW 6 PICTURES ONE FOR EACH PARAGRAPH IN THE STORY
NOTES GIVEN

**ARCHITECURE**-NO ASSIGNMENT
NO NOTES BECAUSE STUDENTS SKETCHED DURING CLASS

**MUSIC**-NO ASSIGNMENT
NOTES GIVEN

**ENGLISH**-DO THE ROUGH DRAFT OF "THE STRANGER" ESSAY BY FRIDAY
NO NOTES GIVEN BECAUSE STUDENTS COMPLETED MOVIE DURING CLASS


Print - Close Window

**Subject:** RE: 9/13

**Date:** Fri, 14 Sep 2007 15:08:58 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

**CC:** tomreynolds-ejzak@sbcglobal.net

---

**From:** Terretta, John
**Sent:** Thursday, September 13, 2007 3:17 PM
**To:** 'Meg Reynolds'
**Cc:** 'tomreynolds-ejzak@sbcglobal.net'
**Subject:** RE: 9/13

---

**MATH-The calc conc. hmwk is:**
**Read Section 1.1 from "Calculus Concepts" workbook.**
**Then answer questions #3, 5, 9, 10, and 15 on pages 9 - 13 in the workbook. Please do the homework in the "Math Homework" notebook.**
**Reminder: Homework Check #2 is in Monday**

**SPANISH- None**

**ARCHITECURE- Draw the four house plans printed up**

no notes

**MUSIC- none**

**ENGLISH- Read chapter 1 of "The Secret Sharer"**

No notes

This assignment info came from my son exc... for math

YAHOO! MAIL Classic

Print - Close Window

**Subject:** 9/17

**Date:** Mon, 17 Sep 2007 15:13:22 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

**CC:** tomreynolds-ejzak@sbcglobal.net

---

**MATH**- Section 1.1 pages 12-13 from supplemental green workbook #18 and #22.
Please complete the assignment in your "math homework" notebook.

NOTES-YES

**SPANISH**- HOMEWORK SHEET

NOTES-YES

**ARCHITECURE**- NO

NOTES-NO

**MUSIC- N O**

NOTES-YES

**ENGLISH- FINISH READING "THE SECRET SHARER"**

NOTES-YES

No


Print - Close Window

**Subject:** RE: 9/18

**Date:** Tue, 18 Sep 2007 15:27:25 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

**CC:** tomreynolds-ejzak@sbcglobal.net

**MATH**-Read Section 1.2 "Graphs" from green workbook and answer questions #1 - 3 on pages 21 - 22.

NOTES-YES

**SPANISH**- NONE

NOTES- NO-SUBSTITUTE TEACHER TODAY

**ARCHITECURE**- NO

NOTES-NO

**MUSIC**- N O

NOTES-YES

**ENGLISH**- GET ~~THE FINAL~~ DRAFT OF "The Stranger" COMPLETED

NOTES-YES

No

YAHOO! MAIL Classic

Print - Close Window

**Subject:** 9/20

**Date:** Thu, 20 Sep 2007 15:23:46 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

**CC:** tomreynolds-ejzak@sbcglobal.net

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/20/07 |
|---|---|---|
| MATH (SMITH) | Yes | Sec 1.2 p 25-29 #37,38,42-45,66-67 |
| SPANISH (DIAZ) | Yes | Worksheet attached to the carbonless notes No instructions |
| ARCHITECUTRE (VAN) | Yes No 5 words – only these | Sketches to be turned in Friday. |
| MUSIC (PEARSON) | No | No |
| ENGLISH (HEIDEKAMP) | No-Group work | Friday first section of chapter 1 from "The Heart of Darkness" needs to be read. |

YAHOO! MAIL Classic

Print - Close Window

**Subject:** 9/21

**Date:** Fri, 21 Sep 2007 15:56:23 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

**CC:** tomreynolds-ejzak@sbcglobal.net

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/21/07 |
|---|---|---|
| MATH (SMITH) | Yes | The students had an in-class assignment today so there is not an assignment tonight. |
| SPANISH (DIAZ) | Yes | No Homework |
| ARCHITECTURE (VAN) | ~~Yes~~ No notes rec'd | Needs to sketch final floorplan design for Monday. |
| MUSIC (PEARSON) | No | Spoke with teacher, no homework |
| ENGLISH (HEIDEKAMP) | ~~Yes~~ No notes rec'd | Finish Section 1 of "Heart of Darkness" Begin drafing college application essay due Thursday |

Case 1:08-cv-01507 Document 1-3 Filed 03/13/2008 Page 12 of 62

YAHOO! MAIL Classic

Print - Close Window

**Subject:** 9/24

**Date:** Mon, 24 Sep 2007 15:20:44 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

**CC:** tomreynolds-ejzak@sbcglobal.net

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/24/07 |
|---|---|---|
| MATH (SMITH) | Yes | Read Section 1.3 from green workbook. Quiz on Sections 1.1 - 1.2 on Friday 9/28. |
| SPANISH (DIAZ) | Yes | Write five True/False questions in English on a separate piece of paper |
| ARCHITECTURE (VAN) | Yes | Work on Chapter 9 Review. Discuss Chapter 9 in class traffic areas and patterns. Complete traffic pattern for floor plan handout |
| MUSIC (PEARSON) | No | No |
| ENGLISH (HEIDEKAMP) | No-small group discussions (no notes generated) | Quiz tomorrow on Section I in "Heart of Darkness: |

WED, 9/26/07

(none)

Print - Close Window

**Subject:** 9/27

**Date:** Thu, 27 Sep 2007 15:15:57 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>

**CC:** tomreynolds-ejzak@sbcglobal.net

| SUBJECT | NOTES RECEIVED | ASSIGNMENT 9/27/07 |
|---|---|---|
| MATH (SMITH) | Yes | Study for Quiz on Sections 1.1 and 1.2 Since Tom will be absent from class tomorrow we arranged for him to take the quiz during third period on Monday in my classroom. |
| SPANISH (DIAZ) | No-Sub | None |
| ARCHITECTURE (VAN) | Yes | Read Ch. 13 Designing floor plans and work on Ch. 13 Review Worksheet |
| MUSIC (PEARSON) | Yes | No |
| ENGLISH (HEIDEKAMP) | No-Movie | First draft of College Application essay due. |

Board:

1. continoaccion de MPA capitulo 4

Comments:

today we just finished chapter 4 & talked a little bit.

