# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

MEG REYNOLDS, individually and on )
behalf of her minor child, TOM )
REYNOLDS-EJZAK, )
                        )
         Plaintiff(s), )
                        )     CASE NO.  08C 1507
Vs. )
                        )
Oak Park-River Forest School District 200, )     Hon. Judge John W. Darrah
Local School District; Board of Education )
of Oak Park-River Forest School District )
200; and The Illinois State Board of
Education,

         Defendants.

**FILED**

JUL 1 5 2008
JUL 15 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## MOTION FOR LEAVE TO AMEND AND SUPPLEMENT
## FIRST AMENDED COMPLAINT

Pursuant to Fed.R.Civ.P. Rule 15, Plaintiff Meg Reynolds, individually and on

behalf of Tom Reynolds-Ejzak, respectfully requests permission of the Court to amend

Plaintiffs' Amended Complaint to summarize facts relating to the ADA/Section 504

claims that previously were alleged in Exhibits 1, 3 and 9 of the original complaint.  A

copy of the proposed Second Amended Complaint is attached to this Motion.

Plaintiffs also request permission to supplement the same Amended Complaint to

add new paragraphs alleging retaliation and discrimination that arose out of the same

transactions alleged in the original complaint, but that occurred after the Parental Request

for an Impartial Due Process Hearing was filed in September 2007.  Such new paragraphs

appear at paragraphs 74(k)-(o) of the proposed Second Amended Complaint attached

hereto.

Fed.R.Civ.P. Rule 15(a) provides that "leave to amend shall be freely given when justice so requires." In this case, there should be no prejudice to the parties because this action commenced just 3 ½ months ago. In addition, Courts in this jurisdiction have allowed amendment to supplement the facts in a complaint where, as in this case, the new facts directly relate to the legal theory under which the defendant was sued in the original complaint, see *Packers Trading Co. v. Pederson*, 1985 U.S. Dist. LEIS 14336 (N.D. Ill. 1985) and arise out of the same transactions or occurrences as those alleged in the original complaint. See *In re Barnes*, 1989 Bankr. LEXIS 167 (U.S. Bankruptcy N.D. Ill. 1989).

Other arguments outlining the legal basis for these requests is set forth in the attached Reply to Defendant School District's Response, etc. and Memorandum in Support of Motion for Leave to Amend Complaint.

Plaintiffs thus respectfully request that this Court direct the clerk to file the attached proposed Second Amended Complaint.

**Dated this 15th day of July, 2008**

Meg Reynolds, pro se and for
Plaintiff Tom Reynolds-Ejzak

Print Name
1166 South Clinton Avenue
Oak Park, IL 60304
Telephone: 312-297-6935
Fax: 312-297-5956
*For Certified mail:*
c/o BCBSA
225 N. Michigan Ave.
Chicago, IL 60601
E-Mail Address: megreynolds@sbcglobal.net



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

MEG REYNOLDS, individually and on )
behalf of her minor child, TOM )
REYNOLDS-EJZAK, )
)
        Plaintiff(s), )
)   CASE NO. 08C 1507
Vs. )
)   Honorable Judge John W. Darrah
Oak Park-River Forest School District 200, )
Local School District; Board of Education )
of Oak Park-River Forest School District
200; and The Illinois State Board of
Education,

        Defendants.

**RECEIVED**

JUL 1 5 2008
JUl 15, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## SECOND AMENDED COMPLAINT

Plaintiff Meg Reynolds and Plaintiff Tom Reynolds-Ejzak, by his mother and

Next Friend Meg Reynolds, complain as follows:

### Introduction

1.      This cause of action arises out of the efforts of Plaintiff Meg Reynolds to

enforce the rights of her son under the Individuals with Disabilities Act ("I.D.E.A."), the

Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of

1973 ("Section 504" or "504"), as well as her efforts to exercise her parental participation

rights under the I.D.E.A., the ADA and Section 504.

2.      Plaintiffs file this Complaint as a timely appeal of a final Decision and

Order issued on November 13, 2008 by Illinois State Board of Education ("ISBE")

Impartial Hearing Officer ("IHO") Sheana Hermann, which Decision and Order

addressed both I.D.E.A. claims and claims alleged under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504").

3.    IHO Hermann issued her final Decision and Order and granted Defendant OAK PARK-RIVER FOREST SCHOOL DISTRICT 200's ("School District's") motions for summary judgment and dismissal with prejudice. Before delivering her Decision and Order, there was no notice or allegation of insufficiency under the ISBE rules from the School District.

4.    IHO Hermann delivered her final Decision and Order on the basis of School District's letter motion which argued that Plaintiffs failed to state a claim for which relief could be granted and the issues had already been litigated through an OCR administrative complaint and an ISBE state complaint. The School District's letter motion was not accompanied by credible evidence or sworn affidavit in support of its motions. The letter motion contained only the statements and assertions of the School District's legal counsel.

5.    The IHO erred by adopting the School District's mistaken statement of the law on the nature of administrative complaint investigations and reports, and by a series of procedural and legal violations.

