*MHN*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

MEG REYNOLDS, individually and on )
behalf of her minor child, TRE, )
)
          Plaintiffs, )
)
Vs. )    CASE NO.  08C 1507
)
Oak Park-River Forest School District 200, )    Honorable Judge John W. Darrah
Local School District; Board of Education )
of Oak Park-River Forest School District )
200; and

Linda Cada, individually and in her official
capacity as Special Education Director at
Oak Park-River Forest School District 200;
and

Illinois State Board of Education and

Christopher Koch, individually and in his
official capacity as State Superintendent of
Illinois State Board of Education,

          Defendants.

**FILED**
J N   9 - 8 - 2 0 0 8
SEP X 8 2008
8, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## SECOND AMENDED COMPLAINT

Plaintiff Meg Reynolds and Plaintiff TRE, by his mother and Next Friend Meg

Reynolds, submit this Second Amended Complaint in response to this Court's Aug. 28,

2008 Order. In this Second Amended Complaint, Plaintiffs eliminate their previous time-

barred IDEA claims and amend their first Amended Complaint to raise claims under

Section 504 of the Rehabilitation Act and the Americans with Disabilities Act, as well as

civil rights claims under Section 1983.

## INTRODUCTION

1.    This Second Amended Complaint seeks relief under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504").

2.    This Second Amended Complaint also presents a civil action for relief under 42 U.S.C. Sec. 1983 and the due process clauses of the Illinois and U.S. Constitutions to redress Defendants' denials and deprivations, under color of state law, of Plaintiffs' rights to procedural and substantive due process.

3.    This Second Amended Complaint also seeks relief for Defendant Oak Park-River Forest High School District 200's violations of Plaintiff Meg Reynolds' right to petition her government under the First Amendment of the U.S. Constitution.

4.    Under this Second Amended Complaint, Plaintiffs seek to hold Defendant Illinois State Board of Education liable for its failure and its refusal to monitor and enforce Defendant Oak Park-River Forest High School District 200's compliance with the substantive and procedural requirements of the IDEA, 20 U.S.C. § 1400 et seq.

5.    Defendants Oak Park-River Forest School District 200, Board of Education of Oak Park-River Forest School District 200, and the Illinois State Board of Education violated the rights of Plaintiff TRE and Plaintiff Meg Reynolds under Section 504 of the Rehabilitation act and the Americans With Disabilities Act as stated more particularly below in this Complaint.

6.    Defendant Christopher Koch, acting under the color of state law in his official and individual capacity as State Superintendent of the Illinois State Department of Education, violated the civil rights of Plaintiff TRE and Plaintiff Meg Reynolds as stated more particularly below in this Complaint.

7.    Defendant Linda Cada, acting under the color of state law in her official and individual capacity as Special Education Director at Oak Park-River Forest School District 200, violated the civil rights of Plaintiff TRE and Plaintiff Meg Reynolds as stated more particularly below in this Complaint..

## BACKGROUND AND PRELIMINARY FACTUAL OVERVIEW

8.    Plaintiff TRE is a gifted young man who has significant neurological disabilities, which include features of Asperger's Syndrome, a disorder on the autism spectrum; Attention Deficit Disorder (non-hyperactive type); and Central Auditory Processing Disorder. Together, these disabilities are manifested in deficits in social and language pragmatics; severe attending and focusing difficulties; impaired processing speed; and deficits in perceiving and processing oral language.  These disabilities have an extreme adverse effect on TRE's ability to learn, although his measured cognitive abilities are in the superior range.

9.    Based on TRE's disabilities, the IEP Teams at Oak Park River Forest High School District 200 ("School District") consistently found TRE eligible for disability services and accommodations under three distinct disability categories:

3

- Autism,
- Specific Learning Disability and
- Other Health Impaired.

10.   The services and accommodations that TRE needed were consistently listed in his IEPs by the IEP Team. Those services and accommodations included providing him with a notetaker in his classroom to compensate for his impaired oral memory and other deficits. However, Defendant School District failed and refused to fully implement TRE's IEP and thus discriminated against TRE on the basis of his disability and denied him the full benefits of, and equal access to, School District's services, programs and activities and the full benefits of an IEP, which the IDEA guarantees.

11.   The services and accommodations sections of an IEP incorporate the equal access and antidiscrimination provisions of Section 504 of the Rehabilitation Act, which in turn incorporates the prohibitions against retaliation that appear in the Americans With Disabilities Act.

12.   Defendant School District also retaliated against Plaintiff Meg Reynolds for her advocacy to protect TRE's rights to receive an appropriate education under the law, and for his right to be free from discrimination based on his disabilities.

13.   The retaliation, intimidation, harassment, threats, coercion and denial of Ms. Reynolds' parental procedural safeguard rights under the IDEA constituted discrimination against her by Defendants.  The discrimination in its various forms discussed above was persistent and has been ongoing for several years.  The nature of Defendant School District's retaliatory acts ranged from the School District's denial of

accommodations and services to compensate for TRE's disabilities (though these were listed in his IEP) to overt, vengeful and vindictive acts by School District representatives. The District treated TRE's IEP as if the services and accommodations described therein were fictitious.

14.     In one instance of retaliation, Linda Cada, the School District's Special Education Director, harassed and threatened Ms. Reynolds by telephone at her job and her residence. Ms. Cada's harassment went on for days and stopped only after Ms. Reynolds filed a police report. Ms. Cada's harassment began almost immediately after Ms. Reynolds sent a letter to two state lawmakers pleading for her child's disability accommodations. Ms. Reynolds also sent copies of that letter to the School Board.

15.     In another instance, which happened after Plaintiff filed an informal compliance complaint with ISBE under the "State Complaint Procedures" described at 34 CFR Parts 300.151-153, one of TRE's teachers retaliated by refusing *for an entire school term* to provide a list of his class's assignments in writing to TRE (as specified in his IEP). The retaliatory act of withholding a necessary accommodation happened in response to Ms. Reynolds' protected activity, and so shows a causal connection between the protected activity and the retaliatory act.

16.     Withholding TRE's written class assignments for an entire school term was a retaliatory act directly and causally relevant to Ms. Reynolds' submission of a state Compliance Complaint, for which both federal and state law provide.

17.     Without this written information, TRE could not complete his daily class work and reading assignments. His assignment information was withheld from him and

his mother, even though class assignments and assignment schedules were regularly and freely given by School District to students who are not disabled and to parents who have not filed a compliance complaint or advocated on the disabled child's behalf.

18.    As a direct result of this refusal, TRE could not do his class work or reading and took an "Incomplete" in that class.

19.    Because of TRE's auditory processing deficits, social difficulties and pragmatic language deficits, he could not approach other students in his classes to ask for their notes or assignment lists and so was left adrift in an information and education void when his IEP accommodations were denied to him.

20.    TRE did not receive the withheld list of assignments referred to above until December 28, 2005, after ISBE's Assistant General Counsel phoned School District administrators at home during the district's Winter Break and demanded the list of assignments. Only then did School District require the teacher to give TRE the list of assignments. TRE, his tutor and his mother were forced to spend what was left of TRE's Winter Break vacation working day and night to catch up and make up TRE's Incomplete.

21.    Despite ISBE's discovery by its Assistant General Counsel that TRE's teacher had, in fact, maliciously withheld TRE's IEP accommodations for an entire term, ISBE did nothing to sanction the School District or enforce its compliance procedures or special education laws in the instance of TRE's IEP.

22.    This incident was by no means the last.  The School District continued to deny TRE's IEP accommodations even though Ms. Reynolds pleaded repeatedly with school administrators and TRE's teachers, via e-mail messages and telephone requests. She explained that the classroom notetaker accommodation was especially crucial so that her son would know what to study and so that she and her son's tutors could help TRE at home. As a direct result of these refusals and denials, Plaintiff Meg Reynolds was forced to hire private tutors at her own expense to tutor her son, using his school textbooks. As a matter of policy and practice, Defendant School District failed and refused to properly train its teachers, staff, and administrators in their legal obligations to students with disabilities.  During the 2005-2006 school year the School Board met in closed session with the district's teachers' union members to entertain complaints from teachers who objected to having students with disabilities enroll in honors classes, as TRE had done.

23.    These and other instances of discrimination, retaliation, and denials of reasonable access to the District's programs and services persisted against TRE for several years.  Ms. Reynolds sent many e-mails, made many phone calls, attended School Board meetings, and sought meetings with School District's top administrators to try to get her son's IEP accommodations implemented. But the School District continued to deny and withhold his IEP accommodations and the retaliation continued.

24.    Ultimately, School District's practices and policies of denials, discrimination and retaliation became so severe that Ms. Reynolds was forced to withdraw TRE from the School District in the early part of the 2008 school year to seek an education for him elsewhere with the disability accommodations he needed.

7

25.    Before withdrawing her son, Ms. Reynolds sought administrative relief for these issues by filing complaints during 2005 and 2007 with Defendant ISBE. She used the informal "State Complaint Procedures" described at 34 CFR Parts 300.151-153 ("IDEA state complaints"). But ISBE failed and refused to require the School District to provide the relief that the ISBE itself ordered in its 2005 ruling, and refused to hold School District accountable in its ruling on Ms. Reynolds' 2007 complaint. The ISBE, in other words, as a policy and practice, failed and refused to effectively enforce School District's compliance with the special education laws despite strong evidence of its noncompliance with TRE's IEPs and violations of TRE's and his mother's rights.

26.    As further evidence of ISBE's failures in the matter of TRE, the following events and facts are associated with Plaintiffs' Second Amended Complaint and the remedies that it seeks. Plaintiffs include these events and facts not as an attempt to persuade this Court to review their time-barred IDEA appeal, but to show how ISBE is and was out of compliance with its duties and obligations under the IDEA to oversee Defendant School District's obligation to guarantee a free appropriate public education to Plaintiff TRE. Instead, the ISBE, because of its failures, provided cover and comfort for School District Defendants as they retaliated and discriminated against Plaintiffs TRE and Meg Reynolds.

27.    In September 2007, Plaintiffs submitted an impartial due process hearing request to ISBE under the Individuals with Disabilities in Education Act ("IDEA") to address School District's violations, retaliation, discrimination and denials. *See* Plaintiffs' Due Process Hearing Request, attached to this Second Amended Complaint as Exhibit 1.

8

28.    But no evidentiary hearing or other guaranteed due process was ever provided by Defendant ISBE in that matter. Instead, through a series of administrative and procedural failures in the special education due process system under its control, ISBE deprived Plaintiffs of all of their essential procedural rights guaranteed under the IDEA.

29.    Applying unlawful legal standards, and without ensuring any of the evidentiary and procedural safeguards guaranteed to a parent who requests an impartial due process hearing under IDEA Section 1415, ISBE's hearing officer dismissed all of Plaintiffs' complaints with prejudice and granted summary judgment for School District. *See* Hearing Officer's Ruling dated November 13, 2007, attached to this Second Amended Complaint as Exhibit 2.

30.    Those dismissals and the hearing officer's ruling on the District's motion for summary judgment were based on unsubstantiated, unauthenticated factual assertions by the School District's attorney (in a letter not accompanied by credible evidence or even a sworn affidavit); and on that attorney's misrepresentation (in the same letter) that Plaintiffs' complaints were "previously litigated" under informal agency complaint procedures. *See* Hearing Officer's Ruling, attached to this Second Amended Complaint as Exhibit 2.

31.    Plaintiffs' due process request also was dismissed without the mandatory resolution session prescribed by law. No mediation occurred before the hearing officer dismissed Plaintiffs' claims, even though Plaintiff requested both a resolution session and mediation.

9

32.     The administrative "hearing" was decided against TRE and his mother and in favor of the School District <u>without</u> an evidentiary hearing or a pre-hearing conference (as specified in IDEA Section 1415); without affording Plaintiffs their right to see the opposing party's documents or to confront and cross-examine witnesses and authenticate evidence, as required under Section 1415; and without any of the other procedural due process protections designed under the IDEA to ensure fundamental fairness and protection of individual constitutionally protected interests.  No hearing date or pre-hearing conference was scheduled by the Hearing Officer Sheana Hermann.  That officer never held so much as a single conversation with the parties. *See* Administrative Record, furnished by Defendant ISBE, submitted as ISBE's Answer to Plaintiffs' first Amended Complaint.

33.     Due to its own administrative failures, ISBE failed even to ensure that Plaintiffs received timely copies of hearing officer correspondence at their proper mailing address, or even a timely copy of the hearing officer's ruling that dismissed all of their complaints on improper grounds without a hearing or other due process.  That ruling was not mailed to Plaintiffs' correct designated mailing address and thus was "Returned to Sender" by the Post Office undelivered.  See U.S. Post Office Record of Nondelivery, attached to this Second Amended Complaint as <u>Exhibit 3</u>.

34.     A mediation scheduled for mid-November of 2007 by ISBE proved to be an unjust charade: the hearing officer had already dismissed Plaintiffs' complaint two days earlier and had notified the School District, but did not notify Plaintiffs, about that two-day old dismissal.

10

35.     Although this situation clearly undermined Plaintiffs' settlement rights guaranteed under the IDEA and foreclosed any possibility of settlement at the mediation, neither ISBE nor the School District saw fit to inform Ms. Reynolds of the ruling on Defendant School District's motion for summary judgment during or before the mediation, which failed.

36.     Before the hearing officer dismissed Plaintiffs' claims, Plaintiff Meg Reynolds submitted a letter to ISBE protesting these denials of her rights and asked for mediation and the resolution session. But ISBE took no action to remedy these deprivations. *See* Plaintiff Meg Reynolds' 2007 e-mail letter to Andy Eulass, ISBE Due Process Coordinator, attached to this Second Amended Complaint as Exhibit 4.

37.     On January 14, 2008, and after ISBE's hearing officer dismissed her claims, Plaintiff tried again: she submitted a written state compliance complaint to ISBE under 34 CFR Parts 300.151-153 complaining of the serious procedural deprivations that had occurred with respect to Plaintiffs' due process request.  For remedies, she  asked for the due process evidentiary hearing and procedural safeguards that were denied and to which Plaintiffs were entitled under IDEA Section 1415.  Ms. Reynolds also asked for a new hearing officer who had sufficient knowledge of the law, regulations and interpretations to conduct the hearing, supervise the process in accordance with law, and apply appropriate, standard legal practice.