Spanish

Tarea:

finish blue worksheet MPA - Chapter 4

| SIGNATURE | DATE | WITNESS/TA | DATE |
| --- | --- | --- | --- |
| | | | |

NOTE: INSERT BACK COVER UNDER COPY SHEET BEFORE WRITING

| EXP. NUMBER | EXPERIMENT/SUBJECT | | | DATE |
|---|---|---|---|---|
| NAME | LAB PARTNER | LOCKER/DESK NO. | COURSE & SECTION NO. | |

10/22 - CONTINUE WORKING ON DRAWING OF HOME ON THE BOARD.

Architecture class (my son received no written assignments in this class until Sept 20, when he rec'd a stapled list of 25 assignments all at once, He still has no classroom notetaker, No notes



Print - Close Window

**Date:** Sun, 16 Sep 2007 09:29:54 -0700 (PDT)

**From:** "Meg Reynolds" <megreynolds@sbcglobal.net>

**Subject:** RE: notetaker

**To:** "Weninger, Attila" <aweninger@oprfhs.org>

Attila: I will do anything. But the notetaker needs to start tomorrow (Monday). My son can't go another day without this information. He can't follow what is going on in class. His classes meet 1st, 5th, 6th and 8th periods. Someone needs to make sure the teachers will allow it. Here are the room numbers:

1st period AP English Heidkamp Room 342
5th period Spanish 3A Diaz Room 385
6th period Calculus Smith Room 437
8th period Int Arch-CAD Venhorst Room 292

***"Weninger, Attila" <aweninger@oprfhs.org>*** wrote:

> Dear Meg,
>
> I understand; however, that doesn't answer the questions I posed below. Can you provide a more direct reply to "you will pay for the college student and not request the District to pay for his/her services/work and not seek reimbursement?" query?
>
> Thanks.
>
> Attila
> For *those things that are best...*
> Attila J. Weninger, Superintendent
> Oak Park and River Forest High School District 200
> 201 N. Scoville Ave.
> Oak Park, IL 60302-2264
> TEL: (708) 434-3211
> FAX: (708) 434-3917
> EMAIL: aweninger@oprfhs.org
>
> ---
>
> **From:** Meg Reynolds [mailto:megreynolds@sbcglobal.net]
> **Sent:** Sunday, September 16, 2007 7:37 AM
> **To:** Weninger, Attila
> **Subject:** RE: notetaker
>
> I will do whatever I have to do to get the classroom notetaker accommodation that my son needs.
>
> ***"Weninger, Attila" <aweninger@oprfhs.org>*** wrote:
>
>> Dear Meg,
>>
>> This won't be able to begin on Monday. I will talk with Linda, Phil, and John on Monday and Linda or John will be in touch with you about your request. Just to be certain: you will pay for the college student and not request the District to pay for his/her services/work and not seek reimbursement? I just want to be sure about your statement below regarding that and FAPE.
>>
>> Attila

For *those things that are best...*
Attila J. Weninger, Superintendent
Oak Park and River Forest High School District 200
201 N. Scoville Ave.
Oak Park, IL  60302-2264
TEL:      (708) 434-3211
FAX:      (708) 434-3917
EMAIL:  aweninger@oprfhs.org

---

**From:** Meg Reynolds [mailto:megreynolds@sbcglobal.net]
**Sent:** Saturday, September 15, 2007 6:06 AM
**To:** Weninger, Attila; Prale, Phil; Cada, Linda
**Subject:** notetaker

Dear Attila:

I have found some students at Concordia University (River Forest) who might be willing to take classroom notes and assignments down for my son in his academic classes. I would pay them by the hour (or class).

I would like them to start Monday (Sept. 17) or Tuesday at the latest. But I need to follow up with them to pin this down during the weekend.

Can you please let me know if you have any objection to this? I believe it could resolve the problem here. I don't believe that my son should go another day without this accommodation.

Having your case manager give my son a bunch of blank pages from OPRFHS with the words "no notes" written on them, and collect assignment information from my son himself (who cannot remember orally delivered information accurately) instead of his teachers does not meet his needs as a student with disabilities. OPRFHS has a legal obligation to provide FAPE.

Thanks.
Meg Reynolds
708-660-0903
cell: 708-205-0123



Print - Close Window

| | |
|---|---|
| **Date:** | Sat, 6 Oct 2007 12:11:08 -0700 (PDT) |
| **From:** | "Meg Reynolds" <megreynolds@sbcglobal.net> |
| **Subject:** | Renewed request for tape recording in your class |
| **To:** | bheldkamp@oprfhs.org |

Dear Mr. Heldkamp:

I'm writing again to request that you allow my son to tape record your class so that we can have the recording transcribed. He is not getting enough written information in your class to do his assignments and keep up with what is going on.

He could do this unobtrusively. Or I would be glad to give you the tape recorder and you could tum it off when you don't want something non-class-related to be recorded.

Please, please don't ignore this message. This is becoming a disaster.

Meg Reynolds


Print - Close Window

| | |
|---|---|
| **Date:** | Fri, 21 Sep 2007 07:26:48 -0700 (PDT) |
| **From:** | "Meg Reynolds" <megreynolds@sbcglobal.net> |
| **Subject:** | Tom Reynolds-Ejzak |
| **To:** | kdiaz@oprfhs.org |

Dear Ms. Diaz:

I wonder if you would have time for a phone call to discuss my son Tom. He is in your Spanish 3A class that meets 5th period. I'm wondering if you would object to my bringing in a paid notetaker or voice recognition software. We very much appreciate your contributions to date, but he is not receiving enough written information in your class.

Due to his disabilities, my son needs to have all classroom discussions and activities recorded in writing for him, as well as detailed daily assignment information. Currently, he doesn't have what he needs in your class.

I would like to bring in a paid notetaker or voice recognition software to take care of this, but the superintendent has not agreed. Would you have an objection to either of these methods? I don't know if the software would work in a Spanish class, but am exploring this.

If you can help with this (by telling the superintendent that it's okay with you to bring in a paid notetaker or voice recognition software or something else), would you please contact me?