6.    Plaintiffs appeal IHO Sheana Hermann's Decision and Order based on the following:

> (a)    Many significant procedural violations committed during the administration, case management and ruling on the matter by IHO Hermann that unfairly and unjustly prejudiced Plaintiffs;
>
> (b)    Errors in the IHO Hermann's findings of fact;
>
> (c)    Improper application of the law to the facts by the IHO;

(d)    Failure by IHO Hermann to recognize and apply the legal standards in this jurisdiction for a dismissal with prejudice;

(e)    Failure by IHO Hermann to recognize and apply the legal standards in this jurisdiction for a motion for summary judgment in an I.D.E.A. action, or for any other civil action in this jurisdiction;

(f)    IHO Hermann applied a heightened and improper pleading standard to the Plaintiffs' Parental Notice and Request for Due Process Hearing. The IHO's heightened pleading standard exceeded the published ISBE standard for insufficiency.

(g)    IHO Hermann failed to recognize the Defendant School District did not comply with the Local Agency Response rules before she ruled on the District's motion to dismiss and motion for summary judgment. *See* 20 U.S.C. §1415(c)(2)(B)(i)(I).

(h)    IHO Hermann failed to recognize and address genuine issues raised by Plaintiff Meg Reynolds in her Notice and Request for Due Process Hearing;

(i)    Failure by IHO Hermann to recognize that Plaintiff Meg Reynolds voiced a justiciable I.D.E.A. claim of retaliatory interference and hindering of the exercise of parental rights to take part in and enforce a child's right to a free appropriate public education in the least restrictive environment.

(j)    Failure of IHO Hermann to recognize Plaintiff Meg Reynolds' Response to Defendant's motion to dismiss and motion for summary judgment met the tests courts in this jurisdiction apply for ruling on motions to dismiss and motions for summary judgment.

(k)    Failure of IHO Hermann to recognize a cognizable claim, or claims, under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act.

(l)    Failure of IHO Hermann to recognize that *res judicata* or claim preclusion does not attach to investigative reports or written decisions issued by ISBE or the U.S. Department of Education, Office of Civil Rights ("OCR") under those agencies' required administrative complaint procedures.

(m)    Failure of IHO Hermann to recognize that federal OCR administrative or State administrative complaint procedures described at 34 CFR Sec. 300.151 *et seq.* and 34 C.F.R. Sec. 100 *et seq.* are not a part

of the due process procedural requirements and protections set forth at 20 U.S.C § 1415 and are not a part of the ISBE special education hearing rules that carry out 20 U.S.C. §1415.

(n)     Failure of IHO Hermann to recognize that 20 U.S.C. Section 1415(b)(6) governs the minimum procedures for an impartial hearing and bringing a civil action under the I.D.E.A. IHO Hermann also failed to recognize that if state or federal rules of procedure are also used for the Due Process Hearing, the application of those rules must adhere to the legal standards set by the courts in the jurisdiction.

(o)     Failure of IHO Hermann to afford Plaintiffs the procedural protections for impartial due process actions guaranteed by 20 U.S.C. Section 1415

(p)     Failure by ISBE to provide an IHO in this matter with sufficient knowledge of the law, regulations and interpretations under the I.D.E.A., and who would demonstrate an ability to conduct hearings in accord with appropriate, standard legal practice, as required under 34 C.F.R. Section 300.511(c).

7.     Plaintiffs bring this timely Action under the I.D.E.A., Section 504 of the Rehabilitation Act ("Section 504") and the Americans with Disabilities Act ("ADA") to appeal the final Order and Decision of IHO Sheana Hermann and to assert claims under Section 504 and the ADA independently.

## Jurisdiction, Venue and Exhaustion

8.     The United States District Court for the Northern District of Illinois has jurisdiction over this action under 28 U.S.C. § 1331, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2), and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794 and the Americans With Disabilities Act (the "ADA"), 42 U.S.C. 12101 et seq.

9.      Venue is proper in this District under 28 U.S.C. §1391 because the acts complained of occurred in the District of Northern Illinois; the parties reside in the District of Northern Illinois, or do business in the District of Northern Illinois.

10.     Plaintiffs have exhausted their administrative remedies with respect to the claims stated in this Second Amended Complaint.

## Parties

11.     For all times relevant to this action, Plaintiff Tom Reynolds-Ejzak ("Tom") was a minor and of compulsory school-age. He lived at 1166 S. Clinton Avenue in Oak Park, Illinois, 60304, and he was enrolled in Oak Park – River Forest SD 200, Local School District (the "School District").

12.     Plaintiff Meg Reynolds is Tom's mother.  For all times relevant to this matter, Ms. Reynolds has been a legal resident and taxpayer in the School District.  Ms. Reynolds has sole legal custody of Tom, and has sole educational decision-making authority for him.

13.     Defendant Board of Education of Oak Park-River Forest School District 200 (the "School Board") is the decision-making body responsible for the School District under 105 ILCS §§ 5/10-1 *et seq.*  The School Board is responsible for ensuring that each student within its district who is eligible for services under the IDEA or Section 504 of the Rehabilitation Act receives a free and appropriate public education in the least restrictive educational environment.  The School District is a recipient of federal funds and as such is governed by Section 504 of the Rehabilitation Act.

5

14.    Defendants School District and School together constitute an instrumentality of local government and a statutorily created entity, pursuant to the Illinois School Code. School District and its Board of Education together (together, "School District") are responsible for the education of all children residing within the district, including students with special education needs. Defendant School District receives funds from local property taxes and ISBE, as well as federal financial assistance from the U.S. Department of Education and other federal agencies. School District and its Board of Education are public entities as contemplated by Title II of the ADA.