38.     But ISBE, ignoring the express language of 34 CFR Parts 300.151-153, issued a decision in March 2008 telling Ms. Reynolds that her procedural complaint could only be addressed in federal court. This ruling was wrong and improper on its face.

11

Federal regulations provide that a state education agency ("SEA") must investigate and

handle a complaint against the SEA that it has violated a requirement of Part B of the

IDEA or part 300. According to U.S. Department of Education commentary on the state

complaint procedures at 45 CFR 300.151-153, which is published in the preamble to the

IDEA 2004 regulations:

> "The SEA must, therefore, resolve any complaint against the SEA pursuant to the
> SEA's adopted State complaint procedure. The SEA, however, may either
> appoint its own personnel to resolve the complaint, or may make arrangements
> with an outside party to resolve the complaint. If it chooses to use an outside
> party, however, the SEA remains responsible for complying with all procedural
> and remediation steps required in part 300."

> *Federal Register: August 14, 2006 (Volume 71, No. 156, p. 46602)*

*See* Plaintiff's Jan. 1, 2008 e-mail copy of "state complaint" and response from ISBE

dated March 17, 2008, attached to this Second Amended Complaint as Exhibit 5.

39.    Defendant School District's and Defendant ISBE's actions not only

impaired Plaintiffs' right to due process and the impartial hearing that Congress intended

for children with disabilities and their parents to have, but they also impaired Plaintiffs'

rights to the substantive relief that an administrative hearing, administrative due process

and administrative state complaint procedure can provide.

40.    Plaintiffs bring this action against the Oak Park-River Forest School

District 200, Local School District; Board of Education of Oak Park-River Forest School

District 200; Linda Cada, individually and in her official capacity as Special Education

Director at Oak Park-River Forest School District 200; the Illinois State Board of

Education and Christopher Koch, individually and in his official capacity as State

12

Superintendent of Illinois State Board of Education, to redress, under federal civil rights and state and federal Constitutional law, the violations of their procedural and substantive rights as described herein, and the violation of Meg Reynolds' right to petition the government; and to obtain the relief that would have been available pursuant to the administrative proceedings that were unlawfully denied and dismissed by ISBE.

## JURISDICTION, VENUE AND EXHAUSTION

41.    The United States District Court for the Northern District of Illinois has jurisdiction over this action under 28 U.S.C. § 1331; as well as Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794; the Americans With Disabilities Act (the "ADA"), 42 U.S.C. 12101 et seq.; and under 42 U.S.C. Section 1983. This Court may grant declaratory relief pursuant to 28 U.S.C. Sections 2201-2202.

42.    Venue is proper in this District under 28 U.S.C. §1391 because the acts complained of occurred in the District of Northern Illinois; and the parties reside in the District of Northern Illinois, or do business in the District of Northern Illinois.

43.    Plaintiffs have exhausted their administrative remedies with respect to the claims stated in this Second Amended Complaint and which were raised in their administrative due process hearing request.  Exhaustion is not required for events occurring after Plaintiffs filed for the administrative due process hearing in September of 2007. Exhaustion is not required because it would be futile. Plaintiffs were denied both their procedural rights to a hearing and other due process, and their right to challenge

13

ISBE's procedural denials through the IDEA state complaint procedure at 34 CFR Parts 151-153). Exhaustion also is not required because those claims fall under the continuing violations doctrine – i.e., the discrimination, denials, retaliation and injury were and are ongoing.

## PARTIES

44.     For all times relevant to this action, Plaintiff TRE was an individual with disabilities and a minor of compulsory school age. He lived at 1166 S. Clinton Avenue in Oak Park, Illinois, 60304, and he was enrolled in Oak Park River Forest High School District 200, Local School District (the "School District").

45.     Plaintiff Meg Reynolds is TRE's mother.  For all times relevant to this matter, Ms. Reynolds has been a legal resident and taxpayer in the School District, with sole legal custody of TRE, and sole educational decision-making authority for him.  Ms. Reynolds is and was throughout the periods at issue in this action an individual engaged in advocacy for her son's rights, which is a protected activity under Section 504 and regulations thereunder, including 34 CFR Sec. 100.7(e).

46.     Defendant Oak River and River Forest High School District 200, Local School District, is a public school district organized and established under the Education Laws of the State of Illinois.

47.     Defendant Board of Education of Oak Park-River Forest School District 200 (the "School Board") is the decision-making body responsible for the School District under 105 ILCS §§ 5/10-1 et seq.  At all times relevant to this action, the School Board

has been responsible for ensuring that each student within its district who is eligible for services under the IDEA or Section 504 of the Rehabilitation Act receives a free and appropriate public education in the least restrictive educational environment. The School District is a recipient of federal funds and as such is governed by Section 504 of the Rehabilitation Act and the ADA.

48.   Defendants School District and School together constitute an instrumentality of local government and a statutorily created entity, pursuant to the Illinois School Code. School District and its Board of Education together (together, "School District") are responsible for the education of all children residing within the district, including students with special education needs. Defendant School District receives funds from local property taxes and ISBE, as well as federal financial assistance from the U.S. Department of Education and other federal agencies. School District and its Board of Education are public entities as contemplated by Title II of the ADA and Section 504.

49.   The School Board has decision-making powers as part of its duty to oversee, direct, and govern the School District's special education and other programs and services consistent with 105 ILCS Secs 5/10-1 *et seq.*

50.   Defendant Linda Cada is the Director of Special Education of Oak Park River Forest High School and is responsible for administration of the special education programs at School District. Defendants School District, School Board and Linda Cada are referred to together herein as "School District."

15

51.    Defendant Illinois State Board of Education (the "ISBE") is the authorized primary state agency required under federal law to oversee and monitor public schools' compliance with state and federal special education laws and to establish and maintain effective policies and procedures to resolve disputes between a Local Education Agency ("LEA") and parents on behalf of themselves and their children. Under the IDEA, parents have a right to seek resolution from ISBE by asking for an impartial due process hearing or by seeking mediation and exercising other settlement rights to resolve their differences about any disagreements they may have concerning their child's special education individualized education program. 20 U.S.C. § 1415 (a).

52.    The ISBE is also responsible for ensuring that all Illinois school-age children receive an education, and for ensuring that all eligible children with disabilities in Illinois receive a free and appropriate public education. 20 U.S.C. § 1412 (a)(1)(A) and (B). See also 105 ILCS 5/14-8.02.

53.    ISBE receives federal funds and as such is a public entity as contemplated by Title II of the ADA and Section 504.

54.    Defendant Christopher Koch is the State Superintendent of the Illinois State Board of Education and is responsible for executing the educational policies, orders and directives of the State Board of Education. He also is responsible for oversight and management of the ISBE, the state agency designated under Illinois to, among other things, oversee implementation of the Individuals with Disabilities Education Act within the state of Illinois. Defendants ISBE and Christopher Koch are referred to herein together as "ISBE."

16

55.    The ISBE and the School District are "state actors" as that term is defined and interpreted under Section 1983 of U.S. Code Title 42, acting "under color of state law" with respect to the allegations herein.

## OVERVIEW OF APPLICABLE LEGAL STANDARDS
## UNDER THE FEDERAL AND STATE LAW

56.    Congress enacted, and the president signed into law, the federal statute known as the Americans with Disabilities Act ("ADA") in 1990.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation or be denied the benefits of the services, programs or activities of a public entity, or be subject to discrimination by any such entity."  20 U.S.C. Sec. 12132.  Title II of the ADA also generally prohibits discrimination against individuals with disabilities and in the provision of public services.

57.    Regulations promulgated pursuant to the ADA require public entities to provide qualified handicapped persons an equal opportunity to participate in or benefit from aids, benefits or services it offers.  See generally 28 CFR Part 41.51.

58.    Regulations promulgated under the ADA provide that a public entity must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  28 C.F.R. § 35.130(b)(7).

17

59.     Regulations promulgated pursuant to the ADA also prohibit public entities from retaliating against individuals on account of their having exercised their right to seek equal opportunity and enjoyment of aids, benefits or services offered by the public entity.  28 CFR Part 35.134.

60.     Additionally, Section 504 of the Rehabilitation Act of 1973 ("Section 504") creates and protects disability rights.  Section 504 provides that:  "[n]o other qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. Sec. 794 (a).

61.     Regulations issued under Section 504 provide, among other things, that a recipient of federal financial assistance may not:

(i)     deny a disabled person the opportunity to participate in or benefit from any aid, benefit or service it provides (34 CFR Part 104.4(b)(1)(i));

(ii)    afford a disabled person an opportunity to participate in or benefit from a benefit or service that is not equal to that afforded to others (34 CFR Part 104(b)(1)(ii) and (iii));

(iii)   provide different or separate aids, benefits or services to handicapped persons or to any class of handicapped persons unless

18

necessary to allow equivalent opportunity (34 CFR Part 104.4(b)(1)(iv));

(iv)    utilize criteria or methods of administration that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap (34 CFR Part 104.4(b)(b).

62.    Section 504 also forbids retaliation in any form, including intimidation, threats, coercion, interference, pressure, harassment and bullying. A claim of retaliation under Section 504 is a different claim from that for discrimination. Retaliation is specifically forbidden by federally mandated protections. Section 504 expressly incorporates the anti-retaliation provision of Section 503 of the ADA. That provision prohibits retaliation against any individual because such individual has opposed any "act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." *Ibid.*

63.    Section 1983 of U.S. Code Section 42 provides that any person who, acting under color of state law, deprives a citizen of any rights, privileges, or immunities secured by the U.S. Constitution and laws shall be liable to that party. Courts in this jurisdiction have allowed a cause of action under Section 1983 for deprivations of procedural and substantive rights under the IDEA and under other federal disability rights laws where the plaintiff is an intended beneficiary of the law at issue; the asserted interests are definite and enforceable; the statute imposes a binding obligation on the state; and the defendant is a state actor. *See, e.g., Marie O. v. Edgar,* 131 F.3d 610 (7th Cir. 1997).

19

64.      Courts in this and other federal jurisdictions have also held state education agencies accountable under the IDEA for procedural and substantive failures and for the effectiveness of their special education monitoring systems generally. *See, e.g., Corey H. v. Board of Education of the City of Chicago,* 995 F.Supp. 900 (N.D. Ill. 1998); *David v. Dartmouth School Committee,* 775 F.2d 411 (1st Cir. 1985); *Gadsby by Gadsby v. Grasmick,* 109 F.3d 940 (4th Cir. 1997).

65.      Both the Article 1, Section 2 of the Illinois Constitution and the Due Process clause of the Fourteenth Amendment to the U.S. Constitution provide that no person shall be deprived of life, liberty or property without due process of law nor denied the equal protection of the laws.

66.      The Individuals with Disabilities Act, 42 U..S.C. Sec. 1400 et seq. ("IDEA") was enacted by Contress to ensure that all public schools receiving federal funds provide every child with disabilities a free appropriate public education in the least restrictive environment.  In furtherance of this statutory mandate, the IDEA provides funding to state educational agencies and local school districts to, among other things, provide educational services to children with disabilities and to "ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. Sec. 1401(d)(1)(B).

67.      Also to protect the rights of children with disabilities and their parents, the IDEA requires public schools and state education agencies to adhere to a set of procedural safeguards set out in Section 1415 of the Act and related regulations at 34 C.F.R. 300.500 *et seq.* Those safeguards are essentially mirrored, and are in some cases

20

expanded, under Illinois special education laws adopted by the Illinois General Assembly and administrative rules issued by ISBE. *See* 105 ILCS 5/14-8.02a and 23 Illinois Administrative Code Part 226.

68.    Among the requirements set forth in Section 1415 and related Illinois law, the state education agency must allow a parent to request and receive an impartial due process hearing if the parent disagrees with or seeks relief in any matter related to the identification, evaluation and educational placement of the child, or the provision of FAPE to the child.

69.    In connection with such hearing, Section 1415 and related regulations and authority also guarantee the right to a resolution session, mediation, a pre-hearing conference and the exchange of documents between the parties. The I.D.E.A. also requires the hearing and related transactions to be conducted in accordance with appropriate, standard legal practice by an impartial hearing officer with sufficient knowledge of the law, regulations and interpretations under the I.D.E.A. *See* 105 ILCS 5/14-8.02c Sec. 14-8.02c

70.    Impartial due process hearing rights for parties, including parents, under § 1415 also include the right to be accompanied and advised by counsel and the right to confront and cross-examine witnesses. Additionally, Section 1415(h) provides for the right to reject from consideration any documents the opposing party fails to disclose five days before the hearing begins.

71.    Separate and apart from the due process hearing rights under § 1415 of the I.D.E.A., a party may elect an alternative resolution process known as state complaint

procedures. A party files an administrative complaint directly with the state educational agency, which investigates and rules on the claim. 20 USC 1415 (f)(3)(F); 34 CFR 300.151 through 153.

72.    Exercising the choice for a State Complaint does not constitute "litigation" and it does not and was never intended to abridge or restrict a complaining party's right to an impartial due process hearing or the procedural rights connected with a parent's hearing request as set forth at Section 1415. In addition, the State Complaint procedures do not provide for an evidentiary hearing; confrontation and cross-examination of witnesses; a right to see the opposing party's documents; appeal rights; or other evidence or other due process procedures designed to ensure fundamental fairness and protection of individual constitutionally protected interests.

73.    Similar to the informal State Complaint Procedure, the U.S. Department of Education, Office of Civil Rights ("OCR") receives and investigates administrative complaints of discrimination based on disability pursuant to 34 C.F.R. 100 et seq. Filing an OCR discrimination complaint by no means constitutes "litigation," nor are OCR's findings the result of "litigation." Unlike a special education due process ruling, an OCR ruling is not subject to judicial review or appeal in a court of law.

74.    A parent's claim to enforce the supplementary aids and services section of her child's IEP is a cognizable claim for denial of a free appropriate public education under §1415 of the I.D.E.A.