Thank you.

Meg Reynolds (Tom's mom)
312-297-6935 (days)



Print - Close Window

**Date:** Wed, 19 Sep 2007 18:26:47 -0700 (PDT)

**From:** "Meg Reynolds" <megreynolds@sbcglobal.net>

**Subject:** Fwd:

**To:** rvenhorst@oprfhs.org, boe@oprfhs.org, aweninger@oprfhs.org, dschertz@isbe.net, pprale@oprfhs.org, jterretta@oprfhs.org, lcada@oprfhs.org

Dear Mr. VenHorst:

My son tonight brought home about 20 days' worth of detailed assignments from your class that he has not seen before. We are grateful for the written information at long last, but I know for certain (because I have to supervise his homework) that my son has not done most of this work. This is because the information was not being recorded in writing for him as required under his IEP. My son has an auditory processing disorder and ADHD and has great difficulty accurately recalling information delivered orally. He is supposed to have a classroom notetaker, but somehow this accommodation hasn't been provided. Instead, his case manager has been asking HIM what he thought his assignments were and writing those down.

So now we have a big problem. My son is 5 weeks behind in your class. He doesn't know what is going on. He has never brought home his Architecture text because he didn't hear you issue reading assignments in the text. The class appears to have covered Chapters 1 through 7 already and completed seven "chapter reviews," including written questions and answers -- but my son hasn't read any of this. He hasn't completed any of the readings and has also missed a the majority of the written homework, with the exception of some house floor plan drawings. He is going to have to make this up somehow, but I don't know how.

It also looks like there is a big project due this Friday, but we can't figure out from your notes what it is.

So I wonder if you have time for a meeting or phone call to discuss what to do about this. It would be great if we could talk tomorrow (Thursday) about what is due on Friday. I don't know if my son can complete it by then (since he only just got this information today), but he can try.

You should know that this failure to provide written information has imposed a great hardship on my son and our family. It's going to make my son's life miserable for rest of this quarter. It will definitely affect his grades. It shouldn't have happened.

Here is my office phone: 312-297-6935.

Thank you.

Meg Reynolds

***Meg Reynolds <megreynolds@sbcglobal.net>*** wrote:

> Date: Wed, 19 Sep 2007 04:36:52 -0700 (PDT)
> From: Meg Reynolds <megreynolds@sbcglobal.net>
> To: boe@oprfhs.org, rvenhorst@oprfhs.org, bheidkamp@oprfhs.org, lsmith@oprfhs.org, kdiaz@oprfhs.org, lcada@oprfhs.org, pprale@oprfhs.org, jterretta@oprfhs.org
>
> This is an e-mail from my son's case manager. The assignment information you see here was gathered by the case manager FROM MY SON in an after-school meeting. The case manager does not understand my son's disabilities. My son has an auditory processing disorder and ADHD and aspects of Asperger's Syndrome. He has great difficulty remembering spoken information. Yet his case manager is gathering assignment information directly from my son, who due to his disabilities does not remember spoken information accurately. This is crazy. This is a little like asking a blind person what they saw.

My son's IEP provides for a notetaker. He is supposed to received detailed daily notes describing what went on in class and detailed daily written assignment information. He is not receiving this accommodation.

To date, over the past 5 weeks, my son has received maybe half a week's worth of math and English notes, taken by a student notetaker. He has no written information at all from his Architecture class. The written information from his Spanish class consists of about 2 dozen words (or less) on the days when notes were provided. My son doesn't have enough information to prepare for tests and quizzes in his classes, and in most cases no notice of those tests and quizzes. He doesn't have enough written information to know what to write on papers. He will have to rely on his oral memory for quarter and semester exams because he doesn't have written information.

I have begged the superintendent to let me bring in a hired notetaker for my son, but he has refused. Why? I have repeatedly asked if someone at District 200 could borrow a notebook from another student in each of my son's classes and let us xerox the notes going back to the first day of class, but no one responds. I have asked for written assignment information from the teachers going back to the first day of class, so that we can check to see if my son has completed all of his homework and reading to date, but no one responds.

This is a denial of my son's IEP and FAPE. Because his disabilities are not being accommodated, he is being denied education on a daily basis. It's too late to withdraw my son and enroll him in another school, private or public, for the year.

Meg Reynolds

***"Terretta, John" <JTerretta@oprfhs.org>*** wrote:

Subject: RE: 9/18
Date: Tue, 18 Sep 2007 15:27:25 -0500
From: "Terretta, John" <JTerretta@oprfhs.org>
To: "Meg Reynolds" <megreynolds@sbcglobal.net>
CC: <tomreynolds-ejzak@sbcglobal.net>

**MATH-**Read Section 1.2 "Graphs" from green workbook and answer questions #1 - 3 on pages 21 - 22.

NOTES-YES

**SPANISH-** NONE

NOTES- NO-SUBSTITUTE TEACHER TODAY

**ARCHITECURE-** NO

NOTES-NO

**MUSIC- N O**

NOTES-YES

**ENGLISH-** GET THE FINAL DRAFT OF "The Stranger" COMPLETED

NOTES-YES

Print - Close Window

**Date:** Wed, 19 Sep 2007 04:36:52 -0700 (PDT)

**From:** "Meg Reynolds" <megreynolds@sbcglobal.net>

**To:** boe@oprfhs.org, rvenhorst@oprfhs.org, bheidkamp@oprfhs.org, lsmith@oprfhs.org, kdiaz@oprfhs.org, lcada@oprfhs.org, ppraie@oprfhs.org, jterretta@oprfhs.org

This is an e-mail from my son's case manager. The assignment information you see here was gathered by the case manager FROM MY SON in an after-school meeting. The case manager does not understand my son's disabilities. My son has an auditory processing disorder and ADHD and aspects of Asperger's Syndrome. He has great difficulty remembering spoken information. Yet his case manager is gathering assignment information directly from my son, who due to his disabilities does not remember spoken information accurately. This is crazy. This is a little like asking a blind person what they saw.

My son's IEP provides for a notetaker. He is supposed to received detailed daily notes describing what went on in class and detailed daily written assignment information. He is not receiving this accommodation.