15.    The School Board has decision making powers as part of its duty to oversee, direct, and govern the School District's special education and other programs and services consistent with 105 ILCS Secs 5/10-1 *et seq*.

16.    Defendant Illinois State Board of Education (the "ISBE") is the authorized primary state agency required to establish procedures under the I.D.E.A. to resolve disputes between a Local Education Agency ("LEA") and parents on behalf of themselves and their children. Under the I.D.E.A., parents have a right to seek resolution by asking for an impartial due process hearing or by seeking mediation to resolve their differences about any disagreements they may have concerning their child's special education individualized education program "IEP." 20 U.S.C. § 1415 (a).

17.    The ISBE is also responsible for ensuring that all Illinois school-age children receive an education, and ensuring that all eligible children with disabilities in Illinois receive a free and appropriate public education. 20 U.S.C. § 1412 (a)(1)(A) and (B). *See also* 105 ILCS 5/14-8.02.

18. The Illinois State Board of Education ("ISBE") receives federal funds and as such is also governed by Section 504 of the Rehabilitation Act.

19. Defendant Oak River – River Forest SD 200, Local School District is a public school district organized and established under the Education Laws of the State of Illinois.

**Overview of Applicable Legal Standards**

**Under the I.D.E.A., State Law and**

**Section 504**

20. Congress enacted, and the president signed into law, the federal law known as the I.D.E.A., formerly the Education of All Handicapped Children Act, in 1975. See 20 U.S.C. § 1400 *et seq*. The intent of this law, which was re-authorized in 2004, is to ensure that all public schools receiving federal funds provide every child with disabilities a free appropriate public education in the least restrictive environment.

21. To protect the rights of children with disabilities as well as their parents, the I.D.E.A. requires public schools and state education agencies to adhere to a set of procedural safeguards set out in Section 1415 of the Act and related regulations at 34 C.F.R. 300.500 *et seq*. Those safeguards are essentially mirrored, and are in some cases expanded, under Illinois special education laws adopted by the Illinois General Assembly and administrative rules issued by ISBE. *See* 105 ILCS 5/14-8.02a, Impartial due process hearing; civil action and 23 Illinois Administrative Code Part 226.

22.     Among the requirements set forth in Section 1415 and related Illinois law, the state education agency must allow a parent to request an impartial due process hearing if the parent disagrees with any matter related to the identification, evaluation and educational placement of the child, or the provision of FAPE to the child.

23.     In connection with a special education due process hearing, Section 1415 and related regulations and authority also guarantee the right to a resolution session, mediation, a pre-hearing conference and the exchange of documents between the parties. The I.D.E.A. also requires the hearing and related transactions must be conducted in accord with appropriate, standard legal practice by an impartial hearing officer with sufficient knowledge of the law, regulations and interpretations under the I.D.E.A. *See* 105 ILCS 5/14-8.02c Sec. 14-8.02c. Due process hearing officers.

24.     Impartial Hearing rights for parents under § 1415 also include the right to be accompanied and advised by counsel and the right to confront and cross-examine witnesses. Also, Section 1415(h) provides for the right to reject from consideration any documents the opposing party fails to disclose five days before the hearing begins.

25.     Separate and apart from the due process hearing rights under § 1415 of the I.D.E.A., a party may elect an alternative resolution process known as state complaint procedures. A party files an administrative complaint directly with the state educational agency, which investigates and rules on the claim. 20 USC 1415 (f)(3)(F); 34 CFR 300.151 through 153.

26.     Exercising the choice for a State Complaint does not constitute "litigation" and it does not abridge or restrict a complaining party's right to an impartial due process

hearing or the procedural rights connected with a parent's hearing request as set forth at Section 1415. In addition, the State Complaint procedures do not provide for an evidentiary hearing; confrontation and cross-examination of witnesses; a right to see the opposing party's documents; appeal rights; or other evidence or other due process procedures designed to ensure fundamental fairness and protection of individual constitutionally protected interests.

27.    Similar to the informal State Complaint Procedure, the U.S. Department of Education, Office of Civil Rights ("OCR") receives and investigates administrative complaints of discrimination based on disability pursuant to 34 C.F.R. 100 *et seq.*  Filing an OCR discrimination complaint by no means constitutes "litigation," nor are OCR's findings the result of "litigation."  Unlike a special education due process ruling, an OCR ruling is not subject to judicial review or appeal in a court of law.

28.  Section 504 of the Rehabilitation Act of 1973 ("Section 504") forbids retaliation in any form, including intimidation, threats, coercion, interference, pressure, harassment and bullying.  A claim of retaliation under Section 504 is a different claim from that for discrimination.  Retaliation is specifically forbidden by federally mandated protections.  Section 504 of Rehabilitation Act ("Section 504") at 29 U.S.C. § 794(d) expressly incorporates the anti-retaliation provision of Section 503 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203. That provision prohibits retaliation against any individual because such individual has opposed any "act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." *Ibid.*

29.     Title II of the ADA also generally prohibits discrimination against individuals with disabilities and in the provision of public services, and mandates that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or denied the full benefits of, a public entity's services, programs or activities.  42 U.S.C. Sec. 12132.

30.     A public entity must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

31.     If a party is aggrieved by the findings and decision made by a due process hearing officer, that party has the right to bring a civil action to contest the findings and decision.  I.D.E.A. §1415(i)(2).