75.    A parent's claim of retaliation, interference, threats, harassment or bullying arising from her efforts to exercise her right to enforce the terms of her child's

22

IEP is a cognizable claim under §1415 of the I.D.E.A., incorporating the ADA at 42 U.S.C. § 12203.

76.    A parent's claim of retaliation, interference, threats, harassment or bullying arising from her efforts to exercise her disabled child's right to reasonable accommodations specified in his IEP is also a cognizable claim under Section 504 at 29 U.S.C. § 794(d), incorporating the ADA at 42 U.S.C. § 12203.

77.    A claim of discrimination arising from a public entity's refusal to provide reasonable modifications to a student with disabilities, thus denying that student the full benefits of the public entity's services, programs or activities, is a cognizable claim under the ADA at 42 U.S.C. Sec. 12132.

78.    A claim of denial of procedural rights under the I.D.E.A. is a cognizable claim under the Fourteenth Amendment to the U.S. Constitution, enforceable at 42 U.S.C. Sec. 1983.


## FACTS COMMON TO ALL CAUSES OF ACTION

79.    The facts recited in Paragraphs 1-40 of this Second Amended Complaint are hereby incorporated as Paragraph 79 of this complaint.

80.    Plaintiff TRE is an individual with disabilities. He has ADHD; a Central Auditory Processing Disorder; and features of Asperger's Syndrome, a disorder on the autism spectrum. Since early elementary school, TRE's recognized disabilities have required that he have accommodations and services for those disabilities. At all times

23

relevant to this action, TRE had an Individualized Education Program ("IEP") which was required to be implemented and enforced by Defendants.

81.    Meg Reynolds, TRE's mother, is and was throughout the periods at issue in this action an individual engaged in advocacy for her son's rights, which is a protected activity under Section 504 and regulations thereunder, including 34 CFR Sec. 100.7(e).

82.    Upon her son's entry into school at Oak Park River Forest High School District 200 ("School District"), Plaintiff Meg Reynolds became aware that none of TRE's IEP accommodations and services were being provided. She voiced her concerns to TRE's teachers and to School District administrators and special education staff, but her requests were largely ignored -- or TRE's accommodations were provided temporarily when she insisted, and then were dropped. The administrator in charge of her son's special education program stated that the Special Education Division was not responsible for seeing that regular education teachers complied with IEP accommodations. When Plaintiff sought TRE's classroom notetaker and other IEP accommodations from his teachers, she was told by the teachers that his accommodations were "not needed" in their classrooms.

83.    Nonetheless, the IEP Team met that school year, and each school year thereafter until he was withdrawn, and renewed TRE's IEP. The team determined  that TRE continued to qualify as a student with disabilities needing the accommodations and services described in his IEP document.

84.    In late September of TRE's second school year at School District, after experiencing denials and refusals similar to the previous year, Plaintiff Meg Reynolds

24

wrote to a state lawmaker, Rep. Calvin Giles, and the School Board, pleading for her

son's disability accommodations. In particular, she requested the classroom note taker

that TRE desperately needed to write down TRE's daily assignments and to take notes of

the classroom discussion and lectures to accommodate TRE's auditory processing and

attention deficits and allow him to participate fully in School District's educational

programs.

85.    Because of TRE's social, auditory and attention deficits attributable to his

neurological disabilities, he could not take notes for himself or approach other students in

his classes to ask for copies of their notes or list of assignments in writing.

86.    Almost immediately after the copies of Ms. Reynolds' communications to

state lawmakers were received by the School Board, its Special Education Director,

Linda Cada, began harassing and threatening Ms. Reynolds by telephone at her job and at

her residence. That telephone harassment lasted for days and necessitated police reports

initiated by Ms. Reynolds to stop it. There were dozens of calls during which the Special

Education Director threatened to confront the chief officer at Meg Reynolds' place of

employment; threatened to come downtown to confront her in at her place of

employment; and threatened that she was scheduling an illegal IEP meeting on 2 days'

notice with 18 invitees. . Ms. Cada made other similar threats that will be shown at trial

in this matter.

87.    Ms. Reynolds brought Ms. Cada's threats and retaliatory misconduct to the

School Board's attention, but Board members refused to take any action and ignored Ms.

Reynolds' e-mail messages and her appearances at Board meetings. One Board member

sent an e-mail to Ms. Reynolds that accused her of making "malicious" allegations and suggested that she pray for a resolution.

88.    Because Plaintiff Meg Reynolds asserted and continued to assert her right to advocate for her disabled child, and to petition her government regarding the denial of her son's rights, Defendant School District, as a matter of practice and policy, engaged in repeated acts of retaliation, threats, interference, refusals and discrimination against her and TRE.

89.    Thereafter, despite Plaintiff's communications and entreaties over the next 2 years, the School Board, as a matter of practice and policy, ignored and refused to address School District's persistent refusal to fully implement TRE's IEP.

90.    School Board also refused to address Ms. Reynolds' complaints that her child's teachers did not receive training in their obligations to students with disabilities in their classes but instead steered students with disabilities, regardless of intelligence or ability, to self-contained classrooms for students with emotional disturbances and cognitive disabilities. (The majority of the district's students with disabilities received their Special Education services in self-contained classes, in violation of the IDEA.).

91.    After Ms. Reynolds filed compliance complaints with the ISBE in 2005, TRE's teachers withheld written assignment information from him and his mother for extended periods for the intended purpose of retaliating against Ms. Reynolds and hindering TRE from doing his homework and keeping up with his class. Ms. Reynolds and TRE's tutors could not help him without this information.. Yet similar information about assignments and classes would have been freely by School District's teachers to a

parent of a student without disabilities or one whose parent had not advocated for their child's disability rights.

92.    As previously described in this complaint, one teacher withheld written assignment information from TRE for an *entire term* after Ms. Reynolds filed compliance complaints with ISBE, Ms. Reynolds had to take time off from work so TRE could spend his entire Winter Break completing his reading and other class work, and making up his academic deficiencies to cure his Incomplete grade.

93.    Defendant School District also failed and refused, as a practice and policy, to train its regular education teachers in their legal obligations to students with disabilities. In response to Plaintiff's repeated e-mail and telephoned requests for the written assignment information and classroom notes specified in her child's IEP, TRE's teachers responded inappropriately and with indignation. They invited Ms. Reynolds to take her child out of their class and to enroll TRE in a self-contained classroom for special education students; sent offensive messages to her; and engaged in other similar retaliation, discrimination, intimidation and interference.

94.    Because Defendant School District refused to provide TRE's accommodations, especially the classroom notetaker, Plaintiff Meg Reynolds was forced to hire private tutors at substantial expense to tutor her son in the subjects being covered in his classes.

95.    After Ms. Reynolds filed compliance complaints, school administrators and TRE's teachers manipulated his grades to reflect "As" and "Bs" and insisted to Ms. Reynolds that he did not need his IEP accommodations. They did this even though TRE

could not possibly have earned those grades, because he did not receive the daily assignment information in writing as required by his IEP and so was unable to complete most of the class readings or assignments.

96.     After Ms. Reynolds filed compliance complaints, and ISBE issued its ruling, School District for some reason distributed copies of ISBE's ruling to TRE's teachers. On the very same day that ISBE's ruling on Plaintiff's 2005 state complaint was received and distributed in December 2005, one teacher retaliated by assigning a "zero" grade to TRE for a fully completed long-term project that had taken TRE weeks to complete with the aid of a private tutor.

97.     After Ms. Reynolds filed compliance complaints, Defendant School District sought out and mailed Special Education records to Ms. Reynolds' ex-husband (inviting him to IEP meetings and requesting his input in the special education process), though he had no legal decision making authority for TRE's education, and though the School District's longstanding policy, communicated to Meg Reynolds by her child's special education program director, was *not* to share Special Education records with or extend such invitations to non-custodial parents.

98.     In retaliation for her advocacy on her son's behalf, School District refused to memorialize, in IEP paperwork given to Ms. Reynolds, the IEP team's express agreements from a January 2006 IEP meeting ordered by Defendant ISBE to resolve her state noncompliance complaints. Meg Reynolds complained to ISBE about this, but the agency did nothing to rectify this problem or enforce its order requiring School District to establish an effective method to provide TRE's classroom notetaker.

28

99.     In retaliation for Ms. Reynolds' advocacy, School District refused and failed to consider her child's needs and to include in the IEP key information about the child's diagnoses provided by an expert hired by the parent.

100.    In retaliation for Ms. Reynolds' advocacy, School District's special education director shouted at and verbally attacked Ms. Reynolds during her child's 2006 IEP meeting, and treated with her sarcasm, anger, hostility and aggressive rudeness when Ms. Reynolds attempted to advocate for her son's needs at the meeting. The same special education director subsequently scheduled a second IEP meeting to which she invited the School District's teacher's union representative (who had no prior familiarity with TRE), though the U.S. Department of Education has indicated in published guidance that union members have no place at the IEP meeting of a child with disabilities.

101.    Plaintiff Meg Reynolds was deprived by School District of her right, guaranteed under the IDEA, to participate meaningfully and fully in the development of her child's IEP.

102.    The refusals, discrimination and retaliation against Plaintiffs continued into the 2007-2008 school year. Defendant School District persistently refused to provide a classroom note taker and fully implement TRE's other IEP accommodations as required by his IEP; or, in the alternative, to grant his mother's repeated requests in late 2007 and early 2008 to allow her to tape record her child's classes (and have the recordings transcribed at her expense) or bring in her own paid/volunteer note takers to prevent further injury to her child's education.

103.    In early September 2007, Defendant Superintendent Attila Weninger sent e-mails to Ms. Reynolds telling her that he might allow her to bring her own paid note taker in to take classroom notes for TRE, but only if she promised "never to seek payment or reimbursement" from the school district for this IEP accommodation – but he ultimately refused.

104.    In fall and winter 2007-2008, after filing for due process, Ms. Reynolds sought the aid of an individual Board member in obtaining her son's IEP accommodations. But the Board member was threatened by Superintendent Weninger and other Board members, and this lone Board member's attempts to investigate were blocked and interfered with by Superintendent Weninger, administrators and other Board members, in violation of Section 504 and the ADA.

105.    In late 2007, Ms. Reynolds filed another state complaint with ISBE complaining of School District's refusal to provide a classroom note taker to her son as provided in his IEP.

106.    In January 2008, after Ms. Reynolds asked the same lone Board member to attend a meeting with a school administrator to discuss TRE's IEP accommodations, the School Board voted to approve formal sanctions against that Board member, in violation of Section 504 and the ADA which prohibit interference, discrimination and retaliation against a parent or other person advocating for the rights of a student with disabilities.

107.    In January 2008, the School District's policy and practice of refusals, retaliation and discrimination became so severe that Ms. Reynolds was forced to

30

withdraw her son from the district altogether, separating him from friends and community and disrupting his education.

108.    Ms. Reynolds was forced to incur substantial personal expense for private tutors and tuition for her son at another school in order to obtain the education and disability accommodations he needed and to which he was entitled by law.

109.    After withdrawal, School District personnel again initiated contact with Ms. Reynolds' ex-husband and also threatened Ms. Reynolds and informed her, via e-mail, that School District would alter TRE's school records to falsely reflect that he was forcibly dropped from enrollment for "poor attendance."

110.    Following these events, Ms. Reynolds submitted new information to ISBE to updated the state complaint she had filed in late 2007, describing how she was forced to withdraw her son due to retaliation, discrimination and IEP denials. She also informed ISBE how School Board had retaliated against her by interfering with, and imposing formal sanctions against, the lone Board member who attempted to procure TRE's legally mandated IEP accommodations. She also notified ISBE of School District's threats after she withdrew TRE in January 2008, including threats to alter her child's academic record to reflect that he was forcibly dropped for "poor attendance" -- rather than because School District retaliated and abjectly refused to provide his disability accommodations.

111.    But ISBE refused again to intervene or enforce School District's compliance with special education laws. In late March 2008, ISBE issued another decision to Plaintiffs ruling against Plaintiffs on their 2007 and 2008 state complaints described above. Unbelievably, ISBE's ruling on Plaintiff's 2007 state complaint recited

testimony from teachers who *never had TRE in class* and who related how they would have provided his accommodations had they ever taught him.

112.   Plaintiff's efforts to exercise her and her son's rights to an IDEA due process hearing from ISBE were similarly blocked and denied, through ISBE's failure to train its hearing officers and state investigators in their duties under special education law and regulations, through ISBE's denial of her and TRE's due process rights; and through ISBE's own refusal to assume the responsibilities conferred on it by federal law and regulations.

113.   As related above, on September 21, 2007, Plaintiff Meg Reynolds properly completed and submitted the ISBE form 19-86A, Parental Request for an Impartial Due Process Hearing, to the School District requesting a hearing on the factual allegations she described on the form.

114.   To complete the ISBE Form 19-86A, Ms. Reynolds followed the ISBE's instructions on the form.  Consistent with those instructions, she filled in her name and her child's name and address and the name of the school district; attached pages describing the dispute and requested remedies; and submitted the completed form to the School District Superintendent. Ms. Reynolds sent a copy to the ISBE on the same day.

115.   Very soon thereafter, before there was any response from the ISBE, Ms. Reynolds received a copy of School District's counsel John Relias' October 1, 2007 letter motion to dismiss half Ms. Reynolds' claims with prejudice, together with a motion for summary judgment on the remaining claims.  *See* School District's letter motion to

dismiss and motion for summary judgment, attached to this Second Amended Complaint as  Exhibit 6.

116.    These motions to dismiss were submitted by School District even though the only motions to dismiss that ISBE's formal due process instructions allow *prior to* mediation, resolution session, exchange of documents, interviewing of witnesses or a pre-hearing conference are motions to dismiss on insufficiency grounds.

117.    On receiving this School District letter motion to dismiss, Ms. Reynolds contacted the office of the ISBE Due Process Coordinator and asked about the status of her complaint. The office assistant told her that a certified mail letter had been sent to her on Sept. 27, 2007, but Ms. Reynolds informed ISBE that she had not received it.  The assistant gave her an Internet password to access the ISBE online Special Education Database system to retrieve a copy of the Letter.

118.    Explaining that there was a history of problems with certified mail at her home address, Ms. Reynolds asked the ISBE, and ISBE agreed, to send all future correspondence, certified mail and otherwise, to her Chicago office address.