To date, over the past 5 weeks, my son has received maybe half a week's worth of math and English notes, taken by a student notetaker. He has no written information at all from his Architecture class. The written information from his Spanish class consists of about 2 dozen words (or less) on the days when notes were provided. My son doesn't have enough information to prepare for tests and quizzes in his classes, and in most cases no notice of those tests and quizzes. He doesn't have enough written information to know what to write on papers. He will have to rely on his oral memory for quarter and semester exams because he doesn't have written information.

I have begged the superintendent to let me bring in a hired notetaker for my son, but he has refused. Why? I have repeatedly asked if someone at District 200 could borrow a notebook from another student in each of my son's classes and let us xerox the notes going back to the first day of class, but no one responds. I have asked for written assignment information from the teachers going back to the first day of class, so that we can check to see if my son has completed all of his homework and reading to date, but no one responds.

This is a denial of my son's IEP and FAPE. Because his disabilities are not being accommodated, he is being denied education on a daily basis. It's too late to withdraw my son and enroll him in another school, private or public, for the year.

Meg Reynolds

***"Terretta, John" <JTerretta@oprfhs.org>*** wrote:

> Subject: RE: 9/18
> Date: Tue, 18 Sep 2007 15:27:25 -0500
> From: "Terretta, John" <JTerretta@oprfhs.org>
> To: "Meg Reynolds" <megreynolds@sbcglobal.net>
> CC: <tomreynolds-ejzak@sbcglobal.net>
>
> **MATH**-Read Section 1.2 "Graphs" from green workbook and answer questions #1 - 3 on pages 21 - 22.
>
> NOTES-YES
>
> **SPANISH**- NONE
>
> NOTES- NO-SUBSTITUTE TEACHER TODAY



Print - Close Window

**Subject:** RE: No math, architecture assignments or notes tonight

**Date:** Wed, 29 Aug 2007 15:17:56 -0500

**From:** "Terretta, John" <JTerretta@oprfhs.org>

**To:** "Meg Reynolds" <megreynolds@sbcglobal.net>, "Prale, Phil" <PPrale@oprfhs.org>, "Weninger, Attila" <aweninger@oprfhs.org>

Hello Ms. Reynolds,

I met with Mr. Prale earlier today and we have come up with a few strategies. Firstly, I will speak with Tom's Math and Architecture teachers about the carbonless notebook accommodation. On days that no notes were generated, Tom will have a document stating that "no notes taken" along with the date. Secondly, I will make certain that Tom is aware of all assignments and has them written down. Lastly, I will email both you and Tom a copy of the assignment list to ensure that both of you know the assigned homework each night.

I am confident these strategies will help Tom. Please communicate to me your thoughts.

Thanks,
John

---

**From:** Meg Reynolds [mailto:megreynolds@sbcglobal.net]
**Sent:** Wednesday, August 29, 2007 11:46 AM
**To:** Terretta, John; Prale, Phil; Weninger, Attila
**Subject:** RE: No math, architecture assignments or notes tonight

I'm sorry, but I don't understand. Tom didn't have any homework for Architecture last night? That's good. But we had no way of knowing this last night, when he was supposed to get the homework done.

As we have discussed ad nauseum, there needs to be something written that says he doesn't have homework. He needs notes. Tom didn't have any notes or anything else in writing for Architecture or for Math.

Mr. Prale, we need more cooperation from both teachers here. It's unfair of you to say this system is working when it's not. It's unfair of you to expect Mr. Terretta to produce notes and written assignments from the teachers when they don't provide them.

This system has failed for more than 3 years now. Someone in the administration at OPRFHS needs to speak with the teachers.

Thank you.

Meg Reynolds

***"Terretta, John" <JTerretta@oprfhs.org>*** wrote:

> Hello Ms. Reynolds,
>
> I spoke with Tom and it was written down that Tom had the following homework:
>
> Math-WORKSHEET "DISEASED DATA"/No Notes were generated during class
>
> Architecture-Nothing since Tom completed the assigned in-class worksheet/No notes were

generated during class

John

---

**From:** Meg Reynolds [mailto:megreynolds@sbcglobal.net]
**Sent:** Tuesday, August 28, 2007 6:41 PM
**To:** Terretta, John; Prale, Phil
**Subject:** No math, architecture assignments or notes tonight

Hi, Mr. Terretta. Tom didn't receive any assignments or notes in his math and architecture classes today. Thanks.

Meg Reynolds



# OAK PARK & RIVER FOREST HS

**TERM 1 - Q1 Progress Detail Report for TOM REYNOLDS-EJZAK**

View Grade Marks

1451/02 AP COL ENG 1 - B HEIDKAMP - **There are no Missing assignments in TERM 1 - Q1 for this class**