32.     A parent's claim to enforce the supplementary aids and services section of her child's IEP is a cognizable claim for denial of a free appropriate public education under §1415 of the I.D.E.A.

33.     A parent's claim of retaliation, interference, threats, harassment or bullying arising from her efforts to exercise her right to enforce the terms of her child's IEP is a cognizable claim under §1415 of the I.D.E.A., incorporating the ADA at 42 U.S.C. § 12203.

34.     A parent's claim of retaliation, interference, threats, harassment or bullying arising from her efforts to exercise her disabled child's right to reasonable

accommodations specified in his IEP is also a cognizable claim under Section 504 at 29 U.S.C. § 794(d), incorporating the ADA at 42 U.S.C. § 12203.

35.    A claim of discrimination arising from a public entity's refusal to provide reasonable modifications to a student with disabilities, thus denying that student the full benefits of the public entity's services, programs or activities, is a cognizable claim under the ADA at  42 U.S.C. Sec. 12132.

## Facts Common To All Causes of Action

36.    On September 21, 2007 Ms. Reynolds properly completed and submitted the ISBE form 19-86A, Parental Request for an Impartial Due Process Hearing, to the School District requesting a hearing on the factual allegations she described on the form.

37.    ISBE Form 19-86A is published on the ISBE web site and offered for downloading by parents of students with disabilities in Illinois so that they may request a special education Impartial Due Process Hearing.

38.    To complete the ISBE Form 19-86A, Ms. Reynolds followed the ISBE instructions on the form.  Consistent with those instructions, she filled in her name and her child's name and address and the name of the school district; attached pages describing the dispute and requested remedies; and submitted the completed form to the School District Superintendent on September 21, 2007. Ms. Reynolds sent a copy to the ISBE on the same day. *See* Ms. Reynolds' completed ISBE Form 19-86A (1/01) and attachments. See Parent Request for Due Process Hearing, Appended to this complaint as Exhibit 1.

39.    ISBE records show that it received Ms. Reynolds' completed ISBE Form 19-86A from the School District on September 25, 2007 and appointed James Wolters as

11

IHO. It acknowledged receipt of the matter on September 27, 2007. See Parent Initial Packet, Appended to this complaint as Exhibit 2.

40.    During the week of October 1, 2007, Ms. Reynolds received a copy of School District's counsel John Relias' October 1, 2007 letter motion to dismiss certain of Ms. Reynolds claims with prejudice, together with a motion for summary judgment on the remaining claims. See School District's letter motion to dismiss and motion for summary judgment, Appended to this complaint as Exhibit 3.

41.    As of the time Ms. Reynolds received a copy of the School District's October 1 letter motion, Ms. Reynolds had received no other communication or correspondence from ISBE or the School District in response to her hearing request. She contacted the office of the ISBE Due Process Coordinator and asked about the status of her complaint and scheduling. The office assistant gave her an Internet password to access the ISBE online Special Education Database system to retrieve a copy of the Letter. Due to problems with certified mail at her home address, Ms. Reynolds asked the ISBE to send all future correspondence to her at her Chicago office address.

42.    After receiving the password, Ms. Reynolds visited the ISBE website on her computer and downloaded a copy of the certified letter to her dated Sept. 27, 2007 from the ISBE. The record showed that IHO Wolters was also furnished a copy of the certified letter, which gave notice from the ISBE that Mr. Wolters was appointed to serve as the IHO. The letter also contained the ISBE instructions for making a proper response to a Parental Request for a Due Process Hearing (the "ISBE instructions"). See Parent Initial Packet, See Exhibit 2.

43.    Specifically, the ISBE instructions provided that within 10 days of receiving a parent's hearing request, the school district must provide either (a) a copy of a "prior written notice" pertaining to the subject matter of the request; or (b) a written response that "explains the actions taken by the district, the options considered and why they were rejected by the district before taking the action, and a list of the factors relevant to the district's action."   See Parent Initial Packet, See <u>Exhibit 2</u>.

44.    In addition, the ISBE instructions provided that if the non-requesting party deems the hearing request to be "insufficient," it may submit a written notice of insufficiency to the IHO within 15 days of receipt of the hearing request.  The instructions stated that the IHO would rule within 5 days of the notice of insufficiency. No other grounds for dismissal or rejection of a parent's due process hearing request were described in the ISBE instructions and letter or were otherwise communicated to the parties.  See Parent Initial Packet, See <u>Exhibit 2</u>.

45.    No notice of insufficiency was submitted by the School District.  Its October 1, 2007 letter motion to dismiss and for summary judgment does not satisfy the ISBE instructions for making a proper school district response to a Parental Request for a Due Process Hearing. See Parent Initial Packet, See <u>Exhibit 2</u>.

46.    On information and belief, the only adverse response parents are told about by the ISBE, the School District, or the School Board is the notice of insufficiency. The ISBE instruction letter did not inform Ms. Reynolds about motions to dismiss and motions for summary judgment. The ISBE instruction also did not informed her about ISBE hearing rules, or any other rules governing motions to dismiss or motions for summary judgment in special education matters.

47.   On October 1, 2007, IHO James Wolters sent a Notice of Pre- Hearing Conference to the ISBE setting the following dates:

10/25/07   Pre Hearing Conference

11/9/07   Hearing

See Notice of Pre-Hearing Conference, Appended to this complaint as Exhibit 4.