119.    After receiving the password, Ms. Reynolds visited the ISBE website on her computer and downloaded a copy of the certified letter to her dated Sept. 27, 2007 from the ISBE.

120.    Although Ms. Reynolds found a copy of the Letter on this website, she found it confusingly organized, with hyperlinks not identified as such and  documents misidentified and stored under the wrong tabs.  Documents appeared and disappeared

from the website over time. At no time did ISBE instruct Ms. Reynolds how to interpret

the terms on the Special Education Database System web site.

121.    The Sept. 27, 2007 Letter that Plaintiff downloaded from the website

contained ISBE's formal instructions to School Districts for making a proper response to

a Parental Request for a Due Process Hearing (the "ISBE instructions"). *See* ISBE Parent

Initial Packet, attached to this Second Amended Complaint as <u>Exhibit 8</u>.

122.    Specifically, the ISBE instructions provided that within 10 days of

receiving a parent's hearing request, a school district must provide either (a) a copy of a

"prior written notice" pertaining to the subject matter of the request; or (b) a written

response that "explains the actions taken by the district, the options considered and why

they were rejected by the district before taking the action, and a list of the factors relevant

to the district's action." *See* ISBE Parent Initial Packet, attached to this Second Amended

Complaint as <u>Exhibit 8</u>.

123.    In addition, the ISBE instructions provided that if the non-requesting party

deems the hearing request to be "insufficient," it may submit a written notice of

insufficiency to the hearing officer within 15 days of receipt of the hearing request.  No

other grounds for dismissal or rejection of a parent's due process hearing request were

described in the ISBE instructions and letter or were otherwise communicated to the

parties. See ISBE Parent Initial Packet, attached to this Second Amended Complaint As

<u>Exhibit 8</u>.

124.    The ISBE instruction letter to School Districts said nothing about any

special ISBE hearing rules, or any other rules allowing School Districts to submit a

motion to dismiss or motion for summary judgment before a hearing, pre-hearing conference, mediation, resolution session, exchange of documents could be held, or before the parties had a chance to interview witnesses.

125.    Notwithstanding these instructions, no notice of insufficiency was submitted by the School District with its motion to dismiss, nor did it ever provide the prior written notice or written explanation required by the ISBE procedures. Instead, it immediately submitted a letter to ISBE's Hearing Officer containing a motion to dismiss and for summary judgment against Plaintiffs on their due process complaints.

126.    School District's letter did not satisfy the ISBE instructions for making a proper school district response to a Parental Request for a Due Process Hearing; and its motions to dismiss should not have been allowed by the Hearing Officer.

127.    ISBE's administrative and procedural failures persisted throughout the due process period. In early October 2007, after Meg Reynolds received School District's October 1, 2007 letter motion, she learned that James Wolters, a former client of School District's attorney, had been appointed as ISBE Hearing Officer in her case. She immediately contacted ISBE to request a substitution of hearing officer.

128.    Ms. Reynolds did not receive a response to her substitution request and did not learn of any response from ISBE until mid-October 2007, when she used her password again to access the ISBE website. She found a copy of a letter addressed to her (but not mailed) dated October 9, 2007 announcing that Sheana Hermann, the daughter of James Wolters, had been appointed to replace the first hearing officer. The letter stated that Hermann would contact Plaintiff Meg Reynolds "within 5 days of receipt of this

35

letter to arrange the dates, times and locations of the hearing and the pre-hearing conference."

129.    Notwithstanding this letter, there was never any contact from ISBE Hearing Officer Hermann to arrange pre-hearing and hearing dates. ISBE Hearing Officer Hermann did not speak with Ms. Reynolds or with the parties at any time.

130.    In late October 2007, Ms. Reynolds again accessed the ISBE website using her password. After extensive search through ISBE's very confusing website, she found a copy of a letter stamped "received Oct. 22, 2007" from Hearing Officer Hermann addressed to Ms. Reynolds at her office address and to the School District's attorney. *Ms. Reynolds did not receive that letter by mail.* The letter informed the parties that Hermann was striking the previously scheduled October 25, 2007 pre-hearing conference (scheduled by her father) and giving Ms. Reynolds until Oct. 29, 2007 to file her response to the School District's motions to dismiss and for summary judgment.

131.    IHO Hermann's letter did not mention rescheduling a new date for the pre-hearing conference, nor did she ever schedule a hearing date.

132.    On October 30, 2007, after obtaining a two-day extension, Ms. Reynolds submitted a letter responding to the School District's motion to dismiss and motion for summary judgment, in which she objected to the School District counsel's assertion that her complaints had "already been litigated" through the informal "state complaint" process described at 34 CFR Part 151-153. *See* Plaintiffs' response to School District's Oct. 1, 2007 letter, in the Administrative Record submitted by Defendant ISBE as its "Answer" to Plaintiffs' first Amended Complaint.

36

133.    This was the last contact Meg Reynolds had with Hearing Officer Hermann before she issued her ruling on November 13, 2007.

134.    Hearing Officer Hermann issued her ruling on November 13, 2007 even though no resolution session was ever held and even though a mediation session was scheduled for November 15, 2007 between the parties with the ISBE appointed mediator. The November 15, 2007 mediation date was the third scheduled mediation. No mediation had been held before that date because the School District twice unilaterally cancelled the mediation conferences at the last minute (with no advance notice to Plaintiff, who took time off work to attend the mediations).

135.    ISBE Hearing Officer Hermann's November 13, 2007 ruling dismissed the matter with prejudice and granted summary judgment in favor of the School District. No pre-hearing conference, exchange of documents or a hearing was ever scheduled and communicated to Ms. Reynolds by ISBE Hearing Officer Hermann.

136.    Because the mediation conference took place *after* Hermann dismissed the matter with prejudice and granted the School District's motion for summary judgment, the mediation was a futile exercise and Plaintiffs were deprived of their IDEA settlement rights.

137.    No mandatory resolution meeting was ever held between Ms. Reynolds and the School District, though Ms. Reynolds did not waive the mandatory resolution meeting.  The School District should have conducted a mandatory resolution meeting under 34 CFR 300.510 (a)(1) within 15 days of receiving Ms. Reynolds' request for a due

process hearing on September 21, 2007.  ISBE should have monitored and enforced this requirement.

138.    Instead, the School District attempted to pre-empt the procedural requirements of the ADA with its improper motion to dismiss and a motion for summary judgment, and ISBE's Hearing Officer, lacking adequate training, improperly granted those motions before any due process could be provided to Plaintiffs.

139.    ISBE Hearing Officer Hermann failed to carry out the ISBE's printed instructions governing notice and rulings on insufficiency of parental requests for a due process hearing.  The only motions to dismiss that ISBE's formal instructions allow before a mediation, resolution session, exchange of documents, interviewing of witnesses or a pre-hearing conference can be held are motions to dismiss on insufficiency grounds. *See* ISBE Parent Initial Packet, attached to this Second Amended Complaint As Exhibit 8.

140.    Because she was not properly trained by ISBE, the ISBE Hearing Officer applied improper legal standards for ruling on motions to dismiss and on motions for summary judgment.

141.    Due to inadequate training and lack of oversight by ISBE, ISBE's Hearing Officer improperly dismissed Plaintiffs' complaints based on improper grounds and without the mandatory resolution session and mediation guaranteed by law, though Plaintiff requested these; without an evidentiary hearing or pre-hearing conference required under IDEA Section 1415; without the right to see the opposing party's documents or to confront and cross-examine witnesses and authenticate evidence; and

without any of the other due process procedures designed under the IDEA to ensure fundamental fairness and protection of individual constitutionally protected interests.

## PLAINTIFFS' CLAIMS FOR RELIEF

## COUNT ONE

## RETALIATION, THREATS, INTIMIDATION AND INTERFERENCE PROHIBITED BY THE ADA

142.    Plaintiffs repeat and reallege Paragraphs 1 through 141 of this Complaint and incorporate those paragraphs as Paragraph 142 of the Complaint.

143.    Defendants School District and School Board have acted purposefully as a matter of policy and practice and in concert on an ongoing basis to interfere with Plaintiff TRE in the enjoyment of his rights under the ADA; and to interfere with, retaliate against, threaten and intimidate TRE's mother in the exercise of and on account of her having exercised her protected activity of advocating for her disabled child to receive his rights under the ADA and of participating as an IEP team member.

144.    Because of the intentional wrongful violations of the ADA taken by Defendants described in Paragraphs 127 and 128 above, TRE and his mother have suffered and continue to suffer harm and damages recognized by law and are entitled to declaratory relief and a monetary award, the exact amount to be determined according to proof, and Plaintiffs hereby request such remedy.

## COUNT TWO

## RETALIATION AND COERCION

## PROHIBITED BY SECTION 504

145.    Plaintiffs repeat and reallege Paragraphs 1 through 141 of this Complaint and incorporate those paragraphs as Paragraph 145 of the Complaint.

146.    Defendants have acted purposefully as a matter of policy and practice and in concert on an ongoing basis to retaliate, coerce, intimidate, threaten and interfere with TRE in the exercise and enjoyment of his rights under Section 504 and with TRE's mother in the exercise of an on account of her having exercised her protected activity of participating as an IEP team member and in advocating for her disabled child to receive his rights under Section 504.

147.    Because of the intentional wrongful actions taken by Defendant School District and School Board described in paragraph 130 and 132 above, TRE and his mother have suffered and continue to suffer harm and damages recognized by law and are entitled to declaratory relief and a monetary award, the exact amount to be determined according to proof, and Plaintiffs herein so request such remedy.

## COUNT THREE

## VIOLATION OF FIRST AMENDMENT RIGHT

## TO PETITION GOVERNMENT

148.    Plaintiffs repeat and reallege Paragraphs 1 through 141 of this Complaint and incorporate those paragraphs as Paragraph 148 of the Complaint.

149.    Because Plaintiffs exercised their constitutional right to petition their government (a state lawmaker), Defendant School District, as a matter of policy and practice, retaliated against them and purposefully and intentionally caused them harm and attempted to unlawfully threaten and intimidate them and coerce them not to petition further. Plaintiffs are entitled to monetary damages, the exact amount to be determined according to proof, and Plaintiffs herein request such remedy.

## COUNT FOUR

### DENIAL OF IDEA SETTLEMENT RIGHTS BY ISBE

150.    Plaintiffs repeat and reallege Paragraphs 1 through 141 of this Complaint and incorporate those paragraphs as Paragraph 150 of the Complaint.

151.    Pursuant to 20 U.S.C. Sec. 1415(e), Defendant ISBE is required to "ensure" that procedures are implemented to allow parties to disputes under the IDEA to resolve such disputes either through a resolution IEP team meeting or a mediation, or both.

152.    By ignoring these obligations; failing to require the School District under its jurisdiction to schedule and attend either a resolution session or mediation or both; not holding a mediation session until *after* its Hearing Officer had issued a ruling (unbeknown to Plaintiffs but apparently known to School District); failing to send due process correspondence, including the Hearing Officer's written dismissal, to the correct Plaintiffs' address; and allowing its Hearing Officer to wrongfully dismiss a due process hearing request that satisfied the notice pleading requirements of the IDEA (or, if not,

41

that should have been amendable until up to five days before hearing), Defendant ISBE

has insulated School District and School Board from due process; undermined the

motivation for School District to fairly resolve the case; and effectively deprived

Plaintiffs of the opportunity for settlement that Congress intended for them to have.

153.    Pursuant to 42 U.S.C. Section 1983, Plaintiffs have a cause of action

against ISBE for denial of the right guaranteed under the IDEA to an effective

opportunity to settle their case via resolution session and/or mediation.

154.    Defendant ISBE's actions and inactions also give rise to a private right of

action for denial of Plaintiffs' right to an effective opportunity to settle their case by

resolution session and/or mediation.

## COUNT FIVE

## DEFENDANT ISBE'S DISCRIMINATION ON THE BASIS OF DISABILITY

## IN VIOLATION OF SECTION 504

155.    Plaintiffs repeat and reallege Paragraphs 1 through 141 of this Second

Amended Complaint and incorporate those paragraphs as Paragraph 155 of the

complaint.

156.    Defendant ISBE receives federal financial assistance.

157.    Defendant ISBE's actions denied Plaintiffs the opportunity for a due

process hearing, the opportunity for resolution of their case, the opportunity to interview

witnesses and exchange proof, and hence access to the reasonable disability

accommodations that due process can provide at the School District level in the form of substantive educational relief.

158.    Defendant ISBE perpetuated and extended School District's discrimination against Plaintiffs on the basis of disability in violation of Section 504 and its implementing regulations.

159.    Defendant ISBE's actions constituted gross misconduct and intentional discrimination.

160.    Plaintiffs have a right of action against Defendant ISBE under Section 504 and a remedy pursuant to 42 U.S.C. Section 1983.

## COUNT SIX

## DEFENDANT ISBE'S DISCRIMINATION

## IN VIOLATION OF THE ADA

161.    Plaintiffs repeat and reallege Paragraphs 1 through 141 of this Complaint and incorporate those paragraphs as Paragraph 161 of the Complaint.

162.    Defendant ISBE's actions denied Plaintiffs the opportunity for a due process hearing, the opportunity for resolution of their claims, access to the substantive relief that due process can provide, and hence access to the services, programs or activities to which they are entitled under federal law.

163.    By its actions, Defendant ISBE endorsed, perpetuated and extended School District's discrimination against Plaintiffs on the basis of disability in violation of the ADA and its implementing regulations.

164.    Pursuant to 42 U.S.C. Section 1983, Plaintiffs have a cause of action against Defendant ISBE for deprivation of rights protected under the ADA.

165.    Plaintiffs have a private right of action against Defendant ISBE for deprivation of rights protected under the ADA.

## COUNT SEVEN

## DEFENDANT ISBE'S DENIAL OF

## PROCEDURAL DUE PROCESS

## UNDER THE U.S. AND ILLINOIS CONSTITUTIONS

166.    Plaintiffs repeat and reallege Paragraphs 1 through 141 of this Second Amended Complaint and incorporate those paragraphs as Paragraph 166  of the complaint.