| Assign Category | Date Due | Description | Points Earned | Points Possible | Percent Earned | Grade | Spec. Code | Missing | No Count |
|---|---|---|---|---|---|---|---|---|---|
| **Grade for TERM 1 - Q1 08/21/07 - 10/26/07** | | | | | **81.72** | **C** | | | |
| **Participation** (30.0% of TERM1 Grade) | | | **277.00** | **410.00** | **67.56** | **D** | | | |
| PART | 09/07/07 | Blogging - Week II | 40.00 | 40.00 | 100.00 | A | | | |
| PART | 09/14/07 | Blogging - Week III | 40.00 | 40.00 | 100.00 | A | | | |
| PART | 09/21/07 | In-Class Participation | 98.00 | 100.00 | 98.00 | A | | | |
| PART | 09/21/07 | Blogging - Week IV | 0.00 | 40.00 | 0.00 | F | | | |
| PART | 09/28/07 | Blogging - Week V | 0.00 | 40.00 | 0.00 | F | | | |
| PART | 10/03/07 | Collaborative Group #1 | 56.00 | 60.00 | 93.33 | A | | | |
| PART | 10/05/07 | Blogging - Week VI | 43.00 | 40.00 | 107.50 | A | | | |
| PART | 10/10/07 | Music Poetry - Lyrics | 0.00 | 10.00 | 0.00 | F | | | |
| PART | 10/12/07 | Blogging - Week VII | 0.00 | 40.00 | 0.00 | F | | | |
| **Quizzes and tests** (30.0% of TERM1 Grade) | | | **52.00** | **65.00** | **80.00** | **C** | | | |
| Q&T | 09/04/07 | Stranger, Part II - Instaquiz | 10.00 | 10.00 | 100.00 | A | | | |
| Q&T | 09/18/07 | Secret Sharer SuperInstaQuiz | 10.00 | 20.00 | 50.00 | F | | | |
| Q&T | 09/19/07 | Secret Sharer UnQuiz | 16.00 | 15.00 | 106.67 | A | | | |
| Q&T | 09/24/07 | Heart of Darkness - I - Insta | 11.00 | 10.00 | 110.00 | A | | | |
| Q&T | 09/26/07 | Heart of Darkness - II - Insta | 5.00 | 10.00 | 50.00 | F | | | |
| Q&T | 10/16/07 | Music Poetry Analysis | * | 10.00 | | | | | |
| Q&T | 10/17/07 | Perrine - Ch. 1 - Quiz | * | 5.00 | | | | | |
| **Writing** (40.0% of TERM1 Grade) | | | **271.50** | **290.00** | **93.62** | **A** | | | |
| WRIT | 08/27/07 | AP Practice Essay #1 | 20.00 | 20.00 | 100.00 | A | | | |
| WRIT | 08/29/07 | Ch. 1 - Autobiographical Novel | 50.00 | 50.00 | 100.00 | A | | | |
| WRIT | 08/31/07 | AP Practice Essay #2 | 21.50 | 25.00 | 86.00 | B | | | |
| WRIT | 09/10/07 | 3 Themes for Stranger | 5.00 | 5.00 | 100.00 | A | | | |
| WRIT | 09/18/07 | Stranger Essay | 85.00 | 100.00 | 85.00 | B | | | |
| WRIT | 10/02/07 | Brady - Critical Response | 20.00 | 20.00 | 100.00 | A | | | |
| WRIT | 10/05/07 | Achebe - Critical Response | 20.00 | 20.00 | 100.00 | A | | | |
| WRIT | 10/18/07 | Heart of Darkness Essay | * | 100.00 | | | | | |
| WRIT | 10/26/07 | College Application Essay | 50.00 | 50.00 | 100.00 | A | | | |



47 West Polk Street
Chicago, Illinois 60605

(312) 663-4426
(312) 663-4427
Fax (312) 566-0956

John A. Relias
Franczek Sullivan P.C.
300 South Wacker Drive
Suite 3400
Chicago, Illinois 60606
Fax 312-986-9192
**VIA FACSIMILE and U.S. Mail**

February 5, 2006

Re: Thomas Reynolds-Ejzak
Oak Park-River Forest S.D. 200
Conference Date: 01/25/06

Dear Mr. Relias:

This letter is in response to the "Additional IEP Information" form completed by Oak Park-River Forest School District 200 during the IEP meeting mandated by the ISBE and forwarded to me as the "revised IEP" for Tom Reynolds-Ejzak.

As you should recall, the ISBE, on Dec. 7, 2005, directed your client to hold an IEP meeting to clearly define the process in which notes and assignments will be provided to Tom. The ISBE also directed that District 200 provide a copy of the student's revised IEP to ISBE. A subsequent letter issued Jan. 12, 2006 by ISBE to the school district provided:

> Please note that it is not our intent for District 200 to use the required IEP meeting to take away or reduce the current level of accommodation, but rather to clearly define the process that will be used by all staff members.

After I returned from my trip, Ms. Reynolds and I had the opportunity to review the documents and our notes from the IEP meeting. We have concluded that the "Additional IEP Notes" submitted by the school district require significant revision and do not comply with ISBE's directives to the school district to issue a revised IEP. Although the notes reflect many of the comments made during the meeting, the notes do not document the scope of the accommodations your client and my client agreed to include in the IEP. Most importantly, the "Additional IEP Information" does not fulfill the ISBE's directive to "clearly define the process" for note-taking and to issue a revised IEP reflecting the agreed upon definition of the note-taking process.

Therefore, we ask that the following changes be made to the document you forwarded to us:

An asterisk or other appropriate symbol and the words "*see Additional IEP Notes" should be added to the word "Notetaker" in the "Supplemental Services"section of the IEP. The following language should be substituted for the anecdotal material included in the "Additional IEP Notes" to indicate that the following applies to the services Tom receives:

1) Due to an auditory processing disorder (that causes Tom to behave essentially like an individual with a high frequency hearing loss even though he has normal peripheral hearing) and ADHD, Tom requires that all daily and long-term assignment information be written down by someone else so that he may complete assignments and receive educational benefit.

2) Classroom teachers will appoint and monitor a peer note-taker who will take daily notes and daily written assignment information using a carbon notebook. Daily written assignment information shall include information about pending tests/quizzes/long-term assignments when announced in class, including due dates. Daily notes will include a summary of the material covered in the classroom that day.

3) When a peer note-taker has been appointed but peer notes are insufficient or issues arise related to the voluntary nature of the peer note-taker, the teacher or another note-taker will provide daily written assignment information and daily classroom notes directly to Tom.

4) Where a particular day's class consists only of students' comments to each other with limited instructional input from the teacher, and no other student has taken notes for that day, the teacher will summarize discussion/topic(s) of discussion/lesson plan for that day in writing or by email to Tom, along with daily assignment information.

5) Tom's music teacher(s) will use the attached form (see attached) in providing information via e-mail or hard copy to Tom that includes but is not limited to information regarding tests, assignments, auditions/tryouts, rehearsals, performances and "call" times for orchestra and extra-curricular performances and extra-curricular musical activities. "Extra-curricular musical activities" shall include but not be limited to IMEA, the OPRF spring musical, jazz bands, marching band and chamber groups.

6) Items 1-5 above, including the music information attachment, where appropriate, will appear on the "Confidential Memo" distributed to Tom's classroom teachers each semester."

We would appreciate you forwarding the entire revised IEP, not just the "Additional IEP Notes," as soon as your client has prepared them.