48.   Soon thereafter, by letter dated October 3, 2007, IHO Wolters acknowledged receiving the District's October 1 letter motions to dismiss and for summary judgment. In his acknowledgement, IHO Wolter stated, "I shall abstain from issuing a written ruling on the motion until October 20, 2007 to provide Ms. Reynolds an opportunity to respond to that motion in writing." See ISBE letter from Wolter, Appended to this complaint as Exhibit 5.

49.   In early October 2007, Ms. Reynolds requested a substitution of IHO on the grounds that IHO Wolters previously had an extended client relationship with the School District's attorney.

50.   Ms. Reynolds did not receive a response to her substitution request until mid-October 2007, but learned of the substitution when she used her password again to access the ISBE website. She found a copy of a letter to her dated October 9, 2007 announcing that Sheana Hermann, IHO Wolter's daughter, was appointed as the IHO to replace IHO Wolters. The letter stated that IHO Hermann would contact her "within 5 days of receipt of this letter to arrange the dates, times and locations of the hearing and the pre-hearing conference." *See* ISBE Letter of Andrew C. Eulass, Appended to this complaint as Exhibit 6.

14

51.    There was no contact from IHO Hermann to arrange pre-hearing and hearing dates.  Although IHO Hermann left a brief telephone phone message for Ms. Reynolds some time after her substitution appointment, and Ms. Reynolds left a return voicemail, IHO Hermann did not speak with Ms. Reynolds at any time.

52.    On November 2, 2007, Ms. Reynolds wrote to Andrew Eulass, ISBE Due Process Coordinator, to express her concern about the failure to hold a mandatory resolution session and the delays in scheduling a mediation.  She also asked why no pre-hearing conference or hearing had been scheduled.  Mr. Eulass referred her to the IHO.

53.    Despite Ms. Reynolds' request for an address change and for receiving hearing-related correspondence by mail, she received no mailed correspondence at her home or her office address from the ISBE Due Process Coordinator or IHO Sheana Hermann until she received the Decision and Order that dismissed with prejudice and granted summary judgment in favor of the School District during mid-November, 2007. At no time did the ISBE or the School District or the School Board inform Ms. Reynolds that she must visit the ISBE web site to find official correspondence, rules, schedule dates, or any other information relating to the conduct of her hearing request.  At no time did ISBE instruct Ms. Reynolds how to interpret the terms on the Special Education Database System web site.

54.    During late October 2007, Ms. Reynolds again accessed the ISBE website using her password. She found a copy of a letter stamped "received Oct. 22, 2007" from IHO Hermann addressed to Ms. Reynolds at her office address and to the School District's attorney.  Ms. Reynolds did not receive that letter by mail.  The letter informed the parties that IHO Hermann was striking the previously scheduled October 25, 2007

pre-hearing conference previously scheduled by IHO Wolters. IHO Hermann's letter

gave Ms. Reynolds until Oct. 29, 2007 to file her response to the School District's

motions to dismiss and for summary judgment.  See Letter of IHO Sheana Hermann,

Appended to this complaint as Exhibit 7.

55.    IHO Hermann's letter did not mention rescheduling a new date for the pre-

hearing conference. The letter did state that IHO Hermann would rule on the District's

motion "on or before November 5, 2007." *See* Exhibit 7.

56.    On October 18, 2007, IHO Hermann entered the following note in the

SEDS – Special Education Database System: "Subject: Continuance Request." "District

has filed a motion to dismiss and for summary judgment." *See* SEDS – Special Education

Database System, ID=1824.pdf, Appended to this complaint as Exhibit 8.

57.    On October 30, 2007, after obtaining a two-day extension, Ms. Reynolds

filed her response to the School District's motion to dismiss and motion for summary

judgment. *See* Plaintiff's Response to School District's motions, Appended to this

complaint as Exhibit 9.

58.    A mediation session was scheduled for November 15, 2007 between the

parties with the ISBE appointed mediator.  The November 15, 2007 mediation date was

the third scheduled mediation. No mediation had been held before that date because the

School District twice unilaterally cancelled the mediation conferences.

59.    Despite the mediation scheduled for November 15, on November 13,

2007, IHO Hermann dismissed the matter with prejudice and granted summary judgment

in favor of the School District. No pre-hearing conference, exchange of documents or a

hearing was ever scheduled and communicated to Ms. Reynolds by IHO Hermann. The

dismissal and summary judgment stated, "Parent has failed to state a cause of action under IDEIA as to her first three issues and Summary Judgment has been entered in favor of the District under the remaining issues." *See* SEDS – Special Education Database System, ID=8821.pdf, Appended to this complaint as Exhibit 10.

60.     IHO Hermann mailed her ruling to Ms. Reynolds and School District. Two days later, and before Ms. Reynolds received the ruling, she attended the scheduled mediation with the School District at Oak Park River Forest High School in Oak Park. See Mediation Record, Appended to this complaint as Exhibit 11.

61.     No progress or agreement was made at the mediation, which was attended by Ms. Reynolds and the Superintendent, Assistant Superintendent and Special Education Director.

62.     Because the mediation conference took place after the IHO dismissed the matter with prejudice and granted the School District's motion for summary judgment, the mediation was a futile exercise. Whether the School District had prior knowledge of the IHO Decision and Order is not presently known by Ms. Reynolds.