167.    At all times pertinent to this Complaint, Plaintiff has been entitled to receive a free appropriate public education for TRE.

168.    By dismissing Plaintiffs' request for a due process hearing on improper grounds without the opportunity for mediation, resolution, settlement, an evidentiary hearing, pre-hearing conference or the opportunity to interview witnesses or exchange

documents, Defendant ISBE denied Plaintiffs a meaningful opportunity to be heard with respect to Defendant School District's denial of FAPE to TRE.

169.    Defendant ISBE has violated the due process clause of the Fourteenth Amendment of the U.S. Constitution, and it also has violated Illinois Constitution Article 1, Section 2.

170.    Defendant ISBE has violated clearly established federal and state law with respect to its denial of due process to Plaintiffs.

171.    Plaintiffs have a cause of action pursuant to 42 U.S.C. Section 1983 and under the Illinois and U.S. Constitutions against Defendant ISBE.

172.    Plaintiffs also have a private right of action against Defendant ISBE for deprivation of rights protected under the Illinois and U.S. Constitutions.

## COUNT EIGHT

## DEFENDANT ISBE'S DENIAL

## OF SUBSTANTIVE DUE PROCESS

173.    Plaintiffs repeat and reallege Paragraphs 1 through 141 of this Second Amended Complaint and incorporate those paragraphs as Paragraph 173  of the complaint.

174.    Defendant ISBE's dismissal of Plaintiffs' due process hearing request before a hearing, pre-hearing conference, mandatory resolution session,  mediation,

exchange of documents or the opportunity to interview witnesses, and in clear violation of Plaintiffs' right to a hearing under IDEA and state law, was arbitrary and outrageous.

175.    Defendant ISBE's dismissal of the administrative appeal on grounds that the matter was "previously litigated" under informal agency complaint procedures, and based on unattested, unproven statements by School District's attorney in a letter to the Hearing Officer, was arbitrary and outrageous.

176.    Defendant ISBE's recognition of Defendant School District's improper motions to dismiss on substantive, unproven evidentiary grounds before any aspect or due process could be provided or any evidence could be attested, was arbitrary and outrageous.

177.    Defendant ISBE's scheduling and holding a mediation session (mediated by an ISBE mediator) *after* its Hearing Officer had already issued a ruling, and where School District but not Plaintiffs had received a copy of that ruling, was arbitrary and outrageous.

178.    Defendant ISBE's policies of ignoring its own, promulgated regulatiosn and laws regarding appointment and training of hearing officers, conduct of due process hearings, and other procedural safeguards including mediation and resolution sessions in all due process cases, are arbitrary and outrageous. Defendant ISBE's actions violated Plaintiffs' right to substantive due process in violation of the Due Process clauses of the 14th Amendment to the U.S. Constitution and Section 2 of Article 1 of the Illinois Constitution.

179.    Defendant ISBE has violated clearly established state and federal law.

180.    Plaintiffs have a cause of action against Defendant ISBE for its substantive due process violations pursuant to 42 U.S.C. Section 1983.

181.    Plaintiffs also have a private right of action against Defendant ISBE for deprivation of due process rights protected under the Illinois and U.S. Constitutions.


## COUNT NINE

## DENIAL OF DUE PROCESS RIGHTS UNDER IDEA
## IS A SECTION 1983 CAUSE OF ACTION

182.    Plaintiffs repeat and reallege Paragraphs 1 through 141 of this Second Amended Complaint and incorporate those paragraphs as Paragraph 182 of the complaint.

183.    Pursuant to 20 U.S.C. Section 1415(a), Defendant ISBE is required to establish and maintain procedures to "ensure" that children with disabilities and their parents are "guaranteed" procedural safeguards with respect to the provision of FACE, including the right to file a due process complaint pursuant to 20 U.S.C. Section 1415(b)(6) and have a due process hearing as set forth in 20 U.S.C. Section 1415(f),(g) and (h), with full rights of appeal to federal court , as set forth in 20 U.S.C. Section 1415(i).

184.  Acting under color of state law, Defendant ISBE has failed to meet its obligation to ensure that children with disabilities and their parents are guaranteed the procedural safeguard of due process.

185.  By imposing a barrier to due process, namely allowing Plaintiffs' complaints to be dismissed immediately without the opportunity to amend and without the opportunity for any required due process, Defendant ISBE has denied Plaintiffs their right to the procedural safeguard of a due process hearing guaranteed under the IDEA.

186.  By imposing a barrier to due process, namely dismissing due process complaints based on the ISBE Hearing Officer's mistaken belief that the informal state complaint process described at 45 CFR Part 153 et seq. and similar agency alternative resolution processes constitute "litigation," Defendant ISBE has denied Plaintiffs their right to the procedural safeguard of a due process hearing.

187.  Pursuant to 42 U.S.C. Section 1983, Plaintiffs have a cause of action against all Defendants for denial of their hearing rights.

188.  Defendants' actions also give rise to a private right of action to enforce the IDEA.

## PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request:

1.  That judgment be entered in favor of Plaintiffs and against all Defendants;

2.     That Plaintiffs be awarded all damages allowed by law, including punitive damages, against the Defendants in their individual and official capacities, the exact amount of damages to be determined according to proof;

3,     That this Honorable Court issue an injunction requiring School District to conduct the training of its teachers, administrators, staff and School Board members in their legal obligations to students with disabilities, as Plaintiffs requested in their due process hearing request;

4.     That this Honorable Court declare the Ruling of ISBE Hearing Officer Sheana Hermann in Case No. 2008-0100 void as a matter of law and REMAND with instructions to ISBE to properly schedule a pre-hearing conference, document exchange, mandatory resolution meeting, mediation conference, and hearing schedule; *or, in the alternative,* declare the Ruling of ISBE Hearing Officer Sheana Hermann in Case No. 2008-0100 void and REMAND with an instruction to enter judgment in favor of the Plaintiffs on all their claims.

5.     That this Honorable Court issue an injunction requiring ISBE to adopt a policy and practice of selecting and using only hearing officers who satisfy the requirements of the IDEA in that they have sufficient knowledge of the law, regulations and interpretations to conduct the due process hearing and supervise the process in accordance with law and appropriate, standard legal practice;

6.     That this Honorable Court issue an injunction requiring ISBE to enhance its training for impartial due process hearing officers to satisfy the above-described requirements, and submit information to this Court for monitoring;

7.    That this Honorable Court award Plaintiffs their reasonable costs of this action, to be established according to proof and which now exceed $5,000 and are ongoing;

8.    That this Honorable Court grant such other relief as it deems appropriate.


**Dated this 8th day of September, 2008**

_____

Meg Reynolds, pro se and for
Plaintiff Tom Reynolds-Ejzak


_____

Print Name
1166 South Clinton Avenue
Oak Park, IL 60304
Telephone: 312-297-6935
Fax: 312-297-5956
E-Mail Address: megreynolds@sbcglobal.net

For certified mail:
C/o BCBSA
225 N. Michigan Ave.
Chicago, IL 60601

Exhibit 1

ILLINOIS STATE BOARD OF EDUCATION
Special Education Compliance Division
100 North First Street
Springfield, Illinois 62777-0001

## PARENTAL REQUEST
## FOR AN IMPARTIAL DUE PROCESS HEARING

**INSTRUCTIONS:** This form has been developed to assist parents in requesting an impartial due process hearing. The completed form must be given to the superintendent of the student's resident district. Within 5 days of receipt of the request for a hearing, the local school district will forward a copy of the completed form to the Illinois State Board of Education to be shared with the appointed hearing officer. A local school district may not deny a request for a due process hearing. All parties involved in the dispute are advised to review the due process regulations found at 23 Illinois Administrative Code 226.605 and Section 14-8.02 of the School Code. The information reported on this form will be subject to the confidentiality requirements of the Individuals with Disabilities Education Act and the Illinois School Student Records Act.

| NAME OF STUDENT ON WHOSE BEHALF THE HEARING IS REQUESTED | STUDENT'S BIRTHDATE (Month/Day/Year) |
|---|---|
| Tom Reynolds-Eizak | 5-26-90 |

PARENTS/GUARDIANS' LANGUAGE/MODE OF COMMUNICATION
English

A BILINGUAL OR SIGN LANGUAGE INTERPRETER IS REQUESTED

☐ YES   ☑ NO   IF YES, specify language/mode of communication

| NAME AND ADDRESS OF THE PARENT/GUARDIAN | PHONE NUMBER |
|---|---|
| Meg Reynolds | 312-297-6935 |
| 1161 S. Clinton Ave | FAX |
| Oak Park, IL 60304 | E-MAIL megreynolds@sbcglobal.net |

NAME AND ADDRESS OF THE ATTORNEY OR REPRESENTATIVE FOR THE PARENT/GUARDIAN
*If this section is completed all information and correspondence regarding the due process will be forwarded directly to the attorney or representative.*

PHONE NUMBER

FAX

E-MAIL

NAME AND ADDRESS OF DISTRICT
Oak Park River Forest High School District 200
201 N. Scoville
Oak Park, IL 60302

NAME AND ADDRESS OF THE SCHOOL THE STUDENT ATTENDS
Same as above

A DESCRIPTION OF THE DISPUTE *(Attach additional pages if necessary)*
See attached

A DESCRIPTION OF THE RESOLUTION OR ACTION YOU ARE SEEKING *(Attach additional pages if necessary)*
See attached

| Meg Reynolds | 9/21/07 |
|---|---|
| Signature of Parent/Guardian | Date Submitted to District |

ISBE 19-86A (1/01)

*Description of Dispute(s)*

-Retaliation, threats and interference by Special Ed and regular education staff in response to my requests for my child's IEP accommodations, including:

-Special Ed director's telephone harassment and threats necessitating police reports to stop it (repeated calls, threatening to confront the chief officer at my workplace, threatening to come downtown to confront me in the workplace, threatening to schedule illegal IEP meeting on 2 days' notice), **September 2005**;
-Retaliation by Special Ed staff by initiating contact with my ex-husband (to invite him to my child's IEP meeting though he has no legal decisionmaking authority for child's education), and similar incidents, **2006-2007 school year**.
-Teachers manipulation of my child's grades to reflect "As" and "Bs" where my child did not complete readings or homework assignments (because he did not have written assignment information as required by his IEP), **2005-2006 school year**.

-Failure by District 200 School Board to oversee, investigate and take any formal action regarding Special Ed director's retaliation, misconduct and refusal to provide IEP accommodations, notwithstanding parent's entreaties and repeated communications that child's accommodations were not being provided, **September 2005-June 2007**.

-Retaliation by my child's teachers against me and my child for my attempts to obtain child's IEP accommodations (including withholding requested assignment information for extended periods, though this information would have been freely given to a parent of another student; inviting me to take my child out of their class; sending me offensive messages, etc.), **August - December 2005**.

-Failure and refusal to consistently implement child's IEP "notetaker" accommodation in a manner that met his needs for daily comprehensive, detailed written information recording the discussion and activities in his academic classes and daily detailed written assignment information, **2005-2006 school year**.

-Failure to implement an effective system for effectively and meaningfully delivering this accommodation on a daily basis to my son, **2005-2006, 2006-2007 school years**.

-Refusal and failure to memorialize IEP team's agreements from **January 2006 IEP meeting** in IEP paperwork subsequently given to parent (Special Ed director refused to provide it at the meeting).

-Failure to consider the child's needs and anticipated needs and to revise the IEP to address information about the child provided by the parent, **January 2006 IEP meeting**.

*Description of Remedies/resolutions sought*

-Compensatory education for my son

-Adoption by the district of IEP meeting procedures that require that the parent be provided the IEP documents before leaving the IEP meeting, and require such documents to reflect the agreements of the IEP team and not only the preferences of the Special Ed staff; and that parents be allowed to tape record IEP meetings with at least 24 hours' advance notice.

-Comprehensive training for District 200 School Board members, District 200 superintendent, all regular education administrators and Special Ed administrators, all regular education teachers, all members of the Building Administrative Team and all discipline deans and dean/counselors on their legal obligations to students with disabilities and the legal prohibitions against retaliation, threats, interference and coercion against students with disabilities and anyone, including a parent or any other individual or entity, who advocates on behalf of a student or students with disabilities.

Exhibit 2

## ILLINOIS STATE BOARD OF EDUCATION

|   |   |   |
|---|---|---|
| Tom Reynolds-Ejzak, | ) | |
| Student, | ) | |
| | ) | |
| v. | ) | Case No. 2008-0100 |
| | ) | |
| Oak Park – River Forest SD 200, | ) | Sheana C. Hermann |
| Local School District. | ) | Impartial Hearing Officer |
| | ) | |
| | ) | |

### ORDER ON DISTRICT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

This matter comes before this Impartial Due Process Hearing Officer on Oak Park and River Forest School District 200's ("District") Motion to Dismiss and For Summary Judgment, the District represented by its attorney John Relias of Franczek Sullivan, P.C., the Parent, Meg Reynolds, representing the above referenced Student ("Student"), parties having submitted briefs and supporting documentation;

**IT IS HEREBY ORDERED:**
1. District's Motion to Dismiss with Prejudice is granted;
2. District's Motion For Summary Judgment is granted;
3. Parent's request to Amend the Complaint is denied; and
2. The District is not required to take any further action in this matter.

**Background**

The Student is currently a high school student at the District school. His birth date is 5/26/1990. The Student has been identified as having a disability which qualifies for protection under the Individuals with Disabilities Improvement Act (IDEIA). The Parent filed a Due Process Hearing Request dated September 21, 2007 which was received by the Illinois State Board of Education (ISBE) on September 27, 2007 (See Attached Complaint). In her complaint the Parent states as follows:

*"Description of Dispute(s)*
-Retaliation, threats and interference by Special Ed and regular education staff in response to my requests for my child's IEP accommodations, including:

    -Special Ed director's telephone harassment and threats necessitating police reports to stop it (repeated calls, threatening to confront the chief officer at my workplace, threatening to come downtown to confront me in the workplace, threatening to schedule illegal IEP meetings on 2 days' notice), September 2005;
    -Retaliation by Special Ed staff by initiating contact with my ex-husband (to invite



**Motion to Dismiss Issues One Through Three**

The District is correct in its analysis of IDEIA's Federal Regulation at 34 CFR Section 300.507(a)(1) which states:

> A parent or a public agency may file a due process complaint on any of the matters described in Section 300.503(a)(1) [relating to the identification, evaluation or educational placement of a child with a disability or the provision of FAPE to the child].