Sincerely,

Deborah Pergament

Cc: Meg Reynolds
    Donna Schertz, ISBE
    Darren Reisberg, ISBE



47 West Polk Street
Chicago, Illinois 60605

(312) 663-4426
(312) 663-4427
Fax (312) 566-0956

Donna M. Schertz
Principal Education Consultant
Special Services Division
Illinois State Board of Education
100 North First Street
Springfield, Illinois 62777-0001

and

Darren Reisberg
Deputy General Counsel
Special Services Division
Illinois State Board of Education
100 North First Street
Springfield, Illinois 62777-0001

February 3, 2006

Re: Thomas Reynolds-Ejzak
Oak Park-River Forest S.D. 200

Dear Ms. Schertz and Mr. Reisberg:

Ms. Meg Reynolds retained Children's Law Group, L.L.C. to represent her in matters concerning the special education of her son. As the enclosed letter to John Relias, attorney for Oak Park-River Forest S.D. 200 indicates, District 200 has failed to comply with ISBE's directives. Although an IEP meeting was held, the District failed to include in the revised IEP the parameters of the process related to Tom's note-taking accommodation agreed to by District 200 and my client.

Naturally, we welcome the speedy resolution of this matter. We believe that the inclusion of the language outlined in the enclosed letter in Tom's revised IEP will satisfy both ISBE's directives and the legal requirements of IDEA. Most importantly, inclusion of the language already agreed to by District 200 and Ms. Reynolds would accurately reflect the consensus of the IEP team and clearly define the services Tom requires and should receive.

Please do not hesitate to call me with any questions.

Sincerely,

Deborah Bergament

Cc: Meg Reynolds
John A. Relias
File

Exhibit 10

## SEDS - Special Education Database System

Due Process Schedule

**Notes**

**March 02, 2008**

Welcome Meg Reynolds

**Common tasks**

View Case Summary

**Other tasks**

Logout

View Dosier

**Related links**

Ask ISBE A Question

Help With SEDS

SEDS Manual

**Case Information**

**Student:** Tom Reynolds-Ejzak **Case Number:** 2008-0100

**District:** Oak Park - River Forest Sd 200 **Date of Request:** 9/25/2007

**Due Process Note**

**Date of Note:** 11/13/2007 **Note Marked as:** Public

**Author:** Sheana Hermann

**Subject Category:** Dismissal

**Subject:**

Dismissal Approved

**Note:**

Parent has failed to state a cause of action under IDEIA as to her first three issues and Summary Judgment has been entered in favor of the District under the remaining issues.

Case 1:08-cv-01507 Document 1-3 Filed 03/13/2008 Page 35 of 62

Exhibit 11



**Illinois State Board of Education**

100 North First Street • Springfield, Illinois 62777-0001
www.isbe.net

Rod Blagojevich
*Governor*

Jesse H. Ruiz
*Chairman*

Christopher A. Koch, Ed.D.
*State Superintendent of Education*

# Mediation Result

## Special Education Mediation

**Student:** Tom Reynolds-Ejzak **District:** OAK PARK - RIVER FOREST SD 200

**Case #:**2008-0100 **Mediation Date:** 11/15/2007 **Time:** 8:30 AM

**Location:** Oak Park River Forest SD 300 201 N. Scoville Ave Oak Park

**Facilitated by Mediator:** Christine Pistone

__ Mediation was held, but no agreement was reached.
__ Mediation was held and the following agreement was reached:

**Mediation Agreement**

We, the undersigned, having participated in a voluntary mediation session regarding the above named student, and being satisfied that the provisions of the resolution of our dispute are fair and reasonable, hereby agree to abide by and fulfill the following:

Unable to be mediated

We understand that this written agreement is enforceable in any state court of competent jurisdiction or in a district court of the United States. [20 USC Sec 1415(e)(2)(F)]

We pledge that all discussions that occurred during the mediation process shall be confidential and may not be used as evidence in any subsequent due process hearing or civil proceeding, unless said civil proceeding is for the purpose of enforcing this agreement.

Parent/Guardian Signature

Title Date

District Representative Signature

Superintendent
Title

11/15/07
Date



# Illinois State Board of Education

100 North First Street • Springfield, Illinois 62777-0001
www.isbe.net

Rod Blagojevich
Governor

Jesse H. Ruiz
Chairman

Christopher A. Koch, Ed.D.
State Superintendent of Education

## Mediation Record

### Special Education Mediation

**Student:** Tom Reynolds-Ejzak **District:** OAK PARK - RIVER FOREST SD 200

**Case #:**2008-0100 **Mediation Date:** 11/15/2007 **Time:** 8:30 AM

**Location:** Oak Park River Forest SD 300 201 N. Scoville Ave Oak Park

**Facilitated by Mediator:** Christine Pistone

**Participants:** Prior to the beginning of mediation, each individual is required to verify their attendance by signature and title (or relationship to the student). *Each party is reminded that that all discussions that occur during the mediation process must remain confidential and may not be used as evidence in any subsequent due process hearing or civil proceeding.*

| | |
|---|---|
| [signature] Name/Title | Name/Title |
| Meg Reynolds/parent Name/Title | Name/Title |
| [signature] Name/Title | Name/Title |
| Philip Prale / Asst Supt. C+I Name/Title | Name/Title |
| [signature], Superintendent Name/Title | Name/Title |

Illinois State Board of Education

100 North First Street • Springfield, Illinois 62777-0001
www.isbe.net

Rod Blagojevich
Governor

Jesse H. Ruiz
Chairman

Christopher A. Koch, Ed.D.
State Superintendent of Education

# Waiver

## Special Education Mediation

**Student:** Tom Reynolds-Ejzak **District:** OAK PARK - RIVER FOREST SD 200

**Case #**:2008-0100 **Mediation Date:** 11/15/2007**Time:** 8:30 AM

**Location:** Oak Park River Forest SD 300 201 N. Scoville Ave Oak Park

**Facilitated by Mediator:** Christine Pistone

Since the mediator is not a party to this action, has no independent knowledge, or expertise as to this case, and in order to preserve the integrity of, and confidence in, the mediation process the parties below waive any and all right(s) that they may have to compel the mediator to: (a) appear at any subsequent *administrative or civil proceeding* on the issues that are a subject matter of the mediation; and (b) discussions that occur during mediation shall be confidential and may not be used as evidence in any subsequent due process hearings or civil proceedings

*We agree that we will not compel the mediator to appear at any subsequent administrative or civil proceeding arising from this dispute.*