63.     No mandatory resolution meeting was held between Ms. Reynolds and the School District.

64.     Ms. Reynolds did not waive the mandatory resolution meeting.

65.     On information and belief, the School District did not waive the mandatory resolution meeting.

66.     The School District should have conducted a mandatory resolution meeting under 34 CFR 300.510 (a)(1) within 15 days of receiving Ms. Reynolds' request for a due process hearing on September 21, 2007.

67. Instead, the School District swiftly filed a pre-emptive motion to dismiss and a motion for summary judgment.

68. IHO Hermann failed to recognize that the School District's motion to dismiss was, by operation, the School District's notice of insufficiency of Ms. Reynolds' hearing request. She should have treated the School District's motion to dismiss as a notice of insufficiency under the ISBE rules.

69. Taken together, the timing of the Decision and Order to dismiss with prejudice and judgment in favor of the School District on its motion for summary judgment gave Plaintiffs no opportunity to ask to amend their request for a due process hearing. See IBSE Summary Records, Appended to this complaint as Exhibit 12.

70. The IHO failed to carry out the ISBE instructions governing notice and rulings on insufficiency of parental requests for a due process hearing. See Letter to Reynolds from Andrew C. Euless, ISBE due process coordinator, See Exhibit 2.

71. The IHO applied improper legal standards for ruling on motions to dismiss and on motions for summary judgment.

72. The rules of the State of Illinois Board of Education governing pleading requirements for giving notice and requesting an impartial due process hearing do not require more than the information ISBE asks for in its published form.

73. In addition to the foregoing, Plaintiffs incorporate and make a part of this Second Amended Complaint the factual allegations contained in Exhibits 1 and 9 to the Amended Complaint, and the additional facts alleged under paragraph 74 below. See ISBE form 19-86A, Parental Request for an Impartial Due Process Hearing, appended as

Exhibit 1; Plaintiffs' Response to School District's Motions, appended as Exhibit 9; and paragraph 74.

74.     These include allegations of retaliation, threats, interference, refusals and discrimination by School District's Special Education, regular education and administrative staff, and the School Board, in response to Ms. Reynolds' advocacy and requests for her child's IEP accommodations, in violation of Section 504, the ADA and the IDEA.  Some examples:

(a)     After Ms. Reynolds complained to the School Board in 2005 that her child's IEP was not being implemented, the Special Education director harassed and threatened her by telephone at her job and residence for days, necessitating police reports to stop it (dozens of calls, threatening to confront the chief officer at her workplace, threatening to come downtown to confront her in the workplace, threatening to schedule illegal IEP meeting on 2 days' notice, etc.).

(b)     Ms. Reynolds brought this misconduct to the School Board's attention, but Board members refused to take any action.     Thereafter, despite her communications and entreaties over the next 3 years, the School Board ignored and refused to address the district's persistent refusal to provide accommodations and services to her son in accordance with his IEP.

(bb)    The Board also refused to address Ms. Reynolds' complaints that her child's teachers did not receive training in their obligations to students

with disabilities in their classes but instead steered students with disabilities, regardless of intelligence or ability, to self-contained classrooms for students with emotional disturbances and severe cognitive disabilities, where the vast majority of the district's students with disabilities received their Special Education services -- in violation of the IDEA.

(c)     After Ms. Reynolds filed compliance complaints with a state agency in 2005, Thomas' teachers withheld written assignment information from him and Ms. Reynolds for extended periods so that he could not do his homework or keep up with class and was forced to take an Incomplete -- though this information would have been freely given to a parent of a student without disabilities or one whose parent had not advocated for their child's disability rights.

(d)     In response to her repeated e-mail and telephoned requests for written assignment information and classroom notes specified in her child's IEP, the teachers invited Ms. Reynolds to take her child out of their class; invited her to enroll him in a self-contained classroom for special education students; sent her offensive messages; and engaged in other similar retaliation, discrimination and interference.

(e)     After Ms. Reynolds filed compliance complaints, school administrators and Thomas' teachers manipulated his grades to reflect

20

"As" and "Bs" and insisted to Ms. Reynolds that he did not need his IEP accommodations. They did this even though Thomas was unable to complete most of his nightly homework readings or assignments because he did not receive the daily written information specified by his IEP.

(f)      After Ms. Reynolds filed compliance complaints, the School District initiated contact with and mailed Special Education records to Ms. Reynolds' ex-husband (inviting him to IEP meetings and requesting his input in the special education process), though he had no legal decisionmaking authority for Thomas' education, and though the School District's policy was not to share Special Education records with or extend such invitations to noncustodial parents.

(g)      In retaliation for her advocacy on her son's behalf,  the School District refused to memorialize, in IEP paperwork given to Ms. Reynolds, the IEP team's express agreements from a January 2006 IEP meeting ordered by the Illinois State Board of Education to resolve her noncompliance complaints.

(h)      In retaliation for Ms. Reynolds' advocacy, School District refused and failed to consider her child's needs and to include in the IEP key information about the child's diagnoses provided by an expert hired by the parent.