In her first three issues, the Parent is requesting relief on the basis of retaliation along with the School Board's failure to take action to the retaliation. The Parent fails to state a cause of action under IDEIA in which this hearing officer has jurisdiction or can grant relief.

**Summary Judgment of the Remaining Issues**

The fourth and fifth issues as stated by the parent have already been litigated by the United States Department of Education, Office for Civil Rights ("OCR") and by ISBE. On December 18, 2006 OCR issued a decision that the District did not fail to implement the IEP for the 2005-2006 school year and the Parent failed to establish a prima facie case of retaliation. (See SD Ex. A). ISBE's decision found that the District met the required note taking provision of the Student's IEP and concluded that the Student was making progress through his IEP. (See SD. Ex. B).

As to the last two issues, again ISBE rendered a ruling on March 17, 2006 that the District had met with the Parent and her attorney at the time, and provided a clearly defined note taking policy (See SD. Ex. H.).

What is most relevant from the rulings by OCR and ISBE, is their finding of fact. Both OCR and ISBE have made findings that the District has complied in its note taking requirement and that the Student is making progress in his program. There is no issue as to these facts from these reviewing boards. The Parent has failed to bring any further evidence that would bring these conclusions into question.

Further both the District and the Parent has provided evidence that the Student is benefiting from his education. Both Parent and the District have provided documentation that the Student is mainly receiving "A's" and "B's." (See SD Ex. E and F). The Parent provided a copy of the Student's AP College English class grade in which his cumulative grade is a "C." (See P Ex. 8). Based upon the previous rulings and the documents provided by the parties showing that the Student is more than adequately progressing in his classes, it is clear that the Student is receiving an educational benefit as required by IDEIA and case law as prescribed by the landmark case, *Board of Education if the Hendrick Hudson Central School District v. Rowley*, 553 IDELR 656 (U.S. 1982).

**Conclusion**

Parents issues one through three do not state a cause of action under 34 C▤
300.507(a)(1) in which this hearing officer has jurisdiction or can provide
issues relate to retaliation. The District is entitled to summary judgment to ▤
issues as the previous fact finding decisions and the documentation show t▤
made adequate progress for the 2005-2006, 2006-2007 school years pursu▤
and *Rowley* and the District is implementing the Student's IEP note taking.

**Finality of Decision:**
This order shall be binding upon all parties.

**Right To Request Clarification**
Either party may request clarification of this order by submitting a wri▤
such clarification to the undersigned hearing officer within five (5) days o▤
decision. The request for clarification shall specify the portions of the c▤
clarification is sought, and a copy of the request shall be mailed to the ▤
and to the Illinois State Board of Education. The right to request such
does not permit a party to request reconsideration of the order ▤
hearing officer is not authorized to entertain a request for reconsidera▤

**Right to File Civil Action:**
Any party to this hearing aggrieved by the final order has the right to co▤
action with respect to the issues presented. Pursuant to 105 ILCS 5/14-8.▤
action shall be brought in any court of competent jurisdiction within 120▤
order was mailed.

**Date of Order:**
This Order rendered this 13th day of November 2007.

Entered:

Sheana Hermann
Impartial Due Process Hearing Officer

## CERTIFICATE OF SERVICE

The undersigned hearing officer certified that she served copies of the aforesaid Decision and Order upon Parent, District through its Counsel, and the Illinois State Board of Education on November 13, 2007 at their stated addresses by depositing same with the United States Postal Service at Lake Forest, Illinois with proper next day postage paid before 5:00 PM.


Sheana Hermann
Impartial Due Process Hearing Officer

Exhibit 3



*Item 3*

### Track/Confirm – Intranet Item Inquiry – Domestic

| Item: 7006 0810 0002 7108 0369 | Service Calculation Acceptance Date/Time: 11/13/2007 14:04 | |
|---|---|---|

| | | | |
|---|---|---|---|
| **Destination** | **ZIP Code:** 60304 | **City:** OAK PARK | **State:** IL |
| **Origin** | **ZIP Code:** 60045-9998 | **City:** LAKE FOREST | **State:** IL |

**Class:** First Class

**Anticipated Delivery Date:** 11/14/2007

**Weight:** 0 lb(s) 2 oz(s)     **Postage:** $0.58

**Record Restored on 03/24/2008**

**Delv Rqmt:** Normal     **PO Box?:** N

| Special Services | Associated Labels | Amount |
|---|---|---|
| CERTIFIED MAIL | 7006 0810 0002 7108 0369 | $2.65 |
| RETURN RECEIPT | | $2.15 |

| Event | Date/Time | Location | Scanner ID |
|---|---|---|---|
| DELIVERED | 12/05/2007 11:11 | LAKE FOREST, IL 60045 | 030SHNC698 |
| | ▓▓▓▓▓▓▓▓▓▓ | | |
| | ▓▓▓▓▓▓▓▓▓▓ | | |
| UNCLAIMED | 11/30/2007 15:28 | OAK PARK, IL 60304 | 030SHMF715 |
| NOTICE LEFT | 11/14/2007 12:58 | OAK PARK, IL 60304 | 030SHMF881 |
| ACCEPT OR PICKUP | 11/13/2007 14:04 | LAKE FOREST, IL 60045 | |

**Enter Request Type and Item Number:**

Quick Search ⦿     Extensive Search ○

Version 1.0

Inquire on multiple items.

Go to the Product Tracking System Home Page.



## Track/Confirm - Intranet Item Inquiry
### Item Number: 7006 0810 0002 7108 0369

**This item was delivered on 12/05/2007 at 11:11**



| | Delivery Section |
|---|---|
| **Signature:** | |
| **Address:** | |

**Enter Request Type and Item Number:**

Quick Search ⊙        Extensive Search ○

*Version 1.0*

Inquire on multiple items.

Go to the Product Tracking System Home Page.

Case 1:08-cv-01507   Document 13   Filed 03/26/2008   Page 15 of 19

United States Postal Service

**Sorry We Missed You! We ♥ Deliver for You**

Sender's Name: S Hemann

11-19

Item left:
☑ Post Office (See back)

Available for Pick-up After

Date:        Time:

☑ If checked, you or your agent must be present at time of delivery to sign for item.

Article Number(s):
7006 0810 0002 7108 0369

— Letter

— Large envelope, magazine, catalog, etc.

— Parcel

— Restricted Delivery

— Perishable item

— Other:

For Delivery (Enter total number of items delivered by service type)

For Notice Left: (Check applicable item)

— Express Mail (We will attempt to deliver on the next delivery day unless you instruct the post office to hold)

✓ Certified

— Recorded Delivery

— Firm Bill

— Registered

— Insured

— Return Receipt for Merchandise

— Delivery Confirmation

— Signature Confirmation

Customer Name and Address:
M Reynolds
1166 S Clinton A/C

Article Requiring Payment

☐ Postage Due  ☐ COD  ☐ Customs  $

☐ Final Notice: Article will be returned to sender on

Amount Due
11/89

Delivered By and Date

PS Form 3849, November 1999

Delivery Notice/Reminder/Receipt

Item 4

708-660-0103

Meg Reynolds

STATE OF ILLINOIS)                              **Affidavit to Motion**
             SS)                                     **for Continuance**
COUNTY OF COOK)

## AFFIDAVIT OF MEG REYNOLDS

Meg Reynolds, being first duly sworn, deposes and states as follows:

1.    That I am the mother of Tom Reynolds-Ejzak, a minor child with disabilities; a *pro se* Plaintiff in Case No. 08 CV 1507 brought in the U.S. District Court for the Northern District of Illinois; and the petitioner in the underlying administrative matter titled <u>Tom Reynolds-Ejzak v. Oak Park-River Forest School District 200</u>, Case No. 2008-80100, Illinois State Board of Education.

2.    That I have requested a continuance of the hearing scheduled for March 27, 2008 at 9 a.m. by School District's counsel on its Motion to Dismiss due to work-related conflicts on that morning that I have not yet been able to re-schedule.

3.    That opposing counsel did not check with me first about whether I might have a conflict with the March 27, 2008 hearing date.

4.    That I also need more time to obtain certain additional information from the U.S. Postal Service concerning the certified mailing that forms the basis of the School District's Motion to Dismiss.

5.  That the following Paragraphs 6 through 17 below describe certain significant
    events concerning such certified mailing that I have learned to date:

6.  That on October 3, 2007, due to problems with certified mail delivery in my
    hometown, I asked ISBE's Due Process Coordinator, and the Due Process
    Coordinator agreed, to *send all future correspondence to me at my business
    address at 225 N. Michigan Ave., Chicago 60601.* I sent a follow-up e-mail
    confirming this. See E-mail Letter from Meg Reynolds to Andrew Eulass, Due
    Process Coordinator, dated October 3, 2007, attached to this Affidavit as Item 1.

7.  That I know that hearing officer Sheana Hermann was indeed aware of this
    change of address because she addressed a letter to me at 225 N. Michigan Ave.
    in Chicago, which I found on the ISBE special education website. (The letter was
    posted on the website but never mailed to me – or at least I never received it in the
    mail.) See Letter addressed to Meg Reynolds found on ISBE website in late
    October 2007, attached to this Affidavit as Item 2.

8.  That notwithstanding my request to have all correspondence concerning this due
    process matter sent to me at my office address in Chicago, records show that the
    hearing officer sent her ruling on my due process complaints via certified mail to
    my home address in Oak Park rather than my designated address in Chicago.

9.    That due to problems with certified mail that I had previously reported to the Due

       Process Coordinator in requesting a change of address in early October 2007, *the*

       *hearing officer's certified mailing to me at the wrong address was never*

       *delivered.*

10.   That Item 3 attached to this Affidavit is a true and correct copy of the tracking

       statement for that certified mailing that the U.S. Postal Service provided to me on

       March 24, 2008.

11.   That such tracking statement shows that the certified mailing that forms the basis

       of Defendant School District's Motion to Dismiss was actually "returned to

       sender" on December 5, 2007 and never reached me -- thus I did not know the

       date of mailing until later.

12.   That Item 4 attached to this Affidavit is a true and correct copy of the certified

       mail notice left for me at my home alerting me to certified mail from ISBE

       hearing officer Sheana Hermann on November 19, 2007. I do not remember

       receiving any other certified mail notice at my home in November or December

       2007 from hearing officer Sheana Hermann.

13.   That the tracking statement, the certified mail notice and the E-mail letter to the

       Due Process Coordinator together (Items 3, 4 and 1, respectively) show that the

       certified mailing was not in fact mailed to me at my "stated address" as sworn by

Sheana Hermann in her Certificate of Service. In fact, it was sent via certified mail *to the wrong address* rather than my designated address at 225 N. Michigan Ave., Chicago 60601 -- and thus it never reached me.

14.    That Item 5 attached to this Affidavit is a true and correct copy of the certified mail notice I received at my home in Oak Park on November 19, 2007 alerting me to certified mail from ISBE hearing officer Sheana Hermann. I do not remember receiving any other certified mail notice at my home in November or December 2007 from hearing officer Sheana Hermann.

15.    That although I signed the back of the certified mail notice received November 19, 2007 and placed it outside for the postman as directed, the certified mail letter was not delivered.

16.    That because the ruling was never mailed to me, I unwittingly attended a scheduled mediation with School District on November 15, 2007 two days after the hearing officer apparently issued her ruling. See Mediation Records attached as Item 6 to this Affidavit.

17.    That I did not obtain and read a copy of the hearing officer's ruling until well after the November 15, 2007 mediation, when I found it on the ISBE special education website and printed it.

18.  That I need additional time to obtain more records from the U.S. Postal Service to defend against School District's Motion to Dismiss.

19.  That I phoned and e-mailed the attorney for Defendant School District in an effort to re-schedule the March 27, 2007 hearing on his Motion to Dismiss, but was unsuccessful as of this writing.

20.  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NOT.

_____
Meg Reynolds

Subscribed and sworn to before me

This 26th day of March 2008

"OFFICIAL SEAL"
Julius Esparza
Notary Public, State of Illinois
My Commission Expires June 22, 2009

Notary Public

Exhibit 4

A T & T Yahoo! Mail - megreynolds@sbcglobal.net

MAIL

**Date:** Wed, 3 Oct 2007 14:01:20 -0700 (PDT)

**From:** "Meg Reynolds" <megreynolds@sbcglobal.net>

**Subject:** Deadlines? Pls advise

**To:** aeulass@isbe.net, MALONG@isbe.net

Dear Mr. Eulass:

I'm writing to confirm that I did not receive the certified mail letter and documents you sent to me until this afternoon, October 3, 2007. They were dated September 27, 2007.

I was able to access them online at about 2:30 or 3 p.m. today after Mary Long in your office was kind enough to give me a password to these documents on the ISBE website.

I had not yet received the certified mail letter because I was at work when it was supposed to be delivered. I received a certified mail receipt, but I work downtown during the days and cannot get home before 5 p.m. (when the local post office closes) to pick up a certified mail letter. In Oak Park, it takes a long time to get the post office to re-deliver a certified mail letter. So in the future, I would appreciate your sending correspondence to me at my work address, which I gave to Ms. Long.

I also want to confirm that I left a voicemail for Mr. Jim Wolter, the assigned due process hearing officer, at the phone number that Ms. Long gave to me asking him to recuse himself. I requested this because of his 15-year prior client relationship with John Rellas, the school district's attorney in my case. Information on this relationship appears on the ISBE website.

I have not yet heard back from Mr. Wolter but am concerned about deadlines here (for requesting a change of hearing officer, resolution session, mediation, etc.) since I just received your letter and attachments today.

If there is a deadline approaching that I don't know about, would you please contact me ASAP? I can be reached at 312-297-6935 during the day. You can leave a message.

Thanks very much.