[signature]
Parent(s)/Guardian Signature

11-15-07
Date

[signature]
District Representative Signature

Director of Special Education
Title

11-15-07
Date

Exhibit 12

# SEDS - Special Education Database System

Due Process | Schedule

Due Process Case Number: 2008-0100 - Tom Reynolds-Ejzak vs Oak Park - River Forest Sd 200

March 02, 2008

Welcome Meg Reynolds

**Common tasks**

Add Note

**Other tasks**

Logout

View Dosier

**Related links**

Ask ISBE A Question

Help With SEDS

SEDS Manual

Summary Contacts Dates Notes Decision Documents

**Parent Information**

| Parent Name | Address | Home Phone | Daytime Phone | Edit |
|---|---|---|---|---|
| Meg Reynolds | 1166 South Clinton Avenue Oak Park, IL 60304 | (312) 297-6935 | (312) 297-6935 | |

**Attorney/Advocate Information**

| Attorney Name | Address | Phone | Attorney For | SendInfo | Active | Edit |
|---|---|---|---|---|---|---|
| John Relias | Franczek Sullivan Pc Chicago, IL 60606 | (312) 986-0300 | District | Yes | Yes | |

**District Contact Information**

District: Oak Park - River Forest Sd 200
201 N Scoville Ave Oak Park, IL 60302-2264

Telephone: (708) 383-0700 Fax:
Email:

Superintendent: Dr Attila J Weninger

Coop: Oak Park & River Forest Dist 200
201 N SCOVILLE AVE OAK PARK, IL 60302

Telephone: (708) 434-3106 Fax:

Director of SPED: Linda S. Cada

Email: lcada@oprfhs.org

**Hearing Officer Information**

| Hearing Officer Name | Status | Requested By | Date Dismissed |
|---|---|---|---|
| James Wolter | Struck | Meg Reynolds | 10/9/2007 |
| Sheena Hermann | Assigned | | |

Case 1:08-cv-01507   Document 1-3   Filed 03/13/2008   Page 42 of 62

## SEDS - Special Education Database System

Due Process | Schedule

**Due Process Case Number: 2008-0100 - Tom Reynolds-Ejzak vs Oak Park - River Forest Sd 200**

March 02, 2008

Welcome Meg Reynolds

**Common tasks**

Add Note

**Other tasks**

Logout

View Dosier

**Related links**

Ask ISBE A Question

Help With SEDS

SEDS Manual

Summary | Contacts | Dates | Notes | Decision | Documents

### Prehearing Conference

**Time:** 3:00 p.m. **Place:** teleconference

| Scheduled | Held | Continuance Requested By | Reason | Approved |
|---|---|---|---|---|
| 10/25/2007 | | Sheana Hermann | H.O. set new date | Approved |
| 11/7/2007 | | | | |

### Hearings

**Time:** **Place:**

| Scheduled | Held | Continuance Requested By | Reason | Approved |
|---|---|---|---|---|
| 11/9/2007 | | Sheana Hermann | Continuance generated by System Event | Approved |
| 11/26/2007 | | | | |

### Resolution and Mediation Conferences

**Resolution Began:**

**Resolution Ended:**

**Mediation Began:** 10/22/2007

**Mediation Ended:**

### Summary Judgment

**Summary Judgment:** **Briefs Due:** **Parent's Rcvd:** **District's Rcvd:**

### Document Dates

**Initial Packet Rcvd-District:** 10/4/2007

**Initial Packet Rcvd-Parent:**

**Expense Form Rcvd:** 1/7/2008

**Admin Rec. Rcvd:** 11/14/2007

**Appeal Date:**

**Mailed Docs to Court:**

## SEDS - Special Education Database System

Due Process Schedule

Due Process Case Number: 2008-0100 - Tom Reynolds-Ejzak vs Oak Park - River Forest Sd 200

March 02, 2008

Welcome Meg Reynolds

**Common tasks**

Add Note

**Other tasks**

Logout

View Dosier

**Related links**

Ask ISBE A Question

Help With SEDS

SEDS Manual

Summary Contacts Dates Notes Decision Documents

**Decision Issues**

| Issue (OSEP Reported) | Specific Issues | Decided For |
|---|---|---|
| Other Intervention | Other Intervention | Undecided |

**Decision Extension**

Date Requested:

Reason:

| Approved/Denied By | Reason | Approved/Denied | Date Decided |
|---|---|---|---|

**Decision Summary**

Decision Due: Downloaded: Submitted: Approved:

**Clarification Requests**

| Requested By | Reason | Approved/Denied | Date Decided |
|---|---|---|---|

# SEDS - Special Education Database System

Due Process | Schedule

**Due Process Case Number: 2008-0100 - Tom Reynolds-Ejzak vs Oak Park - River Forest Sd 200**

**March 02, 2008**

Welcome Meg Reynolds

**Common tasks**

Add Note

**Other tasks**

Logout

View Dosier

**Related links**

Ask ISBE A Question

Help With SEDS

SEDS Manual

Summary | Contacts | Dates | Notes | Decision | Documents

**Notes**

| Subject | Subject Category | Date Entered | Public |
|---|---|---|---|
| Strike Reason | Strike Hearing Officer | 10/9/2007 | Yes |
| Intro Packet Received From District | Intro Packet Received | 10/10/2007 | Yes |
| Continuance Request | Continuance Request Note | 10/18/2007 | Yes |
| Dismissal Approved | Dismissal | 11/13/2007 | Yes |
| Administrative Records Received | Administrative Record Received | 11/14/2007 | Yes |
| Final Expenses Received | Final Expenses Received | 1/7/2008 | Yes |