21

(i)     From 2005 to 2008, the School District persistently refused to provide a classroom notetaker to Ms. Reynolds' son as required by his IEP; or, in the alternative, to grant her repeated requests in late 2007 and early 2008 to allow her to tape record her child's classes (and have the recordings transcribed at her expense) or bring in her own paid/volunteer notetakers to prevent further injury to her child's education.

(j)     In 2007, the School District's superintendent sent e-mails to Ms. Reynolds telling her that he might allow her to bring in her own paid notetaker but only if she promised "never to seek payment or reimbursement" from the school district for this IEP accommodation -- but he ultimately refused.  See e-mail exchanges with superintendent, appended to this Second Amended Complaint in Exhibit 9.

(k)     In fall and winter 2007-2008, Ms. Reynolds sought the aid of an individual Board member in obtaining her son's IEP accommodations, but the Board member was threatened and her attempts to investigate were blocked and interfered with by the district's superintendent, administrators and other Board members, in violation of Section 504 and the ADA.

(l)     In January 2008, after Ms. Reynolds asked the same Board member to attend a meeting with a school administrator to discuss Thomas' IEP accommodations, the School Board voting to approve formal

22

sanctions against that Board member, in violation of the provisions of Section 504 and the ADA prohibiting interference, discrimination and retaliation against a parent or other person advocating for the rights of a student with disabilities.

(m)     In January 2008, the School District's refusals, retaliation and discrimination became so severe that Ms. Reynolds was forced to withdraw her son from the district altogether, separating him from friends and community and disrupting his education.

(n)     Ms. Reynolds was forced to incur substantial personal expense for private tutors and tuition for her son at another school in order to obtain the education and disability accommodations he needed and to which he was entitled by law.

(o)     After withdrawal, School District personnel again initiated contact with Ms. Reynolds' ex-husband and also threatened Ms. Reynolds and informed her that they would alter Thomas' school records to falsely reflect that he was forcibly dropped from enrollment for "poor attendance."

75.     Many of the foregoing factual allegations, including those from the 2007-2008 school year, were addressed by School District in its Oct. 1, 2007 letter motions to dismiss Plaintiffs' Due Process Hearing request underlying this civil action

23

76.    These facts also were alleged during the investigation of a state compliance complaint filed with ISBE by Ms. Reynolds against School District in 2005.

77.    These facts also were alleged during the investigation of a state compliance complaint filed with ISBE by Ms. Reynolds against School District in November 2007.

78.    Thomas is an individual with disabilities in that he has ADHD, a Central Auditory Processing Disorder and Asperger's Syndrome, a disorder on the autism spectrum.

79.    Meg Reynolds, Thomas' mother, is and was throughout the periods at issue in this action an individual engaged in advocacy for her son's rights, which is a protected activity under Section 504 and regulations thereunder, including 34 CFR Sec. 100.7(e).

## Plaintiffs' First Cause Of Action

## The Impartial Hearing Officer Failed to Apply Proper Standard for a Motion to Dismiss

80.    Plaintiffs repeat and reallege Paragraphs 1 through 79 of this Complaint and incorporate those paragraphs as Paragraph 80 of the Complaint.

81.    The State of Illinois Board of Education, through its appointed hearing officer, failed to apply the proper legal standard in this jurisdiction for granting a motion to dismiss with prejudice.

82.    This Court should REVERSE the State of Illinois Board of Education's

IHO Order On District's Motion to Dismiss with Prejudice and REMAND with

instructions to the School District and the ISBE to properly schedule a pre-hearing

conference, document exchange, mandatory resolution meeting, mediation conference,

and hearing schedule. In the alternative, the Court should REMAND with an instruction

to enter judgment in favor of the Plaintiffs on all their claims.


## Plaintiffs' Second Cause Of Action
## The Impartial Hearing Officer Failed to Apply Proper Standard In Granting a
## Motion for Summary Judgment


83.    Plaintiffs repeat and reallege Paragraphs 1 through 79 of this Complaint

and incorporate those paragraphs as Paragraph 83 of the Complaint.

84.    The State of Illinois Board of Education appointed hearing officer erred in

her Opinion and Order because the assigned hearing officer failed to apply the legal

standard in this jurisdiction for granting a motion for summary judgment in I.D.E.A

matters.

85.    This Court should REVERSE the Order of the IHO On District's Motion

for Summary Judgment in favor of the Defendant District in Case No. 2008-0100 and

REMAND with instructions to the School District and the ISBE to properly schedule a

pre-hearing conference, document exchange, mandatory resolution meeting, mediation

conference, and hearing schedule. In the alternative, the Court should REMAND with an instruction to enter judgment in favor of the Plaintiffs on all their claims.

### Plaintiffs' Third Cause Of Action

### The Impartial Hearing Officer Failed to Recognize a Cognizable and Justiciable Claim of Retaliation Pursuant to the I.D.E.A

86.     Plaintiffs repeat and reallege Paragraphs 1 through 79 of this Complaint and incorporate those paragraphs as Paragraph 86 of the Complaint.

87.     The Illinois State Board of Education appointed hearing officer failed to recognize that a claim of retaliation for hindering or impeding a parent's statutory right to enforce her child's I.E.P. is a cognizable claim arising from § 1415(b) of the I.D.E.A.

88.     The Illinois State Board of Education appointed hearing officer failed to recognize that a claim of retaliation for hindering or impeding a parent's statutory right to enforce her child's I.E.P. is a cognizable claim of denial of FAPE under the I.D.E.A.