Sincerely,

AT&T Yahoo! Mail - megreynolds@sbcglobal.net                    Page 1 of 2

Meg Reynolds

Exhibit 5



# Illinois State Board of Education

100 North First Street · Springfield, Illinois 62777-0001
www.isbe.net

Rod Blagojevich
Governor

Jesse H. Ruiz
Chairman

Christopher A. Koch, Ed.D
State Superintendent of Education

March 17, 2008

Ms. Meg Reynolds
1166 South Clinton Avenue
Oak Park, Illinois 60304

Re: Tom Reynolds-Ejzak Complaint

Dear Ms. Reynolds:

The Illinois State Board of Education, Special Education Services Division, has received your letter regarding the actions of a hearing officer in relation to the dismissal of a recent due process hearing, filed on behalf of your son, Tom Reynolds-Ejzak. You have stated that this action has served to deny you the opportunity to an impartial due process hearing. You have requested that this agency conduct a formal complaint investigation regarding this situation.

With respect to the due process hearing system, applicable regulatory requirements provide that any party aggrieved by the findings and decision of a due process hearing has the right to bring a civil action in any State court of competent jurisdiction or in a district court of the United States (see 34 Code of Federal Regulations, Part 300.516). As such, the formal complaint investigation process cannot be utilized to appeal the results of a due process hearing. The appropriate avenue for the resolution of the issues you have identified would be the civil action described above. As you are aware, the civil action described above must be filed within 120 days of the date the due process matter was closed.

In addition, your concerns regarding the actions of the individual hearing officer will be shared, as appropriate, with the entity which coordinates the evaluation component of the due process system.

Based upon this information, this complaint is considered closed. I can be reached at 217/782-5589 or mkelley@isbe.net, if you have any questions regarding this correspondence.

Sincerely,

Marcia L. Kelley
Principal Education Consultant
Special Education Services Division

 **at&t  YAHOO!** MAIL Classic

**Fwd: Complaint (re-sending)**                              Monday, January 14, 2008 2:50 PM

From: "Meg Reynolds" <megreynolds@sbcglobal.net>
 To: chris.koch@isbe.net, Melanie.Byrd@ed.gov, Ruth.Ryder@ed.gov, aeulass@isbe.net

Re-sending to eliminate references to this as request for due process.  This was intended to be a state complaint.

Meg Reynolds
1166 S. Clinton Ave.
Oak Park , IL 60304

Jan. 14, 2007

Special Education Compliance Division
100 N. First St .
Springfield , IL 62777

Dear Special Education Compliance Division:

I am writing to file a complaint pursuant to 34 CFR 300-151-153 *et seq.* regarding violations by ISBE of my rights under the 2004 IDEA regulations.

Under 34 CFR 300.151-153, every State education agency must, in order to be eligible for federal funds, provide a state complaint procedure to handle complaints regarding violations of Part B or E of the 2004 IDEA regs "by a public agency."  ISBE is a public agency in Illinois that has violated my procedural rights under 34 CFR 300.121 — i.e., failure to have procedural safeguards in effect to ensure that each public agency in the State meets the requirements of Sections 300.500 through 300.536 of the IDEA regulations.

As a remedy, I am seeking to have ISBE reinstate my due process complaints against District 200 in Oak Park , Illinois (relating to the 2005-2006 and 2006-2007 school years) so that I may have the fair hearing on these issues that is guaranteed to me by state and federal law.

My complaint consists of 3 parts:

1) *Hearing denied.* Pursuant to federal statute and regulations (34 CFR 300.511), whenever a due process complaint is received by a state education agency, the parent involved in the dispute must "have the opportunity for an impartial due process hearing."  I filed a request for a due process hearing in September 2007 regarding District 200's noncompliance with my son's IEP during the 2005-2006 and 2006-2007 school years.  Notwithstanding my right to due process guaranteed by the IDEA, I never had the opportunity for a hearing because your hearing officer inappropriately dismissed my claims, granting the district's motion for summary judgment on grounds that my claims had "already been litigated" by the parties

under ISBE's state complaint process in 2005; and that the informal, disputed grades submitted by the district with its letter and summary judgment motion constituted conclusive evidence that my son had received his IEP accommodations. There was never a hearing or any other due process, including a pre-hearing conference, mediation, resolution session or even discovery. Yet the IDEA clearly guarantees the parent the right to an impartial due process hearing regardless whether a state complaint has previously been pursued; and a summary judgment ruling is not appropriate where there has been no opportunity for a hearing or even discovery.

*2) Mediation, resolution meeting denied.* In addition, 34 CFR 300.506 requires that the SEA establish procedures to allow the parties, if they request it, to resolve their dispute through mediation. In my case, though I requested mediation right away, ISBE allowed the school district to keep canceling the mediation -- and thus *no mediation was actually held by ISBE in my case until AFTER the hearing officer had issued her ruling.* There also was never a resolution meeting, though I did not agree to waive this.

3) *Right to impartial hearing officer with knowledge of the IDEA and the ability to conduct hearings in accordance with appropriate, standard legal practice denied.* Federal regulations at 34 CFR 300.511(c)(1)(i)(B) require that the agency responsible for conducting the due process hearing must provide an impartial hearing officer having no "personal or professional interest that conflicts with objectivity in the hearing." In addition, under 34 CFR 300.511(c)(1)(ii), the hearing officer must have knowledge of and the ability to understand the IDEA, regulations and interpretations. The hearing officer also must have the "knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice." 34 CFR 300.511(c)(1).

In my case, the hearing officer provided had none of these required attributes. First, ISBE's Due Process Coordinator initially appointed James Wolter as hearing officer. Mr. Wolter had a clear personal and professional conflict in violation of the IDEA: he had a 15-year client relationship with the attorney representing the school district in my case. (Mr. Wolter was the special education director at New Trier Township high school in Wilmette , Illinois , where the lawyer representing the school district in my case served on the School Board and represented that district in special ed matters, with James Wolter as his chief client, for 15 years!) Despite a clear conflict of interest, Mr. Wolter refused to recuse himself. When I objected to this hearing officer, ISBE's Due Process Coordinator told me that I could make only one substitution. I requested a substitution and the replacement hearing officer then assigned to my case was *Mr. Wolter's daughter, Sheana Hermann.*

In addition to having a personal interest that would conflict with her objectivity in the hearing, Ms. Hermann did not have sufficient knowledge of the law, regulations and interpretations under the IDEA. If she had, she would have known that a parent cannot be deprived of a due process hearing by virtue of having filed a state complaint, regardless of the outcome of that complaint; and that grades, or a disputed informal grade report such as the one the district attached to its response, cannot constitute prima facie evidence that IEP accommodations were provided and

Exhibit 6

# FRANCZEK   SULLIVAN P.C.
### ATTORNEYS AT LAW

JOHN A. RELIAS
312-786-6160
jar@franczek.com

300 SOUTH WACKER DRIVE
SUITE 3400
CHICAGO, ILLINOIS 60606
PHONE 312-986-0300
FAX 312-986-9192
http://www.franczek.com

October 1, 2007

Dr. James Wolter
P.O. Box 69
Winnetka, IL  60093

> **Re:**   **Tom Reynolds-Ejzak Oak Park & River Forest High
> School District No. 200, Case No.:  2008-0100**

Dear Dr. Wolter:

The undersigned represents Oak Park & River Forest High School District No. 200 ("School District"). This letter constitutes the School District's response to the due process complaint filed by Meg Reynolds, the mother of Tom Reynolds-Ejzak and a motion to dismiss and for summary judgment of that complaint.

In the parent's complaint dated September 21, 2007, Ms. Reynolds raises the following issues:

1.      Retaliation, threats and interference by the School District's special education and regular education staff in response to parental requests for IEP accommodations for the 2005-06 and 2006-07 school years.

2.      Failure by District 200 School Board to oversee, investigate and take any formal action regarding the Special Education Director's retaliation, misconduct and refusal to provide IEP accommodations for the period September 2005 – June 2007.

3.      Retaliation by Tom's teachers against Ms. Reynolds and Tom for the parent's attempts to obtain IEP accommodations for the period August – December 2005.

4.      Failure and refusal to consistently implement Tom's IEP notetaker accommodation in a manner that met his needs during the 2005-06 school year.

5.      Failure to implement an effective system for effectively and meaningfully delivering "this accommodation" on a daily basis to Tom for the 2005-06 and 2006-07 school years.

F R A N C Z E K    S U L L I V A N P.C.
**ATTORNEYS AT LAW**

Dr. James Wolter
October 1, 2007
Page 2

6.    Failure to consider the child's needs and anticipated needs and to revise the IEP to address information about the child provided by the parent for the January 2002 IEP meeting.

The School District's response is as follows:

<u>Issues Nos. 1-3</u>.

The Federal Regulations at 34 CFR §300.507(a)(1) provide the parameters for issues that are properly part of a due process complaint. That section states:

> A parent or a public agency may file a due process complaint on any of the matters described in §300.503(a)(1) [relating to the identification, evaluation or educational placement of a child with a disability or the provision of FAPE to the child].

The first three issues in the parent's due process complaint allege retaliation (Issue 1 retaliation by the School District's staff and Issue 3 retaliation by Tom's teachers against Ms. Reynolds and Tom) and the failure of the School Board to investigate and oversee claims of retaliation (Issue 2).

These issues are not proper claims for a due process request pursuant to 34 CFR §300.507(a)(1) and should be dismissed.

<u>Issues Nos. 4 and 5</u>.

In these two issues Ms. Reynolds claims that the School District failed to implement the note taking provision of Tom's IEPs for the 2005-06 and 2006-07 school years.

The School District seeks summary judgment on these two issues for the following reasons:

a.    These issues have already been litigated for the 2005-06 school year before both the United States Department of Education, Office for Civil Rights ("OCR") and the Illinois State Board of Education ("ISBE").

Thus, Ms. Reynolds filed a complaint against the School District before OCR in Charge No. 05-06-1280, regarding implementation of Tom's 2005-06 IEP. On

# FRANCZEK SULLIVAN P.C.
## ATTORNEYS AT LAW

Dr. James Wolter
October 1, 2007
Page 3

December 18, 2006 OCR issued its decision totally in favor of the School District. A copy of that decision is enclosed as Exhibit A.

Similarly, Ms. Reynolds filed a complaint against the School District before ISBE relating specifically to the note taking accommodation for the 2004-05 and 2005-06 school years.

On December 7, 2005 ISBE issued its decision exonerating the School District on this issue. A copy of that decision is enclosed as Exhibit B.

b.    The School District has continued its implementation of Tom's accommodations for the 2006-07 school year. Copies of note taking and other documents evidencing that notes were provided to Tom are enclosed as Group Exhibit C.

c.    The United Supreme Court in Board of Education of Hendrick Hudson Central School District v. Rowley, 458 U.S. 176, 102 S. Ct. 3034 (1982) established the criterion for determining when a handicapped child, like Tom, who is educated in regular education classes is receiving a free appropriate public education ("FAPE"):

> The Act requires participating States to educate handicapped children with nonhandicapped children whenever possible. When that "mainstreaming" preference of the Act has been met and a child is being educated in the regular classrooms of a public school system, the system itself monitors the educational progress of the child. Regular examinations are administered, grades are awarded, and yearly advancement to higher grade levels is permitted for those children who attain an adequate knowledge of the course material. The grading and advancement system thus constitutes an important factor in determining educational benefit.

104 S. Ct. at 3049, footnote omitted.

During the 2005-06 school year Tom received 8 As and 7 Bs for his semester grades. A copy of his transcript is attached as Exhibit D. Pursuant to Rowley, Tom received a FAPE during the 2005-06 school year.

For the 2006-07 school year, no semester grades have yet been issued. However, as of September 27, 2007, Tom is receiving all As or Bs in his academic classes. A copy of those grades are attached as Exhibit E.

# FRANCZEK SULLIVAN P.C.
**ATTORNEYS AT LAW**

Dr. James Wolter
October 1, 2007
Page 4

Accordingly, the School District is entitled to summary judgment on Issues 4 and 5 of the parent's due process complaint because it has and is providing Tom with a FAPE.

Issue No. 6.

For her last issue, Ms. Reynolds complains about a January 2006 IEP and the alleged failure of the School District to consider Tom's needs and revise his IEP to address information about Tom provided by the parent.

This issue has also been litigated before ISBE and that agency found no violation of any kind by the School District.

On January 13, 2006 an IEP meeting was held to define the process under which notes and assignments would be provided to Tom. Ms. Reynolds and her attorney, Deborah Pergament, attended.

On February 5, 2006, Ms. Pergament wrote to the undersigned requesting certain additions to the IEP. A copy of that letter is attached as Exhibit F.

On February 17, 2006 the undersigned responded. After consulting with the School District, its attorney accepted some but not all of the requested additions. A copy of that letter is attached as Exhibit G.

Ms. Reynolds was not satisfied with that response and requested relief from ISBE. On March 17, 2006 ISBE responded and found that the School District had complied with ISBE's directive to clearly define the note taking process. A copy of that letter is attached as Exhibit H.

Furthermore, as noted in the proceeding section during the 2005-06 school year Tom passed all his courses with grades of As and Bs. Pursuant to Rowley, the School District provided Tom with a FAPE and the School District is entitled to summary judgment on this issue.

## CONCLUSION

Issues 1-3 of the due process complaint raise claims of retaliation and the School District is entitled to dismissal of those claims because they are not proper due process claims pursuant to 34 CFR §300.507(a)(1).

**FRANCZEK    SULLIVAN** P.C.
ATTORNEYS AT LAW

Dr. James Wolter
October 1, 2007
Page 5

Furthermore, the School District is entitled to summary judgment on Issues 4-6 of the due process complaint relating to implementation of Tom's 2005-06 and 2006-07 IEP because:

1) Tom earned grades of As and Bs for the 2005-06 school year and pursuant to Rowley he received a FAPE;

2)    Tom is passing has academic courses for the 2006-07 school year;

3)    The School District is implementing the note taking part of Tom's 2006-07 IEP;

4)    The School District considered Ms. Reynolds' requests for changes of the January 2006 IEP and no more is required; and

5)    These issues were previously litigated and decided in favor of the School District by OCR and ISBE.