## SEDS - Special Education Database System

Due Process | Schedule

**Due Process Case Number: 2008-0100 - Tom Reynolds-Ejzak vs Oak Park - River Forest Sd 200**

**March 02, 2008**

Welcome Meg Reynolds

**Common tasks**

Add Note

**Other tasks**

Logout

View Dosier

**Related links**

Ask ISBE A Question

Help With SEDS

SEDS Manual

Summary | Contacts | Dates | Notes | Decision | Documents

### Contact Information

**Superintendent:** Dr Attila J Weninger — **Telephone:** (708) 383-0700

**District Name:** Oak Park - River Forest Sd 200

**District's Attorney:** John Relias — **Telephone:** (312) 986-0300

**Director of SPED:** Linda S. Cada — **Telephone:** (708) 434-3106

**Cooperative Name:** Oak Park & River Forest Dist 200

**Parent/Guardian:** Meg Reynolds — **Telephone:** (312) 297-6935

**Parent's Attorney:** — **Telephone:**

**Hearing Officer:** Sheana Hermann — **Telephone:**

### Student Information

**Student:** Tom Reynolds-Ejzak — **Birthdate:** 05/26/1990

**Grade Level:** High School — **Sex:** Male

**Pupil Setting:** Public School — **Race:** Caucasian

**Languages:** English — **Interpreter:** No

**Disabilities:** Specific Learning Disabilities

### Issues

| Issue (OSEP Reported) | Specific Issues |
|---|---|
| Other Intervention | Other Intervention |

### Case Request Information

**Person Requesting Hearing:** Meg Reynolds

**Requested By:** Parent

**Request Received:** 9/25/2007 — Case Expedited

Yes No Parents offered Mediation Services?

Yes No Parties requested ISBE mediation services?

### Case Status

**Case Status:** Closed — **Status:** Request Closed - Dismissed — **Orig. End Date:** 12/27/2007

**Case Closed:** 11/13/2007 — **Resolution:** Dismissed — **Actual End Date:** 11/13/2007

**Decision Due:** — **Decision Submitted:** — **Decision Approved:**

| | Resolution | Mediation | Pre-Hearing | Hearing |
|---|---|---|---|---|
| Scheduled | | 10/22/2007 | 11/7/2007 | 11/26/2007 |
| Completed | | | | |

# SEDS - Special Education Database System

Due Process Schedule

**Notes**

**March 02, 2008**

Welcome Meg Reynolds

**Common tasks**

View Case Summary

**Other tasks**

Logout

View Dosier

**Related links**

Ask ISBE A Question

Help With SEDS

SEDS Manual

**Case Information**

**Student:** Tom Reynolds-Ejzak

**Case Number:** 2008-0100

**District:** Oak Park - River Forest Sd 200

**Date of Request:** 9/25/2007

**Due Process Note**

**Date of Note:** 10/9/2007

**Note Marked as:** Public

**Author:**

**Subject Category:** Strike Hearing Officer

**Subject:**

Strike Reason

**Note:**

Meg Reynolds struck James Wolter

Case 1:08-cv-01507 Document 1-3 Filed 03/13/2008 Page 53 of 62

# SEDS - Special Education Database System

Due Process Schedule

Notes

**March 02, 2008**

Welcome Meg Reynolds

**Common tasks**

View Case Summary

**Other tasks**

Logout

View Dosier

**Related links**

Ask ISBE A Question

Help With SEDS

SEDS Manual

**Case Information**

**Student:** Tom Reynolds-Ejzak **Case Number:** 2008-0100

**District:** Oak Park - River Forest Sd 200 **Date of Request:** 9/25/2007

**Due Process Note**

**Date of Note:** 10/10/2007 **Note Marked as:** Public

**Author:**

**Subject Category:** Intro Packet Received

**Subject:**

Intro Packet Received From District

**Note:**

# SEDS - Special Education Database System

Due Process Schedule

Notes

March 02, 2008

Welcome Meg Reynolds

**Common tasks**

View Case Summary

**Other tasks**

Logout

View Dosier

**Related links**

Ask ISBE A Question

Help With SEDS

SEDS Manual

**Case Information**

**Student:** Tom Reynolds-Ejzak **Case Number:** 2008-0100

**District:** Oak Park - River Forest Sd 200 **Date of Request:** 9/25/2007

**Due Process Note**

**Date of Note:** 10/18/2007 **Note Marked as:** Public

**Author:** Sheana Hermann

**Subject Category:** Continuance Request Note

**Subject:**

Continuance Request

**Note:**

District has filed a motion to dismiss and for summary judgment.



# SEDS - Special Education Database System

Due Process Schedule

**Notes**

**March 02, 2008**

Welcome Meg Reynolds

**Common tasks**

View Case Summary

**Other tasks**

Logout

View Dosier

**Related links**

Ask ISBE A Question

Help With SEDS

SEDS Manual

**Case Information**

**Student:** Tom Reynolds-Ejzak **Case Number:** 2008-0100

**District:** Oak Park - River Forest Sd 200 **Date of Request:** 9/25/2007

**Due Process Note**

**Date of Note:** 11/13/2007 **Note Marked as:** Public

**Author:** Sheana Hermann

**Subject Category:** Dismissal

**Subject:**

Dismissal Approved

**Note:**

Parent has failed to state a cause of action under IDEIA as to her first three issues and Summary Judgment has been entered in favor of the District under the remaining issues.

Case 1:08-cv-01507 Document 1-3 Filed 03/13/2008 Page 58 of 62

## SEDS - Special Education Database System

Due Process Schedule

**Notes**

**March 02, 2008**

Welcome Meg Reynolds

**Common tasks**

View Case Summary

**Other tasks**

Logout

View Dosier

**Related links**

Ask ISBE A Question

Help With SEDS

SEDS Manual

**Case Information**

**Student:** Tom Reynolds-Ejzak **Case Number:** 2008-0100

**District:** Oak Park - River Forest Sd 200 **Date of Request:** 9/25/2007

**Due Process Note**

**Date of Note:** 11/14/2007 **Note Marked as:** Public

**Author:**

**Subject Category:** Administrative Record Received

**Subject:**

Administrative Records Received

**Note:**



# SEDS - Special Education Database System

Due Process Schedule

Notes

**March 02, 2008**

Welcome Meg Reynolds

**Common tasks**

View Case Summary

**Other tasks**

Logout

View Dosier

**Related links**

Ask ISBE A Question

Help With SEDS

SEDS Manual

**Case Information**

**Student:** Tom Reynolds-Ejzak **Case Number:** 2008-0100

**District:** Oak Park - River Forest Sd 200 **Date of Request:** 9/25/2007

**Due Process Note**

**Date of Note:** 1/7/2008 **Note Marked as:** Public

**Author:**

**Subject Category:** Final Expenses Received

**Subject:**

Final Expenses Received

**Note:**

$1420.21