89.     As a direct result of the hearing officer's failure to recognize a parent's right to enforce her child's rights in an I.E.P., Plaintiff's claim for retaliation was dismissed with prejudice.

90.     This Court should REVERSE the Order of the IHO's finding that she did not have subject matter jurisdiction of Plaintiff's retaliation claim District and REMAND with instructions to the School District and the ISBE to properly schedule a pre-hearing conference, document exchange, mandatory resolution meeting, mediation conference, and hearing schedule. In the alternative, the Court should REMAND with an instruction to enter judgment in favor of the Plaintiffs on all their claims.

## Plaintiffs' Fourth Cause of Action

## Award of Reasonable Cost of Suit

91.    Plaintiffs repeat and reallege Paragraphs 1 through 79 of this Complaint and incorporate those paragraphs as Paragraph 91 of the Complaint.

92.    Plaintiffs should receive an award of their reasonable costs associated with this action, as established according to proof.

## Plaintiffs' Fifth Cause Of Action

## For Violations of the ADA

93.    Plaintiffs repeat and reallege Paragraphs 1 through 79 of this Complaint and incorporate those paragraphs as Paragraph 93 of the Complaint.

94.    Defendant School District discriminated against Plaintiffs in persistently failing and refusing to provide Thomas with appropriate accommodations, aids and services, as specified in his IEP, that would have allowed him meaningful access to School District's educational services, programs and activities, in violation of Title II of the ADA.

95.    This Court should award compensatory and related damages according to proof.

## Plaintiff's Sixth Cause Of Action

## For Violations of Section 504

96.     Plaintiffs repeat and reallege Paragraphs 1 through 79 of this Complaint and incorporate those paragraphs as Paragraph 96 of the Complaint.

97.     Defendant School District discriminated against Plaintiffs on the basis of disability by denying Thomas reasonable accommodations and other benefits of school in violation of Section 504.  Further, Defendant School District retaliated against and interfered with his mother, Plaintiff Meg Reynolds, in violation of Section 504, over a period of years for advocating for those accommodations, benefits and rights guaranteed to her son as a student with disabilities.

98.     This Court should award equitable relief and compensatory and related damages according to proof.


**Wherefore,**

(a)     Plaintiffs demand judgment in their favor and against each named Defendant On their First Cause of Action, and request that this Court REVERSE the hearing officer's order to dismiss case No. 2008-0100, and REMAND with instructions to the School District and the ISBE to properly schedule a pre-hearing conference, document exchange, mandatory resolution meeting, mediation conference, and hearing schedule. In the alternative, the Court should REMAND with an instruction to enter judgment in favor of the Plaintiffs on all their claims.

(b)     Plaintiffs demand judgment in their favor and against each named Defendant On their Second Cause of Action, and request that this Court REVERSE the hearing officer's order granting Defendant's motion for summary judgment in favor of the Defendant and REMAND with instructions to the School District and the ISBE to

properly schedule a pre-hearing conference, document exchange, mandatory resolution meeting, mediation conference, and hearing schedule. In the alternative, the Court should REMAND with an instruction to enter judgment in favor of the Plaintiffs on all their claims.

(c)     Plaintiffs demand judgment in their favor and against each named Defendant On their Third Cause of Action, and request that this Court REVERSE the hearing officer's order granting Defendant's motion for summary judgment in favor of the Defendant and REMAND with instructions to the School District and the ISBE to properly schedule a pre-hearing conference, document exchange, mandatory resolution meeting, mediation conference, and hearing schedule. In the alternative, the Court should REMAND with an instruction to enter judgment in favor of the Plaintiffs on all their claims.

(d)     Plaintiffs demand judgment in their favor and against each named Defendant On their Fourth Cause of Action, and request that this Court award them their reasonable costs associated with this action, to be established according to proof.

(f)     Plaintiffs demand judgment in their favor and against Defendant School District on their Fifth Cause of Action, and request that, in addition to their reasonable costs associated with this action, this Court order Defendant School District to reimburse Plaintiff Meg Reynolds for the costs of private tutors and school tuition necessitated by Defendant's refusals in violation of the ADA.

(g)     Plaintiffs demand judgment in their favor and against Defendant School District on their Sixth Cause of Action, and request that, in addition to their reasonable costs associated with this action, this Court award appropriate equitable relief, including

the relief sought by Plaintiff Meg Reynolds in her Parental Request for Impartial Due Process Hearing attached at <u>Exhibit 1</u> to this Amended Complaint.

Plaintiffs respectfully ask this Court to award them any other relief the Court deems fair, just and equitable under the circumstances of this action.

(h)    Plaintiffs ask this Court to *take jurisdiction of Plaintiff Meg Reynolds'* *retaliation claims* arising under § 1415(b) of the I.D.E.A. and Section 504 of the Rehabilitation Act.

Plaintiff Meg Reynolds reserves her right to amend and/or supplement her complaint in the event this court retains jurisdiction over her Section 504/ADA retaliation, harassment and intimidation claims.

**Dated this 15th day of July, 2008**

Meg Reynolds, pro se and for
Plaintiff Tom Reynolds-Ejzak

Print Name
1166 South Clinton Avenue
Oak Park, IL 60304
Telephone: 312-297-6935
Fax: 312-297-5956
E-Mail Address: megreynolds@sbcglobal.net

30