Very truly yours,

John A. Relias

JAR/rs
Enclosure
cc:    Meg Reynolds (with enclosure)
        Dr. Attila Weninger (with enclosure)
        Linda Cada (with enclosures)

358083

Exhibit 7



# Illinois State Board of Education

100 North First Street · Springfield, Illinois 62777-0001
www.isbe.net

**Rod Blagojevich**
Governor

**Jesse H. Ruiz**
Chairman

**Christopher A. Koch, Ed.D.**
State Superintendent of Education

September 27, 2007

Ms. Meg Reynolds
1166 South Clinton Avenue
Oak Park, IL  60304

RE:    Tom Reynolds-Ejzak vs OAK PARK - RIVER FOREST SD 200
        Case Number:  2008-0100

Dear Ms. Meg Reynolds:

James Wolter has been appointed as the impartial due process hearing officer in the above cited matter.  Enclosed is a brief description of the hearing officer's professional background and relevant experience.

As set forth in Section 14-8.02a of the Illinois School Code, each party to this case has the one-time right to request a substitute for the current hearing officer.  If you choose to seek a substitute, you must make your request in writing to the Illinois State Board of Education within five (5) days of receiving this letter.  In the event the opposing party chooses to exercise this right, you will have five additional days to exercise your substitution following receipt of the notice of appointment of the hearing officer substitute.

Hearing Officer Wolter will contact you within five (5) days to confer about scheduling matters pertaining to this case, including but not limited to scheduling of the pre-hearing conference.  In the interim, the parties are reminded of the following procedures, set forth in 105 ILCS 5/14-8.02a and/or 20 USC 1415:

## 1)  Response to Hearing Request

Within ten (10) calendar days of receiving the hearing request, the non-requesting party is required to submit a response to the hearing request.  In the event the non-requesting party is the parent, guardian or student, the party shall provide a written response that specifically addresses the issues raised in the complaint.  If the non-requesting party is the school district, the district shall provide either (a) a copy of the prior written notice pertaining to the subject-matter of the hearing request, or (b) a written response that explains the action taken by the district, the options considered and why they were rejected by the district before taking the action, a description of each evaluation, assessment or record used by the district when taking the action, and a list of the factors that were relevant to the district's action.  The response must be transmitted to the

opposing party and to the hearing officer within the timeframe described.  In the event the parties have not yet been informed of the appointment of the hearing officer, the parties shall provide the hearing officer with a copy of the response as soon as possible after being informed of the hearing officer appointment.

**2) Notice of Insufficiency of Hearing Request/Amended Hearing Request**

Within fifteen (15) calendar days of receipt of the request, the non-requesting party may submit a written notice to the hearing officer that the hearing request does not meet the sufficiency requirements of 105 ILCS 5/14-8.02a and/or 20 USC 1415.  A copy of the notice shall simultaneously be provided to the opposing party.  Within five (5) days of receiving the notice, the hearing officer shall make a determination of the sufficiency of the request.  In the event the hearing officer determines that the hearing request is insufficient, the requesting party may, with leave of the hearing officer or the opposing party, submit an amended hearing request.  An amended hearing request shall have the effect of recommencing all applicable timelines.

In the event the party submitting notice of insufficiency has not yet been notified of the hearing officer appointment, the party shall submit its notice to ISBE within the timeframe described.  In serving such notice upon ISBE, **the party may mail said notice, postmarked no later than fifteen (15) days following the non-requesting party's receipt of the hearing request,** to the attention of the Andrew Eulass, Due Process Coordinator at the address on this letterhead or by fax at 217-782-0372.  ISBE shall transmit the notice to the hearing officer, who will then have five (5) days from the hearing officer's receipt of the notice to render a determination.

**3) Resolution Session**

Within fifteen (15) calendar days of the non-requesting party's receipt of the hearing request, the parties are required to convene a resolution session for the purpose of discussing the issue(s) raised in the hearing request.  The resolution session shall proceed unless the parties mutually agree in writing to utilize state-sponsored mediation in place of the resolution session, or to waive the resolution session without using mediation. Forms attached to this letter may be used by the parties to evidence their compliance with this requirement.  **A party's refusal to cooperate in the scheduling and conducting of the resolution session could result in a suspension or extension of the hearing timelines, dismissal of the hearing request, or such other sanction as the hearing may find appropriate.**  In the event the parties opt to use mediation in place of the resolution session, the parties may contact Sherry Colegrove, Mediation Coordinator of the ISBE at 217-782-5589 to arrange for the appointment of a State mediator.

The resolution session shall be convened at a mutually agreed-time and location during normal business hours wherever possible.  Unless the parent, guardian or student chooses to bring legal counsel to the resolution session, the district may not have legal counsel present.  The resolution session must include, at a minimum, the parent, guardian or student (if the student initiated the hearing request), a district official with full decision-

making authority, and such members of the student's IEP team that possess knowledge and information relevant to the issue(s) raised in the hearing request. In the event that the parties reach an agreement resolving one or more issues in the hearing request, the parties shall memorialize their agreement(s) in writing, signed by the district official with decision-making authority and by the parent, guardian or student (if the student initiated the hearing request).

In the event a written agreement is reached, either party may void the agreement within three (3) business days following the signing of the agreement by transmitting their intent to avoid the agreement in writing to the opposing party and to the hearing officer. Absent written intent to avoid the agreement, the parties shall transmit a report of the results of the resolution to the hearing officer within three (3) business days of the completion of the resolution session. **After three business days, the parties are reminded that the agreement is binding and fully enforceable in either a State or Federal court of competent jurisdiction.**

If no agreement is reached by the thirtieth (30th) calendar following the non-requesting party's receipt of the hearing request, the timelines for conducting the due process hearing shall proceed.

### 4) Scheduling of Pre-hearing Conference

As described above, the hearing officer will be contacting you within five (5) days of receipt of the notice of appointment to the case. The hearing officer will be contacting you for the purpose scheduling the pre-hearing conference and to discuss any other preliminary matters pertaining to the hearing request. At that time, the hearing officer will discuss your rights with respect to the pre-hearing conference and the hearing itself. In the interim, a description of your rights at the pre-hearing conference may be found at 23 Ill.Admin.Code Sec. 226.636 (include web address).

### 5) Contact with the Hearing Officer and ISBE

The hearing officer is prohibited from discussing any matters aside from scheduling without the presence of both parties to the hearing. The parties are therefore reminded that they may not contact the hearing officer to discuss any matters affecting the hearing without providing prior notice to the opposing party of the intent to contact the hearing officer. Similarly, ISBE is prohibited from providing any advice or guidance to a party with regard to the handling of the hearing, aside from providing a general description of the parties' rights and hearing procedures, or to provide the names of independent advocates or legal counsel. The parties are advised that the willful disregard of these provisions could result in sanctions to the party that fails to adhere to them.

### 6) Stay-Put

During the pendency of the proceedings, unless the parties otherwise agree, the student shall remain in his or her current placement pending the final outcome of the hearing and exhaustion of relevant appeals.  In the event the student is seeking initial admission to the public school program operated by the school district, the student shall, with the consent of the parent or guardian, be place in the district program until the hearing and all relevant appeals have been completed.

A copy of this letter is simultaneously being transmitted to the opposing party.  A copy of this letter is also being retained by ISBE.  If you have any questions pertaining to the contents of this letter, or pertaining to procedures associated with this hearing request, please contact me at 217-782-5589.

Sincerely,

Andrew C Eulass
Due Process Coordinator


cc:  James Wolter

# WAIVER OF RESOLUTION SESSION

**Student Name:  Tom Reynolds-Ejzak**

**Parent/Guardian:  Meg Reynolds**

**School District:  OAK PARK - RIVER FOREST SD 200**

**Due Process Case No (if known):  2008-0100**

By the parties' signatures below, the parties hereby agree to waive the right to convene a resolution session for the purpose of resolving the above-captioned due process hearing request. By the School District's signature below, the School District represents that it has informed the Parent or Guardian:

    (a) of his/her right to pursue either a resolution session or state-sponsored mediation prior to proceeding to hearing;

    (b) that all agreements reached during the resolution session or mediation will be set forth in a written agreement, signed by both parties, that is enforceable in a State Circuit Court or the United States District Court;

    (c) that in the event a written agreement is reached during the resolution session only, either party shall have three business days from the date of the agreement to void the agreement in its entirety with signed, written notice to the other party; and

    (d) that during the period up to the convening of the due process hearing, the Parent or Guardian may still request state-sponsored mediation, but that this request may not delay the convening of the due process hearing.

The Parties further agree that they shall contact the Hearing Officer assigned to the above-captioned case by telephone or via e-mail (if permitted by the Hearing Officer) within two business following the date of this waiver and simultaneous transmit a copy to this waiver to the Hearing Officer's attention. In the event the Hearing Officer is not yet known to either party, the parties may forward this waiver to the attention of the Due Process Coordinator of the Illinois State Board of Education, 100 N. 1st Street, Springfield, IL 62777 (telephone: 217-782-5589; fax: 217-782-0372).

**Parent/Guardian:**               **School District:**

_____      _____

**Name:** _____    **Name:** _____

                        **Title:** _____

**Date:** _____    **Date:** _____

**APPENDIX A1**

## INTENT TO USE STATE-SPONSORED MEDIATION

**Student Name:  Tom Reynolds-Ejzak**

**Parent/Guardian:  Meg Reynolds**

**School District:  OAK PARK - RIVER FOREST SD 200**

**Due Process Case No (if known):  2008-0100**

By the parties' signatures below, the parties hereby agree to utilize state-sponsored mediation for the purpose of resolving the above-captioned due process hearing request.  By the School District's signature below, the School District represents that it has informed the Parent or Guardian:

    (a) of his/her right to pursue a resolution session in place of mediation prior to proceeding to hearing;

    (b) that all agreements reached during the resolution session will be set forth in a written agreement, signed by both parties, that is enforceable in a State Circuit Court or the United States District Court;

    (c) that in the event a written agreement is reached at the resolution session only, either party shall have three business days from the date of the agreement to void the agreement in its entirety with signed, written notice to the other party; and

    (d) that upon completion of the mediation, the parties will proceed to hearing to decide any issues left unresolved following the completion of the mediation.

The Parties further agree that they shall contact the Hearing Officer assigned to the above-captioned case by telephone or via e-mail (if permitted by the Hearing Officer) within two business following the date of this agreement to mediate and simultaneously transmit a copy to this agreement to the Hearing Officer's attention. In the event the Hearing Officer is not yet known to either party, the parties may forward this agreement to the attention of the Due Process Coordinator of the Illinois State Board of Education, 100 N. 1st Street, Springfield, IL 62777 (telephone: 217-782-5589; fax: 217-782-0372).

**Parent/Guardian:**                             **School District:**

_____     _____

**Name:** _____     **Name:** _____

                                       **Title:** _____

**Date:** _____     **Date:** _____

**APPENDIX A1**

# Special Education Mediation

### Principles of Mediation

Illinois' mediation service is designed as a means of resolving disagreements regarding special education services, placement and related services to children enrolled in Illinois public schools. Mediation is provided when both parties in a dispute voluntarily agree to participate in the mediation process. Mediation can be requested by both parties without filing for Due Process. Mediation can also be requested after Due Process has been filed. This service is administered and supervised by the Illinois State Board of Education and is provided at no cost to the parties.

In mediation, neither party is asked to abandon basic beliefs about the student's ability but rather the parties are asked to consider alternatives which could be incorporated into the student's program, to be aware of the concerns and problems expressed by the other party and to be realistic about both the student's capabilities and the local district's obligations and resources.

*The following rules apply to this mediation service:*

1. Mediation is voluntary and requires consensus by both parties to participate in the process;
2. Mediation agreements are legally binding and enforceable in any state court of competent jurisdiction or in a district court of the United States. [20 USC Sec 1415(e)(2)(F)];
3. Mediation cannot be used to deny or delay a due process hearing;
4. Mediation participants for both parties <u>must</u> include persons who have legal authority to act on behalf of the student and local district respectively;
5. The number of participants shall generally be limited to three persons per party. Participants may include attorneys, advocates, interpreters, and other relevant parties;
6. The mediator is an impartial third party trained in effective mediation techniques and is knowledgeable in laws and regulations relating to the provision of special education and related services;
7. The mediator has no authority to enforce or override any action by either party;
8. The mediator will chair all mediation sessions and assure that they are convened in a timely fashion and held in a location convenient to the parties;
9. All discussions that occurred during the mediation process shall be confidential and may not be used as evidence in *any subsequent due process hearing or civil proceeding*;
10. The parties cannot compel the mediator to appear at *any subsequent due process hearing or civil proceeding* arising from the dispute;
11. The only record that will be kept of the mediation session is the result of the mediation session, a listing of participants, the date(s), time(s), and location of the mediation session(s) and a summary of the outcome; and
12. When a consensus is not forthcoming, the mediator or parties may terminate the mediation.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

TRE, by his natural mother and guardian,   )
**Meg Reynolds,**   )
   )
          Plaintiff(s),   )
   )
Vs.   )   CASE NO. 08-C-1507
   )   Judge John W. Darrah
**Oak Park-River Forest School District 200,**   )
**Local School District; Board of Education**   )
**of Oak Park-River Forest School District**   )
**200; and Linda Cada, Special Education**
**Director;**
and **The Illinois State Board of Education**
**and Christopher Koch, State**
**Superintendent,**

          Defendants.

### Certificate Of Service

I, Meg Reynolds, pro se Plaintiff, certify that on September 8, 2008 I served a true copy of Plaintiffs' Second Amended Complaint by placing them in the U.S. Mail, postage pre-paid, to the following individuals:

**Defendant Oak Park-River Forest School District 200, Linda Cada, Special Education Director, and School Board counsel of record:**

**John A. Relias, Esq.**
Franczek Sullivan PC
300 South Wacker Drive.
Chicago, IL 60606
Fax no.: 312-986-9192

**Illinois State Board of Education and Christopher Koch, State Superintendent counsel of record:**

**Rachel Fleischmann, Esq.**
Illinois Attorney General's Office
100 W. Randolph Street, 13th Floor

Chicago, Illinois 60601
Fax no. 312-814-4425

Dated this 8th day of September, 2008

Meg Reynolds